# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RHONDA EZELL, JOSEPH I. BROWN, WILLIAM HESPEN, ACTION TARGET, INC., SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, <br><br> Defendant. | Case No. <br><br> **COMPLAINT** |

## COMPLAINT

**COME NOW** the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and complain of the Defendant as follows:

## THE PARTIES

1. Plaintiff Rhonda Ezell is a natural person and a citizen of the United States residing in Chicago, Illinois.

2. Plaintiff Joseph I. Brown is a natural person and a citizen of the United States residing in Chicago, Illinois.

3. Plaintiff William Hespen is a natural person and a citizen of the United States residing in Chicago, Illinois.

4. Plaintiff Action Target, Inc., is a Delaware corporation having its primary place of business in Utah. Action Target is a leading designer and builder of gun ranges, and renowned manufacturer and seller of gun range equipment and supplies. Action Target is engaged in the gun range business throughout the United States, including in Chicago, where it recently constructed a gun range on the seventeenth floor of the Federal Reserve Bank of Chicago, located at 230 South LaSalle Street; a gun range for the United States Postal Inspectors at 743 South Canal Street; and a gun range for Brinks, located at 4420 S. Tripp Avenue. Action Target has bid on the retrofitting of two other gun ranges within Chicago currently being operated by the federal government.

5. Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including many in Chicago. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of itself and its members.

6. Plaintiff Illinois State Rifle Association ("ISRA") is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois, including many in Chicago. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA brings this action on behalf of itself and its members.

7. Defendant City of Chicago is a municipal entity organized under the Constitution and laws of the State of Illinois.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

9. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

*Gun Ranges' Role in American Tradition and Chicago's Safety Policy*

10. Familiarity with firearms, and proficiency in their use, promotes public safety. Gun owners trained in and familiar with the operation of their guns are less likely to be involved in accidental shootings, and more likely to successfully use their firearms in self-defense in case of need.

11. Recreational shooting is a traditional lawful use of firearms in the United States.

12. The promotion of civilian marksmanship has been a priority of the federal government throughout American history, beginning with the Second Militia Act of 1792 and continuing through today with the modern implementation of the Civilian Marksmanship Program through the federally-chartered Corporation for the Promotion of Rifle Practice and Firearms Safety, 36 U.S.C. §§ 40701, et seq.

13. Defendant City of Chicago recognizes the value of firearms training and proficiency. The City mandates, as a condition of firearms ownership, that all individuals undergo at least one hour of firearms training on a gun range.

14. Chicago residents wishing to lawfully possess firearms in the city must first obtain a Chicago Firearms Permit ("CFP"). Chi. Mun. Code § 8-20-110(a).

15. An application for a CFP "shall include . . . (7) an affidavit signed by a firearm instructor certified by the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training . . ." Chi. Mun. Code § 8-20-120(a).

16. Chicago firearm registrants whose registrations precede Chicago's adoption of the CFP requirement must obtain a CFP, and the requisite training, in order to renew their firearm registration. Chi. Mun. Code § 8-20-110(d). If a registration is not timely renewed, the subject firearm may become unregisterable to the current owner and must be disposed of. Chi. Mun. Code §§ 8-20-140(d), 8-20-170(c).

17. Owing to, and as part of Chicago's recent changes to its firearms laws, the City of Chicago enacted a ninety day grandfathering period wherein it will allow the registration of firearms previously acquired, but not registered, by city residents. This period will expire on October 12, 2010. Any individual wishing to take advantage of this opportunity must, by October 12, 2010, obtain a CFP and thus, must undergo at least one hour of range time by that date.

18. Gun ranges open to the public exist in virtually every major American city in a variety of architectural settings.

19. Properly designed and operated, gun ranges are compatible with many typical commercial uses of property.

20. At least eleven gun ranges currently operate within the City of Chicago. However, none are open to the public. Five ranges are operated by the Chicago Police Department. The

federal government maintains four gun ranges. And each of two private security companies operate gun ranges for their own purposes.

  21. Historically, gun ranges open to the public have operated in Chicago.

*Chicago's Prohibition of Gun Ranges, Recreational Shooting,*
*and Firearms Training*

  22. Chicago Municipal Code § 8-20-280, "Prohibition on shooting galleries and target ranges," provides: "Shooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited; provided that this provision shall not apply to any governmental agency. The discharge of a firearm in an area where hunting is permitted shall not be a violation of this section."

  23. A variety of Chicago ordinances, individually and as a whole, bar the temporary lending and borrowing of firearms for purposes of training and shopping at a gun range. These include: Chi. Mun. Code §§ 8-20-020 (barring possession of handguns outside the home), 8-20-030 (barring possession of long guns outside one's home or fixed place of business), 8-20-080 (barring possession of ammunition without corresponding CFP and registration certificate), 8-20-100(a) (providing that generally, "no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm"), 8-20-100(d) (providing that "No person may loan, borrow, give or rent to or from another person, any firearm or ammunition except in accordance with this chapter"), 8-20-110(a) (mandating that each individual must have a valid CFP to possess a firearm), 8-20-140(a) (mandating that no firearm may be possessed without a registration certificate), and 8-24-010 (barring recreational shooting).

24. Every day in which an individual operates a gun range in violation of Chi. Mun. Code § 8-20-280; or transfers, loans, borrow, gives or rents firearms or ammunition in violation of Chi. Mun. Code § 8-20-100; or possesses an unregistered firearm in violation of Chi. Mun. Code § 8-20-140, is considered a separate and distinct offense. The penalty for a first offense in violation of these provisions is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days. A subsequent offense carries a fine ranging from $5,000 to $10,000 and/or incarceration ranging from thirty days to six months. Chi. Mun. Code § 8-20-300(b).

25. Every day in which an individual possesses guns outside the home or fixed place of business in violation of Chi. Mun. Code §§ 8-20-020 or 8-20-030; possesses ammunition without a corresponding registration under Chi. Mun. Code § 8-20-080; or possesses a firearm without a CFP in violation of Chi. Mun. Code § 8-20-140, is considered a separate and distinct offense. The penalty for a first offense in violation of these provisions is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days. Chi. Mun. Code § 8-20-300(a).

26. Discharging a firearm other than in self-defense or defense of another person, in violation of Chi. Mun. Code § 8-24-010, carries a penalty ranging from $500 to $1000.

*The Impact of Chicago's Range Prohibition on Plaintiffs and the Public*

27. Plaintiff Rhonda Ezell has been the victim of three attempted burglaries at her Chicago home. She has applied for a Chicago Firearms Permit so that she may register her handgun. However, to obtain the necessary training, Ezell traveled to a range in Dundee, Illinois, a significant distance from her home.

28. Plaintiff Ezell suffers from interstitial lung disease, lupus, and end stage renal disease, for which she is currently awaiting a kidney transplant. Ezell would like to continue recreational shooting, but given her condition finds it difficult to travel outside the city for that purpose. Ezell would utilize a gun range inside the city of Chicago were one accessible to her.

29. Plaintiff Joseph I. Brown is an honorably-discharged U.S. Army veteran. Plaintiff Brown served in the Pacific and European theaters during the Second World War, and was among the liberators of the infamous Dachau concentration camp. Brown is currently the Chairman of the Marksmanship Committee for the Department of Illinois, American Legion. He is also the Secretary and Treasurer of the Cook County Rifle League, and instructs a winter shooting league for junior shooters (boys and girls ages 12-20) that meets at the six-point indoor gun range located at the Morton Grove, Illinois American Legion Post 134.

30. Plaintiff Brown would like to register one of his guns for possession inside his Chicago home, but cannot do so until he obtains his Chicago Firearms Permit. Notwithstanding his unusual expertise and high level of firearms proficiency, Brown must undergo one hour of formal range training to obtain the Chicago Firearms Permit and register his gun.

31. Plaintiff Brown would also engage in recreational shooting within the City of Chicago, and promote and provide instruction in the shooting sports, and marksmanship, to his Chicago neighbors at a local range, if one were made available to him.

32. Plaintiff William Hespen is a retired Chicago Police detective. Hespen is the registered owner of various firearms, twenty-four of which have registrations set to expire on October 8, 2010. Hespen must obtain training and apply for a CFP upon the expiration of his registration certificate in order to continue lawful possession of his firearms.

33. Plaintiff Hespen would also engage in recreational shooting within the City of Chicago, and promote and provide instruction in the shooting sports, and marksmanship, to his Chicago neighbors at a local range, if one were made available to him.

34. Various qualified customers of Plaintiff Action Target have expressed to Action Target their desire to retain the company to construct gun ranges within the city limits of Chicago. Action Target refrains from entering into these contracts, and from supplying range equipment and supplies in Chicago, owing to the ordinances complained of in this action. But for these prohibitions, Action Target would successfully market its services and products in Chicago to non-governmental entities.

35. Plaintiff ISRA has long operated a gun range approximately sixty miles outside Chicago for the benefit of its members and the public at large. ISRA would operate a range within the City of Chicago, to further its chartered purposes of promoting the shooting sports, educating the public about firearms, training individuals to become better and safer shooters, enabling individuals to comply with training requirements such as that recently enacted by the City of Chicago, and generally serving its members.

36. Plaintiffs SAF and ISRA have members and supporters within the City of Chicago who require range training in order to obtain CFPs and thus lawfully keep firearms. It is squarely within the educational and public service missions of SAF and ISRA to provide firearms training, especially to the extent such training is required as a condition of gun ownership.

37. SAF and ISRA expend their resources advising and counseling current and prospective Chicago gun owners with respect to Chicago's gun laws, including the city's range training requirement.

38. Every day, current firearms registrants, including the members and supporters of Plaintiffs SAF and ISRA, are forced to obtain CFPs to continue exercising their right to keep arms in the City of Chicago, as registration certificates issued under the previous Chicago firearms ordinance expire. It is urgent that such individuals immediately obtain the city-mandated training, lest their firearms become unregisterable and they become subject to criminal penalties.

39. Numerous individuals within Chicago, including the members and supporters of Plaintiffs SAF and ISRA, urgently require the city-mandated training so that they may timely obtain CFPs and gun registrations prior to the expiration of the 90-day grandfathering window on October 12, 2010.

40. To meet these urgent educational needs, SAF has contracted for the delivery of a modern mobile firearm training facility, ordinarily used by law enforcement personnel, to the City of Chicago. This mobile range facility, fully compliant with all federal environmental and safety standards, contains three positions within a forty-eight foot truck trailer. SAF has also secured a commercial space for the location of this range within Chicago, and plans to secure additional parking locations so that convenient range training may be provided to gun owners throughout the length and breadth of the City of Chicago. This range would be operated by SAF in conjunction with ISRA's state-registered firearms trainers.

41. But for the criminal enactments challenged in this complaint, SAF and ISRA would begin educating individuals in the use of firearms, including by providing the training required by Defendant City of Chicago, utilizing the mobile range within the City of Chicago by the end of September, 2010, but refrain from doing so for fear of arrest, prosecution, fine and incarceration of their principals and employees.

42. But for the criminal enactments challenged in this complaint, ISRA would seek to construct and operate gun ranges within the City of Chicago, but refrains from doing so for fear of arrest, prosecution, fine and incarceration of their principals and employees.

43. But for the criminal enactments challenged in this complaint, Plaintiffs Brown and Hespen would obtain the mandated gun training in the City of Chicago utilizing Plaintiffs SAF and ISRA's mobile facility, and frequent a Chicago gun range for recreational shooting, and to maintain and improve their proficiency with firearms.

## COUNT I
## RIGHT TO KEEP AND BEAR ARMS
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

44. Paragraphs 1 through 43 are incorporated as though fully stated herein.

45. The Second Amendment, which applies against defendant City of Chicago by operation of the Fourteenth Amendment, secures the right to operate firearms at a range, for purposes of learning about firearms, gaining proficiency with firearms, obtaining any training required as a condition of firearms ownership, recreation, and competition; and the right to own and operate a range for these purposes.

46. Chicago's laws ban the operation of gun ranges, thereby prohibiting numerous traditional lawful uses of firearms. The range ban and associated laws also impede gun ownership itself by frustrating compliance with the city's firearm registration program and barring access to useful information and experience inherently necessary to the exercise of Second Amendment rights.

47. By banning gun ranges open to the public, and by effectively banning the loan, rental, and borrowing of functional firearms at ranges open to the public, Defendant currently

under color of law deprives individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices.

## COUNT II
## FREE SPEECH
## U.S. CONST., AMENDS. I AND XIV, 42 U.S.C. § 1983

48.     Paragraphs 1 through 47 are incorporated as though fully stated herein.

49.     The First Amendment, which applies against defendant City of Chicago by operation of the Fourteenth Amendment, secures the right to provide and receive education and instruction in the use of firearms, including the right to provide and receive the training required by defendant as a prerequisite to owning firearms.

50.     By banning gun ranges open to the public, and by effectively banning the loan, rental, and borrowing of functional firearms at ranges open to the public, Defendant currently under color of law deprives individuals, including the Plaintiffs, of their right to free speech, in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices.

**PRAYER FOR RELIEF**

Plaintiffs request judgment be entered in their favor and against Defendant as follows:

1. An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code § 8-20-280, barring operation of gun ranges open to the public;

2. An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code §§ 8-20-020, 8-20-030, 8-20-080, 8-20-100, 8-20-110, 8-20-140, and 8-24-010, or any other law, as against the ordinary operation and use of gun ranges open to the public and the loan or rental of functional firearms within gun ranges open to the public;

3. Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

4. Declaratory relief consistent with the injunction;

5. Costs of suit; and

6. Any other further relief as the Court deems just and appropriate.

Dated: August 16, 2010          Respectfully submitted,

Alan Gura                                         David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405   Corporate West I
Alexandria, VA 22314                    4300 Commerce Court, Suite 300-3
703.835.9085/Fax 703.997.7665     Lisle, IL 60532
*Pro Hac Vice* Application Pending   630.452.4547/Fax 630.596.4445

                                                By:    /s/David G. Sigale/
                                                       David G. Sigale