**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| Plaintiffs, | ) | PLAINTIFFS' MOTION FOR |
| | ) | PRELIMINARY INJUNCTION |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action

Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and

through undersigned counsel, and submit their Memorandum of Points and Authorities in

Support of their Motion for Preliminary Injunction.

Dated: August 16, 2010                    Respectfully submitted,

Alan Gura (pro hac vice appl. pending)      David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                      Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405           4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                        Lisle, IL 60532
703.835.9085/Fax 703.997.7665              630.452.4547/Fax 630.596.4445


By: /s/ Alan Gura/                          By: /s/ David G. Sigale/


    Alan Gura                                   David G. Sigale

                                                Attorneys for Plaintiffs

TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.    Chicago's Training Requirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.    *Chicago's Ban on the Operation of Gun Ranges*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.    *The Range Ban's Impact on Plaintiffs and the General Public*. . . . . . . . . . . . . . . . . . . 4

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE
      ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . 9

II.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO
      RELIEVE THE RANGE BAN'S HARM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.   PLAINTIFFS WILL PREVAIL ON THE MERITS, AS CHICAGO'S
      RANGE BAN VIOLATES THEIR SECOND AND
      FIRST AMENDMENT RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     A.    Using and Operating Gun Ranges Lie at the
        Core of the Second Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     B.    The Use and Operation of Gun Ranges Constitutes Protected Speech. . . . . . . . . 13

         1.    *The First Amendment Guarantees A Right to Provide
            and Receive Instruction in the Use of Firearms at a
            Gun Range.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.   THE BALANCE OF INTERESTS FAVOR IMMEDIATE
      INJUNCTIVE RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

Cases

*Christian Legal Soc'y* v. *Walker*,
    453 F.3d 853 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*District of Columbia* v. *Heller*,
    128 S. Ct. 2783 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12

*Edwards* v. *City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Girl Scouts of Manitou Council, Inc.* v. *Girl Scouts of U.S., Inc.*,
    549 F.3d 1079 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Goulart* v. *Meadows*,
    345 F.3d 239 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Holder* v. *Humanitarian Law Project*,
    130 S. Ct. 2705 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kennedy* v. *Louisiana*,
    128 S. Ct. 2641 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Keyishian* v. *Board of Regents*,
    385 U.S. 589 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lawrence* v. *Texas*,
    539 U.S. 558 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McDonald* v. *City of Chicago*,
    130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 12, 13, 15

*National People's Action* v. *Wilmette*,
    914 F.2d 1008 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Parker* v. *District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Richmond Newspapers* v. *Virginia*,
    448 U.S. 555 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Silveira* v. *Lockyer*,
      328 F.3d 567 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sweezy* v. *New Hampshire*,
      354 U.S. 234 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Emerson*,
      270 F.3d 203 (5th Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *O'Brien*,
      391 U.S. 367 (1968).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Universal City Studios* v. *Corley*,
      273 F.3d 429 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Constitutional Provisions

U.S. Const. amend. II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Statutes, Rules, and Ordinances

36 U.S.C. § 40701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Chi. Mun. Code § 8-20-020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-030. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-080. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-100(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-100(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-110(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Chi. Mun. Code § 8-20-110(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-120(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-140(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-140(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-140(d)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-170(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-280. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Chi. Mun. Code § 8-20-300(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-300(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-24-010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Other Authorities

Dahleen Glanton & Duaa Eldeib, "Chicago Gun Law
        May Not Be Bulletproof," *Chicago Tribune*,
        July 11, 2010, *available at* http://articles.
        chicagotribune.com/2010-07-11/news/ct-met-
        chicago-gun-law- 20100708_1_ reasonable-
        restriction-gun-ordinance (last visited August 11, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**PRELIMINARY STATEMENT**

Chicago's newly-enacted ban on the operation of gun ranges flatly violates the rights to

arms and speech, and poses an immediate threat to public safety. If not preliminarily enjoined,

the range ban will irreparably harm not only the public at large, but also Plaintiffs and numerous

others who must obtain range training within the next two months in order to keep firearms

consistent with city law. Defendant has no valid interest in completely banning the gun ranges it

concedes are necessary for public safety. Preliminary injunctive relief is warranted.

**STATEMENT OF FACTS**

**A.      *Chicago's Training Requirement.***

Individuals exercising Second Amendment rights should know how to use their firearms

safely and effectively. With proper care, guns provide security against violence, peace of mind,

and recreational and social opportunities. But gun owners who are unfamiliar with or not

proficient in the use of their guns might pose a danger to themselves and others, and may be

unable to fully realize the defensive benefits of their guns in time of emergency.

Regardless of whether some level of training and proficiency among gun owners is

merely a good idea, or should or could be mandated as a condition of owning firearms, the fact is

that the City of Chicago demands at least one hour of range training as a condition for exercising

the right to keep and bear arms. Chicago residents wishing to lawfully possess firearms in the city

must first obtain a Chicago Firearms Permit ("CFP"). Chi. Mun. Code § 8-20-110(a). An

application for a CFP "shall include . . . (7) an affidavit signed by a firearm instructor certified by

1

the State of Illinois to provide firearm training courses attesting that the applicant has completed

a firearm safety and training course, which, at a minimum, provides one hour of range training . .

." Chi. Mun. Code § 8-20-120(a).

The requirement is not exclusive to new gun owners. Chicago firearm registrants whose

registrations predate the CFP requirement's adoption must obtain a CFP, and the requisite

training, in order to renew their firearm registration. Chi. Mun. Code § 8-20-110(d). If a

registration is not timely renewed, the subject firearm may become unregisterable to the current

owner and must be disposed of. Chi. Mun. Code §§ 8-20-140(d), 8-20-170(c).

Owing to, and as part of Chicago's recent changes to its firearms laws, the city enacted a

ninety day grandfathering period wherein it will allow the registration of firearms previously

acquired, but not registered, by city residents. Chi. Mun. Code § 8-20-140(d)(2). This ninety-day

period will expire on October 12, 2010. Any individual wishing to take advantage of this

opportunity must, within the ninety-day period, obtain a CFP and thus, must undergo at least one

hour of range time. Accordingly, however beneficial firearms training ordinarily might be,

Chicago's training requirements, and the penalties for non-compliance, accelerate the urgency of

the need for publicly-accessible gun ranges.

### B.     *Chicago's Ban on the Operation of Gun Ranges.*

Chicago Mun. Code § 8-20-280, "Prohibition on shooting galleries and target ranges,"

provides, "Shooting galleries, firearm ranges, or any other place where firearms are discharged

are prohibited; provided that this provision shall not apply to any governmental agency . . ."

Additionally, a variety of Chicago code provisions, individually and as a whole, operate

to bar the temporary lending and borrowing of firearms for purposes of training and

familiarization at a gun range. These include: Chi. Mun. Code §§ 8-20-020 (barring possession

of handguns outside the home), 8-20-030 (barring possession of long guns outside one's home

or fixed place of business), 8-20-080 (barring possession of ammunition without corresponding

CFP and registration certificate), 8-20-100(a) (providing that generally, "no firearm may be sold,

acquired or otherwise transferred within the city, except through inheritance of the firearm"), 8-

20-100(d) (providing that "No person may loan, borrow, give or rent to or from another person,

any firearm or ammunition except in accordance with this chapter"), 8-20-110(a) (mandating that

each individual must have a valid CFP to possess a firearm), 8-20-140(a) (firearms may be

possessed only with a registration certificate), and 8-24-010 (barring recreational shooting).

Every day in which an individual operates a gun range in violation of Chi. Mun. Code §

8-20-280; or transfers, loans, borrow, gives or rents firearms or ammunition in violation of Chi.

Mun. Code § 8-20-100; or possesses an unregistered firearm in violation of Chi. Mun. Code § 8-

20-140, is considered a separate and distinct offense. The penalty for a first offense in violation

of these provisions is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20

to 90 days. A subsequent offense carries a fine ranging from $5,000 to $10,000 and/or

incarceration ranging from thirty days to six months. Chi. Mun. Code § 8-20-300(b).

Every day in which an individual possesses guns outside the home or fixed place of

business in violation of Chi. Mun. Code §§ 8-20-020 or 8-20-030; possesses ammunition

without a corresponding registration under Chi. Mun. Code § 8-20-080; or possesses a firearm

without a CFP in violation of Chi. Mun. Code § 8-20-140, is considered a separate and distinct

offense. The penalty for a first offense in violation of these provisions is a fine ranging from

$1,000 to $5,000 and/or incarceration ranging from 20 to 90 days. Chi. Mun. Code § 8-20-

3

300(a). Discharging a firearm other than in self-defense or defense of another person, in violation of Chi. Mun. Code § 8-24-010, carries a penalty ranging from $500 to $1000.

Chicago's range ban, like much of Chicago's new firearms ordinance, was enacted out of hostility to the Second Amendment. Chicago's City Attorney explained the city-wide ban on gun stores was enacted, instead of mere zoning and other types of ordinary restrictions, because no Alderman wanted gun stores in his or her ward. Dahleen Glanton & Duaa Eldeib, "Chicago Gun Law May Not Be Bulletproof," *Chicago Tribune*, July 11, 2010, available at http://articles. chicagotribune.com/2010-07-11/news/ct-met-chicago-gun-law- 20100708_1_ reasonable-restriction-gun-ordinance (last visited August 11, 2010). The logic of banning all ranges, rather than regulating them as property uses, appears similar.

### C.   *The Range Ban's Impact on Plaintiffs and the General Public.*

Every day that passes, existing firearms registrations predating Chicago's new firearms ordinance expire. Any individual facing registration expiration must obtain the necessary range training to timely seek a CFP. The failure to do so can lead to a loss of Second Amendment rights as the registered guns become unregisterable. Members and supporters of Plaintiffs SAF and ISRA need immediate range training for this reason. Versnel Decl., ¶ 3; Pearson Decl., ¶ 3.

Plaintiff William Hespen, a retired Chicago Police detective, faces this risk. Hespen has various registered guns, 24 of which will see their registrations expire on October 8, 2010. Hespen Decl., ¶¶ 2, 3. If he does not obtain range training by then, he will lose the ability to lawfully possess these firearms. Within one calendar year, he will lose the ability to lawfully possess his remaining firearms. Chicago's range ban interferes with Hespen's ability to obtain the required training. Hespen Decl., ¶¶ 4, 5.

Every day that passes, Chicagoans wishing to take advantage of the ninety-day grandfathering provision who cannot obtain the necessary range training draw one day closer to losing their right to keep otherwise registerable firearms in their homes. In a few short weeks, on October 12, 2010, their ability to do so will expire if they do not obtain range training. Members and supporters of Plaintiffs SAF and ISRA need immediate range training for this reason. Versnel Decl., ¶ 3; Pearson Decl., ¶ 3. Plaintiff Joseph I. Brown falls into this category. Brown would like to register a gun he currently owns but keeps outside the city. Brown Decl., ¶ 6. Chicago's range ban frustrates Brown's ability to obtain the required training. Brown Decl., ¶ 4.

Every day that passes without relief from Chicago's range ban, Chicago gun owners, including the members and supporters of Plaintiffs SAF and ISRA, are frustrated in their ability to maintain and improve their firearms proficiency and engage in recreational shooting. Plaintiff Rhonda Ezell has applied for a Chicago Firearms Permit, but traveling far outside the city to do so was a hardship, considering her poor health. Ezell Decl., ¶¶ 2, 3. Ezell cannot travel such distances easily in order to engage in recreational shooting. Ezell Decl., ¶ 4. Ezell would like to continue recreational shooting, and believes she needs to keep practicing with her handgun in order to remain proficient in its use so that she may be better able to defend herself in the event of another burglary. Ezell would welcome opportunities to learn how to maintain and improve her marksmanship, and would definitely visit a Chicago range for these purposes. *Id.*

Plaintiff Brown has frequented ranges in Chicago when they were available. Brown Decl., ¶ 6.  Brown regularly promotes the shooting sports and provides shooting instruction, and he would do so among his Chicago neighbors, but the lack of a local range impedes his ability to engage in this activity. Brown Decl., ¶¶ 2, 5. Plaintiff Action Target, Inc., has recently built gun

ranges for the Federal Reserve Bank, 230 S. LaSalle Street; Postal Inspectors, 743 S. Canal

Street; and Brinks, 4420 S. Tripp Avenue. It is bidding to retrofit Chicago gun ranges operated by

the Customs and Border Protection Service, and Federal Air Marshals, and would build ranges in

Chicago open to the public but for the challenged ordinances. Hart Decl., ¶¶ 4, 5.

 Plaintiffs are greatly concerned that owing to the recent highly-publicized demise of

Chicago's handgun ban, many individuals seeking to become first-time gun owners might

purchase guns that are less-than-optimally suitable for their needs. It is quite obviously better for

potential gun owners, and in the interest of public safety, that prospective gun buyers experience

a variety of guns, or at least, those guns they are considering, *before* actually making their

purchases. And many people are introduced to shooting and gun ownership by visiting a range

prior to deciding to purchase a gun. Versnel Decl., ¶ 4; Pearson Decl.,¶ 4. Gun ranges

traditionally offer a variety of handguns for on-premises rental, and training classes usually

provide experience with a variety of firearms. Whatever the merit of Chicago's various

registration and possession requirements, their application within the context of gun ranges

impedes traditional gun range and training behavior.

 Plaintiffs SAF and ISRA are in the business of promoting firearms education and

ownership, including by the securing of Second Amendment rights. Versnel Decl., ¶ 2; Pearson

Decl., ¶ 1. SAF and ISRA organized and were among the prevailing parties in *McDonald* v. *City

of Chicago*, 130 S. Ct. 3020 (2010). ISRA has long operated a gun range near Kankakee, Illinois,

for the benefit of its members, and to promote marksmanship and the shooting sports. Pearson

Decl., ¶ 5. Among ISRA's members and officers are various firearms trainers certified by the

State of Illinois who are qualified to provide the training mandated by the City of Chicago as a

prerequisite to obtaining a CFP. *Id.* The lack of gun ranges in Chicago is significantly impeding individuals' ability to maintain and obtain lawful gun ownership. Pearson Decl., ¶ 7.

To address the training crisis facing current and prospective Chicago gun owners, SAF and ISRA have contracted for the operation of a mobile range training facility in the city. SAF has placed a deposit guaranteeing the availability, for immediate delivery, of a mobile range facility, fully compliant with all federal environmental and safety standards, which contains three positions within a forty-eight foot truck trailer. Versnel Decl., ¶ 5; Exh. A. SAF has also secured a commercial space for the location of this range within Chicago, and plans to secure additional parking locations so that convenient range training may be provided to gun owners throughout the length and breadth of the City of Chicago. Versnel Decl., ¶ 5, Exh. B. This range would be operated by SAF in conjunction with ISRA's state-registered firearms trainers. Versnel Decl., ¶ 6; Pearson Decl., ¶ 8. Plaintiffs Brown and Hespen would receive their required training at this facility. Brown Decl., ¶ 4; Hespen Decl., ¶ 4.

But for the criminal enactments challenged in this complaint, SAF and ISRA would begin operating the mobile range within the City of Chicago by the end of September, 2010, but refrain from doing so for fear of arrest, prosecution, fine and incarceration of their principals and employees. Versnel Decl., ¶ 7, Pearson Decl., ¶ 9.  For the same reason, ISRA refrains from opening a more permanent range facility within the City of Chicago. Pearson Decl., ¶ 9, and Action Target is refraining from soliciting and conducting business in Chicago. Hart Decl., ¶ 5.

## SUMMARY OF ARGUMENT

Chicago's range ban unquestionably violates the constitutional guarantees of keeping arms and free speech, as do Chicago's other various ordinances that, regardless of their validity

as generally applied, undeniably frustrate constitutionally-secured activity in a gun range.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary injunctive relief. Plaintiffs are suffering, and will continue to suffer, irreparable harm in the absence of injunctive relief, for which there is no adequate remedy at law. Granting Plaintiffs relief cannot injure defendant. And given the degree to which the range ban threatens public safety, the public interest – already favoring the exercise of fundamental rights – is clearly satisfied by immediately enjoining the city's unconstitutional practices.

## ARGUMENT

A plaintiff seeking a preliminary injunction must prove three threshold elements: "[f]irst, that absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims. Second, that traditional legal remedies would be inadequate. And third, that its claim has some likelihood of succeeding on the merits." *Girl Scouts of Manitou Council, Inc.* v. *Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citations omitted).

Upon satisfying these threshold requirements, the Court "must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest.'" *Id.* (citations omitted). In so doing, the court employs a sliding scale approach: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* (citations omitted).

Plaintiffs easily satisfy all three threshold requirements for obtaining preliminary injunctive relief, and the balance of interests weigh heavily in their favor.

8

## I.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.

Ezell, Brown, Hespen, and other members and supporters of SAF and ISRA, enjoy a fundamental right to keep and bear arms. *McDonald* v. *City of Chicago*, 130 S. Ct. 3020,  2010 U.S. Lexis 5523 at *64 (2010) (majority op.), at *113 (Thomas, J.). "[T]he inherent right of self-defense has been central to the Second Amendment right." *District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2817 (2008).

However, if ranges are not immediately made available in Chicago, individuals including the plaintiffs will be frustrated in their ability to obtain the training required by the city to exercise Second Amendment rights. With expiration of the October 12 grandfathering period, many gun owners, including Plaintiff Brown, will be unable to register their guns. And every day, existing registrations are subject to expiration but for the obtaining of necessary range training and a CFP. Plaintiff Hespen faces the loss of twenty-four guns by October 8.

SAF and ISRA not only have members and supporters facing the imminent loss of Second Amendment rights for lack of access to ranges. Their organizational missions are themselves immediately jeopardized, as SAF and ISRA have organized an effort to bring a range to Chicago for training purposes that is stymied by the current range ban. Plaintiff Action Target, a range builder and supplier, suffers harm in being prevented from pursuing its business.

"Even a temporary deprivation of first amendment freedom of expression rights is generally sufficient to prove irreparable harm." *National People's Action* v. *Wilmette*, 914 F.2d 1008, 1013 (7th Cir. 1990) (citations omitted). Training people in the use of guns at a range, and receiving such training, are undeniably protected by the First Amendment's free speech

guarantee. And even the temporary deprivation of Second Amendment rights to train with firearm more obviously causes irreparable harm, be it the harm from lack of proficiency with firearms or, as in Chicago, the harm in the consequential legal disability on keeping arms at all.

Considering that the Second Amendment exists to secure the right of self-defense, the inability to access constitutionally-protected arms, or to maintain proficiency in the use of those arms, causes a profound loss of a sense of one's security – to say nothing of the irreparable harm resulting from a successful criminal attack, or tragic accident that could have been averted with access to a firearm and proficiency in its use. Indeed, sustaining the constitutionality of Chicago's training requirement would inevitably require the recognition of the value of training: "Reasonable firearm proficiency testing would . . . promote public safety . . ." *Parker* v. *District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007), *aff'd sub nom Heller*, *supra*, 128 S. Ct. 2783.

The irreparable harm flowing from any delays in obtaining relief is palpable.

## II.     TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE RANGE BAN'S HARM.

There is no way to quantify, in terms of money damages, the inability to engage in protected Second Amendment activity such as defensive shooting, or the inability to engage in protected First Amendment activity of giving and receiving valuable instruction. The infringement of constitutional rights is frequently considered to be beyond quantification with money damages. *See, e.g. Christian Legal Soc'y* v. *Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

No legal remedies will be available to gun owners whose registration certificates cannot be renewed for lack of range training, nor will any legal remedies be available to gun owners who miss the city's October 12 grandfathering deadline for the same reason. And quite obviously, no

10

legal remedies will suffice to compensate those killed or injured for lack of firearms proficiency, or lack of lawfully-possessed defensive arms, owing to the city's range ban.

III.   **PLAINTIFFS WILL PREVAIL ON THE MERITS, AS CHICAGO'S RANGE BAN VIOLATES THEIR SECOND AND FIRST AMENDMENT RIGHTS**.

   A.   **Using and Operating Gun Ranges Lie at the Core of the Second Amendment.**

   "[T]he Court has acknowledged that certain unarticulated rights are implicit in enumerated guarantees . . . fundamental rights, even though not expressly guaranteed, have been recognized by the Court as indispensable to the enjoyment of rights explicitly defined." *Richmond Newspapers* v. *Virginia*, 448 U.S. 555, 579-80 (1980). Unsurprisingly, the Supreme Court has noted that the rights to use and operate a gun range are inherent in the Second Amendment: "The Constitution secures the right of the people to keep and bear arms. No doubt, a citizen who keeps a gun or pistol under judicious precautions, *practices in safe places the use of it*, *and in due time teaches his sons to do the same*, exercises his individual right." *Heller*, 128 S. Ct. at 2812 (citation omitted) (emphasis added).

   "[T]o bear arms implies something more than the mere keeping; it implies the learning to handle and use them in a way that makes those who keep them ready for their efficient use; in other words, it implies the right to meet for voluntary discipline in arms . . ." *Heller*, 128 S. Ct. at 2811-12 (citation omitted). Indeed, to the extent the availability of "[a] well-regulated militia" supplies a reason for the right's codification, U.S. Const. amend. II, "the adjective 'well-regulated' implies nothing more than the imposition of proper discipline and training." *Heller*, 128 S. Ct. at 2800. "The militia consisted of the people bearing their own arms when called to active service, arms which they kept and hence knew how to use." *United States* v. *Emerson*, 270

11

F.3d 203, 235 (5th Cir. 2001). "An effective militia requires not only that people have guns, but that they be able to shoot them with more danger to their adversaries than themselves." *Silveira* v. *Lockyer*, 328 F.3d 567, 587 (9th Cir. 2003) (Kleinfeld, J., dissenting).

Plaintiffs do not claim that gun ranges are beyond regulation. Churches and bookstores, too, must be built to code, and comply with constitutionally-adequate zoning requirements. But a blanket prohibition on gun ranges in a city the size of Chicago is unheard-of. Gun ranges exist in virtually every major American city, Hart Decl., ¶ 3, and indeed at least eleven gun ranges operate today in the City of Chicago without any apparent controversy. Pearson Decl., ¶ 6. Gun ranges have been open to the public in Chicago before. Brown Decl., ¶ 6.  Indeed, Chicago was built on, and remains famous for, by a bevy of heavy industrial operations – slaughter-houses, rail yards, factories, steel mills, and a major hub airport – all posing vastly greater environmental impact than a simple gun range, which can be safely located anywhere from Plaintiffs' truck trailer to the seventeenth floor of the Federal Reserve Bank building.

Owing to the unusual nature of this complete ban on ranges and traditional range activity, the laws will most likely fail. *Cf. McDonald*, 2010 U.S. Lexis at *77 (rarity of Chicago handgun ban indicates its unconstitutional nature) (plurality op.); *cf.* 36 U.S.C. §§ 40701, et seq. (Civilian Marksmanship Program); *see also Lawrence* v. *Texas*, 539 U.S. 558, 573 (2003) (only four states prohibit intimate practice); *cf. Kennedy* v. *Louisiana*, 128 S. Ct. 2641, 2653 (2008) (punishment known in only six states violates Eighth Amendment). Indeed, in *Heller*, neither the D.C. Circuit nor the Supreme Court bothered to engage in any balancing test or other extended analysis before striking down Washington, D.C.'s ban on the possession of functional firearms for self-defense, as that law literally contradicted a "core" aspect of Second Amendment rights. *Heller*, 128 S. Ct.

12

at 2818. A complete ban on gun ranges and traditional gun range activity will meet the same fate.

**B.       The Use and Operation of Gun Ranges Constitutes Protected Speech.**

*1.       The First Amendment Guarantees A Right to Provide and Receive
Instruction in the Use of Firearms at a Gun Range.*

The Supreme Court has long recognized that teaching and learning are protected by the

First Amendment. *See*, *e.g.  Keyishian* v. *Board of Regents*, 385 U.S. 589, 603 (1967) (First

Amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom"); *Sweezy* v.

*New Hampshire*, 354 U.S. 234, 249-50 (1957) (plurality) ("right to lecture . . .could not be

seriously debated," and noting that "teachers and students must always remain free to inquire, to

study and to evaluate, to gain new maturity and understanding").

One week before the Supreme Court decided *McDonald*, the high court also decided

*Holder* v. *Humanitarian Law Project*, 130 S. Ct. 2705, 2010 U.S. Lexis 5252 (2010). *Holder*

considered the question of whether Congress could ban, as material support for terrorist

organizations, "plaintiffs' speech to [terrorist] groups [that] imparts a 'specific skill' or

communicates advice derived from 'specialized knowledge.'" *Holder*, at *47. Rejecting the

government's arguments that such training and educational efforts were merely conduct with

some communicative aspects, *Holder*, at *48-*49, the Court nonetheless upheld, under strict

scrutiny, a prohibition on the provision of material support "in the form of speech" to designated

terrorist organizations, *Holder*, at *49: "direct training" in "specific skills" of advocacy, *Holder*,

at *63, and "teach[ing]" how to "present claims for relief." *Holder*, at *64.

Of course, teaching and learning, the conveyance and receipt of knowledge, are not

limited to advocacy or expression. "Even dry information, devoid of advocacy, political

relevance, or artistic expression, has been accorded First Amendment protection." *Universal City Studios* v. *Corley*, 273 F.3d 429, 446 (2d Cir. 2001) (citations omitted). And protected teaching includes demonstrative and experiential conduct, not strictly oral conversation. For example, "instructing children on the topics of geography and fiber arts is a form of speech protected under the First Amendment." *Goulart* v. *Meadows*, 345 F.3d 239, 248 (4th Cir. 2003).

As is the provision of hands-on gun training. *Edwards* v. *City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999). In *Edwards*, a police officer asserted a valid First Amendment claim challenging his punishment for teaching a handgun safety class, completion of which was required for individuals wishing to obtain state permits to carry guns. "[T]he form of the [officer's] speech, presumably verbal as well as some written instruction accompanied by physical demonstrations . . . was entitled to protection." *Edwards*, 178 F.3d at 247. Indeed, because the speech concerned "a categorically public issue, the proper method of safely carrying a concealed handgun, knowledge of which is a prerequisite to obtaining a state permit . . . it occupies the highest rung of the hierarchy of First Amendment values." *Id.* (citation omitted).

> 2.    *The Banning of Gun Ranges Impermissibly Burdens Protected Speech.*

Even if the gun training and range use were merely conduct, the range ban's impact on gun education would nonetheless constitute a First Amendment violation. Because the range ban and associated laws undeniably burden expression, the laws can only survive if they are

> within the constitutional power of the Government; if [they] further[] an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*United States* v. *O'Brien*, 391 U.S. 367, 377 (1968). The laws fail all four factors. It is not within

14

the city's constitutional power to ban all gun ranges— doing so violates the Second Amendment. The city has no interest, let alone an important or substantial one, in banning all gun ranges. It maintains its own ranges, has historically had ranges open to the public, and initiated the ban only as a form of resisting *McDonald*. Indeed, the governmental interest here is precisely the suppression of gun education. And even if the city's actions were merely a form of regulating gun range activity in furtherance of some legitimate interest, a total ban is plainly overbroad.

## IV.   THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE RELIEF.

The Plaintiffs are certain to prevail on the merits. Absent relief they will suffer irreparable injury in the loss of Second and First Amendment rights, if not actual physical harm; the Aldermen's disliking of guns is not a legitimate interest; and as the defendant's law itself concedes, the public interest strongly favors firearms proficiency and education, to say nothing of respecting fundamental rights. *Christian Legal Soc'y*, 453 F.3d at 859. The balance of interests could not more completely tilt in favor of immediate injunctive relief.

## CONCLUSION

The city cannot ban the gun ranges whose value it recognizes by mandating gun training. Plaintiffs respectfully request that the motion for preliminary injunctive relief be granted.

Dated: August 16, 2010                        Respectfully submitted,

Alan Gura (admitted pro hac vice)             David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                        Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405             4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                          Lisle, IL 60532
703.835.9085/Fax 703.997.7665                 630.452.4547/Fax 630.596.4445

By:   /s/ Alan Gura/                          By:     /s/ David G. Sigale/
       Alan Gura                                      David G. Sigale
                                                      Attorneys for Plaintiffs

15