**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, JOSEPH I. BROWN, | ) | |
| WILLIAM HESPEN, ACTION TARGET, INC., | ) | |
| SECOND AMENDMENT FOUNDATION, INC., | ) | |
| and ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 10 CV 5135 |
| v. | ) | |
| | ) | JUDGE VIRGNIA M. KENDALL |
| CITY OF CHICAGO, a municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF CHICAGO'S RESPONSE TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER**

The City of Chicago ("City"), by and through its attorney, Mara S. Georges, Corporation Counsel of the City of Chicago, hereby submits its written response to Plaintiffs' Motion for Temporary Restraining Order ("TRO"), which the City received only this morning.

## **SUMMARY**

The Court should deny Plaintiffs' motion. A TRO is an extraordinary remedy in any case, and particularly in this case, which seeks the right to operate mobile firearms ranges out of the back of truck – a clear public safety hazzard.

There is no irreparable harm that clearly demands the immediate cessation of the City's prohibition on shooting ranges, a duly-enacted public safety measure. The ban on shooting ranges was on the books for nearly two months (it was passed on July 2) before Plaintiffs decided to challenge it. And, by Plaintiffs' own admission, the only thing that prompted their TRO motion is the fact that, last Friday, the City filed a motion to reassign this case as related to a case

pending in front of Judge Guzman, <u>Benson v. City of Chicago</u>, which raises the exact same challenge to the City's range ban as does this suit.  The purported harm to Plaintiffs had nothing to do with it.

Moreover, the alleged harm to Plaintiffs is clearly illusory and avoidable.  Plaintiffs can simply travel to nearby suburbs – which they admittedly already do – to attain the one hour of training required for a Chicago Firearms Permit, or to attain any additional training they believe they need.   They have nearly 2 months to do this before mid-October, the date some Plaintiffs fear they will lose their ability possess particular arms they currently own.

Further, there is an adequate remedy at law.  Should the City's regulation be found unconstitutional, money damages would be available for any time and expense associated with traveling to training sites, or for the loss of particular firearms.

Additionally, a TRO enjoining the ban on shooting ranges would be futile.  By Plaintiffs' own statements, the TRO would expire before the mobile ranges would even be able to begin operations.  And even if it lasted indefinitely, the City have to enact duly-promulgated zoning, licensing, environmental, and public safety regulations and standards that would govern the location and operation of the ranges before any range could open for business.  This is a governmental prerogative that Plaintiffs themselves concede is legitimate and do not ask the Court to enjoin, and it is one that could not be completed before mid-October.

Finally, Plaintiffs stand little chance of success on the merits, and the City would suffer irreparable harm if Plaintiffs were granted the right to begin operating their ranges immediately and free of valid public safety regulation.

## **STANDARD**

A TRO "is an extraordinary remedy that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." <u>Somerset Place, LLC v. Sebelius</u>, 684 F.Supp.2d 1037, 1040  (N.D. Ill. 2010) (emphasis in original) (citing <u>Mazurek v. Armstrong</u>, 520 U.S. 968 (1997)).  A party seeking a TRO must demonstrate as a threshold matter that (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if preliminary injunctive relief is denied.  <u>Somerset Place</u>, 684 F.Supp.2d at 1040.  If this burden is met, the court then considers the irreparable harm that the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm the moving party will suffer if relief is denied.  <u>Id.</u>  Finally, the court considers the public interest served by granting or denying the relief, including the effects on non-parties. <u>Id.</u>  The court then weighs all of these factors applying a "sliding scale" approach, under which the more likely it is that plaintiff will succeed on the merits, the less the balance of irreparable harm need favor plaintiffs' position.  <u>Id.</u>

## **ARGUMENT**

Plaintiffs fall far short of satisfying their burden of making a clear showing on each of the three threshold elements for a TRO.  Moreover, even if they did satisfy that showing, the harm to the City would clearly outweigh any harm to Plaintiffs.

## I.     **There Is No Irreparable Harm, and An Adequate Remedy Exists.**

None of the harms alleged by Plaintiffs are irreparable.  An adequate remedy at law exists for each:

A.      Loss of right to possess particular firearms in mid-October.

Hespen and Brown fear that if they do not attain the one-hour of training they need to apply for a CFP before October 8 and 12, respectively, they will lose the ability to possess particular firearms they already own.  Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction ("Pl. Mem."), at 4-5.  This harm is hardly irreparable.  Plaintiffs need only travel to the suburbs over the next two months to attain the training.  Indeed, according to their affidavits, they already patronize shooting ranges in the suburbs in their own free time (Hespen travels to Kankakee, and Brown travels to Morton Grove).  Pl. Mem., Hespen Dec., ¶ 5; id., Brown Dec., ¶ 2.  The travel can hardly be deemed an irreparable harm when Plaintiffs freely choose to engage in it for recreational purposes.  Indeed, Ezell has already demonstrated that one can travel to the suburbs and receive the required CFP training.  Pl. Mem., Ezell Dec., ¶ 2.  If Brown and Hespen choose not to travel to the suburbs over the next two months for such training, that is a harm of their own creation.

And while the travel may entail additional expense, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to constitute irreparable injury.  See American Hospital Association v. Harris, 625 F.2d 1328, 1331 (7th Cir. 1980).  See also Blaich v. National Football League, 212 F.Supp. 319, 322-23 (S.D.N.Y. 1962) (no irreparable harm where plaintiffs, who complained of blackout of television program in their jurisdiction, could travel fifty miles to watch program; such travel was a mere "inconvenience" and not irreparable injury).  Indeed, any time and expense associated with such travel is compensable via money damages.  The belief that "money is never an adequate remedy for a constitutional wrong . . . is incorrect."  Campbell v. Miller, 373 F.3d 834,

4

835 (7th Cir. 2004).  Damages are a "normal" and "adequate" response to constitutional

violations.  Id.[1]

Moreover, even if Plaintiffs were unable to obtain the training in time to apply for a CFP

and thereby lose the ability to keep their particular firearms in Chicago, that loss would not be

irreparable.  Plaintiffs could simply relocate those firearms outside the City and/or purchase a

new firearm that would be registerable under the City's ordinance.  Either course presents merely

an issue of money, which is fully compensable.

B.      Travel to suburbs to receive ongoing training.

Hespen, Brown, and Ezell claim harm from not being able to practice firearms shooting

in Chicago on an ongoing basis.  Pl. Mem., at 5-6.  For all the reasons just discussed, this harm is

not irreparable.  Hespen and Brown already travel to the suburbs to shoot at gun ranges.  And

Ezell can too and does so.  Pl. Mem., Ezell Dec., ¶ 2.[2]  The costs associated with this are

compensable at law.

C.      Teaching about firearms.

ISRA, SAF, Brown, and Hespen claim harm from being denied the ability to teach people

about firearms.  Pl. Mem., at 6-7.  This harm is completely illusory.  Nothing in the City's

ordinance prevents people from speaking or teaching about firearms.  The Code provision

---

[1] While it is true that in the First Amendment context, courts may find that the denial of speech rights constitutes irreparable injury, Plaintiffs' First Amendment claim here has not merit at all.  See infra.

[2] While the City understands that medical issues can, depending on their nature, complicate travel, Ezell's claim that travel to the suburbs is a hardship (Ezell Dec. ¶ 3) is vague and not supported by specific facts.  Nor does she indicate how frequently she believes she needs to receive training, and why she would be unable to travel to the suburbs on that schedule.

challenged here – 8-20-280 – merely prohibits the operation of shooting ranges.  The discharge

of a firearm at a shooting range is not speech; it is merely conduct that lacks even minimal

expressive component.  Plaintiffs' First Amendment claim should be rejected out of hand and is

hardly a basis for a TRO.

        D.      <u>Constructing and operating shooting ranges.</u>

Action Target claims harm from not being able to construct gun ranges in Chicago.  Pl.

Mem., at 6.   ISRA and SAF claim harm from not being able to operate gun ranges in Chicago.

<u>Id.</u> at 6-7.  These claimed injuries do not constitute irreparable harm.  Plaintiffs remain free to

engage in these activities elsewhere, and any lost profits or business opportunities stemming

from an inability to conduct these businesses in Chicago can be fully remedied via money

damages after a full trial on the merits.

**II.**      **There Is No Likelihood Of Success.**

Plaintiffs cannot establish any likelihood of success.  First, the particular injunctive relief

they seek here (and in their preliminary injunction motion) is futile and would not redress the

claimed injury.  Second, Plaintiffs do not have a likelihood of success on the merits of their

claims.

        **A.**      **The injunction Plaintiffs seek would be futile.**

It is not an appropriate use of judicial power to issue an injunction where the injunction

would be futile.  <u>McKenzie v. City of Chicago</u>, 118 F.3d 552, 555 (7th Cir. 1997).  Here, granting

a TRO would be futile,  for two reasons.

<u>First</u>, the TRO would expire before the mobile ranges would be ready for operation.

Under Fed. R. Civ. P. 65(b)(2), a TRO would last for 14 days – <u>i.e.</u>, it would expire on

September 6. However, Plaintiffs' affidavit indicates that the mobile ranges would not be ready until "the end" of September. Pl. Mem., Versnel Dec., ¶ 7. Thus, the TRO will not give Plaintiffs the relief they seek – the ordinance would resume operation before the ranges could open. While it is true that under the Rule 65(b)(2), the TRO could be extended for an additional "like period" – i.e., 14 days – upon a showing of "good cause," such an extension would too be futile because it would enjoin the ordinance only until September 20 – which is before "the end" of September.

Second, even if the range ban were enjoined indefinitely, the City's core prerogative to regulate in the public safety would remain – and would effectively preclude the operation of the mobile ranges before mid-October. The Second Amendment does not trump a municipality's right to ensure that a firearms range – especially a mobile one operating out of the back of truck – complies with the usual duly-enacted zoning, licensing, safety, and environmental regulations that govern any business in the City. Indeed, Plaintiffs themselves "do not claim that gun ranges are beyond regulation." Pl. Mem., at 12.

However, no such regulations currently exist, and, in particular, the City's Zoning Code does not even mention shooting ranges as a permissible primary use in any of its zoning classifications. In the current state of affairs, therefore, the operation of mobile gun ranges would violate numerous City business regulations and could not lawfully open even if the range ban were enjoined. Indeed, Plaintiffs' contract for use of a parking lot in the City itself declares that the rights granted thereunder are subject to local ordinances. See Versnel Dec., Ex. B, at ¶ 12. Rather, if Plaintiffs were found to possess a Second Amendment right to gun ranges, numerous City Departments would then have to carefully devise and promulgate the appropriate safety

regulations, and the City Council would have to craft and enact new laws. Put simply, such comprehensive regulations could not be devised and enacted before mid-October – *and Plaintiffs do not even request that they be.* Therefore, granting the desired TRO would serve no purpose, because the mobile gun ranges still would not be able to operate before mid-October. And it goes without saying that even if Plaintiffs were to request the Court to affirmatively enjoin the City to pass such regulations before mid-October, the judicial intrusion into the City's core police power prerogative would turn the *status quo* on its head and be an abuse of discretion.

### B.     Plaintiffs are likely to lose on the merits of their claims.

As noted above, the City's prohibition on shooting ranges presents no First Amendment issue whatsoever, and the City would certainly prevail on that claim. Plaintiffs' Second Amendment claim is also unlikely to succeed on the merits. The core right of the Second Amendment is the right to possess a firearm in the home for purposes of self defense. See District of Columbia v. Heller, 128 S.Ct. 2783, 2817-18 (2008). The Second Amendment does not extend to every activity that might marginally enhance one's ability to exercise that right. For instance, while machine guns are undoubtedly effective for self defense, they are not protected under the Second Amendment because they are too dangerous. See Heller, 128 S.Ct. at 2815-17. Nothing in Heller indicates that a ban on shooting ranges is invalid under the Second Amendment. Indeed, the Court took pains to explain that may forms of arms-related activity outside the home, such as restrictions on arms carrying, on arms commerce, and on the types of places where arms may be brought are "presumptively lawful." Heller, 128 S.Ct. at 2817 n. 26. And the Court reiterated these points again this year in McDonald v. City of Chicago, 2010 WL 2555188, at *25 (2010). Given the serious public safety issues raised by the wide-spread

8

discharge of firearms at shooting ranges located in a dense urban environment, Plaintiffs stand little chance of success on their Second Amendment claim.

### III.     The City Will Suffer Irreparable Harm If Plaintiff Is Granted A Temporary Restraining Order.

Plaintiffs clearly fail to demonstrate the threshold requirements for obtaining a TRO, and their motion should be denied on that basis alone.  Even if Plaintiffs had satisfied their threshold burden, however, the denial would still be appropriate because, under the sliding scale balancing test that would follow, the harm to the City of a TRO would clearly outweigh any harm to Plaintiffs.

As set forth above, Plaintiffs' motion should be denied because the Court cannot grant Plaintiffs the relief they seek, since they would still be subject to the City's right to regulate Plaintiffs' firearm ranges through zoning, safety, environmental, and other regulatory measures. Any meaningful injunction would therefore need to enjoin not only the City's enforcement of the range ban, but also the City's power to regulate in the interest of public health and safety.  With respect, the Court lacks this power, but even if the Court possessed it, the ensuing injunction would impose immediate and irreparable harm on the City and on the public.  For example, the City carefully regulates the use of all property in the City through its comprehensive zoning ordinance.  If Plaintiffs are allowed to place a mobile firearms range free of the City's zoning prerogative, they could select a property or a neighborhood which could dramatically increase the likelihood of injury or even death.  The City also has an extensive licensing system for all businesses operating in the City to ensure, among other things, that businesses and the products and services they offer are safe.  Again, an injunction preventing the City from devising

appropriate licensing standards and bringing the mobile ranges into its licensing system would pose a clear safety risk to the public.  Without a proper assessment of the mobile firearms ranges, the City could also suffer environmental harms, particularly if they are placed in the proximity of sensitive environmental areas.

In balancing the hardships, there can be little question that the harm to the City and its citizens from granting Plaintiffs the unfettered authority to erect mobile firearms ranges anywhere in the City far outweighs any harm (if any) to Plaintiffs in having to obtain their training in the suburbs.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the Court should deny Plaintiffs' Motion for a Temporary Restraining Order.

Respectfully submitted,


Mara S. Georges, Corporation Counsel for
    the City of Chicago

By:   /s/ Andrew Worseck
Assistant Corporation Counsel

Michael A. Forti
Deputy Corporation Counsel
Mardell Nereim
Chief Assistant Corporation Counsel
Andrew W. Worseck
Assistant Corporation Counsel
William Macy Aguiar
Assistant Corporation Counsel
Rebecca Hirsch
Assistant Corporation Counsel
City of Chicago Department of Law

Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602
312-744-9010

Dated:  August 23, 2010.

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the City of Chicago, hereby certifies that on August 23, 2010, he served a copy of the **Defendant City of Chicago's Response to Plaintiffs' Motion for Temporary Restraining Order** along with this certificate of service, on:

David G. Sigale
Law Firm of David G. Sigale, P.C.
Corporate West 1
4300 Commerce Court, Suite 300-3
Lisle, IL  60532

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA  22314

by electronic means pursuant to Electronic Case Filing (ECF), and via hand delivery.

/s/ Andrew Worseck