IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C-5135 |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF |
| | ) | JULIANNE VERSNEL |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF JULIANNE VERSNEL

I, Julianne Versnel, am competent to state, and declare the following based on my personal knowledge:

1. I am the Director of Operations of the Second Amendment Foundation ("SAF"). I have worked with the foundation in numerous capacities for thirty-four years.

2. SAF has approximately 1,700 members in Chicago. Most of our members own guns.

3. My deposition in this case lasted over five hours. As part of this deposition, the city's attorney argued with me at great length about whether SAF's corporate purpose allows us to bring a gun range to Chicago and file this lawsuit. As part of this line of inquiry, I was repeatedly asked, in different ways, why SAF's general statement of purpose does not specifically mention, literally, that the organization may bring a range to Chicago and file this lawsuit, and why I interpret our mission statement as permitting this activity.

4. The Second Amendment Foundation exists to promote Second Amendment rights. The mobile gun range project and this lawsuit were approved by SAF's Board of Directors and Executive Vice President. Filing strategic civil rights lawsuits against the City of Chicago over its gun laws is within the essential core purpose of SAF, as is ensuring that our members can exercise Second Amendment rights in Chicago by having access to required range training. We brought *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). Our membership is enthusiastic and supportive of our efforts in this case. No one, other than the city's attorney at my deposition, has ever suggested that it is not within SAF's mission to bring a gun range to Chicago and challenge the city's range ban.

5. I located our first landlord, Accurate Perforating, by searching the internet for industrial space for lease in Chicago. My search led me to a real estate leasing broker, Beverly Hayes. I explained to Ms. Hayes exactly what SAF would do with the property – operate a mobile gun range inside a trailer, and Ms. Hayes placed me in touch with Accurate Perforating's Larry Cohen. I explained to Mr. Cohen exactly what SAF would do with the property – operate a mobile gun range inside a trailer. Mr. Cohen agreed to lease us the land. I was explaining the range to Mr. Cohen and told him the only noise was something similar to a nail gun. He said that that would be quieter than the noise emanating from his factory.

6. Following the Court's denial of our first motion for temporary restraining order, I renegotiated SAF's lease with Accurate so that the start date would be moved up to August 31, from September 15.

7. At my deposition, the city's attorney asked me numerous questions about whether a gun range in Chicago would violate zoning codes, building codes, parking regulations, environmental regulations, and the like, and whether it would place Accurate Perforating in

violation of the law. While I cannot give any legal opinions, I did understand the questioning as threatening our landlord, Accurate Perforating, with retaliation for leasing us the property on which to operate the range.

8. Mr. Cohen told me on September 3 that he would be changing the location of the property that we had leased. On September 7, I was told that the lease would be terminated.

9. I immediately began searching the internet for a replacement land. On September 8, Accurate formally terminated our lease effective October 31. Exhibit C.

10. On September 9, I reached an agreement in principle with Leo Solarte of First Western Properties, to rent a portion of 6300-6400 South Bell. This property is a vacant two-acre parking lot, with high powered lights, that used to store cars for a car dealership. The property has an electric fence, and barbed wire at the top of the fence on the street side. The opposite side borders a railroad yard. Another portion of this property is currently occupied by a wrecking company. I am told that it is zoned M1-2, Limited Manufacturing District.

11. On September 10, I received a formal lease offer from Mr. Solarte, which I accepted and returned September 11 with the required payment. Our lease for the Bell property starts September 15, and SAF has paid for the first two months' rent. A copy of that lease agreement is attached as Exhibit D.

12. Accordingly, SAF now has two properties suitable for the mobile gun range, starting September 15. We will consider abandoning possession of the Accurate property, and operate exclusively at Bell, provided that Accurate refunds our money and that nothing occurs limiting our options to Accurate's land.

13. SAF has now arranged with Blue Line to have the Blue Line mobile range begin operations in Chicago on September 24. Blue Line has indicated that it could operate on either

parcel of our land, or anywhere else in Chicago where a truck trailer can be parked. SAF has paid Blue Line the first $7,500 of the non-refundable fee to get the range to Chicago.

14. As a practical matter, SAF does not wish to have the range sitting idle in Chicago while people are scheduled for its use. Lead time is needed to schedule the trainers, to contact our membership and alert them to the range's arrival and availability. Ten days is sufficient lead time to ensure that everyone and everything will be in place for the range's arrival.

15. The only thing stopping the range's operation on September 24 is Chicago's range ban. If the Court issues an injunction, the range will commence training Chicagoans for their Chicago Firearms Permits on September 24.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 12th day of September, 2010

*/s/ Julianne Versnel*
Julianne Versnel

CERTIFICATE OF SERVICE

    The undersigned, an attorney of record for the plaintiffs, hereby certifies that on September 13, 2010, he served a copy of the above Declaration, and this certificate of service, on:

    William Macy Aguiar
    City of Chicago Department of Law
    30 N. LaSalle Street, Suite 900
    Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).

    /s/ Alan Gura
    Alan Gura