**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-CV-5135 |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN OPPOSITION TO |
| v. | ) | MOTION TO VACATE BRIEFING |
| | ) | SCHEDULE |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**MOTION TO VACATE BRIEFING SCHEDULE**

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action

Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and

through undersigned counsel, and submit their Memorandum of Points and Authorities in Support

of their Ex Parte Motion for Temporary Restraining Order.

Dated: September 15, 2010      Respectfully submitted,

Alan Gura (admitted pro hac vice)      David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC      Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405      4300 Commerce Court, Suite 300-3
Alexandria, VA 22314      Lisle, IL 60532
703.835.9085/Fax 703.997.7665      630.452.4547/Fax 630.596.4445

By: /s/ Alan Gura/        By: /s/ David G. Sigale/
    Alan Gura                David G. Sigale

                             Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION TO VACATE BRIEFING SCHEDULE

The motion to vacate the briefing schedule – the city's *third* motion to disrupt an established schedule in as many weeks – is frivolous. Just as the previous two motions were denied (once by this Court and once by Judge Guzman, see below), so too should this motion be denied, and the Defendant instructed to file no further motions of this kind until the preliminary injunction hearing is concluded October 1. Twice was too many times already.

But the instant motion does have one item of value. At least – and at last – the City finally admits its strategy: to delay this case as long as possible so that Judge Guzman might relate it, because the City is unhappy with the prospect of *this* Court ruling on the motion. Mot., ¶ 16

Respectfully: (1) Judge Guzman will be ruling on the Rule 40.4 motion; rearguing that motion here (because Judge Guzman indicated he might deny it) is a complete waste of time; (2) discovery was not only unnecessary, as the Court suggested earlier, but Defendant has radically exceeded the scope of authorized discovery and conducted discovery in abusive fashion; and (3) *none* of Defendant's arguments are correct. The Blue Line range is indeed coming to Chicago after October 1 – as may be additional ranges – and the irreparable harm will continue to occur unless the law is enjoined. The city has no defense. The case could well end October 1 if the preliminary injunction hearing is converted to a trial on the merits, as allowed by Rule 65.

1

## STATEMENT OF FACTS

On August 24, this Court made the following finding:

> There's little basis for discovery needed at this point. And most of what you are doing is arguing your cases on the law that exists now and the facts that you have now. I don't think you need it. I was generous enough to give you the 30 days. I don't think you need more than that. Today is only the 24th, and that gives you all of the rest of this week, next week, and two more weeks into September. That's plenty of time to do what you need to do, based upon what you said you needed it for yesterday, so the oral request [to extend the preliminary injunction schedule] is denied. I am going to continue with this schedule.

Tr., 8/24/10, p. 80 l. 2-5.  It is important to recall what discovery was allowed. Here is what the

city initially wanted:

> THE COURT: Can you give me some sense of what that would be, of how many individuals you intend to depose or gather information from, so I have some sense of that for a fast track analysis?
>
> MR. WORSECK: I don't know that we would need to spray [sic: stray] beyond the plaintiffs to the lawsuit.

Tr., 8/23/10, p. 18, l. 19-24.

The amount of discovery eventually conducted would be heavy on a regular schedule, and

is unconscionable in the context of a fast-track described by the Court. For almost the first six

days, nothing occurred. This time was completely wasted. At 3:23 p.m. on August 30, Defendant

served far-reaching interrogatories and requests for production on all six plaintiffs, and noticed

the depositions of all plaintiffs as well as two third parties.  But although Defendant took nearly a

week to craft this discovery, it wanted the responses to everything *within 48 hours* – on

September 1, with the first depositions proceeding the following day, September 2. And on

August 31, Defendant served deposition notices of three additional non-parties.

But that is not all. Judge Guzman had entered an order setting a September 15 deadline for Plaintiffs to respond to the Rule 40.4 motion. Defendant noticed a motion for September 1 – the due date of their 48 hour discovery barrage – in front of Judge Guzman, requesting that he allow Defendant to file an additional brief in support of its Rule 40.4 motion – but cut Plaintiffs' opposition time from September 15 to September 7, the day after Labor Day.

In other words, Defendant waited to serve a massive discovery demand with a very narrow window, set to coincide with hearing on a motion to deprive Plaintiffs of their time to oppose another motion. At the hearing on the September 1 motion, however, Defendant did not so much argue their motion to deprive Plaintiffs of their time. It launched immediately into argument on why the Rule 40.4 motion should be granted right then and there.

For his part, Judge Guzman expressed great skepticism of Defendant's Rule 40.4 motion, advising Defendant that the fact that different judges might make different rulings on the same issue is not a ground for relation, and that he welcomes opinions different from his own because he learns from them. The September 15 deadline stood (Plaintiffs' request for additional time was denied). Defendant then filed another set of authority with Judge Guzman in support of its Rule 40.4 motion, in addition to its new brief.

This tactic, of setting impossible discovery deadlines around other events, was repeated last week. On Thursday evening, more discovery was served by Defendant – another set of written discovery demanding response in less than 24 hours. But as Defendant knew full well, the following 24 hours would see three of its depositions proceed, including the deposition of Mr. Tilbor in Boston. And never mind what the *Plaintiffs*, who are the ones who needed to respond to the unrealistic discovery requests, might have been doing in that short time frame.

3

Plaintiffs might have filed for a protective order and sanctions, but instead had to conserve their resources and file an emergency motion dealing with the fact that Mr. Tilbor's deposition would imminently commence without the benefit of Plaintiffs having been served with his subpoena duces tecum (or that of Accurate Perforating set for Monday).[1]

Later that day, while Plaintiffs' counsel were at the depositions, Defendant served a third set of written discovery.

And on Monday of this week – the discovery deadline – Defendant served a request for inspection of Mr. Tilbor's range in Chicago on September 24 – despite the fact that counsel were in Boston deposing Mr. Tilbor on Friday, during the discovery period. *That* would have been the time to examine the range.

Of course, on September 24, the range must be available for training. Plaintiffs are not paying $15,000 to bring a gun range to Chicago so that the Defendant can waste precious training time, time that by definition would have been found by the Court as necessary to secure constitutional rights. If the City is still curious about the range, Mr. Tilbor provided a list of numerous law enforcement agencies that use it. And it is inevitable that Defendant, if allowed access to the range, would imagine some problem with the range and rush to interfere with the training.

Discovery ended on September 13. Plaintiffs have no intention of complying with the time-barred and abusive request for inspection. If the temporary restraining order is issued, Defendant's attempts to "inspect" the range during the training period would violate that order.

---

[1]Defendant claims the motion was filed at 3 a.m., but counsel met and conferred by telephone the previous evening.

4

In sum, Defendant has noticed 11 depositions, originally within 13 days (one deposition of a non-party was continued at Defendant's requests), and has served three sets of written discovery. It continues to serve discovery after the deadline. It serves discovery demanding impossible deadlines surrounding its *other* discovery and motions practice. It repeatedly files motions attacking the schedule. Yet it has the temerity to claim that the discovery schedule is too burdensome for it to file a brief.

And the manner in which Defendant's discovery is conducted is at times abusive. The deposition of SAF's Director of Operations, Julianne Versnel, lasted well over five hours, beginning with a line of improper questioning inquiring into Versnel's conversations with her attorney. Then the topic shifted into SAF's corporate purpose. Defendant's counsel, who is not a member or shareholder of SAF, has never contributed to SAF, and does not serve on SAF's Board of Directors, argued at great length with Versnel that SAF's corporate purpose does not allow it to preserve gun rights in the fashion sought by this lawsuit.

Then counsel argued with Versnel about nearly each and every single word in the SAF-Blue Line contract, apparently suggesting the contract did not accomplish SAF's stated purpose of bringing the range to Chicago, either because only SAF, the corporate entity, could use the range (as opposed to its invitees), or because the range would be unavailable. Mr. Tilbor's declaration, submitted with the motion for TRO, terminates these arguments:

> 10. Blue Line has a contract with the Second Amendment Foundation (SAF) to operate the Blue Line range in Chicago, so that members of the general public may obtain the range training required by the City of Chicago to own guns. Blue Line fully endorses SAF's project. The Blue Line range is perfect for this application. . .
>
> 13. After the first visit to Chicago, ending September 30, Blue Line will continue offering the range's availability to SAF throughout the service agreement year. Our contract does

not allow us to deny SAF access to the range after the initial visit. I see no reason why the Blue Line range could not return to Chicago following its next appointment, consistent with our contract.

Tilbor Decl., 9/12/10.

Ms. Versnel's deposition saw ominous questions being asked about how the range landlord might have legal problems with the city owing to its contract with SAF. Subsequently, that first landlord's representative terminated the lease as of November 1, and at his deposition – which lasted an astonishing four hours (for writing a form industrial lease on a parking lot) – gave a series of conflicting, irrational answers about its relationship with SAF, eventually conceding that he understood the range would be operational on his property. But in any event, as noted in the TRO papers, Plaintiffs now have secured a second lease from a property owner who has less at stake vis a vis the city's regulatory bureaucracy, and who cannot be harassed with a four hour deposition because discovery is now closed.

<u>ARGUMENT</u>

I.    THE CITY'S ARGUMENTS GO TO THE MERITS OF THE MOTION, NOT THE SCHEDULE FOR HEARING IT.

As with its unsuccessful motion before Judge Guzman to eviscerate Plaintiffs' time to brief the Rule 40.4 motion, the City again uses a scheduling motion to argue the alleged merits of its case. If the City believes that under the facts, Plaintiffs are not entitled to a preliminary injunction, then it can file a brief making that argument at the appointed date. And if it can make these arguments now, then it can certainly make them later.

In theory, any scheduling motion can disguise a substantive opposition by claiming that the underlying motion lacks merit, therefore, it should not be scheduled. This is not constructive.

II.     THE CITY'S ARGUMENTS REGARDING RANGE AVAILABILITY LACK MERIT.

Even if this were the time to argue the preliminary injunction, the City's arguments regarding the range's availability are frivolous. First, Mr. Tilbor's interpretation of his form service agreement contract as valid is correct. *Restatement (Second) of Contracts*, § 33 (1981), Comment d. ("[v]alid contracts are often made which do not specify the time for performance"). The fact that the range has intervening appointments does not reduce its obligation to return to Chicago, either in SAF's view or in Blue Line's. Respectfully, it is not for the City to argue with the parties to a contract that they are wrong, especially when the parties have undertaken significant steps to enforce the contract.

SAF is plainly interested in having Mr. Tilbor return. It contracted for the range's availability through July 26, 2011, and has secured a new property for this purpose through at least mid-November. Exh. D.

Nor does SAF need to move for a TRO each and every time the truck crosses the city's borders. *Krislov* v. *Rednour*, 226 F.3d 851, 858 (7th Cir. 2000) (court may rule "where the challenged situation is likely to recur and the same complaining party would be subjected to the same adversity") (citations omitted). "[T]he challenged governmental activity in the present case is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Super Tire Eng'g Co.* v. *McCorkle*, 416 U.S. 115, 122 (1974).

And SAF is not the only range provider wishing to bring a mobile range to Chicago. Fidelity Investigative has had the same idea, so that it could serve its own customers. Queen Decl., ¶ 5. The preliminary injunction would likely cause *several* ranges to be brought to Chicago.

7

SAF is not merely trying to vindicate its own interests; it is trying to secure the enjoyment of constitutional rights for everyone.

Finally, Defendant has taken aggressive discovery of Plaintiff Action Target, which has nothing to do with the Blue Line range, but which would take advantage of any preliminary injunction to start lining up customers for the construction of permanent ranges. Defendant cannot have it both ways, taking discovery of a plaintiff range builder on the basis that it is necessary for the preliminary injunction, then ignoring the very real business of this Plaintiff in claiming nothing would occur October 1 because *a different range* would not be here the next day. Obviously, Defendant believes Action Target will begin constructing ranges with the granting of a preliminary injunction.

## III. DISCOVERY IS NOT AN EXCUSE TO AVOID THE PRELIMINARY INJUNCTION MOTION.

The argument that City needs relief from its briefing deadline because of the onerous discovery schedule is not well-taken. The discovery schedule and the briefing deadlines were both set at the same time, and the City has already lost the motion to reconsider this during the hearing on August 24. Some limit must be imposed on the number of times the City can ask for reconsideration of the same briefing schedule.

The only discovery served on the City was a request to identify any testifying witnesses and provide documents the City would offer on October 1. But the City's discovery conduct has been extreme, especially for a fast-track preliminary injunction. Plaintiffs welcome the City's deadline to file a brief in this case, as it might have the effect, if only for a moment, of slowing down the service of new discovery requests and repeated baseless threats of discovery motions.

The Court should know that consistent with its incorrect suggestion that "critical unanswered questions remain," Mot., at ¶ 7, the City has already advised that it wants to reopen discovery, a request that Plaintiffs will oppose.[2] All that remains is the City's endless speculation that gun ranges must be inherently, unacceptably dangerous, an allegation that Plaintiffs and Mr. Tilbor will never concede in discovery, regardless of how many additional hours they must sit at a deposition, being endlessly questioned as to their knowledge of "all local and federal regulations." Mot., at ¶ 7. Virtually every article in commerce today is heavily regulated by multiple government agencies. That is no excuse to avoid the question of whether *Defendant's* laws are unconstitutional, or irreparably harm Plaintiffs and the public.

Nor should Plaintiffs have to endure this process. Under Illinois law, it would be the Defendant's burden, not the Plaintiffs', to show why their range is dangerous. "[T]he location [of a range is assumed] appropriate for such activity in the absence of further factual allegations . . . particularly describing the area as inappropriate for the target practice." *Miller* v. *Civil Constructors*, 272 Ill. App. 3d 263, 271, 651 N.E.2d 239 (Ill. App. 1995). This is particularly true as gun ranges are constitutionally-protected. Plaintiffs know what is commonly known, at least within the firearms, law enforcement, and defense communities, although it will hopefully soon be common knowledge in this city: that mobile gun ranges are perfectly safe, and in ordinary usage throughout the United States.

---

[2]Plaintiffs have also repeatedly opposed Defendant's statements, at the end of nearly each deposition, to keep them "open" for continuation on a later date. These announcements serve only to delay the proceedings and harass the witnesses.

9

<u>CONCLUSION</u>

The motion to vacate the briefing schedule and preliminary injunction hearing – essentially, a premature and improper opposition to the preliminary injunction, and the second such motion leveled at the Court's schedule – lacks any merit and should be denied.

Dated: September 15, 2010                    Respectfully submitted,

Alan Gura (admitted pro hac vice)       David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC             Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405      4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                Lisle, IL 60532
703.835.9085/Fax 703.997.7665       630.452.4547/Fax 630.596.4445

By:  /s/ Alan Gura/              By:   /s/ David G. Sigale/
      Alan Gura                     David G. Sigale
                              Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on September 15, 2010, he served a copy of the above Memorandum of Points and Authorities, and this certificate of service, on:

Andrew W. Worseck
City of Chicago Department of Law
30 N. LaSalle Street, Suite 900
Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).


/s/ Alan Gura
Alan Gura