**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EZELL, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **No. 10-CV-5135** |
| | ) | **Judge Virginia M. Kendall** |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**DEFENDANT'S EMERGENCY MOTION FOR LEAVE TO ALLOW ADDITIONAL**
**DISCOVERY OR IN THE ALTERNATIVE TO BAR CERTAIN WITNESSES**</u>

Defendant City of Chicago (the "City"), by its attorney, Mara S. Georges, Corporation Counsel for the City of Chicago, respectfully moves this Court for leave to conduct additional discovery before the commencement of the preliminary injunction hearing in this case, or in the alternative, to bar certain individuals from testifying at the preliminary injunction hearing. In support of its motion, the City states as follows:

## Introduction

1.     Plaintiffs filed their Complaint and Motion for a Preliminary Injunction ("Plaintiffs' Motion") on August 16, 2010.

2.     On August 22, 2010, Plaintiffs filed a motion for temporary restraining order ("TRO"), which the Court denied on August 24, 2010. That day, the Court allowed the parties to conduct discovery but set a discovery cut-off date of September 13, 2010. The Court also set the hearing on Plaintiffs' Motion for October 1, 2010.

3.     Since August 24, the City has been actively and diligently pursuing discovery related

1

to the numerous issues raised by Plaintiffs' Motion. The City has served written discovery and document requests and has taken ten depositions, including: (a) individual Plaintiffs Ezell, Hespen, and Brown; (b) Julianne Versnel, Director of Operations of Plaintiff Second Amendment Foundation ("SAF"); (c) Richard Pearson, Executive Director of Plaintiff Illinois State Rifle Association ("ISRA"); and (d) Chris Hart, Midwest Range Consultant for Plaintiff Action Target, Inc. The City also deposed four third parties, including: (a) Jerry Tilbor, President of Blue Line Corporation, the entity that contracted with SAF to provide the mobile range unit; (b) Larry Cohen, the Chairman of Accurate Perforating Corporation ("Accurate"), the entity that leased the property to SAF for storage of a trailer; (c) a representative from a suburban gun range that offers the one-hour range training; and (d) a representative from an academy in the City that offers the four-hour classroom training.

4. On September 16, Plaintiffs submitted interrogatory responses that identified eight individuals who may testify at the preliminary injunction hearing: individual Plaintiffs Ezell, Brown, and Hespen; Versnel; Pearson; Don Moran, president of ISRA; Beverly Hayes of Chicago Industrial Real Estate, LLC; and Leo Solarte of First Western Properties. *See* Plaintiffs' Responses to Defendant's Third Set of F. R. Civ. P. 33 Interrogatories and F. R. Civ. P. 34 Requests for Production, attached as Exhibit A.

5. Three of Plaintiffs' proposed witnesses – Hayes, Solarte, and Moran – have not been deposed, and the City has had no opportunity to depose them. Two of Plaintiffs' proposed witnesses – Versnel and Pearson – have been deposed, but the City should be entitled to resume both of their depositions. With respect to Versnel, Plaintiffs have provided new information since her deposition on September 2 revealing that she has continued to make efforts to secure both a new mobile range unit and a new site for the mobile range. With respect to Pearson, he has not yet produced relevant

documents and, once he does so, should be questioned about them. Finally, last minute discovery responses indicate that there are two additional persons with knowledge that the City needs to depose, Gillespie Properties, LLC (the owner of 6331 S. Bell, a second proposed location for the mobile range) and Arms to Bear (a possible supplier of a mobile range to SAF).

6.      For the reasons set forth below, the City respectfully requests that this Court permit the City to resume the depositions of Versnel and Pearson and to allow the City to take the depositions of Hayes, Solarte, Moran, Gillespie Properties, LLC, and a representative from Arms to Bear. In the alternative, the City requests that the Court limit the testimony of Versnel and Pearson and bar Hayes, Solarte, and Moran from testifying at all.

## <u>Argument</u>

7.      The discovery process and its corresponding rules are designed "to promote liberal discovery in an effort to narrow the issues for trial and prevent unfair surprise." *EEOC v. Staffing Network*, 2002 WL 31473840, *4 (N.D. Ill. Nov. 4, 2002). Due process therefore requires that the City be able to depose all relevant witnesses, especially those Plaintiffs intend to rely on at trial, in order to adequately prepare its defense and not be ambushed or suffer prejudice at trial. *See, e.g., Anglin v. Sears, Roebuck & Co.*, 139 F. Supp.2d 914, 918-19 (N.D. Il. 2000) (defendant prejudiced if plaintiff's previously undisclosed witnesses allowed to testify where defendant did not have opportunity to depose witnesses); *Boynton v. Monarch*, 1994 WL 463905, * (N.D. Ill. Aug. 25, 1994) (it would constitute unfair surprise to defendant to admit testimony of witness where defendant had no opportunity to depose witness).

8.      If the Court does not grant the City leave to resume the depositions of Versnel and Pearson, and leave to take the depositions of the additional witnesses listed above, then Plaintiffs

should be barred from introducing their testimony at trial. *See, e.g., Hill v. Porter Mem. Hosp.,* 90 F.3d 220, 224 (7th Cir. 1996) (courts routinely bar witnesses from testifying at trial where witness has not been produced to Defendant in timely manner); *Scaggs v. Consolidated Rail Corp.,* 6 F.3d 1290, 1295 (7th Cir. 1993) (barring testimony or other evidence is appropriate sanction where party would be prejudiced or subject to unfair surprise if evidence admitted).

### Julianne Versnel

9. Ms. Versnel was deposed in this case on September 2, 2010. Over the objection of Plaintiffs' counsel, the City did not conclude Ms. Versnel's deposition. As of September 2, SAF had only identified the Accurate Perforating location for operation of the mobile range. However, on September 9, a week after her deposition, the City learned in an e-mail from Plaintiffs' counsel that SAF was considering leasing a new site – 6300-6400 S. Bell Street – for purposes of operating the mobile range. On September 13, the City learned that SAF had purportedly executed a lease for 6300-6400 S. Bell.

10. Moreover, during the deposition of Mr. Hart of Action Target taken on September 10, the City learned that Ms. Versnel had continued to engage in discussions – subsequent to her deposition on September 2 – about obtaining mobile ranges in lieu of or in addition to Blue Line's mobile range, and about using other locations besides the Accurate site and 6300-6400 S. Bell.

11. The City did not have an opportunity to depose Ms. Versnel about SAF's plans to lease 6300-6400 S. Bell Street or SAF's plans to obtain additional ranges and/or locations before the close of discovery. On September 10, 2010, the City took three depositions: (a) Mr. Tilbor of Blue Line (in Boston); (b) Mr. Hart of Action Target; and (c) a suburban gun range. On September 13, the City took two depositions: (a) Mr. Cohen of Accurate; and (b) a suburban gun range. Moreover,

Plaintiffs strenuously objected to the City's proposal of double-tracking or scheduling any depositions over the weekends in order to be able to conduct all relevant discovery before the cut-off date of September 13.

12.     In addition, on Monday, September 13, Plaintiffs filed their second motion for a TRO, and the City spent the next three days preparing its written response to that motion and attending the Court's September 15 hearing and September 16 ruling on the TRO motion. The City expended further resources trying to determine whether and when Plaintiffs' second motion for TRO would be heard, due to Plaintiffs' failure to properly notice the motion for hearing. On September 14, the City filed a motion to vacate the preliminary injunction schedule and to grant the City more time to file its written response to Plaintiffs' motion, but the Court denied the City's motion.

13.     For these reasons, the City could not depose Ms. Versnel before the close of discovery regarding SAF's supposed lease for 6300-6400 S. Bell Street. The City respectfully requests, therefore, that it be granted leave to resume Ms. Versnel's deposition. Testimony regarding the S. Bell location is critical, as the lessor of the first site (Accurate) has terminated that lease, and Plaintiffs' plan appears to be to use the S. Bell site as their primary base of operation. In the alternative, Ms. Versnel should be barred from offering any testimony regarding her actions since the date of her deposition, including testimony regarding SAF's purported lease of 6300-6400 S. Bell and operation of the mobile range on that, or any other, property. *See, e.g., Scaggs,* 6 F.3d at 1295.

### Leo Solarte

14.     As soon as the City learned that SAF was investigating a site on S. Bell as a new location to operate a mobile range, the City propounded additional interrogatories and requests for production of documents on Plaintiffs, seeking information about that location. Plaintiffs answered

these discovery requests on September 13, the discovery cut-off date, and in those responses, identified Mr. Leo Solarte as the individual with whom SAF communicated regarding the S. Bell property. *See* Plaintiff Second Amendment Foundation's Answers to Defendant City of Chicago's Second Set of Interrogatories to Plaintiffs, attached as Exhibit B. Plaintiffs stated that Ms. Versnel discussed with Mr. Solarte the possibility of bringing the mobile range to 6331 S. Bell, the nature of the property, issues of liability and insurance, and a possible lease. *Id.* Plaintiffs also provided the City documents regarding this property, including copies of email correspondence between Ms. Versnel and Mr. Solarte and an unsigned land lease, dated September 11, between Gillespie Properties LLC (the owner of 6331 S. Bell) and SAF.

15.     On September 16, 2010, Plaintiffs identified Mr. Solarte as a witness who may testify at the preliminary injunction hearing. Plaintiffs stated that his testimony would concern the property at 6331 South Bell, including the lease to SAF and the characteristics and details of the property. *See* Exhibit A at 3.

16.     The City has not had an opportunity to depose Mr. Solarte. As discussed above, the first time the City learned about Mr. Solarte or the 6331 S. Bell property was on September 9, two days before the close of discovery. Five depositions were already scheduled to, and did, occur before the close of discovery – three on Friday, September 10, and two on Monday, September 13. And since September 13, the last day of the discovery period, the City has had to respond to Plaintiffs' second motion for TRO and motion for preliminary injunction.

17.     For these reasons, the City respectfully requests that it be granted leave to conduct Mr. Solarte's deposition, or, in the alternative, that Mr. Solarte be barred from testifying at the preliminary injunction hearing. *See, e.g., Scaggs,* 6 F.3d at 1295.

6

**Gillespie Properties**

18.     In addition to Mr. Solarte, the City should be given an opportunity to depose a representative from Gillespie Properties, LLC ("Gillespie"), the owner of 6331 S. Bell. Plaintiffs have not identified Gillespie on their witness list, but the City is entitled to take its deposition. The property owner would be the actual contracting party with SAF, and thus would have knowledge of the specific, authorized uses of the property, terms of any lease, and licensing, zoning, or other land regulations specific to the property. Indeed, the deposition of Accurate revealed information conflicting with Plaintiffs' account regarding the validity of the lease, the nature and scope of the lease, and authorized uses of the property. Therefore, testimony from Gillespie would be highly relevant to SAF's ability to situate and operate a mobile range at 6331 S. Bell, and necessary to the City's ability to adequately prepare its defense.

**Beverly Hayes**

19.     Plaintiffs also identified Ms. Beverly Hayes as a potential testifying witness. *See* Ex. A. at 2. Ms. Hayes is the real estate agent who was involved with helping SAF secure the lease for trailer storage with Accurate.

20.     Given the short time period for discovery, the number of depositions already scheduled, and the intervening emergency motions filed by Plaintiffs, the City did not have an opportunity to take Ms. Hayes's deposition. The City should be allowed to take her deposition not only because Plaintiffs have identified her as a potential trial witness, but also because her role in SAF's efforts to secure a site for the mobile range has taken on increasing significance as the case has progressed.

21.     First, Plaintiffs' supplemental discovery makes clear that SAF has been investigating

7

other sites, beyond Accurate and S. Bell, as potential locations for a mobile range. Ms. Hayes is likely to have relevant knowledge about these other sites. And second, there is a discrepancy between SAF's testimony that its lease with Accurate Perforating would allow the mobile range to be open to the public, and the testimony of Mr. Cohen, Accurate's Chairman, who testified to the contrary. Ms. Hayes, as the go-between for communications between SAF and Accurate, may have discoverable information about what was discussed regarding the terms of the lease and permitted uses.

22.     Therefore, the City respectfully requests that it be granted leave to conduct Ms. Hayes's deposition, or, in the alternative, that Ms. Hayes be barred from testifying at the preliminary injunction hearing. *See, e.g., Scaggs,* 6 F.3d at 1295.

### Richard Pearson

23.     Mr. Pearson identified two categories of documents during his deposition on September 8 that still have not been produced to the City despite repeated requests. First, Mr. Pearson identified a document that sets forth the rules of the range and safety protocols for the ISRA range at Bonfield, Illinois. Second, when discussing whether he had begun working on the rules of the range and safety protocols for the mobile range site in Chicago, he testified that he had started making some notes on a sketch pad. The City's counsel asked him, both during the deposition and in a letter the next day, to supplement ISRA's discovery responses by producing these documents immediately. *See* September 9 Letter from Andrew Worseck to Plaintiffs' Counsel, attached as Exhibit C.

24.     To date, ISRA has not produced this material and has no basis to withhold it. Rules of the range and other safety protocols ISRA intends to utilize for its operation of any mobile range

within the City is highly relevant to the public health and safety issues implicated by Plaintiffs' request for a preliminary injunction. The City therefore requests that this Court order Plaintiffs to produce this material immediately.

25.     Furthermore, the City should be allowed to continue Mr. Pearson's deposition (which was also left open over Plaintiffs' objection) after it has received these documents, in order to have a fair opportunity to question him regarding their contents.

26.     The City respectfully requests, therefore, that it be granted leave to resume Mr. Pearson's deposition. In the alternative, the City requests that Mr. Pearson be barred from offering any testimony regarding his actions since the date of his deposition, including testimony regarding ISRA's rules of the range and safety protocols with respect to the Bonfield range, mobile range, or any other range it may operate in the City. *See, e.g., Scaggs,* 6 F.3d at 1295.

### Don Moran

27.     Plaintiffs have also identified Mr. Moran, the president of ISRA, as a witness who may testify regarding the plans for operations and protocols for the mobile range. *See* Ex. A. at 2. He is a previously undisclosed witness who the City has had no opportunity to depose regarding the subject matter of his knowledge and potential testimony.

28.     Therefore, the City respectfully requests that it be granted leave to depose Mr. Moran or, in the alternative, that Mr. Moran be barred from testifying at the preliminary injunction hearing. *See, e.g., Scaggs,* 6 F.3d at 1295.

### Representative From Arms To Bear

29.     As discussed above, during Mr. Hart's deposition on September 10, he revealed that Ms. Versnel continued to have conversations with him, as late as September 8, regarding the

possibility of finding and leasing additional ranges to bring to Chicago. Specifically, Mr. Hart testified that on September 8, he called Ms. Versnel to inform her that one of Action Target's sales people had located a mobile range owned by a company called Arms to Bear that might be available for lease to SAF for a two-week period beginning on October 1. Mr. Hart further testified that he told Ms. Versnel that he would have the owner of Arms to Bear, a gentleman named Kevin, contact her to explore the possibility of leasing this mobile range. Mr. Hart did not know whether Kevin had been in touch with Ms. Versnel or what had been discussed between the two of them since that time.

30. This evidence raises the possibility that SAF has secured a second mobile range – different from the range provided by Blue Line – to bring to Chicago. The City should be given an opportunity to depose Kevin from Arms to Bear, to discover, among other things: (1) if Arms to Bear has entered into any agreements with SAF to lease a mobile range; (2) the terms of any such lease and the dates SAF would first have possession of the range; (3) specifications of the range, including its age and size, how many target points it has, what safety mechanisms it contains, and compliance with federal and state environmental regulations. Moreover, the City is entitled to discover the nature of the conversations Ms. Versnel had with Arms to Bear, including ongoing efforts to secure additional ranges from Arms to Bear.

31. Accordingly, the City respectfully requests that it be granted leave to depose the relevant individual from Arms to Bear to prevent unfair surprise or prejudice at trial. *See, e.g., Scaggs,* 6 F.3d at 1295.

WHEREFORE, the City respectfully requests that this Court grant it leave to conduct additional discovery, or in the alternative, to bar the individuals identified above from testifying at the preliminary injunction hearing in this case, and all other relief the Court deems just.

10

Date: September 22, 2010

Respectfully submitted,

MARA S. GEORGES,
Corporation Counsel for the City of Chicago

By:     /s/ Rebecca Alfert Hirsch
        Assistant Corporation Counsel

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-9018 / 6975  / 7129 / 4216

Attorneys for Defendants

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RHONDA EZELL, JOSEPH I. BROWN,　　　　)
WILLIAM HESPEN, ACTION TARGET, INC.,　)
SECOND AMENDMENT FOUNDATION, INC.,　)
and ILLINOIS STATE RIFLE ASSOCIATION,　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　　　　)　　No.  10 CV 5135
　　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
CITY OF CHICAGO,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　　　　)

**PLAINTIFFS' RESPONSES TO DEFENDANT'S THIRD SET OF F.R.CIV.P. 33 INTERROGATORIES**
**AND F.R.CIV.P. 34 REQUESTS FOR PRODUCTION**

TO:　　Michael Forti, Esq.
　　　　Andrew W. Worseck, Esq.
　　　　City of Chicago Department of Law
　　　　30 North LaSalle Street, Suite 1230
　　　　Chicago, IL 60602

　　　　NOW COME the Plaintiffs, RHONDA EZELL, JOSEPH I. BROWN, WILLIAM HESPEN, ACTION

TARGET, INC., SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE

ASSOCIATION, by and through GURA & POSSESSKY, PLLC, and LAW FIRM OF DAVID G. SIGALE,

P.C., their attorneys, and for their Responses to the Third Set of discovery requests pursuant to

F.R.Civ.P. 33 and 34 propounded by the Defendant, CITY OF CHICAGO, states as follows:

**F.R.CIV.P. 33 INTERROGATORIES**

　　　　1.　　　　Identify all lay witnesses testifying on behalf of Plaintiffs at the preliminary

injunction hearing in this action set for October 1, 2010 at 1:00 p.m.  For each testifying

witness, identify the subject matter of his/her testimony.

## ANSWER:

Rhonda Ezell may testify regarding her health conditions, her experiences with criminal attempts against her property, her difficulty in traveling outside of the City, and her desire to exercise her Second Amendment rights by practicing the use of firearms at a range in the City. She may testify how the deadlines and terms in the City's responsible firearms ownership ordinance affect her ability to possess firearms. She may also testify as to any fact or lay opinion discussed in her deposition.

Joseph I. Brown may testify regarding his desire to obtain the necessary training for a CFP permit, and to exercise his Second Amendment rights by practicing the use of firearms, at a range in the City. He may testify how the deadlines and terms in the City's responsible firearms ownership ordinance affect his ability to possess firearms. He may also testify as to any fact or lay opinion discussed in his deposition.

William Hespen may testify regarding his desire to obtain the necessary training for a CFP permit, and to exercise his Second Amendment rights by practicing the use of firearms, at a range in the City. He may testify how the deadlines and terms in the City's responsible firearms ownership ordinance affect his ability to possess firearms. He may also testify as to any fact or lay opinion discussed in his deposition.

Julianne Versnel, Second Amendment Foundation, 12500 NE 10th Place, Bellevue, WA 98005, may testify regarding her efforts on behalf of Second Amendment Foundation to secure both a mobile range, and a location to store it in Chicago, so that Chicago residents may obtain the necessary training to obtain a CFP permit. She may testify as to any documents relevant to these efforts. She may testify as to her arrangement with ISRA to operate the mobile range in a safe, legal and efficient manner once it has arrived. She may also testify as to any fact or lay opinion discussed in her deposition.

Richard Pearson, Illinois State Rifle Association, P.O. Box 637, Chatsworth, IL 60921, may testify regarding the plans for operations and protocols for the mobile range. He may testify how ISRA personnel and agents can safely and efficiently operate the mobile range for both the users and the public. He may also testify as to any fact or opinion discussed in his deposition.

Don Moran, Illinois State Rifle Association, P.O. Box 637, Chatsworth, IL 60921, may testify regarding the plans for operations and protocols for the mobile range.

Beverly Hayes, Chicago Industrial Real Estate, LLC, 3350 South Kedzie Avenue, Chicago, IL 60623, may testify regarding her efforts on behalf of SAF to secure a location to place the mobile range in Chicago, and as to any conversations she had with any prospective landlords and/or their agents.

Leo Solarte, First Western Properties, 4431 North Milwaukee Avenue, Unit B, Chicago, IL 60630, may testify regarding the 6331 South Bell property, including the Lease to SAF and the characteristics and details about the property.

Plaintiffs also reserve the right to call any individual whose deposition has been taken, who may testify as to any fact or opinion disclosed during said deposition.

Plaintiffs also reserve the right to call any witness designated by Defendant.

Plaintiffs reserve the right to use deposition testimony of unavailable witnesses.

Plaintiffs reserve the right to timely supplement these disclosures.

Plaintiffs also reserve the right to call no witnesses.

2.      Identify all opinion witnesses testifying on behalf of Plaintiffs at the preliminary injunction hearing in this action set for October 1, 2010 at 1:00 p.m.  For each expert witness: (1) identify the subject matter of his/her testimony; (2) identify his/her expert opinions and conclusions and the bases therefor; (3) identify his/her qualifications as an expert witness; and (4) identify any written reports pertaining to the witness's testimony.

**ANSWER:**

None at this time, though Plaintiffs reserve the right to timely supplement these disclosures.

**F.R.CIV.P. 34 REQUEST FOR PRODUCTION**

1.      All written statements and/or reports of any Plaintiff or witness testifying on behalf of Plaintiffs at the preliminary injunction hearing, including but not limited to all reports and drafts of reports prepared by any expert witness.

**RESPONSE:**  None except for the declarations attached to Plaintiffs' Motion for Temporary Restraining Order, and deposition transcripts, all of which Defendant has or can obtain independently.

2.    All documents relating to the qualifications of any expert witness, including but not limited to a *curriculum vitae*.

**RESPONSE:**    The CV of Richard Pearson was disclosed during his deposition.

3.    All documents, exhibits or other tangible evidence that Plaintiffs intend to introduce into evidence, or otherwise use, at the preliminary injunction hearing set for October 1, 2010 at 1:00 p.m.

**RESPONSE:**

- Leases for Accurate and Bell, already disclosed.

- Accurate termination notice, already disclosed.

- Blue Line-SAF contract, already disclosed.

- Satellite images of Bell and Accurate properties as used in depositions.

Plaintiffs reserve the right to timely supplement these disclosures.

One of the Attorneys for Plaintiffs

**<u>PROOF OF SERVICE</u>**

The undersigned certifies, under penalty of perjury pursuant to F.R.Civ.P. 11, that on

September 16, 2010, the attached document was hand-delivered to one of the above-listed

recipients.

_____

One of the Attorneys for Plaintiffs

Alan Gura (admitted *pro hac vice*)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085
alan@gurapossessky.com

David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547
dsigale@sigalelaw.com

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RHONDA EZELL, JOSEPH I. BROWN,   )
WILLIAM HESPEN, ACTION TARGET, INC., )
SECOND AMENDMENT FOUNDATION, INC., )
and ILLINOIS STATE RIFLE ASSOCIATION, )
               )
     Plaintiffs,     )  No. 10 CV 5135
                 )
v.               )
                )
CITY OF CHICAGO,       )
                )
     Defendant.    )

### PLAINTIFF SECOND AMENDMENT FOUNDATIONS'S ANSWERS TO DEFENDANT CITY OF CHICAGO'S SECOND SET OF INTERROGATORIES TO PLAINTIFFS

TO: Andrew W. Worseck, Esq.
   City of Chicago Department of Law
   30 North LaSalle Street, Suite 1230
   Chicago, IL 60602
   Fax No. (312) 742-3925

NOW COMES the Plaintiff, SECOND AMENDMENT FOUNDATION, by and through GURA

& POSSESSKY, PLLC, and LAW FIRM OF DAVID G. SIGALE, P.C., its attorneys, and for its Answers

to the Second Set of F.R.Civ.P. 33 Interrogatories propounded by the Defendant, CITY OF

CHICAGO, states as follows:


   1.  Identify all communications that have occurred between any Plaintiff or

Plaintiff's attorney and Accurate Perforating Corporation since September 2, 2010, and, for

each communication, identify: (a) all participants in the communication, (b) the date of the

communication, (c) the nature, purpose, and content of the communication, and (d) any

documents relating to the communication.

**ANSWER:**

Objection. To the extent the interrogatory is directed at Plaintiffs' counsel, it is not appropriate to direct interrogatories to counsel. *See Hickman* v. *Taylor*, 329 U.S. 495, 504 (1947); *See also, e.g., Kustom Signals v. Applied Concepts*, 181 F.R.D. 489, 494 (D. Kan. 1998) ("Interrogatories are to be answered by *parties*, not attorneys. *See also* Fed.R.Civ.P. 33 (titled 'Interrogatories to Parties')"). The information from counsel is also equally available by other means, is not relevant, and not necessary for the preparation of Defendant's case. Notwithstanding the above objection, and without waiving same, Plaintiff answers as follows:

September 3, 2010: I (Julianne Versnel) spoke with Larry Cohen. He informed me that he wanted to change the location of the property we would occupy with the mobile range. He indicated that his lawyer would be calling me on Tuesday.

September 7, 2010: Mr. Lurie called me (Julianne Versnel). I asked him to follow up on the call from Mr. Cohen on September 3, 2010. He told me he didn't know anything about the lease because he had not been involved in it. He talked about the cost of the interrogatories and deposition to Mr. Cohen. Mr. Lurie called Alan Gura and conferenced him in. I don't recall what he said, if anything; he was travelling and did not stay on the call for very long. Then, Mr. Lurie conferenced Mr. Cohen into the conversation with us. He asked Mr. Cohen who had prepared the lease and Mr. Cohen said that someone named Ginger in their office had prepared the lease. The lawyer said that the property should have been a sublease not a lease. Accurate Perforating actually leases from what I believe was called 3636 Kenzie LLC. Mr. Cohen indicated that he did not want to be visited by various city inspectors and involved in litigation that could cost him $50,000. I offered to have SAF help defray Mr. Cohen's cost of dealing with the city's retaliation but that subject was not pursued. Mr. Cohen said he would provide me with another piece of property from another LLC. Mr. Lurie asked me to provide him a copy of the lease. Mr. Lurie said Mr. Cohen was staying on the line and that I should leave the conference call. The lease was faxed to Mr. Lurie. Documents: 2 PDF files of emails, 1 fax cover sheet.

September 7, 2010: Mr. Lurie left a message on my cell phone: I have transcribed it below. Document: Audio file.

"Hi Julianne, this is Mike Lurie calling you regarding Larry Cohen. I am calling you on your cell. I am calling you from my cell. I am on a busy train. Larry Cohen called me back, talked to somebody else. Also he called me back, said he has made a decision that he's going to terminate the lease. He's going to send out a 30 day notice terminating the lease. He does not

want to get involved in any litigation, the middle of any litigation or disputes whatsoever. He should have thought of that before he got into this. I am not going to excuse the judgment. But the fact of the matter is that was then and now is now. I know that this is obviously not what you people want to hear. I appreciate that. It will probably set you back, give you aggravation, do all those things. Probably just set you back from a time point, time point of view. Probably no legal harm, just wasted your time. Anyway you got my office number, my cell number. He told me that tomorrow he's going to send out a notice of cancelation, a notice of termination of the lease. Under Illinois law he's got to give you 30 days notice and I think the lease which said September 15th so it will be terminated October 15th. He's probably going to send you back the 2500 bucks, I don't know. He should. That's that. Call me or you. Alan Gura can call me if there's anything he wants to discuss even though there's really nothing more that I can tell you. You know I just got involved several days ago. I am telling you what I know. Okay that's it. Thank you."

September 8, 2010: I called Mr. Cohen and left a message regarding the termination date of the lease since I had not received any paper work from him. Document: See PDF of note.

September 9, 2010: A fax was on our office fax around 8:00 A.M. confirming the termination date of October 31, 2010. Document already provided.

September 11, 2010: I saw for the first time a fax that had come into my office on August 30, 2010 from Larry Cohen, confirming the beginning of the Lease effective August 31, 2010.


2.      In light of the September 8, 2010 Notice of Termination of Industrial Building

Lease issued by Accurate Perforating Corporation to SAF, state whether SAF and/or ISRA still

plan to place and/or operate the mobile firing range on the property described in the Lease,

and, if so, state the dates the range will be placed and/or operated on the property.

**ANSWER:**      Yes, specific dates are unknown but before October 12, 2010.


3.      With respect to any location where the mobile firing range may be placed and/or

operated, state whether members of the public using the range will be permitted to bring and

use their own weapons to the range, or whether arms will be supplied to users of the range. If

the latter, identify the person or entity that will supply the arms, and the number and type(s) of

arms that will be provided.

**ANSWER:** ISRA will have primary responsibility for the daily operation of the range, so I do not know. However, upon information and belief, ISRA's state-certified trainers will be supplying two types of firearms: semi-automatic pistols and revolvers, suitable for training new shooters. Persons obtaining CFP training will be allowed to try either type of handgun or both. At this time, it is anticipated that members of the public will not be allowed to bring their own firearms.

 4. Identify all communications that have occurred between any Plaintiff or

Plaintiff's attorney and Fidelity Investigative Training Academy concerning the use or operation

of the mobile range and, for each communication, identify: (a) all participants in the

communication, (b) the date of the communication, (c) the nature, purpose, and content of the

communication, and (d) any documents relating to the communication.

**ANSWER:**

 Objection. To the extent the interrogatory is directed at Plaintiffs' counsel, it is not appropriate to direct interrogatories to counsel. *See Hickman* v. *Taylor*, 329 U.S. 495, 504 (1947); *See also, e.g., Kustom Signals v. Applied Concepts*, 181 F.R.D. 489, 494 (D. Kan. 1998) ("Interrogatories are to be answered by *parties*, not attorneys. *See also* Fed.R.Civ.P. 33 (titled 'Interrogatories to Parties')"). The information from counsel is also equally available by other means, is not relevant, and not necessary for the preparation of Defendant's case. Notwithstanding the above objection, and without waiving same, Plaintiff answers as follows:

- Conversation between Julianne Versnel and Andre Queen of Fidelity Security on September 9, 2010.

I spoke with Andre Queen of Fidelity Security. We discussed the *Chicago v. Haworth* decision. We discussed *McDonald v Chicago*. We discussed the new Chicago ordinance. He told me that his company was being deposed the following week. We discussed the lack of shooting ranges in Chicago. We discussed the investment opportunities for a permanent indoor range in Chicago. Action Target was mentioned as a possible vendor. We discussed a company called LaserShot that uses simunnition which would not count toward range time for the Chicago permit. We discussed that Fidelity Security provided training to Chicago residents but that they had to go outside of the city for the range time. We discussed that the cost for this varied from day to day based on the availability of the range. We discussed that Maxon's has only five lanes

and was closed on Mondays. We discussed how far out G.A.T. was. He mentioned that he had trained Rhonda Ezell. We discussed how difficult it was to get "into" a range and "to" a range. We discussed that a number of people in Chicago used public transportation and it was their only means of travel. We discussed the possibility of letting Fidelity use the mobile range for a couple of days after the Federal Judge allowed it in the city. We also discussed the specific of the range requirement training, *i.e.* how many shooters could be on a line, how many rounds they shot on average. We then chatted about Second Amendment rights in general, he directed me to their website. We commented on an Oleg Volk photo. We agreed to speak at another time.

5.      Describe all efforts taken to date, or any plans, to secure a site to place and/or

operate the mobile range at any location in Chicago other than the property described in the

Accurate Perforating Corporation Lease, including but not limited to efforts to lease property at

6300-6400 S. Bell, Chicago, Illinois.

**ANSWER:**
- I contacted Beverly Hayes and told her that we needed a property. She said she would look. No definite location was discussed.
- Viewed available listings on Loopnet.com. I contacted 3 owners/agents of property by email. The specific properties were:

    6301-6401 S. Bell, Chicago. IL

    3434-3440 W. 51st, Chicago, IL

    6200 W. 51st St., Chicago, IL.

- Robert Duffing responded to me via phone that that one of the properties on 51st was available but I told him that we had secured property. He followed up with email.

- Leo Solarte responded to me about the property on South Bell.

6.      For each location identified in response to Interrogatory No. 5 above, identify all

communications with the property owner or any real estate or other agent acting on its behalf,

and for each communication, identify: (a) all participants in the communication, (b) the date of the communication, (c) the nature, purpose, and content of the communication, and (d) any documents relating to the communication.

**ANSWER:**

- Robert Duffing responded to me via phone that that one of the properties on 51st was available but I told him that we had secured property. He followed up with email. Documents: PDF of Note and email.
- Leo Solarte responded to me about the property on South Bell.

  1. Initial e-mail contact from Mr. Solarte. (September 8, 2010)
  2. Telephone call from Mr. Solarte. Discussion regarding property on South Bell Avenue, which is a former car overflow lot that was paved. It has an electric fence, very bright security lights. It was several lots combined in the past. Right now a wrecking company is occupying part of the lot on a temporary basis. I told Mr. Solarte the Second Amendment Foundation was looking to bring a mobile range to the City of Chicago so that residents could complete the one hour of range time required to get a CFP. I told him that the range could not come into the city of Chicago unless ordered by a Federal Judge. I told him that we are currently litigating the issue. He said he would check with the owner. Document: Note of call.
  3. Conversation with Mr. Solarte re: lease and liability. I told him SAF would carry insurance.
  4. Folllow up e-mail from Mr. Solarte (September 8, 2010)
  5. Follow up e-mail to Mr. Solarte. (September 8, 2010)
  6. Follow up e-mail from Mr Solarte. (September 10, 2010)
  7. Follow up e-mail from Mr. Solarte. (September 10, 2010)
  8. Follow up e-mail to Mr. Solarte. (September 11, 2010)

  Document: Lease dated September 11, 2010.

7.    With respect to the property at 6300-6400 S. Bell: (a) Identify all person(s) owning or acting on behalf of the property owner, (b) provide their phone numbers, (c)

describe the property and any structures thereon, and (d) identify the zoning classification that applies to the property.

**ANSWER:**

Realtor: Leo Solarte, First Western Properties, (773) 908-3803

Property is located at 6331 South Bell, Lots 14-24

Property was an overflow parking lot for a Western Avenue car dealer. It is 2 acres in total.

The property has an electric fence, barbed wire at the top of the fence on the street side. There are high powered lights. The lot is paved. There is currently a portion occupied by a wrecking company. The zoning is M1-2 (Limited Manufacturing District).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __12th__ day of September, 2010.

_____

JULIANNE H. VERSNEL

With respect to objections only:

_____

David G. Sigale

Alan Gura (admitted *pro hac vice*)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085
alan@gurapossessky.com

David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547
dsigale@sigalelaw.com

# Exhibit C



**City of Chicago**
**Richard M. Daley, Mayor**

**Department of Law**

Mara S. Georges
Corporation Counsel

Constitutional and Commercial
Litigation
Suite 1230
30 North LaSalle Street
Chicago, Illinois 60602-2580
(312) 744-4342
(312) 742-3925 (FAX)
http://www.cityofchicago.org

<u>**VIA FACSIMILE AND U.S. MAIL**</u>

September 9, 2010

Alan Gura
Gura & Possessky, PLC
101 N. Columbus Street
Suite 405
Alexandria, VA 22314

David G. Sigale
Law Firm of David G. Sigale, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532

**Re: Ezell v. City of Chicago, 10 C 5135**

Dear Counsel:

    As discussed in yesterday's deposition of Mr. Pearson, the City requests the immediate production of: (1) the ISRA rules of the range/safety protocols used at the ISRA Bonfield range, and (2) Mr. Pearson's notes, and any other documents, including but not limited to communications with SAF or Blue Line, reflecting rules of the range/safety protocols to be used at the mobile range in Chicago.

                           Sincerely,

                           Andrew Worseck
                           Andrew Worseck
                           312-744-7129



