# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| Plaintiffs, | ) | PLAINTIFFS' MOTION IN LIMINE #1: |
| | ) | TO EXCLUDE SIX WITNESSES |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE #1: TO EXCLUDE SIX WITNESSES

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Support of their Motion in Limine #1: To Exclude Six Witnesses.

Dated: September 27, 2010            Respectfully submitted,

Alan Gura (admitted pro hac vice)        David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC              Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405        4300 Commerce Court, Suite 300-3
Alexandria, VA 22314               Lisle, IL 60532
703.835.9085/Fax 703.997.7665         630.452.4547/Fax 630.596.4445


By: /s/ Alan Gura/                By: /s/ David G. Sigale/
_____          _____

    Alan Gura                   David G. Sigale

                            Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION IN LIMINE #1: TO EXCLUDE SIX WITNESSES

PRELIMINARY STATEMENT

The parties' efforts to meet and confer regarding the upcoming hearing on the motion for a preliminary injunction have been modestly successful. Some agreements aimed at streamlining the proceedings have been reached, and additional progress might well take place.

However, there does appear to be a fundamental difference of opinion as to what the upcoming hearing is supposed to accomplish. Efforts to meet and confer over this particular issue have not succeeded.

Plaintiffs believe that the hearing was set for a Friday afternoon because it was not expected to be particularly lengthy, and that any evidence must be relevant and efficiently designed to respond to the issues before the Court, namely: whether Plaintiffs are irreparably harmed by the challenged law, and whether an injunction would be in the public interest. Indeed, Plaintiffs maintain that no evidence is actually necessary to establish these points, but concede that is a legal argument, and like arguments relating to the likelihood of success on the merits, it is purely a question of law beyond the ken of any witness.

Defendant, on the other hand, has noticed at least six witnesses who appear irrelevant to the case. Defendant apparently envisions a lengthy trial designed to prove various public policy concepts that are simply not at issue and, indeed – are largely not contested by the Plaintiffs.

The Court should grant this motion to ensure that the hearing focuses on the actual dispute between the parties, and is concluded at some reasonable time.

1

ARGUMENT

The testimony of the following witnesses noticed by Defendant would violate Federal Rules of Evidence 402, as they are irrelevant, or at the very most, any probative value of theirs is outweighed by considerations of "undue delay" and "waste of time" within the meaning of Rule 403. Plaintiffs would agree to have some of these witnesses testify by written declaration, and forego their right to cross-examine them, reserving the right to object to the admissibility of the declarations. But there simply is no point in having all these individuals testify live.

A.      Sergeant Dan Bartoli or his designee

Defendant submits that Sgt. Bartoli would "testify as to the rules and protocols used at firing ranges to protect public health, welfare, and safety."

This testimony is irrelevant. None of the rules and protocols used at firing ranges are at issue in this case.

In any event, Chicago's ordinance is clear: only state-certified trainers, trained by the State Police, can provide the training recognized by the city, and it would be pointless for Plaintiffs to utilize any trainers who are not state-certified. Chi. Mun. Code § 8-20-120(a)(7).

The City would probably like to speculate that Plaintiffs will be unsafe, but the fact is that only state-certified trainers whose judgment is, according to Chicago's code, presumptively adequate, will be providing the training. Sgt. Bartoli is not offered for the objectionable purpose of speculating that Plaintiffs' state-certified trainers will do something wrong. Since there is no dispute as to what the appropriate training protocols *are*, this testimony is simply not relevant. If the City believes that the State Police is unsafe in its training and certification of trainers, it should have required other certification in its ordinance. This is not the forum for that dispute.

B.    Unidentified Police Representative

Defendant would like to call an unknown witness to discuss "the dangers of allowing firearms outside the home, including the dangers of carrying, transporting, transferring, and discharging firearms."

This witness is irrelevant. Nothing in this lawsuit addresses Chicago's laws governing the carrying, transportation, and transfer of firearms. Plaintiffs seek only to discharge guns at a range. Regardless of whether there is a right to use a range inside the city, the question is a legal and historical one, not a factual one:

> We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government--even the Third Branch of Government--the power to decide on a case-by-case basis whether the right is *really worth* insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad.

*District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2821 (2008); *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 177 L. Ed. 2d 894, 926 & 929 (2010).

The City is not entitled to relitigate *Heller* and *McDonald* under the guise of claiming guns are dangerous. The question of whether ranges are within the scope of constitutional protection is not one of interest balancing, but whether that much was understood by the people in 1791 (or, as the Second Amendment applies to Chicago only by operation of the Fourteenth Amendment, in 1868). Plaintiffs strongly object to having a trial about the inherent value of the Second Amendment right. This is simply not allowed under *Heller* and *McDonald*.

C.       Carl Byrd, First Deputy Commissioner, City of Chicago Building Department.

Mr. Byrd or his designee would testify to "the City's enforcement of the Building Code . . . the need to develop Building Code provisions that would need to be regulate [sic] shooting ranges . . . and the costs of such enforcement and regulation."

This testimony would be irrelevant and a waste of time. There are no building code provisions at issue, and the Plaintiffs are not challenging the City's ability to enact a building code or to have that building code reach gun ranges. The City is welcome to repeal its law, and replace its total prohibition with a regulatory regime.

But the City cannot seriously claim that it may ban gun ranges entirely, then complain that it has not had the opportunity to regulate their construction. If and when the City enacts some relevant regulations – and *if* those regulations are litigated (which is far from obvious and in any event, completely speculative at this point) – then perhaps Mr. Byrd's testimony would be relevant.

But this week, the Plaintiffs are challenging only the laws that have actually been enacted. The Court cannot render advisory opinions about a legal regime that does not exist, and taking testimony about some alleged "need" to regulate something that is currently forbidden is an abstract philosophical discussion, not one that has anything to do with this case.

D.       Patti Scudiero, Commissioner, Department of Zoning and Land Use Planning.

Ms. Scudiero or her designee "may testify as to: the requirements of the City's zoning ordinance and its prohibition of firing ranges," the importance of zoning, and the alleged "need" to develop zoning laws covering shooting ranges.

This testimony is less relevant and worthy of the Court's time than a discussion of the value of having a building code. The City's zoning ordinance, to the extent it might be relevant (and it is not relevant), is within judicial notice under Federal Rule of Evidence 201. There is no need to have a witness testify about the existence or content of the zoning ordinance, and waste time reading the zoning ordinance into the record.

And as with the building code, there is no challenge to the zoning code, and no zoning provision is at issue here. The Supreme Court upheld the use of zoning ordinances in *Village of Euclid* v. *Ambler Realty*, 272 U.S. 365 (1926), and as much as Defendant wishes to re-argue *Heller*, Plaintiffs have no dispute with *Euclid*. But gun ranges have existed on these shores since well before *Euclid* and the zoning laws approved therein. Indeed, America's fourth-largest city, Houston, famously gets along without any zoning ordinance at all – yet it has many safe and uncontroversial gun ranges.

Again, if the City wants to enact a zoning law – and *if* that law is challenged – then perhaps Ms. Scudiero's testimony might be instructive in that action. But it is not relevant here, where the City has not zoned gun ranges but banned them entirely. And if the City were to use the zoning code to ban all gun ranges, then that law would be no more or less constitutional than the law challenged in this case, because zoning considerations cannot disguise a complete ban that is otherwise unconstitutional. *See Renton v. Playtime Theaters, Inc.,* 475 U.S. 41 (1986). In such a hypothetical case, Ms. Scuderio's testimony would be irrelevant, just as it is irrelevant in this non-hypothetical case, which nonetheless, has nothing to do with any non-existent zoning laws.

E.     Unidentified Department of the Environment Representative

This individual would discuss the "environmental and health concerns associated with a mobile range, the regulations that would need to be developed to properly regulate shooting ranges, and the costs of such enforcement and regulation."

The same purely hypothetical problems that plague the previous two witnesses render this one utterly speculative. In any event, as a matter of state law, ranges are not beyond the ability to render safe:

> the risk of harm to persons or property [from shooting], even though great, can be virtually eliminated by the exercise of reasonable or even "utmost" care under the circumstances . . . the use of firearms is a matter of common usage and the harm posed comes from their misuse rather than from their inherent nature alone . . . the location [of a range is assumed] appropriate for such activity in the absence of further factual allegations . . . particularly describing the area as inappropriate for the target practice [and] target practice is of some social utility to the community . . .

*Miller* v. *Civil Constructors*, 272 Ill. App. 3d 263, 271, 651 N.E.2d 239 (Ill. App. 1995).

And if gun ranges are constitutionally protected, the City's wholly optional regulatory costs are irrelevant. People do not lose their rights because the government decides it is too expensive to regulate or otherwise accommodate them. The City's social cost argument was expressly rejected in *McDonald*, 177 L. Ed. 2d at 924. The Bill of Rights does not command the government to regulate anything, and its provision are not conditioned on any enabling legislation.

F.     Joy Adelizzi, Deputy Commissioner for Business Affairs and Licensing

Ms. Adelizzi or her designee would testify "as to the requirements of the City's licensing scheme" and "why" it is so necessary for public health and safety, etc.

This is irrelevant. The City's belief in the value of business licensing regulations is not remotely at issue in this case. The only "regulation" at issue is the prohibition of gun ranges.

6

Presumably, if ranges were not banned, then the City would tax and license their operation in the same manner that it does any other lawful business. Any unique licensing requirement, applied to ranges, may or may not be litigated in the future. Again, the matter is entirely speculative because ranges are banned, not regulated.

## CONCLUSION

This case is decidedly not about the desirability of building codes, zoning codes, environmental regulations, or business licensing laws – *none of which are before the Court*. Of course the City can regulate gun ranges – but it has not done so. It has *banned* gun ranges, and no amount of time spent discussing the zoning, building, environmental, and business licensing codes that have not yet been enacted, and which have nothing to do with the range ban, would make any relevant fact more or less true.

Neither is it appropriate for the Court to hear testimony about whether the carrying, transportation, transfer or discharge of firearms is dangerous, when this case has nothing to do with the carrying, transportation, or transfer of firearms, and with respect to the discharge of firearms, deals only with the *legal* question of whether that activity is within a constitutionally-enumerated right. The Supreme Court has just instructed that such rights cannot be defined by policy arguments and contests over social science.

The Court did not err in believing this hearing could be conducted on a single Friday afternoon. The evidentiary issues concern irreparable harm and the public interest, not abstract matters of political philosophy or speculation over non-existent laws.

The City's witness list must be reined in, and this motion supplies the vehicle for that necessary remedy. Respectfully, the motion should be granted.

Dated: September 27, 2010                  Respectfully submitted,

Alan Gura (admitted pro hac vice)          David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                     Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405          4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                       Lisle, IL 60532
703.835.9085/Fax 703.997.7665             630.452.4547/Fax 630.596.4445


By:    /s/ Alan Gura/                      By:      /s/ David G. Sigale/
       Alan Gura                                    David G. Sigale
                                                    Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on September 27, 2010, he served a copy of the above Memorandum of Points and Authorities, and this certificate of service, on:

> Andrew W. Worseck
> City of Chicago Department of Law
> 30 N. LaSalle Street, Suite 900
> Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).


> /s/ Alan Gura
> Alan Gura