**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RHONDA EZELL, et al., ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES IN REPLY TO |
| Plaintiffs, ) | DEFENDANT'S OPPOSITION TO |
| ) | MOTION FOR PRELIMINARY |
| v. ) | INJUNCTION |
| ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANT'S
OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Reply to Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction.

| | |
|---|---|
| Dated: September 27, 2010 | Respectfully submitted, |
| | |
| Alan Gura (admitted pro hac vice) | David G. Sigale (Atty. ID# 6238103) |
| Gura & Possessky, PLLC | Law Firm of David G. Sigale, P.C. |
| 101 N. Columbus Street, Suite 405 | 4300 Commerce Court, Suite 300-3 |
| Alexandria, VA 22314 | Lisle, IL 60532 |
| 703.835.9085/Fax 703.997.7665 | 630.452.4547/Fax 630.596.4445 |
| | |
| By: /s/ Alan Gura/ | By: /s/ David G. Sigale/ |
| Alan Gura | David G. Sigale |
| | Attorneys for Plaintiffs |

MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

PRELIMINARY STATEMENT

The City's opposition misstates the law, and fails to offer any actual showing that would sustain its range ban even if the range ban were subject to a lower standard of review. The opposition does make clear, however, that the City has no valid defense against this challenge. Accordingly, even if the Court does not conclude that Plaintiffs have shown irreparable harm, it is pointless to continue this case any further. The Court should convert the hearing to a trial on the merits, per Fed. R. Civ. Proc. 65(a)(2), and issue a permanent injunction.

* * *

The Second Amendment protects the right to use arms in the most ordinary way that they are used: at a gun range. The notion that the Second Amendment does not reach beyond the home has been rejected both by the Supreme Court as well as by the Seventh Circuit.

Even if the Second Amendment does not secure the right to use a gun range per se, it does protect, undoubtedly, the right to keep arms at home for self-defense. It is the City, not Plaintiffs, that mandates regular range training as a condition of keeping arms at home. Banning a required step in obtaining arms for home self-defense cannot be constitutional.

And beyond even this much, it is undeniable – indeed, it is the basis of Defendant's training requirement – that practice and training improve proficiency, and thus, safety. What reason, apart from the promotion of safety, could there be for Defendant's training requirement? Banning ranges frustrates people's ability to use guns in self-defense in the home, and makes gun ownership needlessly dangerous. And while Defendant does not seriously address the issue, the

1

fact is that the First Amendment squarely protects the right to give and receive gun training, just as it protects *all* forms of training.

Thus, the first two forms of irreparable harm in this case – the ban on a right to use gun ranges, and the frustration of obtaining guns for home self-defense – are not fact-specific. The third form of irreparable harm is only slightly based on a factual argument. Obviously, the banning of gun ranges in a 231 square mile area is going to increase the costs involved in obtaining range training. But burdening the exercise of fundamental constitutional rights, without substantial justification, is not permitted.

To justify this frustration of constitutional rights, the City offers absolutely nothing, describing its interest as "to limit the impact that a proliferation of firearms has on public health, safety and welfare." Def. Br. at 21. And the City argues not only that banning all ranges somehow serves this nebulous purpose, it argues – in the face of repeated directly contrary recent rulings by the Supreme Court and Seventh Circuit – that gun regulation is subject to rational basis review. But even the one scholar to whose pre-*Heller* and *McDonald* work Defendant looks has publicly declared his support of Plaintiffs' position in this case.

ARGUMENT

I. THE SECOND AMENDMENT PLAINLY EXTENDS BEYOND THE HOME, AND PROTECTS THE RIGHT TO PRACTICE WITH GUNS AT A RANGE.

The question of whether the Second Amendment secures the right to visit a gun range has not previously been reached by a court, because as far as Plaintiffs are aware, Chicago's range ban is unique. This is reason enough to suspect that it is unconstitutional. *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 177 L. Ed. 2d 894, 926 (2010) (plurality opinion) (rarity of Chicago's

handgun ban counsels against its constitutionality). But this is not to say the issue is strictly one of first impression. The guidance on the topic is extensive, and points uniformly in one direction.

The Seventh Circuit has already rejected the City's argument that the Second Amendment limits its protection only to gun possession within the home: "[T]he Second Amendment creates individual rights, *one of which* is keeping operable handguns at home for self-defense. What other entitlements the Second Amendment creates, and what regulations legislatures may establish, were left open [in *District of Columbia* v. *Heller*, 128 S. Ct. 2783 (2008)]." *United States* v. *Skoien*, 2010 U.S. App. LEXIS 14262 at *5 (7th Cir. July 13, 2010) (en banc) (emphasis added).

Although Plaintiffs take issue with the concept that the Second Amendment "creates" rights as opposed to preserving pre-existing rights, the basic idea – that the Second Amendment is not limited to the home – is incontrovertible. Although *Heller* does not require invalidating all laws regulating guns in public, "*Heller* does not preclude Second Amendment challenges to laws regulating firearm possession outside of home." *Peruta* v. *County of San Diego*, 678 F. Supp. 2d 1046, 1051 (S.D. Ca. 2010).

The Second Amendment applies "*most notably* for self-defense within the home," *McDonald*, 177 L. Ed. 2d at 922 (emphasis added), "where the need for defense of self, family, and property is most acute," *Heller*, 128 S. Ct. at 2717, but not exclusively so. For example, "Americans valued the ancient right [to keep and bear arms] . . . for self-defense *and hunting*." *Heller*, 128 S. Ct. at 2801 (emphasis added). "The settlers' dependence on game for food and economic livelihood, moreover, undoubtedly undergirded . . . state constitutional guarantees [of the right to arms]." *McDonald*, 177 L. Ed. 2d at 921 n.27. Hunting does not occur inside the home.

3

Describing Second Amendment rights, the Supreme Court invoked Senator Sumner's famous "Bleeding Kansas" speech: "The rifle has ever been the companion of the pioneer and, under God, his tutelary protector against the red man and the beast of the forest." *Heller*, 128 S. Ct. at 2807 (citation omitted). And in setting out the common-use test for protected arms, the Supreme Court has made clear that the Second Amendment secures arms possessed "for lawful purposes like self defense." *Heller*, 128 S. Ct. at 2815.

Indeed, the Supreme Court was all but forced to declare the Second Amendment applies outside the home, given the way in which the District of Columbia litigated its case. The District offered that the term "bear arms" had an exclusive idiomatic meaning, effectively, to soldier or go into battle, and that "keep and bear arms" was a unitary concept referring only to a right to possess weapons in the context of military duty  The Supreme Court was required to address this argument to reach its judgment, and rejected it. "At the time of the founding, as now, to 'bear' meant to 'carry.'" *Heller*, 128 S. Ct. at 2793 (citations omitted). To "bear arms," as used in the Second Amendment, is to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 128 S. Ct. at 2793 (quoting *Muscarello* v. *United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting)); BLACK'S LAW DICTIONARY 214 (6th Ed. 1998)); *see also Heller*, 128 S. Ct. at 2804 ("the Second Amendment right, protecting only individuals' liberty to keep *and carry* arms . . ."), at 2817 ("the right to keep *and carry* arms") (emphasis added). "[B]ear arms means . . . simply the carrying of arms . . ." *Heller*, at 2796.

Having defined the Second Amendment's language as including a right to "carry" guns for self-defense, the Supreme Court helpfully noted several exceptions that prove the rule. Explaining

4

that this right is "not unlimited," in that there is no right to "carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *Heller*, 128 S. Ct. at 2816 (citations omitted), the Court confirmed that there is a right to carry at least some weapons, in some manner, for some purpose. The Court then listed as "presumptively lawful," *id.*, at 2817 n.26, "laws forbidding the carrying of firearms in sensitive places," *id.*, at 2817, confirming both that such "presumptions" may be overcome in appropriate circumstances, and that carrying bans are *not* presumptively lawful in non-sensitive places.

All of this activity takes place outside the home.

Finally, as the City notes, the Court was "guided by the principle that the Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning." *Heller*, 128 S. Ct. at 2788 (citations and internal quotation marks omitted). And in elucidating the normal and ordinary meaning of the right to arms, the Court observed, "No doubt, a citizen . . . [who] *practices in safe places the use of [a handgun]*, and in due time teaches his sons to do the same, exercises his individual right." *Heller*, 128 S. Ct. at 2812 (citation omitted) (emphasis added). This is not a useless snippet. It was included for the reason that it sheds light on the scope of the right.

It is difficult to imagine that practicing the use of guns at a range is not among the "other entitlements" of the Second Amendment outside the home. *Skoien*, at *5. Even the dissenters in *Heller* recognized the majority to have secured a right to arms for "self-defense, *recreation, and other lawful purposes.*" *Heller*, 128 S. Ct. at 2845 n.38 (Stevens, J., dissenting) (emphasis added), at 2869 (Breyer, J., dissenting).

5

II. REGARDLESS OF WHICH, IF ANY, STANDARD OF REVIEW IS UTILIZED, THE RANGE BAN IS PRESUMPTIVELY UNCONSTITUTIONAL.

Because the challenged laws forbid the exercise of protected activity, without more, they must be struck down. *See Heller*, 128 S. Ct. at 2818 (Functional firearm ban "makes it impossible for citizens to use [firearms] for the core lawful purpose of self-defense and is hence unconstitutional."). But even if the case is governed by some standard of review – any standard of review -- the outcome is the same.

At the outset, Defendant's suggestion that this case could be governed by rational basis review is frivolous. The Supreme Court emphatically rejected this proposition, and the Seventh Circuit has followed suit. "There may be narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten amendments . . ." *United States* v. *Carolene Products Co.*, 304 U.S. 144, 152, n. 4 (1938). Quoting this famous footnote, the Supreme Court recently added, "[T]he [rational basis] test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, *or the right to keep and bear arms*." *Heller*, 128 S. Ct. at 2818 n.27 (citing *Carolene Prods.*) (emphasis added).

Underscoring its rejection of rational basis review for gun laws, the Supreme Court added:

We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government--even the Third Branch of Government--the power to decide on a case-by-case basis whether the right is *really worth* insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad.

6

*Heller*, 128 S. Ct. at 2821; *McDonald*, 177 L. Ed. 2d at 926 & 929.

*Heller* added that particular types of gun laws might be "presumptively lawful," precisely because they reflect "longstanding prohibitions" that may fall outside "the full scope of the Second Amendment." *Heller*, 128 S. Ct. at 2816-17. No such presumptive allowance is made for laws that would be within the Second Amendment's scope. And finally, removing all doubt as to the presumptive invalidity of nontraditional gun laws, the Supreme Court confirmed that the Second Amendment secures a fundamental right. *McDonald*, 177 L. Ed. 2d at 921 (plurality opinion) & 938 (Thomas, J., concurring). "[C]lassifications affecting fundamental rights are given the most exacting scrutiny." *Clark* v. *Jeter*, 486 U.S. 456, 461 (1988) (citation omitted). Under this analysis, the government carries the burden of proving the constitutionality of the challenged law. *Citizens United* v. *FEC*, 130 S. Ct. 876, 898 (2010).

The Seventh Circuit has applied intermediate scrutiny in Second Amendment cases, which requires that there be a "strong showing" that the regulation is "substantially related to an important governmental objective." *Skoien*, at *10, and Defendant is correct that the circuit has done so only in the dangerous persons categorical area, reserving other levels of scrutiny for other types of Second Amendment cases.

But it is wrong to suggest that the Seventh Circuit has reserved for the peaceful, law-abiding people a *lower* level of review than is employed for violent felons, drug abusers, and other dangerous individuals arguably covered by a presumptive exception. The Seventh Circuit has suggested overbreadth is a possible alternative mode of analysis. *United States* v. *Yancey*, 2010 U.S. App. LEXIS 18442 at *10 (7th Cir. Sep. 3, 2010); *United States* v. *Williams*, 2010 U.S.

App. LEXIS 16194 at *19 (7th Cir. Aug. 5, 2010). Overbreadth is a strict scrutiny doctrine, where laws are rejected because they are not narrowly tailored.

Nonetheless, the City invokes the work of noted UCLA Law Professor Adam Winkler relating to standards of review. This reliance is badly misplaced. Regardless of whether the cited article truly reflects the City's position, it predates *Heller*'s rejection of rational basis, and *McDonald*'s finding that the Second Amendment secures a fundamental right, as well as the Seventh Circuit's opinions applying intermediate review.[1] But notably, Prof. Winkler agrees that Chicago's range ban is unconstitutional: "Reasonable gun control is one thing, this another. Chicago requires 1 hour on range for handgun permit but bars ranges." www.twitter.com/adamwinkler, Aug. 16, 2010, 3:18 p.m. (citation omitted) (last visited Sept. 26, 2010).

Of course the range ban could not survive higher standards of scrutiny, either, because the City cannot even aver an important governmental interest. "[L]imiting the impact of the proliferation of firearms," Def. Br. at 21, is merely one way of saying, "*Heller* was wrong." Of course the Second Amendment secures the proliferation of firearms. The proliferation of firearms may strike the City as an evil, but the American people have decided that it is so beneficial as to be protected in the Bill of Rights. The City's reasoning is also impermissibly circular. The City "has taken the effect of the statute and posited that effect as the [its] interest. If accepted, this sort of circular defense can sidestep judicial review of almost any statute, because it makes all statutes look narrowly tailored." *Simon & Schuster, Inc.* v. *N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120 (1991). The other concerns, congregation, illegal transfer, gun trafficking, theft, and the

---

[1] For a different view of the same material examined by Winkler, *see* David Kopel & Clayton Cramer, *State Court Standards of Review for the Right to Keep and Bear Arms*, 50 SANTA CLARA L. REV. 1 (2010).

limitation on carrying (a constitutionally protected activity in itself), are not even rationally related to a ban on gun ranges.

But most inappropriate is the view that ranges can be banned because regulating them would be too burdensome for the City: "the ban eliminates the need to integrate the operation of firing ranges into the City's otherwise established regulatory schemes." Def. Br. at 21. On this view, perhaps the people should be thankful the City does not find the "need" to regulate bookstores and churches too burdensome. The City appears not to understand the concept of "rights." A "right" entitles an individual to do something, and is not dependent on the graces of the government. The notion that the government may ban outright whatever it finds too difficult to regulate is not a constitutional doctrine. If gun ranges are constitutionally protected, the City's wholly optional regulatory costs are irrelevant. People do not lose their rights because the government decides it is too expensive to regulate or otherwise accommodate them. In any event, the City's social cost argument was expressly rejected in *McDonald*, 177 L. Ed. 2d at 924. Continuing this argument with *McDonald* is frivolous.

III. INSTRUCTION DOES NOT LOSE FIRST AMENDMENT PROTECTION MERELY BECAUSE IT INVOLVES FIRING GUNS.

Ignoring Plaintiffs' survey of cases showing that the First Amendment protects demonstrative and physical instruction, Defendant tries to convert the claim into one for "shooting a gun [as] expressive activity." Def. Br. at 12. This is not an accurate statement of either Plaintiffs' position, or the case law.

But Defendant's argument truly fails in the attempt to limit the Fourth Circuit's directly on-point decision in *Edwards* v. *City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999). Describing the

9

training in that case, Defendant claims that "presumably," the *Edwards* class was limited to verbal and written instruction, and physical demonstration. Def. Br. at 12. No such limitation is contained in the Fourth Circuit's opinion, and there is no need to "presume" anything. Gun training classes for concealed carry licenses – the training at issue in *Edwards* – *always* require live-fire training. The North Carolina law at issue in *Edwards* is no exception: its prescribed course "involves the actual firing of handguns." N.C. Gen. Stat. § 14-415.12(a)(4).

Training and education frequently require physical experience. A driver's education course would not lose First Amendment protection because part of the instruction involves driving with an instructor. Likewise for gun training. In any event, the type of training in *Edwards* is not factually distinguishable.

IV. PLAINTIFFS AND THE PUBLIC SUFFER IRREPARABLE HARM.

The facts indicate that there is a range shortage that is discouraging people from complying with the city's laws and exercising their rights. Defendant's claims that the harm in this case can be reduced to money damages, and thus is not subject to preliminary injunctive relief, is baseless. Irreparable harm is presumed in many "money damages" cases. *See, e.g*, *Computer Assocs. Int'l* v. *Quest Software, Inc.*, 333 F. Supp. 2d 688, 700 (N.D. Ill. 2004) (trade secret misappropriation and copyright infringement). Irreparable harm is also presumed in First Amendment cases, *National People's Action* v. *Wilmette*, 914 F.2d 1008, 1013 (7th Cir. 1990), and there is no reason to suppose the same is not true of Second Amendment cases, although the question appears to be one of first impression.

The Second Amendment secures an interest in self-defense. When people cannot defend themselves from violent crime, they are shot, stabbed, beaten, raped, and otherwise maimed. And

10

these are only the worst outcomes. Money damages will not compensate for people who are dead or injured because they had no gun with which to defend themselves, or because someone was not proficient in the use of their gun. It is absurd to suggest that irreparable harm can be presumed where a person might be frustrated in reading a book or securing a copyright, but will not be presumed where the failure to secure the right will end with serious bodily harm or death.

Individuals wishing to assert their constitutional rights cannot be told to move along. The Constitution, with its Bill of Rights, is in full effect in the City of Chicago. *See McDonald*. The notion that individuals should simply go to the suburbs to exercise their rights is nothing more than what the Supreme Court has rejected, yet again, in *McDonald*, the idea that constitutional rights may be abandoned because "conditions and problems differ from locality to locality." *McDonald*, 177 L. Ed. 2d at 924. The only condition that matters is one that applies uniformly in Chicago and its suburbs: the operative, functioning condition of the Constitution.

In the First Amendment context, "[i] is not sufficient to say that neighboring communities permit the type of speech that the challenged ordinance bans . . . . the government may not simply point to neighboring communities that permit the speech as a defense to their ordinance that bans that type of speech from its jurisdiction." *Palmetto Props., Inc.* v. *County of DuPage*, 160 F. Supp. 2d 876, 883 (N.D. Il. 2001) (citing *Schad* v. *Mt. Ephraim*, 452 U.S. 61, 76-77 (1981) ("[One] is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place") (quoting *Schneider* v. *State*, 308 U.S. 147, 163 (1939)).

Gun training is speech, but the concept works for all constitutional rights. Chicago could not, for example, ban abortion clinics on the grounds that they are available in the suburbs. *Cf.*

11

*Carey* v. *Population Svcs.*, 431 U.S. 678, 689 (1977) ("the restriction of distribution channels to a small fraction of the total number of possible retail outlets renders contraceptive devices considerably less accessible to the public, reduces the opportunity for privacy of selection and purchase, and lessens the possibility of price competition") (footnotes omitted). Gun ranges are places of the Second Amendment and, to the extent that training is conducted there, the First. They are protected from complete bans.

V.  GUN RANGES ARE NOT INHERENTLY DANGEROUS.

The City argues too heavily, and irresponsibly, about the particulars of the mobile range Plaintiffs would bring to Chicago. But this is a speculative distraction from the real issues in this case, which are primarily legal. The mobile range is merely a method of redressing the imminence of the harm wrought by the City's registration deadlines. In the absence of these deadlines, or in the absence of a mobile range, the factual issues relating to this proposed remedy would slip away, leaving only the core legal issues at the heart of this case. In the absence of a range ban, there will be ranges in Chicago. If not this perfectly safe and appropriate range, some other range.

Of course there is nothing wrong with the range Plaintiffs would bring to Chicago. Nobody has ever been hurt by a bullet fired within it, the range is used constantly by police and civilians alike, and there is no reason to suppose it would suddenly have any deleterious effects on its surroundings. This particular range, however, is only itself a target for the City's general objection to gun ranges, writ large.

Sheer speculation that there must be something inherently wrong with the operation of a gun range – an activity that is banned nowhere else, and which has occurred safely and uneventfully throughout the entire course of American history, is unavailing. The amorphous fears

of gun ranges are not merely irrelevant; they are rejected at law. The Illinois Court of Appeals, for example, held shooting at a range is not an ultrahazardous activity because, inter alia,

> the risk of harm to persons or property, even though great, can be virtually eliminated by the exercise of reasonable or even "utmost" care under the circumstances . . . the use of firearms is a matter of common usage and the harm posed comes from their misuse rather than from their inherent nature alone . . . the location [of a range is assumed] appropriate for such activity in the absence of further factual allegations . . . particularly describing the area as inappropriate for the target practice [and] target practice is of some social utility to the community . . .

*Miller* v. *Civil Constructors*, 272 Ill. App. 3d 263, 271, 651 N.E.2d 239 (Ill. App. 1995). The same court has upheld Illinois' range protection statute. *Miller v. Fulton County Zoning Bd. of Appeals*, 337 Ill. App. 3d 210, 785 N.E.2d 532 (Ill. App. 2003).

## CONCLUSION

The City has no legal defense, and the irreparable harm is readily apparent.

The motion should be granted. Indeed, given the clarity of the legal issues presented on the merits, the Court should advance the trial and issue a final judgment, for Plaintiffs.

| | |
|---|---|
| Dated: September 27, 2010 | Respectfully submitted, |
| Alan Gura (admitted pro hac vice)<br>Gura & Possessky, PLLC<br>101 N. Columbus Street, Suite 405<br>Alexandria, VA 22314<br>703.835.9085/Fax 703.997.7665 | David G. Sigale (Atty. ID# 6238103)<br>Law Firm of David G. Sigale, P.C.<br>4300 Commerce Court, Suite 300-3<br>Lisle, IL 60532<br>630.452.4547/Fax 630.596.4445 |
| By: /s/ Alan Gura/<br>Alan Gura | By: /s/ David G. Sigale/<br>David G. Sigale |
| | Attorneys for Plaintiffs |

<u>CERTIFICATE OF SERVICE</u>

  The undersigned, an attorney of record for the plaintiffs, hereby certifies that on September 27, 2010, he served a copy of the above Memorandum of Points and Authorities, and this certificate of service, on:

  Andrew W. Worseck
  City of Chicago Department of Law
  30 N. LaSalle Street, Suite 900
  Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).

      <u>/s/ Alan Gura    </u>
      Alan Gura