09:29:46

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


RHONDA EZELL, et al.,                Case No. 1:10-cv-05135

  Plaintiffs,                        Chicago, Illinois
                                     August 23, 2010
      v.                            Emergency Motion for TRO

CITY OF CHICAGO,

  Defendant.
-------------------------------


VOLUME 1-A
TRANSCRIPT OF EMERGENCY MOTION FOR TRO
BEFORE THE HONORABLE VIRGINIA M. KENDALL
UNITED STATES DISTRICT JUDGE


<u>APPEARANCES</u>:


For the Plaintiffs:    Gura & Possessky, PLLC
                       By:  Alan Gura
                       101 N. Columbus St., Ste. 405
                       Alexandria, VA 22314
                       (703) 835-9085

                          - and -

                       Law Firm of David G. Sigale, P.C.
                       By:  David G. Sigale
                       4300 Commerce Ct., Ste. 300-3
                       Lisle, IL 60532
                       (630) 452-4547

For a copy of this transcript, contact April Metzler, CRR
at (312) 408-5154

```
1

2        APPEARANCES:

3

4

         For the Defendant:      Chicago Corporation Counsel
5                                By:  Andrew W. Worseck, and
                                      William M. Aguiar
6                                30 N. LaSalle Street
                                 Chicago, IL 60602
7                                (312) 744-2784

8

9        COURT REPORTER:         FEDERAL OFFICIAL COURT REPORTER
                                 April M. Metzler, RPR, CRR, FCRR
10                               219 South Dearborn St., Rm. 2318-A
                                 Chicago, IL 60604
11                               (312) 408-5154
                                 April_Metzler@ilnd.uscourts.gov
12

13

14

15

16

17

18

19

20

21

22

23

24
         Proceedings recorded by mechanical stenography; transcript
25       produced by notereading.
```

| | | |
|---|---|---|
| 09:29:50 | 1 | (Commenced at 9:29 a.m.) |
| 09:29:50 | 2 | THE CLERK:  Case number 10C5135, Ezell, et al. versus |
| 09:29:55 | 3 | City of Chicago. |
| 09:30:02 | 4 | MR. WORSECK:  Good morning, your Honor.  Andrew |
| 09:30:04 | 5 | Worseck for the City of Chicago. |
| 09:30:05 | 6 | THE COURT:  Good morning. |
| 09:30:06 | 7 | MR. AGUIAR:  Good morning.  William Aguiar, City of |
| 09:30:09 | 8 | Chicago as well. |
| 09:30:09 | 9 | THE COURT:  What was your last name? |
| 09:30:12 | 10 | MR. AGUIAR:  Aguiar, A-g-u-i-a-r. |
| 09:30:13 | 11 | THE COURT:  Okay.  Good morning. |
| 09:30:14 | 12 | MR. SIGALE:  Good morning, your Honor.  David Sigale, |
| 09:30:16 | 13 | S-i-g-a-l-e, on behalf of the plaintiffs. |
| 09:30:18 | 14 | THE COURT:  Good morning. |
| 09:30:19 | 15 | MR. SIGALE:  Good morning. |
| 09:30:20 | 16 | MR. GURA:  Good morning, your Honor.  Alan Gura, |
| 09:30:22 | 17 | G-u-r-a, on behalf of the plaintiffs. |
| 09:30:23 | 18 | THE COURT:  Okay.  Good morning. |
| 09:30:24 | 19 | Well, I had -- you had motioned up and I had reviewed |
| 09:30:27 | 20 | the motion for preliminary injunction that was scheduled for |
| 09:30:30 | 21 | this morning, and then apparently last night slightly before |
| 09:30:34 | 22 | midnight you sent me an ex parte motion for temporary |
| 09:30:39 | 23 | restraining order. |
| 09:30:39 | 24 | Did you folks get that? |
| 09:30:40 | 25 | MR. WORSECK:  Judge, we just received that this |

09:30:42   1    morning.

09:30:42   2          THE COURT: All right.

09:30:42   3          MR. WORSECK: We did not obviously see it come in at

09:30:45   4    11:30 last night.

09:30:47   5          THE COURT: Right. Well, I was here this morning,

09:30:48   6    but we didn't pull down the motions from last night until

09:30:51   7    right before the call, so I haven't read the TRO yet.

09:30:55   8          So I was going to give you a position on the

09:30:59   9    preliminary injunction, so let's address that. But if it's

09:31:02  10    the same thing, you can let me know, but we're not going to do

09:31:05  11    this TRO immediately.

09:31:06  12          MR. GURA: Sure.

09:31:06  13          THE COURT: I have to read it.

09:31:08  14          All right. So let me hear from the plaintiffs.

09:31:09  15          MR. GURA: Well, your Honor, we believe that there is

09:31:12  16    irreparable harm here. People are being denied Second and

09:31:17  17    First Amendment rights. And we would like to have --

09:31:18  18          THE COURT: Okay. So, first of all, are you

09:31:20  19    addressing your TRO or your preliminary injunction?

09:31:22  20          MR. GURA: The preliminary injunction, your Honor.

09:31:23  21          THE COURT: Okay. All right.

09:31:23  22          MR. GURA: I guess -- I guess I would ask the Court

09:31:26  23    to clarify. I thought that the object of the presentment was

09:31:29  24    for us to obtain, perhaps, a scheduling order. I would have

09:31:32  25    expected the City might have wanted to brief in opposition --

|          |     |                                                        |
|----------|-----|--------------------------------------------------------|
| 09:31:36 | 1   | THE COURT:  To the TRO.                                 |
| 09:31:37 | 2   | MR. GURA:  -- to the preliminary injunction.           |
| 09:31:37 | 3   | THE COURT:  All right.  Well, that's -- the way that   |
| 09:31:39 | 4   | it was scheduled, that would be normal.  That's exactly what |
| 09:31:42 | 5   | we would do.                                           |
| 09:31:42 | 6   | MR. GURA:  Sure.                                        |
| 09:31:43 | 7   | THE COURT:  I would listen to your position orally,    |
| 09:31:46 | 8   | your position orally, and then I would give you a briefing |
| 09:31:48 | 9   | schedule, because in the preliminary injunction context you |
| 09:31:52 | 10  | can give me all the case law.  But now that you've filed this, |
| 09:31:55 | 11  | we'll address this after we do this.  Okay.            |
| 09:31:56 | 12  | MR. GURA:  Sure.                                        |
| 09:31:57 | 13  | THE COURT:  But if it's the same exact issues --       |
| 09:31:59 | 14  | MR. GURA:  The issues are the same.  It's on the same  |
| 09:32:02 | 15  | grounds.                                               |
| 09:32:02 | 16  | THE COURT:  Okay.  And so what became the need for     |
| 09:32:07 | 17  | the TRO last night at 11:30?                           |
| 09:32:08 | 18  | MR. GURA:  Okay.                                        |
| 09:32:08 | 19  | THE COURT:  What happened to change the                |
| 09:32:10 | 20  | circumstances?                                         |
| 09:32:11 | 21  | MR. GURA:  Sure, sure.                                  |
| 09:32:12 | 22  | The memorandum we submitted with the TRO spells out    |
| 09:32:14 | 23  | what happened.  And basically what happened was that on Friday |
| 09:32:17 | 24  | I received a phone call from the City's attorneys, and they |
| 09:32:21 | 25  | had determined that they wanted to present a motion before |

| | |
|---|---|
| 09:32:24 | 1 |
| 09:32:28 | 2 |
| 09:32:30 | 3 |

1  Judge Guzman, who has a case called <u>Benson versus City of</u>

2  <u>Chicago</u>, and they're trying to get the case -- this case

3  reassigned to Judge Guzman on grounds of relatedness.

4      We would oppose that motion.  We would not begrudge

5  the City in its ability to hear it and it's all fine and well

6  if they want to go ahead and present that.  What concerned us

7  and what triggered the TRO were the statements by the City's

8  attorneys that the fact of their motion for a judicial

9  reassignment would be invoked as a means of indefinitely

10  delaying our motion for preliminary injunction.

11      They wanted to basically have the process work its

12  way out with Judge Guzman before the preliminary injunction

13  was considered by your Honor.  That is not something that's

14  acceptable to us, because we believe we have irreparable harm.

15      And while we could have asked for a TRO on Monday of

16  last week, I chose -- because it's my style to give notice and

17  try to get the City onboard with an ability to respond.

18  However, the minute that they present the Court with a vehicle

19  for indefinitely delaying the injunctive relief, then we felt

20  that we should present the Court with a vehicle that we could

21  have submitted last week for actually resolving the case and

22  getting it over with.

23      And so that's why --

24      THE COURT:  Well, what is the <u>Benson</u> case in front of

25  Judge Guzman?

| | |
|---|---|
| 09:33:47 | 1 |
| 09:33:50 | 2 |
| 09:33:54 | 3 |
| 09:33:55 | 4 |
| 09:33:58 | 5 |
| 09:34:01 | 6 |
| 09:34:02 | 7 |

MR. GURA: Well, the Benson case actually is very distantly, if at all, related to this case. The Benson case, first of all, your Honor, has not been answered.

I asked the City's attorneys when they might be at issue. They said, In due time. They won't commit to any particular time in which to answer it.

There is a third case called --

THE COURT: Well, the Federal Rules of Civil Procedure tell them when they have to do that.

MR. GURA: That's right. But apparently they have some kind of agreement, to which I am not privy, that they have it sounds like an indefinite extension to respond. I was told that the --

THE COURT: From whom?

MR. GURA: I suppose that this is something they worked out with the plaintiffs in Benson. I guess defendant's counsel could speak more to the details of their agreement. But when I asked -- obviously I asked, When do you expect to respond to Benson, I would not get a date certain. I was told, In due time.

It should be noted, your Honor, that relating cases should only occur if it, as the rules state, conserves judicial resources. Here, relating the case or at least delaying the progress of this case in order to hear the relatedness motion would waste judicial resources, because

| | | |
|---|---|---|
| 09:34:50 | 1 | this case -- |
| 09:34:51 | 2 | THE COURT:  But you haven't answered my question |
| 09:34:53 | 3 | first, which is what is the <u>Benson</u> case? |
| 09:34:55 | 4 | MR. GURA:  Oh, the <u>Benson</u> case.  Sorry. |
| 09:34:56 | 5 | The <u>Benson</u> case is a very broad challenge by a |
| 09:34:59 | 6 | variety of plaintiffs to various aspects of the Chicago gun |
| 09:35:03 | 7 | ordinance. |
| 09:35:04 | 8 | THE COURT:  Does it include the firing ranges? |
| 09:35:06 | 9 | MR. GURA:  It includes a statement that the <u>Benson</u> |
| 09:35:08 | 10 | plaintiffs desire to open gun ranges.  That's it.  That's all |
| 09:35:12 | 11 | it has in it with respect to gun ranges. |
| 09:35:15 | 12 | And while I suppose I'm happy that they desire to |
| 09:35:18 | 13 | engage in that business, the fact is that case also includes a |
| 09:35:21 | 14 | challenge to the definition, I guess, of a home, where guns |
| 09:35:25 | 15 | can be carried.  It challenges the way in which guns are to be |
| 09:35:29 | 16 | kept, according to the ordinance.  It challenges rules |
| 09:35:33 | 17 | regarding the transportation of firearms.  It's a very broad |
| 09:35:36 | 18 | case that has -- |
| 09:35:37 | 19 | THE COURT:  Do you know the case number? |
| 09:35:38 | 20 | MR. GURA:  Yes.  The case number is -- I believe we |
| 09:35:40 | 21 | referenced it in our papers.  It's -- |
| 09:35:42 | 22 | THE COURT:  In the TRO? |
| 09:35:43 | 23 | MR. GURA:  Yes. |
| 09:35:46 | 24 | THE COURT:  That was filed last night before |
| 09:35:48 | 25 | midnight. |

09:35:49  1          MR. GURA:  It's ...

09:35:55  2          MR. SIGALE:  Your Honor, it's 10-cv-4184.

09:36:03  3          THE COURT:  And who are the plaintiffs in that case?

09:36:04  4          MR. SIGALE:  It's some individuals.  I believe the

09:36:08  5  National Rifle Association.  It's the NRA case.

09:36:11  6          THE COURT:  Okay.

09:36:11  7          MR. GURA:  They're sponsoring it.  I don't know if

09:36:14  8  they are a party to it.

09:36:15  9          THE COURT:  And you are not a party to it?

09:36:16  10         MR. GURA:  We are not a party to it.  We have no

09:36:18  11  desire to be involved with it.  We do not challenge the bulk

09:36:21  12  of what they're complaining about.  And I should say that

09:36:24  13  there's a great deal of difference even with respect to the

09:36:27  14  range ban challenge, because we have a First Amendment

09:36:30  15  argument, which is a very big part of our case.  They do not.

09:36:33  16       We assert that some of our plaintiffs and our

09:36:36  17  organizational clients' members and supporters are going to

09:36:39  18  lose their ability to register firearms, if they don't have

09:36:42  19  access to gun ranges in time for the City's deadlines that are

09:36:46  20  going to kick in very soon.  They have no such allegation at

09:36:49  21  all.

09:36:49  22       There's no allegation in <u>Benson</u> that anyone is unable

09:36:52  23  to register firearms for lack of range training.  And, of

09:36:56  24  course, we also have in our case one plaintiff, the Illinois

09:37:04  25  State Rifle Association, which does, in fact, operate a gun

| | | |
|---|---|---|
| 09:37:07 | 1 | range not that far from here, but far enough, and they will |
| 09:37:10 | 2 | want to come into Chicago. |
| 09:37:11 | 3 | We have another plaintiff, Action Target, which is |
| 09:37:14 | 4 | actually in the business of constructing and operating gun |
| 09:37:19 | 5 | ranges in the City of Chicago, and we also have plaintiffs who |
| 09:37:21 | 6 | are set to bring in a mobile range facility. It's contained |
| 09:37:26 | 7 | in a tractor-trailer that can be parked here, and we have a |
| 09:37:29 | 8 | parking spot for it in the City of Chicago. So we can |
| 09:37:32 | 9 | immediately bring in a gun range and have people trained. |
| 09:37:34 | 10 | THE COURT: Now, that I want to see how could you |
| 09:37:37 | 11 | shoot a gun in a mobile truck. |
| 09:37:41 | 12 | MR. GURA: It's usually used for law enforcement |
| 09:37:43 | 13 | purposes. |
| 09:37:44 | 14 | THE COURT: Okay. |
| 09:37:44 | 15 | MR. GURA: What happens is they have a |
| 09:37:45 | 16 | tractor-trailer, and inside of it they have a -- I believe |
| 09:37:49 | 17 | they have three target positions. And the usual application |
| 09:37:53 | 18 | for these things is they either bring them to police |
| 09:37:57 | 19 | departments where they don't have an easy range accessible, so |
| 09:38:02 | 20 | instead of having all the officers drive to some distant |
| 09:38:05 | 21 | range, the range comes to them. And, also, I believe these |
| 09:38:08 | 22 | things are sometimes used in different trade shows. |
| 09:38:10 | 23 | But, in any event, it's fully EPA certified. It is a |
| 09:38:14 | 24 | safe and effective gun range, and we have -- |
| 09:38:17 | 25 | THE COURT: So what is the back of the truck made of |

| | | |
|---|---|---|
| 09:38:19 | 1 | so that you can shoot? |
| 09:38:21 | 2 | MR. GURA: I believe it's -- it's inside the trailer. |
| 09:38:23 | 3 | I believe they have a bullet trap in it. These things have |
| 09:38:26 | 4 | been around for some time and we have actually -- we have a |
| 09:38:30 | 5 | contract. We have a lease to park it, and we can bring it in |
| 09:38:35 | 6 | and we can have people trained. And then they would be in |
| 09:38:39 | 7 | compliance with the Chicago gun ordinance. |
| 09:38:41 | 8 | THE COURT: Okay. |
| 09:38:42 | 9 | MR. GURA: So we are ready to go. The Benson |
| 09:38:44 | 10 | plaintiffs, they have a desire. I respect that. But it's not |
| 09:38:48 | 11 | a case that's ripe for decision by any means, and our case is. |
| 09:38:52 | 12 | So judicial resources would be advanced by resolving this |
| 09:38:58 | 13 | case. You know, we really have an ongoing injury here, and |
| 09:39:03 | 14 | we'd like to have it addressed. |
| 09:39:07 | 15 | THE COURT: I'm looking at the motion for relatedness |
| 09:39:10 | 16 | that was filed, not in any surprise, on Friday night, but |
| 09:39:14 | 17 | actually on the 20th citing to your case. And, of course, |
| 09:39:20 | 18 | it's filed before Judge Guzman, because he has the lower |
| 09:39:26 | 19 | numbered case. |
| 09:39:28 | 20 | All right. Let's hear from the City and what your |
| 09:39:31 | 21 | position is on all of this. |
| 09:39:32 | 22 | MR. WORSECK: Sure. Thank you, your Honor. |
| 09:39:33 | 23 | As Mr. Gura's submission has made eminently clear |
| 09:39:38 | 24 | this morning, his beef is with the reassignment motion that |
| 09:39:43 | 25 | the City filed. He thinks this case is different than Benson. |

09:39:46  1   We disagree.

09:39:47  2        Both lawsuits challenge the constitutionality of the

09:39:51  3   City's recently enacted gun ordinance and the exact same

09:39:54  4   provision.  The sole provision that's at issue in Mr. Gura's

09:39:59  5   lawsuit, the ban on gun ranges, is also a part of the Benson

09:40:02  6   case on all fours.

09:40:04  7        The Benson case also presents plaintiffs, as does

09:40:07  8   this case, who seek not only to operate a gun range, but seek

09:40:11  9   to patronize a gun range to train in the use of firearms.

09:40:18  10  That is the only thing that has changed since last Monday when

09:40:21  11  the motion for the preliminary injunction was filed.

09:40:25  12        We think it makes eminent sense for Mr. Guzman --

09:40:29  13  excuse me -- for Judge Guzman, with respect to your Honor, of

09:40:32  14  course, to address all of these issues at once in a single

09:40:38  15  judicial forum.  That's what the rules provide for in the

09:40:42  16  local -- in the Northern District.

09:40:45  17        If Mr. Gura thinks that there are differences between

09:40:47  18  his case and Benson, Judge Guzman is perfectly qualified to

09:40:51  19  entertain those.  If this case presents some greater need for

09:40:56  20  judicial action than does Benson, Judge Guzman is perfectly

09:41:00  21  capable of granting that.

09:41:02  22        On that issue, your Honor, we think that there is

09:41:04  23  clearly no irreparable harm presented in this case.

09:41:08  24        What the plaintiffs are really complaining about is

09:41:11  25  having to travel out to the suburbs to attain their training

| | |
|---|---|
| 09:41:15 | 1 |
| 09:41:18 | 2 |
| 09:41:21 | 3 |
| 09:41:25 | 4 |
| 09:41:27 | 5 |
| 09:41:32 | 6 |
| 09:41:34 | 7 |
| 09:41:36 | 8 |
| 09:41:42 | 9 |
| 09:41:46 | 10 |
| 09:41:49 | 11 |
| 09:41:54 | 12 |
| 09:41:58 | 13 |
| 09:42:02 | 14 |
| 09:42:05 | 15 |
| 09:42:05 | 16 |
| 09:42:11 | 17 |
| 09:42:21 | 18 |
| 09:42:27 | 19 |
| 09:42:31 | 20 |
| 09:42:35 | 21 |
| 09:42:40 | 22 |
| 09:42:42 | 23 |
| 09:42:43 | 24 |
| 09:42:45 | 25 |

1 and not being able to get that training in Chicago. That is
2 simply an issue of time and expense, and that is the kind of
3 issue that's compensable via damages after trial, should
4 plaintiffs prevail.
5       Ms. Ezell, who has already attained her training, she
6 is one of the three plaintiffs in this case. The other
7 individual plaintiffs in this case -- the other two individual
8 plaintiffs, according to their own affidavits, frequent gun
9 ranges and/or supervise and train at gun ranges on their own
10 free time. If they have chosen to do this in their free time
11 for recreation, certainly it's not an irreparable harm to ask
12 them to go out to these very same ranges that they go to
13 already to attain their one hour of training in order to
14 comply with the Chicago ordinance. So there's clearly no
15 emergency --
16       THE COURT: Well, I'm reading the <u>Benson</u> complaint,
17 and it does challenge by Second Amendment as well as the
18 Fourteenth Amendment the firing range issue as well. So it
19 seems like it's a broader case than your case, which is
20 focused solely on the firing ranges, but there's a few
21 paragraphs challenging the firing range aspect of the statute.
22       MR. GURA: Your Honor, if I may respond?
23       THE COURT: Of course.
24       MR. GURA: Okay. First of all, we have a very
25 crystal clear case of irreparable harm. To tell people that

| | | |
|---|---|---|
| 09:42:49 | 1 | they need to go outside the city to exercise constitutional |
| 09:42:53 | 2 | rights is not a solution.  We don't tell these people that |
| 09:42:56 | 3 | they can go to their church outside the city.  They can go to |
| 09:42:58 | 4 | the bookstore outside the city, inside the city.  We have |
| 09:43:02 | 5 | declared a constitution free zone.  The fact is that -- |
| 09:43:03 | 6 | THE COURT:  Well, we actually do have places where we |
| 09:43:05 | 7 | limit First Amendment and association rights, based upon a |
| 09:43:09 | 8 | balancing of the interests -- |
| 09:43:10 | 9 | MR. GURA:  That's right. |
| 09:43:11 | 10 | THE COURT:  -- so it's not -- it doesn't |
| 09:43:13 | 11 | automatically show an irreparable harm. |
| 09:43:16 | 12 | MR. GURA:  That's right.  But, your Honor, we would |
| 09:43:17 | 13 | say that if the City wants to draft a law like that, then we |
| 09:43:21 | 14 | could address that kind of case.  But we don't have here a |
| 09:43:23 | 15 | question of zoning ordinance or time, place, and manner |
| 09:43:27 | 16 | regulation. |
| 09:43:27 | 17 | We have here in the City that's over 200 square |
| 09:43:30 | 18 | miles, that's home to millions of people, a city that mandates |
| 09:43:33 | 19 | that people train with firearms, because it recognizes how |
| 09:43:38 | 20 | critical that is to public safety, a complete ban on the |
| 09:43:41 | 21 | exercise of Second Amendment rights and also training on First |
| 09:43:44 | 22 | Amendment activity is spelled out in our preliminary |
| 09:43:47 | 23 | injunction motion.  So we have here irreparable harm, and this |
| 09:43:49 | 24 | TRO could have been filed a week ago. |
| 09:43:51 | 25 | We believe that under the Seventh Circuit's precedent |

09:43:53    1    describing what irreparable harm is, we could have gone for a

09:43:57    2    TRO a week ago.  We didn't do so out of professional courtesy

09:44:00    3    to the City, because we wanted to give them an opportunity to

09:44:03    4    respond.  And I feel that what we have here is a case of no

09:44:07    5    good deed going unpunished, because instead of taking the time

09:44:10    6    that we've given them to meet the merits of the case, instead

09:44:14    7    they have come out with some kind of an argument for why the

09:44:16    8    case should never be addressed.

09:44:18    9         So respectfully, your Honor, we have irreparable

09:44:20    10    harm.  We believe these are very serious allegations.  The

09:44:23    11    case is ripe.  It's ready for decision.

09:44:25    12         The preliminary injunction might even be suitable

09:44:27    13    under Rule 65 for combining with a trial on the merits.  And

09:44:32    14    so we would respectfully request that the Court rule on the

09:44:35    15    issue.  We don't really care which judge rules on it, but we

09:44:39    16    do need to have it ruled on soon, because one thing that we do

09:44:43    17    not address are the City's deadlines.

09:44:45    18         The City has deadlines for people to comply with

09:44:48    19    training requirements.  And once those deadlines expire,

09:44:52    20    people have lost their rights.  They have lost their firearms.

09:44:56    21    And every day that goes by that we don't get relief from this

09:45:00    22    is a day closer to those deadlines.  And, you know, it makes a

09:45:05    23    huge difference to our clients whether or not they can do this

09:45:08    24    now as opposed to later.

09:45:09    25         We don't -- we will be very happy to argue the

09:45:12　1　Rule 40 motion at the appropriate time whenever that is.

09:45:15　2　Nothing this Court does will deprive Judge Guzman of the

09:45:19　3　ability to rule on that motion.  Even if this Court issues

09:45:22　4　some kind of an order on the TRO or the preliminary injunction

09:45:25　5　and one of the parties appeals it to the Seventh Circuit, the

09:45:28　6　District Court would still retain concurrent jurisdiction to

09:45:31　7　entertain the Rule 40 motion.

09:45:33　8　　　　So there's nothing we're doing that prevents them

09:45:36　9　from asking for this relief from Judge Guzman.  All we're

09:45:40　10　asking for is that the irreparable harm be addressed at a time

09:45:45　11　when it's meaningful for the Courts to do so.

09:45:46　12　　　　MR. WORSECK:  Your Honor, if I may?

09:45:46　13　　　　THE COURT:  Sure.

09:45:47　14　　　　MR. WORSECK:  If there were an irreparable harm here,

09:45:50　15　Mr. Gura, in looking out for his clients, could simply consent

09:45:53　16　to the City's reassignment motion.  In fact, we offered to

09:45:59　17　Mr. Gura to waive our opening brief in support of that motion,

09:46:02　18　give him whatever sort of fast track briefing schedule he

09:46:04　19　wanted, and have Judge Guzman make a ruling as soon as

09:46:09　20　necessary.

09:46:10　21　　　　Further, on this issue of irreparable harm, Mr. Gura

09:46:13　22　likes to invoke the First Amendment principle that the denial

09:46:17　23　of First Amendment rights is irreparable harm.  This is a

09:46:21　24　Second Amendment case.

09:46:22　25　　　　Nothing in the City's ordinances prohibit the speech

09:46:26   1   or instruction relating to firearms use. It simply prohibits

09:46:30   2   the discharge at a shooting range or a discharge elsewhere for

09:46:35   3   nonself-defense related purposes. Those are Second Amendment

09:46:38   4   issues.

09:46:40   5           Travel to the suburbs to attain one hour of training

09:46:43   6   is compensable via damages. Should these particular

09:46:47   7   plaintiffs fail to comply with the City's requirement to

09:46:51   8   submit their CFP application by mid-October -- and the only

09:46:55   9   reason they want to do that is so that they can preserve the

09:46:58   10   right to possess the particular firearms that they already

09:47:00   11   have. If they don't get that application on file in time,

09:47:04   12   they would lose the right to possess particular firearms.

09:47:07   13   Again, the loss of particular property is compensable in

09:47:10   14   damages. Nothing prohibits these plaintiffs from exercising

09:47:13   15   what is really at the core of the Second Amendment, which is

09:47:16   16   the possession of arms for self defense in the home. They are

09:47:19   17   free to apply to do that at any time.

09:47:21   18           THE COURT: All right.

09:47:22   19           MR. GURA: Your Honor?

09:47:22   20           THE COURT: No, this is what I am doing. As far as

09:47:25   21   your preliminary injunction is concerned, there will be a

09:47:31   22   two-week response time in writing and a one-week reply.

09:47:35   23           And as far as the temporary restraining order that

09:47:39   24   was filed a few hours ago, I will hear that this afternoon, at

09:47:57   25   3:30 this afternoon. And I will accept any type of written

09:48:02  1  response, if the defendant wants to give me a written

09:48:05  2  response.  But I haven't read it, so I am not going to rule on

09:48:08  3  a TRO that I haven't read.

09:48:10  4          MR. GURA:  Sure.

09:48:10  5          THE COURT:  So I just got it.  I will read it, and I

09:48:13  6  have other matters on my call throughout the day, and we'll

09:48:16  7  have the hearing at 3:30.

09:48:17  8          MR. GURA:  Sure.

09:48:18  9          MR. WORSECK:  Your Honor, on the preliminary

09:48:19  10  injunction schedule that you just set.

09:48:20  11          THE COURT:  Yes.

09:48:21  12          MR. WORSECK:  We take serious issue with some of the

09:48:23  13  factual allegations and factual submissions in their

09:48:27  14  affidavits.  And we would, of course, like to conduct

09:48:30  15  discovery on the matters raised in the preliminary injunction

09:48:33  16  submission, and we would ask the Court's leave to do that on a

09:48:37  17  fast track, so that we can have the proper factual corpus at

09:48:41  18  hand --

09:48:41  19          THE COURT:  Can you give me some sense of what that

09:48:44  20  would be, of how many individuals you intend to depose or

09:48:47  21  gather information from, so I have some sense of that for a

09:48:52  22  fast track analysis?

09:48:53  23          MR. WORSECK:  I don't know that we would need to

09:48:55  24  spray beyond the plaintiffs to the lawsuit.  We would

09:48:57  25  obviously be interested in just how much of a burden it is to

| | |
|---|---|
| 09:49:00 | 1 |
| 09:49:03 | 2 |
| 09:49:07 | 3 |
| 09:49:11 | 4 |

1  travel out to the suburbs, when they are already going out

2  there anyway for gun training.  We'd like to take discovery of

3  how many weapons they stand to lose, if they don't get their

4  application on file.

5          THE COURT:  And how many plaintiffs do we have?  We

6  have five?

7          MR. WORSECK:  Your Honor, also the opening of a

8  mobile gun range presents serious zoning issues, environmental

9  issues, licensing issues, public safety issues, and the

10  plaintiffs concede in their papers that those are all valid

11  concerns of the City.

12          We would, therefore, need to take discovery on the

13  nuts and bolts of what this range is, how it would operate,

14  the environmental impacts presented, the safety impacts

15  presented, the security impacts presented, the zoning impacts

16  presented.

17          THE COURT:  Okay.  As far as the preliminary

18  injunction your motion for discovery is granted.  And I will

19  give you a period of discovery 'til September 30th, and then

20  your response to the preliminary injunction will be due

21  October 17th, and a reply October 14th.

22          Of course, the discovery during this period of time

23  should be open between the two of you.  It is expedited for

24  purposes of the preliminary injunction.  And I will have a

25  hearing on the preliminary injunction, if you want to present

| | |
|---|---|
| 09:50:29 | 1 |
| 09:50:39 | 2 |
| 09:50:42 | 3 |
| 09:50:46 | 4 |
| 09:50:47 | 5 |
| 09:50:47 | 6 |
| 09:50:48 | 7 |
| 09:50:50 | 8 |
| 09:50:53 | 9 |
| 09:50:56 | 10 |
| 09:50:59 | 11 |
| 09:51:03 | 12 |
| 09:51:05 | 13 |
| 09:51:08 | 14 |
| 09:51:08 | 15 |
| 09:51:08 | 16 |
| 09:51:11 | 17 |
| 09:51:13 | 18 |
| 09:51:15 | 19 |
| 09:51:15 | 20 |
| 09:51:16 | 21 |
| 09:51:17 | 22 |
| 09:51:19 | 23 |
| 09:51:22 | 24 |
| 09:51:28 | 25 |

1  oral argument, on October 15th at 1:00 in the afternoon, and

2  that is the preliminary injunction.

3        The TRO is this afternoon at 3:30.  Okay?

4        MR. GURA:  Thank you, your Honor.

5        THE COURT:  Thank you.

6        MR. WORSECK:  Thank you.

7        MR. GURA:  And just to clarify one thing, your Honor?

8  The grounds for the TRO are the same grounds for the

9  preliminary injunction.  The only thing our TRO memorandum

10  did, as your Honor will see, is simply explain why we had

11  decided to move for a TRO.  But the grounds that we rely on

12  are the same ones we submitted last week.

13        THE COURT:  I understand that.  The problem is, is

14  that --

15        MR. GURA:  Sure.

16        THE COURT:  -- I am not going to just if you're

17  waiting for me to rule on something that I haven't looked at,

18  that's not going to be the case.

19        MR. GURA:  Your Honor, I understand.

20        THE COURT:  Okay.

21        MR. GURA:  I simply wanted to clarify what the Court

22  will expect to see.

23        THE COURT:  And I'm not certain whether the notice of

24  a motion for relatedness is -- changes those factors, to the

25  extent that you have.  But what you've asserted to me today is

| | | |
|---|---|---|
| 09:51:32 | 1 | that you had a basis for moving for it before as well. |
| 09:51:34 | 2 | MR. GURA:  We did. |
| 09:51:35 | 3 | THE COURT:  All right.  So I'll take a look at it. |
| 09:51:37 | 4 | All right. |
| 09:51:37 | 5 | MR. GURA:  Thank you. |
| 09:51:38 | 6 | MR. WORSECK:  Thank you, your Honor. |
| 09:51:39 | 7 | MR. AGUIAR:  Thank you, your Honor. |
| 09:51:39 | 8 | MR. GURA:  Thank you. |
| 09:51:39 | 9 | (Adjourned at 9:51 a.m.) |
| 09:51:39 | 10 | - - - |
| 10:12:21 | 11 | |