03:22:02

1

2

3

4                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
5                         EASTERN DIVISION

6

7

RHONDA EZELL, et al.,              Case No. 1:10-cv-05135
8
    Plaintiffs,                    Chicago, Illinois
9                                  August 23, 2010
        v.                         Emergency Motion for TRO
10
CITY OF CHICAGO,
11
    Defendant.
12  -------------------------------

13
                          VOLUME 1-B
14          TRANSCRIPT OF EMERGENCY MOTION FOR TRO
           BEFORE THE HONORABLE VIRGINIA M. KENDALL
15               UNITED STATES DISTRICT JUDGE

16

17  APPEARANCES:

18
For the Plaintiffs:    Gura & Possessky, PLLC
19                     By:  Alan Gura
                       101 N. Columbus St., Ste. 405
20                     Alexandria, VA 22314
                       (703) 835-9085
21
                           - and -
22
                       Law Firm of David G. Sigale, P.C.
23                     By:  David G. Sigale
                       4300 Commerce Ct., Ste. 300-3
24                     Lisle, IL 60532
                       (630) 452-4547
25

```
 1

 2    APPEARANCES:

 3

 4
      For the Defendant:        Chicago Corporation Counsel
 5                              By:  Andrew W. Worseck, and
                                     William M. Aguiar
 6                              30 N. LaSalle Street
                                Chicago, IL 60602
 7                              (312) 744-2784

 8

 9    COURT REPORTER:          FEDERAL OFFICIAL COURT REPORTER
                               April M. Metzler, RPR, CRR, FCRR
10                             219 South Dearborn St., Rm. 2318-A
                               Chicago, IL 60604
11                             (312) 408-5154
                               April_Metzler@ilnd.uscourts.gov
12

13

14

15

16

17

18

19

20

21

22

23

24
      Proceedings recorded by mechanical stenography; transcript
25    produced by notereading.
```

03:53:14　1　　　　　　　　(Resumed at 3:53 p.m.)

03:53:14　2　　　　　　THE CLERK:  This is case 10C5135, Ezell versus City

03:53:20　3　of Chicago.

03:53:20　4　　　　　　MR. WORSECK:  Good afternoon, your Honor.  Andrew

03:53:22　5　Worseck for the City.

03:53:23　6　　　　　　THE COURT:  Good afternoon.

03:53:24　7　　　　　　MR. AGUIAR:  Good afternoon, your Honor.  William

03:53:26　8　Aguiar also on behalf of the City.

03:53:28　9　　　　　　THE COURT:  Good afternoon.

03:53:28　10　　　　　　MR. GURA:  Good afternoon, your Honor.  Alan Gura for

03:53:30　11　the plaintiffs.

03:53:30　12　　　　　　THE COURT:  Okay.  Good afternoon.

03:53:31　13　　　　　　MR. SIGALE:  And good afternoon, your Honor.  David

03:53:34　14　Sigale on behalf of the plaintiffs.

03:53:36　15　　　　　　THE COURT:  Okay.  Good afternoon.

03:53:37　16　　　　　　Let me hear from the plaintiffs first as to why you

03:53:39　17　believe the TRO should be entered.

03:53:41　18　　　　　　MR. WORSECK:  Your Honor, just for a point of

03:53:43　19　clarification, we had delivered to your chambers --

03:53:45　20　　　　　　THE COURT:  I got it and I've read it.  Thanks.

03:53:48　21　　　　　　MR. GURA:  Thank you very much, your Honor.

03:53:49　22　　　　　　The Supreme Court recently made clear that the Second

03:53:53　23　Amendment applies to the City of Chicago.  It is not an answer

03:53:56　24　to people wishing to exercise Second Amendment rights, that

03:53:59　25　they go to the suburbs or somewhere else.

| | | |
|---|---|---|
| 03:54:00 | 1 | After all, the Second Amendment is in force here, as |
| 03:54:03 | 2 | is, of course, the First Amendment.  This is not a Bill of |
| 03:54:06 | 3 | Rights free zone. |
| 03:54:07 | 4 | Equally obvious, we believe, is that depriving people |
| 03:54:11 | 5 | of a means of self defense will cause irreparable harm.  The |
| 03:54:15 | 6 | Court announced in Heller that the core of the Second |
| 03:54:19 | 7 | Amendment right is the right to exercise self defense and to |
| 03:54:21 | 8 | have the means of being able to do so. |
| 03:54:24 | 9 | Also, another point, which we believe is beyond |
| 03:54:27 | 10 | dispute, is the notion that people are safer and the public is |
| 03:54:30 | 11 | safer when people know how to use their firearms, when they |
| 03:54:33 | 12 | have training, and when they are proficient in the use of |
| 03:54:36 | 13 | firearms. |
| 03:54:37 | 14 | The City obviously agrees with us, because they |
| 03:54:39 | 15 | mandate training as a condition of having firearms.  If you |
| 03:54:44 | 16 | don't get the training, the City does not believe that you are |
| 03:54:45 | 17 | safe enough to have the guns.  And it follows -- I'm sure the |
| 03:54:48 | 18 | City would admit, if it were forced to -- that it's also |
| 03:54:52 | 19 | important to maintain proficiency in firearms.  If you don't |
| 03:54:56 | 20 | practice, you may not be that good at it after a while. |
| 03:55:00 | 21 | So the irreparable harm here is one that takes place |
| 03:55:04 | 22 | in several contexts, when it comes to the Second Amendment. |
| 03:55:09 | 23 | First of all, if people can't register guns, because they |
| 03:55:12 | 24 | don't have the training, obviously they're not going to have |
| 03:55:13 | 25 | guns, period, with which they can defend themselves.  That's a |

| | |
|---|---|
| 03:55:13 | 1 |
| 03:55:17 | 2 |
| 03:55:21 | 3 |
| 03:55:24 | 4 |
| 03:55:27 | 5 |
| 03:55:31 | 6 |
| 03:55:34 | 7 |
| 03:55:37 | 8 |
| 03:55:42 | 9 |
| 03:55:46 | 10 |
| 03:55:47 | 11 |
| 03:55:52 | 12 |
| 03:55:56 | 13 |
| 03:56:00 | 14 |
| 03:56:04 | 15 |
| 03:56:05 | 16 |
| 03:56:09 | 17 |
| 03:56:12 | 18 |
| 03:56:16 | 19 |
| 03:56:19 | 20 |
| 03:56:21 | 21 |
| 03:56:24 | 22 |
| 03:56:30 | 23 |
| 03:56:35 | 24 |
| 03:56:38 | 25 |

1 clear Second Amendment violation.

2        Second, maintaining proficiency with firearms is an
3 aspect of the Second Amendment right.  The Heller Court
4 specifically noted that a person exercises Second Amendment
5 rights when they go to a range and practice in a safe place.
6 We quoted that language.  It's very clear.

7        In fact, the Second Amendment's text itself speaks of
8 a well regulated militia and the Supreme Court defined that.
9 I know some people disagreed with the Supreme Court defining
10 that as meaning the body of the people who are proficient and
11 well supplied and can practice and know how to use their
12 firearms.  Otherwise the militia is not very well regulated
13 and not very effective.  So all of those things point to the
14 fact that we do have a fairly severe harm on the Second
15 Amendment level.

16        Also, there's a First Amendment issue in this case.
17 Training and education and learning and familiarization are
18 all recognized forms of protected speech.  The Supreme Court
19 has made it very clear time and again, most recently in the
20 Holder case that we cited.

21        That training is speech.  The Fourth Circuit case
22 that we cited, Edwards versus City of Goldsboro, specifically
23 held that teaching a class about the carrying of firearms that
24 is a requirement for the obtaining of the state license is
25 protected speech.  In fact, the Fourth Circuit held that it

| | |
|---|---|
| 03:56:41 | 1 | occupies the highest rung of First Amendment values. |
| 03:56:44 | 2 | And so we know here that we're talking about a law |
| 03:56:48 | 3 | which is designed to and does impact core Second and First |
| 03:56:55 | 4 | Amendment rights. The irreparable harm, we believe, is fairly |
| 03:56:58 | 5 | obvious, and I don't see how the City would defend itself on |
| 03:57:02 | 6 | the merits, even if we get beyond the structure of the |
| 03:57:05 | 7 | preliminary injunction, TRO-type regime. |
| 03:57:07 | 8 | In fact, the City's opposition doesn't say a whole |
| 03:57:10 | 9 | lot, if anything, about the First Amendment claim, the Second |
| 03:57:14 | 10 | Amendment claim. It's very thin on those points, and we |
| 03:57:17 | 11 | believe that the reason it's thin is because there's really |
| 03:57:19 | 12 | not much to say. |
| 03:57:20 | 13 | I will address some of the other things that they do |
| 03:57:23 | 14 | say, because I think it merits some response. |
| 03:57:27 | 15 | THE COURT: Why don't you address what you say -- |
| 03:57:27 | 16 | MR. GURA: Sure. |
| 03:57:27 | 17 | THE COURT: -- because you need to prove to me |
| 03:57:29 | 18 | likelihood of success on the merits. You need prove to me |
| 03:57:32 | 19 | inadequate remedy at law and the irreparable harm. |
| 03:57:36 | 20 | MR. GURA: Sure. |
| 03:57:36 | 21 | Likelihood of success on the merits. Here's what the |
| 03:57:39 | 22 | _Heller_ case had to say. The Constitution secures the right -- |
| 03:57:41 | 23 | I'm quoting here, this is from page 2812 S.Ct. 128 -- line |
| 03:57:47 | 24 | 128. |
| 03:57:47 | 25 | The Constitution secures the right of the people to |

03:57:49  1   keep and bear arms.  No doubt a citizen who keeps a gun or

03:57:53  2   pistol under judicious precautions, practices in safe places

03:57:57  3   the use of it, and in due time teaches -- to do the same

03:57:59  4   exercises his individual right.

03:58:02  5          THE COURT:  And they can, right, and so they can bear

03:58:05  6   arms.  They can keep their arms.  They just have to go outside

03:58:09  7   of the city limits to have their firearm training.

03:58:13  8          So the question is, is it impossible for them to

03:58:16  9   comply with the statute?  Is the statute reasonably or

03:58:21  10  rationally related to whatever concern they have in regulating

03:58:27  11  gun -- firing ranges within the city?

03:58:30  12         MR. GURA:  Well, it's always possible to comply --

03:58:34  13  for example, let's suppose that the City banned all churches

03:58:37  14  and they said, Well, if you want to practice your religion,

03:58:40  15  you can simply go outside city limits to do so.  One

03:58:41  16  supposes --

03:58:41  17         THE COURT:  But they're not banning all churches.  I

03:58:44  18  mean, let's make an apples to apples analogy, Counsel.

03:58:48  19         I mean, you can have a gun.  You can possess a gun.

03:58:51  20  You can register your gun.  You have one hour of training, you

03:58:54  21  have to go elsewhere.

03:58:55  22         MR. GURA:  Because you should be able to get that

03:58:57  23  training in Chicago because the training itself --

03:58:59  24         THE COURT:  Why?

03:59:00  25         MR. GURA:  Because training is also a component of

| | | |
|---|---|---|
| 03:59:02 | 1 | the Second Amendment right. |
| 03:59:03 | 2 | THE COURT:  Okay. |
| 03:59:03 | 3 | MR. GURA:  The right to practice with the firearm, |
| 03:59:05 | 4 | the right to learn about the firearm, the right to familiarize |
| 03:59:12 | 5 | one's self with firearms is equally part of the Second |
| 03:59:14 | 6 | Amendment right. |
| 03:59:15 | 7 | THE COURT:  Okay.  So is the city boundary then so |
| 03:59:19 | 8 | significant?  Because say I live over in Austin and on the |
| 03:59:23 | 9 | other side is Oak Park.  So I am one block from a firing range |
| 03:59:27 | 10 | in Oak Park.  I would certainly be able to go to Oak Park to |
| 03:59:31 | 11 | get my firing range training, and then I can possess my |
| 03:59:36 | 12 | firearm in Austin, right? |
| 03:59:37 | 13 | MR. GURA:  The same argument can be made about |
| 03:59:39 | 14 | bookstores.  It can be made about churches.  It can be -- |
| 03:59:42 | 15 | THE COURT:  Well, the bookstore not really, because. |
| 03:59:44 | 16 | Again, apples to apples, Counsel.  Bookstore, if I said to |
| 03:59:47 | 17 | you, You can't have any bookstores that have pornography |
| 03:59:50 | 18 | within the city limits, period, and I have no rational basis |
| 03:59:53 | 19 | for it, period, that's not the same, because all these people |
| 03:59:56 | 20 | can have guns, right?  So they can have guns but they have to |
| 03:59:59 | 21 | train outside of the border. |
| 04:00:00 | 22 | So is the border an unnecessary or artificial |
| 04:00:04 | 23 | boundary here?  I'm not quite confident it fits into that same |
| 04:00:08 | 24 | analysis. |
| 04:00:09 | 25 | MR. GURA:  The borders of the City of Chicago are |

| | | |
|---|---|---|
| 04:00:11 | 1 | within the United States, and the Second Amendment applies |
| 04:00:13 | 2 | within those borders.  So if there's a right to go to a range, |
| 04:00:17 | 3 | then that right applies in Chicago and people have the right |
| 04:00:20 | 4 | to do it in Chicago.  After all, Oak Park could also ban |
| 04:00:24 | 5 | ranges and so could the next town and the next town and so on. |
| 04:00:27 | 6 | THE COURT:  But then we would say, You can't comply |
| 04:00:30 | 7 | with the statute, right?  Then we would say that an individual |
| 04:00:34 | 8 | really can't comply with the statue of getting trained in |
| 04:00:35 | 9 | another jurisdiction, right? |
| 04:00:37 | 10 | MR. GURA:  The fact is that this does place a burden |
| 04:00:37 | 11 | on people.  There are people who cannot as easily access |
| 04:00:42 | 12 | training right now. |
| 04:00:43 | 13 | We have in the record declarations that state that |
| 04:00:45 | 14 | there's obviously a need right now for training, because the |
| 04:00:47 | 15 | City has now imposed this requirement and people now they have |
| 04:00:50 | 16 | to go get trained.  And if they take a 200-plus square mile |
| 04:00:54 | 17 | city and make it a gun-range-free zone, that's going to have a |
| 04:00:58 | 18 | burden on people's ability to register. |
| 04:01:01 | 19 | But, also, beyond the ability to simply register the |
| 04:01:03 | 20 | firearm, it's the actual act of visiting a range and |
| 04:01:06 | 21 | practicing within it, which is protected within the core |
| 04:01:09 | 22 | aspects of the Second Amendment. |
| 04:01:10 | 23 | Now, the Heller case is instructive -- |
| 04:01:12 | 24 | THE COURT:  Wait.  But you wouldn't disagree that |
| 04:01:14 | 25 | they can put reasonable restrictions on that Second Amendment |

| | | |
|---|---|---|
| 04:01:18 | 1 | right, if they have a reasonable basis for doing it under the |
| 04:01:21 | 2 | statute and the recent case law, right? |
| 04:01:24 | 3 | MR. GURA:  I -- here's -- I wouldn't use the word |
| 04:01:26 | 4 | reasonable because -- |
| 04:01:27 | 5 | THE COURT:  How about rational? |
| 04:01:28 | 6 | MR. GURA:  That's the last word we can use after |
| 04:01:30 | 7 | McDonald, which calls the right fundamental.  I would agree, |
| 04:01:34 | 8 | your Honor, that they can properly regulate within |
| 04:01:37 | 9 | constitutional standards and those constitutional standards, |
| 04:01:40 | 10 | after McDonald, are strict scrutiny, because it was held to be |
| 04:01:45 | 11 | a fundamental right. |
| 04:01:45 | 12 | THE COURT:  Right. |
| 04:01:45 | 13 | MR. GURA:  So obviously we are not against the idea |
| 04:01:48 | 14 | of regulating -- |
| 04:01:52 | 15 | THE COURT:  I'm not quite sure whether we couldn't |
| 04:01:52 | 16 | use the word reasonable, because under strict liability of |
| 04:01:55 | 17 | certain First Amendment rights, of course, we still use the |
| 04:01:58 | 18 | word reasonable in relationship with some of the efforts that |
| 04:02:03 | 19 | municipalities impose, correct? |
| 04:02:06 | 20 | MR. GURA:  The semantic choices is important -- |
| 04:02:08 | 21 | THE COURT:  I agree. |
| 04:02:09 | 22 | MR. GURA:  -- because these are terms of art after a |
| 04:02:13 | 23 | while.  What we know about -- |
| 04:02:14 | 24 | THE COURT:  So answer my question.  Could we not use |
| 04:02:17 | 25 | reasonable in a First Amendment strict liability scenario? |

| | | |
|---|---|---|
| 04:02:22 | 1 | MR. GURA: If we're applying the same right that's |
| 04:02:24 | 2 | thought of as to securing the First Amendment rights, then |
| 04:02:27 | 3 | yes. If we are -- in fact, the First Amendment has been cited |
| 04:02:30 | 4 | repeatedly in Heller and McDonald as being an analog of the |
| 04:02:34 | 5 | Second Amendment. |
| 04:02:34 | 6 | We've had recent cases -- there was a case in the |
| 04:02:36 | 7 | Third Circuit earlier this month called the United States |
| 04:02:39 | 8 | versus Marzarella, where the Third Circuit explicitly held |
| 04:02:43 | 9 | that the First Amendment structure is applicable to the Second |
| 04:02:47 | 10 | Amendment and they would look to First Amendment standards to |
| 04:02:47 | 11 | learn about the Second Amendment. |
| 04:02:49 | 12 | But here's something that's important to recall from |
| 04:02:51 | 13 | Heller itself and what it teaches us. Heller did not announce |
| 04:02:56 | 14 | a standard of review, and a lot of people were frustrated by |
| 04:02:59 | 15 | that. There's a lesson in Heller's refusal to announce a |
| 04:03:01 | 16 | standard of review and that lesson is this. |
| 04:03:04 | 17 | When a law violates a core aspect of the right, |
| 04:03:08 | 18 | there's no need to announce a standard of review, because it |
| 04:03:13 | 19 | simply conflicts with the core of the right. In Heller, there |
| 04:03:17 | 20 | were essentially two laws that were challenged. One law was a |
| 04:03:21 | 21 | ban on functional firearms in the home. That is, if you had a |
| 04:03:25 | 22 | gun that was properly registered, it could never be rendered |
| 04:03:30 | 23 | operable even in times of need for self defense. And the |
| 04:03:32 | 24 | Supreme Court handled that in one sentence, just like the D.C. |
| 04:03:36 | 25 | Circuit did. |

04:03:36  1          They said, If the Second Amendment secures anything,

04:03:38  2  it secures the right to self defense.  Here's a law banning

04:03:41  3  self defense.  It fails any level of scrutiny, it's gone.

04:03:44  4          The second part of _Heller_ was, of course, the ban on

04:03:47  5  handguns, and that also was not a standard of review question.

04:03:50  6  That was more a question of which arms are protected.  And the

04:03:53  7  Court announced a common use test and it applied that test and

04:03:57  8  found that handguns were protected arms, much like in the

04:04:00  9  First Amendment we have to find out whether a form of speech

04:04:05  10  is protected speech or unprotected speech.  That's not an

04:04:05  11  issue we have in this case, your Honor, because they're not --

04:04:08  12  we're not challenging a ban on any particular type of arm or

04:04:11  13  classification like that.

04:04:12  14          What we are challenging, though, is a ban on gun

04:04:16  15  ranges, and we would submit that just like in _Heller_, a

04:04:19  16  functional firearms ban violated a core aspect of the Second

04:04:24  17  Amendment right.

04:04:25  18          A ban on gun ranges violates a core aspect of the

04:04:29  19  Second Amendment right.  It doesn't mean that you can't

04:04:32  20  regulate the use of functional firearms; you can.  It doesn't

04:04:36  21  mean that you can't regulate gun ranges; you can.  But they

04:04:41  22  haven't done that here.

04:04:42  23          What they have done here is they have imposed what we

04:04:45  24  would describe as an overbroad law.  It is not in the form of

04:04:50  25  a zoning law or some kind of a time, place, or manner

| | | |
|---|---|---|
| 04:04:54 | 1 | restriction or some kind of a noise ordinance. We're talking |
| 04:04:57 | 2 | about a law that simply says, Thou shalt not have gun ranges. |
| 04:05:02 | 3 | And if they want to write a narrower law that |
| 04:05:05 | 4 | regulates, rather than prohibits, the exercise of the right, |
| 04:05:08 | 5 | then we may not challenge that law. It might be perfectly |
| 04:05:11 | 6 | fine, or perhaps we could then address it on a narrower basis. |
| 04:05:15 | 7 | And that brings me to the facts of this case, your |
| 04:05:17 | 8 | Honor. The proposed location for the mobile range that we're |
| 04:05:19 | 9 | trying to bring is an industrial zone. This is located, as |
| 04:05:23 | 10 | per the exhibits, at 3636 South Kedzie Street. |
| 04:05:28 | 11 | THE COURT: I guess my question on the mobile range |
| 04:05:30 | 12 | and -- is why we are focusing on that particular one in the |
| 04:05:35 | 13 | sense that we have a few problems -- I have a few problems |
| 04:05:39 | 14 | with the way that your TRO's been brought. In the preliminary |
| 04:05:44 | 15 | injunction setting, it's completely appropriate because you're |
| 04:05:48 | 16 | challenging the statute as it applies in a number of different |
| 04:05:53 | 17 | subsections. |
| 04:05:54 | 18 | In the TRO -- the TRO's come in to say, We're just |
| 04:05:58 | 19 | talking about the opening or the use of firing ranges within |
| 04:06:04 | 20 | the city limits. And the problem I have is that there's so |
| 04:06:08 | 21 | many other subsections of the statute that are implicated if |
| 04:06:12 | 22 | you have a firing range, and your TRO doesn't go to all of |
| 04:06:15 | 23 | those subsections of the statute. |
| 04:06:17 | 24 | And that includes, for example, whether you can carry |
| 04:06:20 | 25 | or possess handguns other than in -- outside of private homes, |

04:06:24  1    whether you move them within interstate commerce, whether

04:06:28  2    there's a prohibition on nondefensive discharge of a firearm.

04:06:31  3    And I think all of these other subsections -- I think there's

04:06:34  4    five of them -- you have in your proposed order for the Court

04:06:37  5    to sign for your proposed TRO, which are not individually

04:06:42  6    addressed, as to why each of these would be a violation and

04:06:48  7    would require the temporary restraining order.

04:06:51  8           MR. GURA:  Your Honor, if I may address that?  The

04:06:56  9    relief that we sought in the TRO -- and I'll take a look at

04:07:02  10   the paper in case I perhaps mistyped it -- but I believe the

04:07:05  11   relief in the TRO is the same relief that we sought in the

04:07:08  12   preliminary injunction, which is the same relief that we

04:07:10  13   sought in the complaint.

04:07:11  14          And what I thought we -- at least what I tried to

04:07:16  15   make clear in the complaint -- and I'll definitely make this

04:07:19  16   clear for the record -- is that with respect to all those

04:07:21  17   other provisions -- we have two paragraphs of relief.  Number

04:07:24  18   1, the total ban on ranges is something we're facially

04:07:28  19   challenging.  But the other ordinances are only challenged,

04:07:31  20   not on their face, but only as applied within a gun range

04:07:34  21   setting.

04:07:35  22          So we are not challenging the way that those are

04:07:38  23   applied anywhere else.  It's simply that if you take that law,

04:07:41  24   which might be perfectly good and valid outside a gun range

04:07:45  25   and you put it inside a gun range, it makes a gun range

| | |
|---|---|
| 04:07:48 | 1 |
| 04:07:48 | 2 |
| 04:07:49 | 3 |
| 04:07:52 | 4 |
| 04:07:57 | 5 |
| 04:08:00 | 6 |
| 04:08:03 | 7 |
| 04:08:06 | 8 |
| 04:08:08 | 9 |
| 04:08:12 | 10 |
| 04:08:16 | 11 |
| 04:08:17 | 12 |
| 04:08:20 | 13 |
| 04:08:24 | 14 |
| 04:08:28 | 15 |
| 04:08:28 | 16 |
| 04:08:30 | 17 |
| 04:08:35 | 18 |
| 04:08:39 | 19 |
| 04:08:41 | 20 |
| 04:08:43 | 21 |
| 04:08:45 | 22 |
| 04:08:49 | 23 |
| 04:08:52 | 24 |
| 04:08:55 | 25 |

1   impossible.

2          So -- for example --

3          THE COURT:  You've almost pled yourself into the

4   relatedness issue with Judge Guzman, though, because by

5   implicating all of those other subsections with your gun range

6   case you are making a case for relatedness to the broader

7   statutory attack in front of Judge Guzman.

8          And as you know, having argued these constitutional

9   issues, we don't want inconsistent rulings at this District

10  Court level.  We don't want to create those in order to

11  analyze the statute.

12         We would like to have, for judicial resources and for

13  the public, one judge ruling on the constitutionality of that

14  statute.  So there is a bit of a Catch-22 in your TRO proposal

15  here.

16         MR. GURA:  Your Honor, we would actually turn that

17  around and say that the Benson plaintiffs did not necessarily

18  make clear what the scope of their challenge to some of these

19  laws is within a gun range setting.

20         We are not having --

21         THE COURT:  Well, they have challenged all of the

22  subsets and then gun ranges is, as I read this morning from

23  the complaint, a few of their paragraphs, which are also

24  consumed within the broader statute.

25         MR. GURA:  We have no desire to challenge those

| | | |
|---|---|---|
| 04:08:57 | 1 | ordinances outside of a gun range context.  All we care about |
| 04:09:00 | 2 | is having a gun range and we can argue -- |
| 04:09:01 | 3 | THE COURT:  But I need to rule on that in the broader |
| 04:09:04 | 4 | context -- |
| 04:09:05 | 5 | MR. GURA:  Sure. |
| 04:09:05 | 6 | THE COURT:  -- in order to do it in the gun range |
| 04:09:07 | 7 | context, right? |
| 04:09:08 | 8 | MR. GURA:  No, actually -- |
| 04:09:09 | 9 | THE COURT:  Why not? |
| 04:09:09 | 10 | MR. GURA:  Because it frequently occurs, your Honor, |
| 04:09:12 | 11 | that a Court strikes down a statute as applied and leaves it |
| 04:09:15 | 12 | on the books for application in other settings. |
| 04:09:18 | 13 | THE COURT:  Another issue here, because you've got |
| 04:09:20 | 14 | this mix of plaintiffs.  And I think there is some bit of a -- |
| 04:09:25 | 15 | some strong weight for your -- as applied to your disabled |
| 04:09:29 | 16 | individuals who may have a difficulty getting outside of the |
| 04:09:31 | 17 | borders of the City of Chicago.  But to suggest that those |
| 04:09:36 | 18 | disabled individuals speak on behalf of the all of the |
| 04:09:37 | 19 | individuals, in an as applied context, is not too accurate. |
| 04:09:43 | 20 | MR. GURA:  Well, we would submit that everyone has |
| 04:09:46 | 21 | the right to visit a gun range -- |
| 04:09:48 | 22 | THE COURT:  Sure. |
| 04:09:48 | 23 | MR. GURA:  -- in the City of Chicago. |
| 04:09:49 | 24 | THE COURT:  Right. |
| 04:09:50 | 25 | MR. GURA:  And some people are going to be more |

| | |
|---|---|
| 04:09:54 | 1 |
| 04:09:57 | 2 |
| 04:10:01 | 3 |
| 04:10:05 | 4 |
| 04:10:09 | 5 |

1  adversely impacted.  But it's always the case, your Honor,

2  that people who are perhaps wealthier or more healthy are

3  better able to deal with an unconstitutional imposition that's

4  imposed by some regulation.  But that doesn't make it right,

5  and it doesn't change the constitutionality of the law itself.

6      THE COURT:  But it does go back to the same issue

7  about you're talking about expense and different classes of

8  individuals.  And if I'm in Austin and I'm in one of the

9  poorest neighborhoods in the City of Chicago, which is our

10  Austin neighborhood, with the highest unemployment rate in the

11  City of Chicago, and if there was, for example, a gun range

12  over in Oak Park, I'd actually be closer to that range and

13  have the ability to access that range to get my hour of

14  training in order to possess my weapon.

15      So isn't the city border an artificial boundary when

16  discussing whether there's a rational basis for their statute

17  and whether your plaintiffs can comply with it within the time

18  range that you've -- that the statute's set forth?

19      MR. GURA:  Well, the city border is most definitely

20  an arbitrary political border.  It exists within a larger

21  territory, namely the United States, where the Second

22  Amendment applies to all levels of government.  And it

23  doesn't -- if you want to go to -- and I would -- and your

24  Honor said at various times in the argument made reference to

25  an apples to apples --

| | | |
|---|---|---|
| 04:11:17 | 1 | THE COURT:  Oh, I'm not arguing. |
| 04:11:18 | 2 | MR. GURA:  I know, I know.  No, no, during this court |
| 04:11:20 | 3 | hearing, your Honor has made reference to -- |
| 04:11:22 | 4 | THE COURT:  Okay. |
| 04:11:22 | 5 | MR. GURA:  -- an apples to apples comparison. |
| 04:11:24 | 6 | Here's the heart of our case.  We believe that a gun |
| 04:11:27 | 7 | range is like a bookstore.  It is like a movie theater.  It is |
| 04:11:30 | 8 | like a church.  It is a constitutionally protected place.  It |
| 04:11:34 | 9 | is a place that relates to the core exercise of a textually |
| 04:11:38 | 10 | enumerated fundamental right, and it cannot be banned within |
| 04:11:42 | 11 | any geographic boundary arbitrarily by the City of Chicago. |
| 04:11:46 | 12 | Let's suppose that hypothetically somebody wanted to |
| 04:11:52 | 13 | open a gigantic combination bookstore/church that would bring |
| 04:11:57 | 14 | in traffic and headaches and it was not an appropriate land |
| 04:12:00 | 15 | use for a place.  The City could not complain that the fact |
| 04:12:05 | 16 | that this one proposed establishment would be bad justifies a |
| 04:12:11 | 17 | ban on all bookstores and all churches. |
| 04:12:14 | 18 | The City is free to regulate the use of property. |
| 04:12:18 | 19 | There are -- there's a whole body of law, not at issue in this |
| 04:12:21 | 20 | case, that deals with that.  But you can't have an overbroad |
| 04:12:27 | 21 | law, and this is an overbroad law.  If they're claiming that |
| 04:12:28 | 22 | there's some harm that comes out of gun ranges, then they can, |
| 04:12:33 | 23 | as they have done in the past prior to July, regulated |
| 04:12:37 | 24 | specifically. |
| 04:12:38 | 25 | They mention this law as new.  If we look at |

04:12:42 1 Mr. Brown's declaration -- he is an older gentleman -- he's

04:12:45 2 used guns in all kinds of places inside the City of Chicago.

04:12:49 3 We have identified a number of ranges that exist currently

04:12:52 4 within the City of Chicago. We are not aware of any problems

04:12:55 5 that exist with these ranges.

04:12:59 6 We have shown that gun ranges can exist in a variety

04:13:02 7 of architectural settings. We're not aware of any other city

04:13:08 8 that bans ranges the way that Chicago does. So, of course,

04:13:11 9 we're not challenging the ability to enact a regulation. If

04:13:14 10 they want to enact a regulation, they've done it before, they

04:13:15 11 can do it again.

04:13:16 12 But what they can't do is say, There might be a

04:13:18 13 problem with some gun ranges, therefore, we're going to ban

04:13:21 14 all of them, and tell you that in order to exercise Second and

04:13:26 15 First Amendment rights you need to leave the City of Chicago.

04:13:28 16 That flies in the face of the Supreme Court's decision in

04:13:30 17 McDonald versus City of Chicago, which said, Chicago actually

04:13:34 18 is a place where the Bill of Rights applies.

04:13:36 19 And if --

04:13:39 20 THE COURT: You used one of my least favorite

04:13:42 21 expressions --

04:13:42 22 MR. GURA: I'm sorry.

04:13:43 23 THE COURT: -- of flying in the face.

04:13:44 24 MR. GURA: I'm sorry.

04:13:44 25 THE COURT: No.

| | |
|---|---|
| 04:13:45 | 1 |
| 04:13:46 | 2 |
| 04:13:49 | 3 |
| 04:13:50 | 4 |
| 04:13:53 | 5 |
| 04:13:54 | 6 |
| 04:13:57 | 7 |
| 04:13:59 | 8 |
| 04:14:01 | 9 |
| 04:14:02 | 10 |
| 04:14:02 | 11 |
| 04:14:02 | 12 |
| 04:14:03 | 13 |
| 04:14:07 | 14 |
| 04:14:10 | 15 |
| 04:14:16 | 16 |
| 04:14:21 | 17 |
| 04:14:27 | 18 |
| 04:14:29 | 19 |
| 04:14:33 | 20 |
| 04:14:36 | 21 |
| 04:14:39 | 22 |
| 04:14:45 | 23 |
| 04:14:50 | 24 |
| 04:14:50 | 25 |

1          (Laughter.)

2          THE COURT:  It's just an overused oral argument

3 expression.

4          MR. GURA:  I'm happy it took me this long to use it.

5          THE COURT:  It's no problem.

6          MR. GURA:  We can think of a -- it contradicts.

7          THE COURT:  It contradicts --

8          MR. GURA:  It squarely contradicts --

9          THE COURT:  It squarely contradicts the holding of

10 the case.

11          MR. GURA:  The holding of McDonald.

12          THE COURT:  There you go.

13          MR. GURA:  And as a practical matter -- just as a

14 housekeeping matter, your Honor -- if everything I say here

15 today cannot convince you, your Honor, that we're entitled to

16 a temporary restraining order, then as a practical matter I'm

17 not sure what the point of the accelerated discovery and

18 preliminary injunction schedule would be.

19          The Court should probably proceed -- I don't think we

20 can do a better job after discovery of showing that we have

21 irreparable harm.  I think we've made the same point on

22 irreparable harm that we would make a month from now.  The

23 harm exists.  It's every bit as harmful today as it will be

24 tomorrow and --

25          THE COURT:  But it wasn't as harmful to you when you

| | | |
|---|---|---|
| 04:14:53 | 1 | filed the case as it was until you got the lawyer's e-mail or |
| 04:14:56 | 2 | call saying -- |
| 04:14:57 | 3 | MR. GURA:  Oh. |
| 04:14:57 | 4 | THE COURT:  -- that he was going to file the |
| 04:14:59 | 5 | relatedness motion.  And I point out that that really isn't |
| 04:15:02 | 6 | any factor to weigh into my analysis as to whether or not you |
| 04:15:06 | 7 | have irreparable harm, that they would want to go in front of |
| 04:15:10 | 8 | Judge Guzman and do a relatedness motion. |
| 04:15:12 | 9 | MR. GURA:  No, you're right, your Honor is right.  It |
| 04:15:15 | 10 | doesn't factor into the irreparable harm. |
| 04:15:18 | 11 | The irreparable harm was the same a week ago as it |
| 04:15:20 | 12 | is -- as it is today.  The only thing that changed was that we |
| 04:15:24 | 13 | were willing, as a matter of professional courtesy and as a |
| 04:15:27 | 14 | matter of helping the Court, frankly, to allow time for notice |
| 04:15:34 | 15 | and opportunity to be heard.  I don't like to file things |
| 04:15:38 | 16 | ex parte.  I don't like to do things without notice. |
| 04:15:41 | 17 | I felt that if we gave them a week's notice that they |
| 04:15:44 | 18 | would come and argue their side of the case and we could have |
| 04:15:49 | 19 | an intelligent discussion about it.  What alarmed me was that |
| 04:15:52 | 20 | it seemed like they were taking that time as an opportunity to |
| 04:15:58 | 21 | try to cause an indefinite delay. |
| 04:16:01 | 22 | It was their statement that now they want to use this |
| 04:16:03 | 23 | as a hook with which to deprive us of being heard that said, |
| 04:16:08 | 24 | Okay, well, you know, if -- obviously if the Court's not |
| 04:16:10 | 25 | inclined to agree with us, then the TRO doesn't do us any |

04:16:14  1    good.  But at least we can give the Court a vehicle by which

04:16:17  2    to advance the case now, because the City wasn't interested in

04:16:20  3    advancing it earlier.

04:16:21  4          And I know a lot of lawyers would have done things

04:16:24  5    differently.  Many people file the TRO and the preliminary

04:16:28  6    injunction the same day and with one brief, and perhaps I

04:16:29  7    should have done that.  Lesson learned.  You know, that's --

04:16:32  8          THE COURT:  Taught you to be a tougher litigator --

04:16:35  9          MR. GURA:  Well, sure.  You know, I don't -- I

04:16:37  10   thought it would be nice to give them notice and we could, you

04:16:40  11   know, have everyone show up and talk about it.  The harm --

04:16:42  12         THE COURT:  Okay.  So your position is then that

04:16:45  13   there is no adequate remedy at law, because as unlike what

04:16:50  14   counsel said this morning, it isn't a question of cost or time

04:16:59  15   of getting to an outside gun range outside the City if we're

04:17:04  16   dealing with the core exercise of using the firing range.

04:17:09  17         So -- you know, you have separated the actual --

04:17:14  18   you've actually conflated the gun use with the gun firing

04:17:21  19   range training into one core exercise of your Second Amendment

04:17:25  20   value, as opposed to saying gun use and then there's the

04:17:29  21   training that could be regulated or rationally regulated by

04:17:35  22   the City in such a way that they could address their concerns.

04:17:40  23         Your core Second Amendment value is that you can use

04:17:43  24   that gun at a gun range, correct?

04:17:45  25         MR. GURA:  That is -- that is an aspect of our

04:17:48   1   irreparable harm, your Honor.  That is --

04:17:50   2        THE COURT:  Because his argument, of course, is, you

04:17:52   3   know, maybe they have to buy a handicapped van to pay the

04:17:57   4   extra hours to go to Indiana, and then that equates to a cost

04:18:06   5   to your disabled plaintiff to travel to Indiana to shoot her

04:18:09   6   gun, and that's an adequate remedy at law, damages later on,

04:18:14   7   monetary damages.  She still has her gun in the city.  She got

04:18:18   8   it registered by October 8th, but it cost her $400 to drive to

04:18:22   9   Indiana and that's a damage.

04:18:24   10        MR. GURA:  Yeah.  The Seventh Circuit has held

04:18:25   11   numerous times, as has the Supreme Court, that even a

04:18:29   12   temporary deprivation of First Amendment rights causes

04:18:32   13   irreparable harm, that you can't quantify these things in

04:18:37   14   terms of money damages, copy right violations --

04:18:39   15        THE COURT:  But that's the First Amendment right.

04:18:42   16   What about the Second Amendment rights?

04:18:43   17        MR. GURA:  The same, your Honor.  In fact --

04:18:44   18        THE COURT:  But they're not deprived of it -- you're

04:18:47   19   saying he's absolutely deprived of it because they can't get

04:18:51   20   it registered here.

04:18:52   21        MR. GURA:  There are several factors.  Number 1, they

04:18:55   22   can't get it registered.  Number 2, they can't go to the

04:18:57   23   actual gun range and fire, even if it's already registered

04:19:01   24   legally, they should be able to go and practice.  That's part

04:19:04   25   of the Second Amendment right is the right to take one's gun

04:19:05  1  to a firing range and engage in target shooting.  That's part

04:19:10  2  of the Second Amendment right.

04:19:10  3          THE COURT:  According to whom?

04:19:12  4          MR. GURA:  According to the Supreme Court in <u>Heller</u>.

04:19:15  5  And, in fact, <u>Heller</u> was consistent with a long laundry list

04:19:20  6  of Supreme Court cases that have held that sometimes an

04:19:24  7  enumerated right has, along with it, certain obvious but

04:19:28  8  unenumerated characteristics.

04:19:32  9          For example, there is right of free speech that also

04:19:34  10  means they have the right to sell books.  Now, the First

04:19:38  11  Amendment doesn't actually say, You have the right to sell

04:19:39  12  books.  But if you try to ban bookstores, you -- the Supreme

04:19:40  13  Court would be upset.

04:19:41  14          Likewise with firearms.  In <u>Heller</u>, again -- this

04:19:47  15  language is in <u>Heller</u>, it quotes another source, that a person

04:19:50  16  who, quote, practices in safe places the use of it -- meaning

04:19:53  17  the gun -- and in due time teaches --

04:19:56  18          THE COURT:  What if they said -- you'd have a

04:19:58  19  completely different argument if they would have said, You can

04:20:01  20  only have a firing range in a certain part of the city, right?

04:20:03  21          MR. GURA:  That would be a very different case.

04:20:06  22          THE COURT:  Yes.

04:20:06  23          MR. GURA:  We may not have brought the case.  Then it

04:20:10  24  becomes not a core violation case.  Then it becomes either a

04:20:13  25  time, place, and manner case --

04:20:14　1　　　　　　THE COURT:  Right.

04:20:14　2　　　　　　MR. GURA:  -- or it becomes a strict scrutiny case.

04:20:17　3　This is not a strict scrutiny case.  It's not a time, place,

04:20:21　4　and manner case.  It's a core violation case, and that's why

04:20:24　5　we brought it.

04:20:26　6　　　　　　THE COURT:  Okay, folks, your turn.

04:20:28　7　　　　　　MR. GURA:  Thanks.

04:20:29　8　　　　　　MR. WORSECK:  Thank you, your Honor.

04:20:31　9　　　　　　I greatly appreciate Mr. Gura's discourse on what he

04:20:34　10　thinks the Second Amendment is and what it protects, and

04:20:37　11　suffice it to say he and the City have disagreed on

04:20:41　12　substantive matters regarding the content of the Second

04:20:45　13　Amendment, and I suspect we will --

04:20:46　14　　　　　　THE COURT:  Will continue to do so for some time.

04:20:49　15　　　　　　MR. WORSECK:  -- but all of that is beyond -- beside

04:20:51　16　the point --

04:20:52　17　　　　　　THE COURT:  That's okay.

04:20:52　18　　　　　　MR. WORSECK:  -- for today's purposes.

04:20:54　19　　　　　　We are here on the motion for a TRO.  The critical

04:20:57　20　factors for the Court's consideration are whether the injury

04:21:00　21　is irreparable and whether there's inadequate remedy at law.

04:21:04　22　　　　　　THE COURT:  Well, tell me, how can you have a statute

04:21:07　23　where you say, You can own a gun and you must get it

04:21:11　24　registered and you must have your hour of training, but we're

04:21:14　25　not going to give you access to any training center in the

| | |
|---|---|
| 04:21:17 | 1 |
| 04:21:20 | 2 |
| 04:21:23 | 3 |
| 04:21:23 | 4 |
| 04:21:27 | 5 |
| 04:21:31 | 6 |
| 04:21:33 | 7 |
| 04:21:35 | 8 |
| 04:21:39 | 9 |
| 04:21:43 | 10 |
| 04:21:46 | 11 |
| 04:21:49 | 12 |
| 04:21:53 | 13 |
| 04:21:57 | 14 |
| 04:22:02 | 15 |
| 04:22:04 | 16 |
| 04:22:07 | 17 |
| 04:22:12 | 18 |
| 04:22:13 | 19 |
| 04:22:16 | 20 |
| 04:22:18 | 21 |
| 04:22:24 | 22 |
| 04:22:27 | 23 |
| 04:22:28 | 24 |
| 04:22:30 | 25 |

1  City to do it.  How do you have that statute?

2        MR. WORSECK:  That goes to the merits of what the

3  Second Amendment protects.

4        We think that the law on the books is valid under the

5  Second Amendment.  At the end of trial or summary judgment --

6        THE COURT:  Based on what reason?

7        MR. WORSECK:  The Court in Heller was faced with a

8  very discrete and narrow question, whether the possession of a

9  handgun in the home for purposes of self defense is an

10  individual right protected under the Second Amendment.  And it

11  answered that question in the affirmative.  But that was all

12  it answered in terms of what the Second Amendment protects.

13        The Court actually went out of its way to say what --

14  to enumerate a list of regulations that would be presumptively

15  lawful that is not protected under the Second Amendment, and

16  we cite those in our papers.  But they are the types of

17  regulations that deal with firearms use, in carrying, and so

18  forth outside the home.

19        So we have here in this case the issue of shooting

20  ranges.  That is a business enterprise that takes place

21  outside the home.  Nothing presented in this case deprives of

22  anyone of their core Second Amendment right to use an arm for

23  self defense in the home.

24        Now, at the end of a full --

25        THE COURT:  Well, if you have weapons -- if I have

04:22:32  1    weapons in my home in the City of Chicago, I'd be required by

04:22:35  2    October whatever date to have those registered, right?  And

04:22:39  3    then in order to do that I'd need to have my training hour

04:22:43  4    completed.

04:22:44  5              MR. WORSECK:  I --

04:22:44  6              THE COURT:  So I would be violating if I used my

04:22:49  7    weapon against someone in my home that wasn't registered.  I

04:22:52  8    would at least be violating the regulation for the City.

04:22:55  9              MR. WORSECK:  I want to make clear for everyone's

04:22:59  10   understanding here what exactly this October 12th date is.

04:23:02  11             THE COURT:  Okay.

04:23:02  12             MR. WORSECK:  This date relates -- it's essentially

04:23:05  13   an amnesty.  It's the end date of an amnesty period that the

04:23:10  14   City in its graces made part of its comprehensive rewrite of

04:23:14  15   the gun regulations following the <u>McDonald</u> decision.

04:23:16  16             And what this date -- what this provision does is it

04:23:19  17   basically says, If you have had a gun in the past, and even

04:23:22  18   though such possession was illegal within the City, we are

04:23:25  19   going to give you a 90-day grace period to bring that gun in,

04:23:29  20   lawfully register it, and thereafter you will be able to

04:23:32  21   lawfully possess that particular weapon in your home.

04:23:35  22             Nothing prevents anyone from coming in at any time

04:23:39  23   and registering a new firearm that they acquire at that time

04:23:45  24   or shortly before or after that time.

04:23:47  25             So this October 12th date relates solely to a desire

04:23:52  1  by some of the plaintiffs here to be able to retain possession

04:23:56  2  of weapons that they already own.  And if they are somehow

04:24:00  3  denied that ability come October 12th, because they choose not

04:24:04  4  to get the training at ranges that they already go to, then

04:24:07  5  that loss of particular firearms would be compensable in money

04:24:12  6  damages.

04:24:13  7          They would be entirely free to come in before then or

04:24:16  8  after then with a new firearm, lawfully register it, lawfully

04:24:19  9  get their CFP, and exercise their right to self defense in the

04:24:22  10  home.

04:24:23  11          THE COURT:  What is the CFP?

04:24:23  12          MR. WORSECK:  That is the Chicago Firearms Permit.

04:24:26  13          THE COURT:  Okay.  And without the hour of training?

04:24:29  14          MR. WORSECK:  The hour of training is a requirement

04:24:31  15  for the CFP.

04:24:32  16          THE COURT:  All right.  So anybody who has a gun has

04:24:34  17  to get firearms training.

04:24:36  18          MR. WORSECK:  Right, but they don't --

04:24:37  19          THE COURT:  Pre or post?

04:24:39  20          MR. WORSECK:  Not everyone needs to do that by

04:24:41  21  October 12th.

04:24:42  22          THE COURT:  Right.  Well, this isn't a case where we

04:24:44  23  can't -- I mean, they didn't make allegations at all that

04:24:47  24  there's too many people that are trying to get this done, so

04:24:50  25  we can't get it done in that period of time.

| | | |
|---|---|---|
| 04:24:53 | 1 | They're simply saying, you know, Not having access to |
| 04:24:55 | 2 | this firing range is a core violation of Second Amendment. |
| 04:24:59 | 3 | MR. WORSECK: And again, your Honor, that's a merits |
| 04:25:01 | 4 | issue. I think your point about the arbitrariness of |
| 04:25:04 | 5 | geographical boundaries while may be ultimately not relevant |
| 04:25:08 | 6 | to the ultimate merits issue is extremely relevant on the |
| 04:25:12 | 7 | issue of irreparable harm. There the boundaries are |
| 04:25:16 | 8 | artificial. |
| 04:25:16 | 9 | If you can go to the nearby suburbs, as your Honor |
| 04:25:19 | 10 | pointed out, many of the ranges in the suburbs could very well |
| 04:25:22 | 11 | be closer to your Chicago residence than, you know, a shooting |
| 04:25:25 | 12 | range on the far North Side of the city, if you live on the |
| 04:25:28 | 13 | far South Side, then there's no irreparable harm. And any |
| 04:25:34 | 14 | time and money spent in traveling that short distance is fully |
| 04:25:38 | 15 | compensable. |
| 04:25:40 | 16 | Your Honor, another point that plaintiffs completely |
| 04:25:42 | 17 | ignored, but which we raised in our submission, is the utter |
| 04:25:46 | 18 | futility of the injunctive relief that they seek. Even if |
| 04:25:50 | 19 | they got all of the injunctive relief that they're seeking |
| 04:25:54 | 20 | with respect to the City's ban on gun ranges and any related |
| 04:25:57 | 21 | provisions on an as-applied basis that might impact one's |
| 04:26:01 | 22 | ability to transport guns to a shooting range and so forth, |
| 04:26:05 | 23 | the fact would remain that the City would still have within |
| 04:26:09 | 24 | its -- the fullest breadth of its powers, the prerogative to |
| 04:26:15 | 25 | enact the requisite public safety regulations, zoning |

04:26:19  1   regulations, licensing regulations, environmental regulations

04:26:23  2   and the like.

04:26:24  3          THE COURT:  But have they done that?

04:26:26  4          MR. WORSECK:  They have not done that, because

04:26:28  5   currently the bans are not lawful.  If it were determined that

04:26:33  6   the bans -- that the ranges needed to be permitted, then the

04:26:36  7   City would need to pass the requisite statutes, ordinances,

04:26:41  8   and regulations.  That would take, needless to say, a great

04:26:45  9   deal of time, and plaintiffs seek no relief whatsoever that

04:26:48  10  would direct the City to do any of that by a date certain.

04:26:52  11         And even if they tried, they would certainly fail at

04:26:57  12  that respect with that request, because it would intrude into

04:27:00  13  core aspects of the City's police power, which they themselves

04:27:04  14  concede are legitimate in this instance.

04:27:07  15         THE COURT:  What is the rational basis for the ban?

04:27:10  16  Because you want to have people trained, so if you want to

04:27:12  17  have people trained in firearms, which is a prerequisite to

04:27:16  18  get your -- what did you call it, C ...

04:27:17  19         MR. WORSECK:  CFP.

04:27:18  20         THE COURT:  CFP.

04:27:19  21         If you want to get your CFP and have them trained,

04:27:22  22  then what's your rational basis for prohibiting the ranges?

04:27:26  23         MR. WORSECK:  There are concerns generally and

04:27:27  24  certainly with respect to mobile firing ranges operating out

04:27:30  25  of the back of a truck, with arms being discharged en masse

| | |
|---|---|
| 04:27:36 | 1 |
| 04:27:40 | 2 |
| 04:27:44 | 3 |

04:27:36  1  and with great frequency at locations in a very densely

04:27:40  2  populated city like Chicago that has a very serious problem

04:27:44  3  with gun discharges.  I mean, that's no secret to anyone here.

04:27:49  4         And that would certainly, in our view, pass the at

04:27:53  5  least reasonable regulation standard, which we think actually

04:27:56  6  would be the appropriate standard of scrutiny in this case and

04:28:00  7  would certainly as well pass the more strict and more exacting

04:28:07  8  standards of scrutiny, whether it be strict scrutiny or

04:28:10  9  intermediate scrutiny.  But again, your Honor, all of that is

04:28:14  10  going to merits.  The applicable --

04:28:15  11         THE COURT:  Well, of course, we have a likelihood of

04:28:17  12  success on the merits as one of your components.

04:28:19  13         MR. WORSECK:  And that's only one of the three --

04:28:21  14         THE COURT:  Right.  I know.  So they're saying, We're

04:28:23  15  going to win automatically because it's strict scrutiny.  It's

04:28:26  16  a core exercise of our Second Amendment right and also our

04:28:30  17  First Amendment right to be trained, the training itself.

04:28:33  18         And so I need to hear from you as to -- well, what

04:28:37  19  standard do you believe should be applied here?

04:28:38  20         MR. WORSECK:  If I may just very quickly, your Honor?

04:28:41  21  Even if they are completely correct about every merits issue

04:28:44  22  that they have raised, even if they get complete and total

04:28:47  23  merits relief at the end of this case, that is only one of the

04:28:51  24  three factors that they have the threshold burden of

04:28:53  25  establishing in this TRO proceeding.

| | | |
|---|---|---|
| 04:28:55 | 1 | On the other two, irreparable harm and lack of |
| 04:28:58 | 2 | adequate remedy at law, they fall utterly short of |
| 04:29:01 | 3 | establishing those. Now, with respect to standards of |
| 04:29:05 | 4 | scrutiny, the Seventh Circuit has recently, in two recent |
| 04:29:09 | 5 | decisions, weighed in on this. And in cases presenting |
| 04:29:13 | 6 | categorical types of bans, firearms bans, the federal bans on |
| 04:29:19 | 7 | possession of firearms by felons who commit acts of violence |
| 04:29:26 | 8 | and misdemeanants who commit acts of domestic violence, the |
| 04:29:31 | 9 | Court has upheld those bans under what might be called |
| 04:29:36 | 10 | intermediate scrutiny. |
| 04:29:39 | 11 | Now -- |
| 04:29:39 | 12 | THE COURT: Post-_Heller_? |
| 04:29:40 | 13 | MR. WORSECK: Post-_Heller_. I believe at least one, |
| 04:29:43 | 14 | if not both of those, are even post-_McDonald_. |
| 04:29:45 | 15 | THE COURT: Okay. And what cases are those? |
| 04:29:47 | 16 | MR. WORSECK: _Skoien_, _United States versus Skoien_ is |
| 04:29:51 | 17 | the first -- |
| 04:29:51 | 18 | THE COURT: Better spell that for me. |
| 04:29:53 | 19 | MR. WORSECK: S-k-o-i-e-n. |
| 04:29:55 | 20 | THE COURT: Okay. All right. |
| 04:29:56 | 21 | MR. WORSECK: And I'd be happy to provide these cites |
| 04:29:58 | 22 | to the Court. |
| 04:29:59 | 23 | THE COURT: That's fine. I've got it. |
| 04:30:00 | 24 | MR. WORSECK: The second one is _United States versus_ |
| 04:30:02 | 25 | _Williams_. |

04:30:05  1      THE COURT:  Okay.

04:30:05  2      MR. WORSECK:  So we've already seen sort of a

04:30:07  3  racheting down.  In Heller and McDonald's [sic] Mr. Gura's

04:30:09  4  taking the position that they basically said, It doesn't

04:30:12  5  matter what the standard of scrutiny is when it comes to a ban

04:30:15  6  on arms possession within the home.  It fails under any test.

04:30:18  7  And that's because the core element of the Second Amendment is

04:30:22  8  the possession of arms in the home for self defense.

04:30:24  9      Now, when we start moving outside of that context to

04:30:27 10  people who essentially are bad apples, we see a lessening of

04:30:32 11  the standard of scrutiny.  The Seventh Circuit decided not

04:30:35 12  even to step one tier down to strict scrutiny.  It went yet

04:30:40 13  another tier down to intermediate scrutiny, and those are for

04:30:43 14  categorical weapons bans.

04:30:45 15      Even though you might have a fundamental core right

04:30:48 16  to an arm in the home for self defense, if you're a bad apple,

04:30:51 17  you lose that right.

04:30:52 18      Now, here, we're not even talking about anything that

04:30:56 19  detracts from anyone's ability to possess arms in the home for

04:30:58 20  self defense.  What we have is a restriction on operating a

04:31:01 21  business that provides shooting range services to individuals.

04:31:06 22  In light of that, our submission would be that --

04:31:08 23      THE COURT:  But you can't possess it.  You can't have

04:31:10 24  that weapon until you've done your training.  So what you're

04:31:14 25  saying is, You must leave the city boundaries in order to be

| | |
|---|---|
| 04:31:17 | 1 |
| 04:31:22 | 2 |
| 04:31:25 | 3 |
| 04:31:29 | 4 |
| 04:31:33 | 5 |
| 04:31:38 | 6 |
| 04:31:44 | 7 |
| 04:31:48 | 8 |
| 04:31:51 | 9 |
| 04:31:56 | 10 |
| 04:32:00 | 11 |
| 04:32:03 | 12 |
| 04:32:06 | 13 |
| 04:32:08 | 14 |
| 04:32:11 | 15 |
| 04:32:15 | 16 |
| 04:32:17 | 17 |
| 04:32:22 | 18 |
| 04:32:23 | 19 |
| 04:32:26 | 20 |
| 04:32:28 | 21 |
| 04:32:29 | 22 |
| 04:32:31 | 23 |
| 04:32:33 | 24 |
| 04:32:33 | 25 |

trained to possess.  So -- but as I mentioned before, to me, the most compelling argument under that theory is, I can't leave the city limits to possess.  Which is why I asked these questions regarding the boundaries, these political subdivisions which seem to me to be somewhat artificial in that we could do a Mapquest search, which we just threw in how many gun firing ranges there were within the courthouse, and I think we came up with somewhere in the neighborhood of nine or ten in suburbs within twenty miles or so of the courthouse.

So my question is, what is this boundary of the city if you put together a statute that says, Go ahead and possess a gun.  By the way you're going to need it registered with us and you're going to need to have this certificate with us, and that certificate with us means that you've had your training at a range, but we're not going to allow you access to any ranges within our boundaries.

Are you constructively, constructively prohibiting me from possessing my weapon?

MR. WORSECK:  No, we're not.  We're simply requiring that you obtain once every three years an hour of shooting range training.

THE COURT:  Not in the city.

MR. WORSECK:  Not in the city.  But we're not -- it's --

THE COURT:  Based upon the concern that firearms

| | |
|---|---|
| 04:32:36 | 1 |
| 04:32:41 | 2 |
| 04:32:43 | 3 |
| 04:32:43 | 4 |
| 04:32:45 | 5 |
| 04:32:47 | 6 |
| 04:32:48 | 7 |
| 04:32:51 | 8 |
| 04:32:54 | 9 |
| 04:32:57 | 10 |
| 04:32:58 | 11 |
| 04:32:58 | 12 |
| 04:33:01 | 13 |
| 04:33:05 | 14 |
| 04:33:07 | 15 |
| 04:33:10 | 16 |
| 04:33:14 | 17 |
| 04:33:14 | 18 |
| 04:33:15 | 19 |
| 04:33:16 | 20 |
| 04:33:18 | 21 |
| 04:33:23 | 22 |
| 04:33:23 | 23 |
| 04:33:26 | 24 |
| 04:33:31 | 25 |

1  being discharged en masse is dangerous.

2          MR. WORSECK:  That is a serious concern that the City

3  has --

4          THE COURT:  And that's the only thing you've said to

5  me as far as why you have prohibited firing ranges.

6          MR. WORSECK:  We have the discharge issue.  We have

7  the travel issue.  You're going to have people traveling with

8  the guns to a range.  You're going to have them in the cars

9  that can lead to unfortunate incidents.

10          THE COURT:  How do you --

11          MR. WORSECK:  We obviously --

12          THE COURT:  How do you get the gun from the shop to

13  the house, if you don't travel with it?  Is there some clause

14  in there that allows you to do that?

15          MR. WORSECK:  There is.  There is a provision for the

16  transportation of firearms, when it is in a broken-down

17  state --

18          THE COURT:  When it is --

19          MR. WORSECK:  -- unchallenged here.  Excuse me?

20          THE COURT:  In a broken-down state.  Oh.

21          MR. WORSECK:  And other secured, broken down, not

22  operable, et cetera.

23          THE COURT:  They're permitted to transport the

24  firearm in a broken-down state.

25          Okay.  All right.  You were talking about irreparable

| | |
|---|---|
| 04:33:40 | 1 |
| 04:33:40 | 2 |
| 04:33:40 | 3 |
| 04:33:42 | 4 |
| 04:33:42 | 5 |
| 04:33:42 | 6 |
| 04:33:45 | 7 |
| 04:33:45 | 8 |
| 04:33:48 | 9 |
| 04:33:51 | 10 |
| 04:33:56 | 11 |
| 04:33:59 | 12 |
| 04:34:03 | 13 |
| 04:34:09 | 14 |
| 04:34:12 | 15 |
| 04:34:16 | 16 |
| 04:34:19 | 17 |
| 04:34:25 | 18 |
| 04:34:29 | 19 |
| 04:34:31 | 20 |
| 04:34:34 | 21 |
| 04:34:37 | 22 |
| 04:34:42 | 23 |
| 04:34:44 | 24 |
| 04:34:49 | 25 |

1 injury.

2 MR. WORSECK: Yes.

3 THE COURT: And then did you want to go further with

4 that?

5 MR. WORSECK: I do have a few more points to make,

6 your Honor.

7 THE COURT: Okay.

8 MR. WORSECK: As we put in our papers, the new

9 ordinance was passed on July 2nd. Now, if, in fact, as of

10 that date there were irreparable injury, how did Mrs. Ezell go

11 out and get her requisite training for the CFP? I mean, that

12 is the best proof out there that this is not an irreparable

13 harm. It is one that gun owners can completely accommodate.

14 There's no specifics with respect to her affidavit in

15 terms of how much time or difficulty she had to encounter to

16 go do that. And while we certainly respect any medical

17 concerns that she has, for purposes of entering a TRO, there

18 would need to be a much greater showing of the burden and

19 encumbrances associated with that.

20 And even so -- and even then it would be futile,

21 because she's already shown that it can be done. The harm is

22 avoidable. It's one that plaintiffs can accommodate. And at

23 the end of the day, at the end of the full proceeding on the

24 merits, if they prevail, they'll get their money.

25 THE COURT: Okay. Did you want to address the

04:34:53  1    adequate remedy at law issue?

04:34:55  2         MR. WORSECK:  Again, your Honor, just with respect to

04:34:59  3    each of the harms asserted in this action -- and we walked

04:35:04  4    through these in detail in our papers -- but they are

04:35:07  5    essentially having to travel to a suburb, losing the right to

04:35:12  6    possess a particular firearm, a particular item, a particular

04:35:15  7    piece of property but not, of course, being denied the ability

04:35:19  8    to own any firearm.  And then the ability of the corporate

04:35:24  9    entities to build and administer shooting ranges.  All of

04:35:30  10   those claimed harms are fully compensable at law.

04:35:33  11        Lost profits, lost business opportunities, et cetera,

04:35:36  12   would be adequate to the harms experienced by the corporate

04:35:39  13   plaintiffs.  Payments for travel expenses and the loss of

04:35:44  14   particular pieces of property, or the cost, for instance, of

04:35:49  15   running someplace in the suburbs that wished to store the

04:35:52  16   particular weapons that you are no longer able to register in

04:35:56  17   the city, all of those are fully compensable with money

04:35:58  18   damages, and plaintiffs advance nothing to take issue with any

04:36:00  19   of that.

04:36:01  20        THE COURT:  Okay.  Anything else you wanted to add?

04:36:06  21        MR. WORSECK:  You know, again, your Honor, just with

04:36:08  22   respect to this futility point.  It's one that plaintiffs did

04:36:11  23   not address at all, and I think it's extremely strong here,

04:36:14  24   especially with respect to the TRO.

04:36:16  25        As we point out in our papers, under Federal Rule 65,

04:36:19 1 the TRO would expire before the mobile ranges could even be up

04:36:24 2 and running. If that's the case, there would be absolutely no

04:36:28 3 reason for the Court to take the very drastic step of entering

04:36:32 4 a TRO at this point, especially given the extreme paucity of

04:36:37 5 showing on at least two of the three factors and, we believe,

04:36:41 6 all three of the threshold TRO factors.

04:36:44 7 THE COURT: Okay. How about his position that the

04:36:48 8 TRO is offering the same exact relief as the preliminary

04:36:55 9 injunction? There's nothing more to do in the discovery. You

04:36:58 10 heard that argument?

04:36:59 11 MR. WORSECK: Yes. Well, we think in terms of any

04:37:03 12 relief -- I mean, a TRO, you know, if the Court were to enter

04:37:07 13 it, it would expire and it would be futile, because it would

04:37:11 14 expire before the ranges began operating.

04:37:13 15 As to the extension of an injunction, you know, a

04:37:17 16 preliminary injunction extending indefinitely until the close

04:37:20 17 of trial, as we said this morning, we think there are very

04:37:25 18 serious fact issues that are contested by the City that we

04:37:29 19 need discovery on.

04:37:31 20 So if the Court were inclined to continue to

04:37:36 21 entertain the preliminary injunction piece of this, we would,

04:37:40 22 per the Court's ruling this morning, want to address those

04:37:43 23 discovery issues and so forth.

04:37:44 24 We agree with Mr. Gura that, you know, if his -- if

04:37:49 25 he's -- if his TRO showing on irreparable harm and lack of

| | |
|---|---|
| 04:37:53 | 1 |
| 04:37:56 | 2 |
| 04:38:02 | 3 |
| 04:38:07 | 4 |
| 04:38:10 | 5 |
| 04:38:11 | 6 |
| 04:38:12 | 7 |
| 04:38:12 | 8 |
| 04:38:13 | 9 |
| 04:38:14 | 10 |
| 04:38:17 | 11 |
| 04:38:17 | 12 |
| 04:38:20 | 13 |
| 04:38:25 | 14 |
| 04:38:28 | 15 |
| 04:38:31 | 16 |
| 04:38:37 | 17 |
| 04:38:39 | 18 |
| 04:38:43 | 19 |
| 04:38:46 | 20 |
| 04:38:49 | 21 |
| 04:38:52 | 22 |
| 04:38:55 | 23 |
| 04:38:59 | 24 |
| 04:39:01 | 25 |

1  adequate remedy and so forth is the same showing he would

2  advance at the preliminary injunction stage, then it would not

3  make a whole lot of sense to, as he himself said, continue to

4  proceed with the preliminary injunction proceeding should the

5  Court deny the TRO.

6       THE COURT:  Okay.

7       MR. GURA:  Your Honor --

8       THE COURT:  Did you want to add anything?

9       MR. AGUIAR:  No, your Honor.

10      THE COURT:  Okay.  Rebuttal.

11      MR. GURA:  Sure, your Honor.

12      Well, first of all, just to clarify some of those

13  last points.  First of all, we -- I think we're in agreement

14  here that we're making what I believe is our best case for

15  irreparable harm.  We would not object to the discovery if we

16  were to obtain a TRO and the City then wants to conduct

17  discovery, obviously we would cooperate with that, and we'd

18  try to do whatever we could to move that process along.

19      The only thing I was saying was if the Court thinks

20  that we haven't made an irreparable harm showing, then I don't

21  think we can improve on our showing.  It doesn't mean that we

22  waive the motion or waive any of our rights.  I would simply

23  invite a ruling that's commensurate on the preliminary

24  injunction and TRO at the same time.  I don't think we're

25  saying anything different, at least on that.

| | | |
|---|---|---|
| 04:39:03 | 1 | Now, let's get to the parts where we are saying |
| 04:39:05 | 2 | different things.  Under Rule 65 all that is required of this |
| 04:39:11 | 3 | Court is that if the TRO extends beyond fourteen days, the |
| 04:39:16 | 4 | Court needs to make some sort of record as to why it should be |
| 04:39:21 | 5 | extended.  But this Court's power over its calendar and this |
| 04:39:24 | 6 | Court's power to issue orders in aid of its jurisdiction are |
| 04:39:28 | 7 | quite profound. |
| 04:39:30 | 8 | It is simply not the case that the Court can't extend |
| 04:39:34 | 9 | a TRO until it has time to consider a preliminary injunction |
| 04:39:42 | 10 | motion so that you have this gap in between the end of a TRO |
| 04:39:45 | 11 | and the beginning of a preliminary injunction.  That's just |
| 04:39:47 | 12 | not the case. |
| 04:39:48 | 13 | The only consequence that might occur, if a TRO is |
| 04:39:52 | 14 | extended beyond a certain amount of time -- and I believe in |
| 04:39:55 | 15 | the Seventh Circuit under the case law it's twenty days -- |
| 04:39:58 | 16 | then at that point it might become an appealable order for the |
| 04:40:01 | 17 | City.  But the Court can definitely extend, in aid of its |
| 04:40:06 | 18 | jurisdiction until it has time to consider the preliminary |
| 04:40:08 | 19 | injunction, any issuance of a TRO. |
| 04:40:09 | 20 | Also, I think that the City doesn't quite state the |
| 04:40:14 | 21 | facts of our submissions accurately.  We have stated that we |
| 04:40:22 | 22 | can operate by the end of September.  We have not said that it |
| 04:40:26 | 23 | would take us that long necessarily to get it.  In fact, in |
| 04:40:30 | 24 | fact, your Honor, if your Honor looks at the exhibits, the |
| 04:40:34 | 25 | lease agreement? |

| | | |
|---|---|---|
| 04:40:35 | 1 | THE COURT: You have a truck that's going to come |
| 04:40:37 | 2 | in -- |
| 04:40:37 | 3 | MR. GURA: Oh, the truck. The truck we are entitled, |
| 04:40:39 | 4 | under Exhibit A, we are entitled to that truck as of July 26th |
| 04:40:42 | 5 | for a period of one year, once we give notice to the range |
| 04:40:46 | 6 | provider. The lease that we have, this particular lease -- we |
| 04:40:50 | 7 | can always, of course, get additional leases and even |
| 04:40:53 | 8 | negotiate this one differently -- is one that would start on |
| 04:40:57 | 9 | September the 15th. |
| 04:40:57 | 10 | The reason we selected that September 15th deadline |
| 04:41:00 | 11 | is because we were operating under the assumption that it |
| 04:41:03 | 12 | would take this long to get this Court to have a ruling on the |
| 04:41:05 | 13 | preliminary injunction motion and we weren't interested in |
| 04:41:07 | 14 | paying rent for a period of time that was -- you know, while |
| 04:41:10 | 15 | the Court was still considering the matter. But I am very |
| 04:41:14 | 16 | sure that we can obtain somewhere in this extremely large city |
| 04:41:17 | 17 | an appropriate parking space for one tractor-trailer. |
| 04:41:20 | 18 | The location itself is also worth noting. We're |
| 04:41:25 | 19 | talking about a highly industrial place. It's funny, your |
| 04:41:29 | 20 | Honor, but if you looked at the name of the business at which |
| 04:41:31 | 21 | this will be parked. It's something called Accurate Perfory |
| 04:41:35 | 22 | (phonetic). This is a metal fabricating shop. It's located |
| 04:41:37 | 23 | next to a variety of other very heavy industrial uses, |
| 04:41:39 | 24 | including Chicago Freight Systems. It sits between two rail |
| 04:41:44 | 25 | road spurs. There is a petroleum distributor there. There |

04:41:48    1    are a number of metal shops and other sorts of heavy

04:41:49    2    industries there.

04:41:49    3          We are not talking about putting a gun range in some

04:41:53    4    sort of environmentally sensitive place.  This is definitely a

04:41:58    5    place where a range can be operated quite safely, as, in deed,

04:42:01    6    the record shows ranges operate safely throughout different

04:42:04    7    neighborhoods in the city.  We even have a range located on

04:42:05    8    the 17th floor of the federal bank building not too far from

04:42:10    9    here.

04:42:10   10          One interesting aspect of McDonald is that the City

04:42:15   11    made an argument that it should be entitled to ban handguns,

04:42:21   12    because they were especially dangerous in a place like

04:42:25   13    Chicago.  The Court noted that the rarity of the handgun ban

04:42:28   14    provision, the fact that a municipal handgun ban was so

04:42:32   15    unusual is something that indicated that it was not consistent

04:42:35   16    with the right to arms as traditionally understood in this

04:42:39   17    country.

04:42:39   18          And, in fact, we're not aware of any other city --

04:42:43   19    certainly not a city of this size -- that has a total and

04:42:45   20    complete prohibition on gun ranges.  We know that New York

04:42:49   21    City has a gun range.  I've shot at gun ranges in Los Angeles.

04:42:53   22          THE COURT:  Excuse me.

04:42:54   23          MR. GURA:  Bless you, your Honor.

04:42:56   24          THE COURT:  Thank you.

04:42:56   25          MR. GURA:  I'm not aware of any particular precedent

04:42:58  1  for this.  This is quite an adventuresome and unusual law.

04:43:02  2  And this brings me to another point the City raised with

04:43:04  3  respect to Heller's discussion of certain exceptions to the

04:43:06  4  scope of the Second Amendment, what Heller called longstanding

04:43:09  5  prohibitions -- those were the words that Heller used -- a ban

04:43:12  6  on gun ranges is not a longstanding prohibition in the history

04:43:16  7  of this country.  It is certainly not one of the longstanding

04:43:19  8  prohibitions listed in the Heller case itself.

04:43:22  9          And finally, your Honor, I would note my co-counsel

04:43:28  10  here again reminds me that --

04:43:30  11          THE COURT:  You can speak, if you'd like.

04:43:32  12          MR. GURA:  And he'll be welcome to in a moment --

04:43:35  13          MR. SIGALE:  I appreciate that.

04:43:36  14          MR. GURA:  -- is paragraph 7 of Mr. Pearson's

04:43:38  15  declaration speaks to our point about the immediacy of the

04:43:41  16  need for training.  Mr. Pearson is the executive director of

04:43:46  17  the Illinois State Rifle Association.  And in that

04:43:49  18  declaration, which he has submitted -- oh, you're holding it

04:43:54  19  right there.

04:43:54  20          MR. SIGALE:  It's on the back.

04:43:55  21          MR. GURA:  Paragraph 7, There exists -- I'm quoting

04:43:57  22  here.  There exists a severe shortage of range time within a

04:43:59  23  hundred miles of the City of Chicago owing to the incredible

04:44:03  24  demand on training facilities created by, one, the need of

04:44:04  25  existing gun registrants to obtain officially recognized

04:44:08  1  training to continue the firearm ownership.

04:44:10  2          This is another set of deadlines that the City did

04:44:12  3  not discuss.  We're not simply here operating with the

04:44:15  4  October 12th deadline.  We're operating with the August 22nd

04:44:19  5  deadline, the August 24th deadline, the August 27th deadline,

04:44:23  6  all the various deadlines that various people have on their

04:44:23  7  registration certificates today.  Because if they registered a

04:44:26  8  gun a year ago and it expires today, they need to get training

04:44:31  9  now, not by October 12th, now they need that training --

04:44:34  10         THE COURT:  But doesn't the amnesty provision cover

04:44:37  11 those people?

04:44:37  12         MR. GURA:  No, it does not.  There is no -- if a

04:44:39  13 person has a registered firearm, under the old ordinance --

04:44:44  14 and the City can correct me if I'm wrong -- if you have a --

04:44:47  15 if an existing registration that's pre-McDonald, it's good

04:44:52  16 until its expiration date.

04:44:53  17         THE COURT:  Oh, I thought the amnesty period covered

04:44:55  18 those individuals.  Does it not?

04:44:57  19         MR. WORSECK:  Your Honor, without having a second

04:44:59  20 here to look at everything, it's my understanding that those

04:45:02  21 individuals would be granted a period of time to come in,

04:45:05  22 and -- if their registration expired the day after the

04:45:08  23 ordinance was passed, obviously they weren't going to be able

04:45:11  24 to comply with the ordinance, get the training, fill out the

04:45:14  25 application, and so forth.

04:45:14  1    THE COURT:  I thought the amnesty period covered the
04:45:17  2  individuals who possessed weapons at this time and it would
04:45:20  3  go -- so when the ordinance ban came down, so it would be up
04:45:26  4  until the amnesty period of October whatever date it is.  Is
04:45:30  5  that not accurate?
04:45:32  6    MR. GURA:  The ...
04:45:33  7    MR. WORSECK:  The amnesty period covers arms that
04:45:38  8  were owned prior to the effective date of the ordinance.
04:45:41  9    THE COURT:  Prior to --
04:45:42  10    MR. WORSECK:  For a period of 90 days after the
04:45:43  11  enactment of the ordinance, you can come in and register that
04:45:46  12  weapon.
04:45:46  13    THE COURT:  Okay.
04:45:47  14    MR. WORSECK:  So it applies, by its terms, to weapons
04:45:49  15  that one might have owned illegally under the prior regime --
04:45:53  16    THE COURT:  Right.
04:45:53  17    MR. WORSECK:  -- because they weren't registered, but
04:45:53  18  now they decided they wanted to comply with the law and
04:45:55  19  register them.
04:45:55  20    THE COURT:  Right.
04:45:55  21    MR. WORSECK:  It would also very well, under my
04:45:59  22  understanding, apply to someone who may have registered it
04:46:03  23  lawfully.  That registration falls out of effectiveness
04:46:06  24  because it expires, say, on August 1st.  They would still have
04:46:10  25  until the end of that amnesty period to come in and register

04:46:13  1    the gun by its terms.

04:46:15  2            And let me just add, your Honor, that that is not the

04:46:18  3    claim presented here.

04:46:19  4            THE COURT:  Oh, I just -- it's the first I've heard.

04:46:21  5    And it goes to, though, his argument on irreparable injury.

04:46:25  6    And it's the first I've heard, so I wanted to make sure I

04:46:28  7    understood the amnesty period.  But it seems like you both

04:46:31  8    have a dispute based upon your facial expressions that that is

04:46:34  9    the case.

04:46:34  10           MR. WORSECK:  Well, it's quite simply neither here

04:46:38  11   nor there, because none of the plaintiffs in this action

04:46:39  12   present that type of claim.

04:46:40  13           THE COURT:  Okay.

04:46:40  14           MR. WORSECK:  The only one who presents a claim of I

04:46:44  15   have had my guns registered lawfully but the registrations are

04:46:48  16   going to expire soon is Mr. Hespen.  He's got until

04:46:52  17   October 8th before he has to worry about this.

04:46:54  18           THE COURT:  Okay.

04:46:55  19           MR. GURA:  Well, counsel just contradicted himself

04:46:58  20   then, because I'm unclear as to whether or not everyone,

04:47:01  21   including people who are preregistered, get until October 12th

04:47:05  22   or whether people as the statute quite plainly by its text

04:47:10  23   says -- the statute's very crystal clear about this.  It says

04:47:16  24   that, If you have an existing registration that it's valid

04:47:19  25   until its expiration date, at which point you need to

04:47:22  1    reregister the gun following all the procedures and that

04:47:25  2    includes getting a CFP and training.

04:47:27  3          And so if at the very end of this my friend here said

04:47:31  4    that we get -- Mr. Hespen still has to worry about October 8th

04:47:34  5    as opposed to October 12th, I guess then our interpretation of

04:47:39  6    the ordinance is correct.

04:47:39  7          But, in any event, be that as it may, the fact is

04:47:44  8    that there is a severe -- these are all factors that are

04:47:47  9    pushing people towards needing range time pretty badly.  We

04:47:52  10   are very confident that if we bring this range to Chicago

04:47:56  11   it'll be in use.  We don't think this is going to be just a

04:47:59  12   showpiece or some sort of a political statement.

04:48:02  13         We intend to operate this, and we believe we can get

04:48:05  14   people in there trained.  This is -- you know, this is

04:48:08  15   something that's going to be a functional useful thing.  I

04:48:11  16   would be very surprised if it doesn't meet with some amount of

04:48:15  17   success.

04:48:15  18              THE COURT:  Okay.

04:48:16  19              MR. WORSECK:  Your Honor, very briefly --

04:48:17  20              THE COURT:  Go ahead.

04:48:18  21              MR. WORSECK:  -- on two points?

04:48:19  22         Mr. Gura has just iterated this concern about the

04:48:23  23   suburban ranges being too busy to accommodate Chicago

04:48:26  24   residents who want to get their training in the next couple

04:48:29  25   months.  There's nothing in the record to support that.  The

04:48:31 1  only thing that the record supports is that Chicago residents,

04:48:34 2  who do want to comply with this new regime, can do so by

04:48:38 3  traveling to the suburbs and getting their training.

04:48:40 4          Ms. Ezell, who suffers from admitted medical

04:48:45 5  problems, was herself able to do this.  So that belies any

04:48:49 6  claim that it's -- that the suburban ranges are too busy or

04:48:54 7  that there's some sort of functional bar to Chicago residents

04:48:57 8  traveling to the suburbs to get training in the next couple of

04:49:01 9  months.

04:49:01 10         And while Mr. Gura may be very sincere in his belief

04:49:05 11 that these mobile ranges are safe and would be perfectly

04:49:12 12 commensurate with the industrial use at the business where

04:49:16 13 they have the contract, with all due respect that is a

04:49:19 14 decision that should be left up to the City to make in the --

04:49:24 15 in duly exercising its zoning and public safety projects.

04:49:28 16         THE COURT:  Okay.  Anything else that anyone wants to

04:49:31 17 add?

04:49:31 18         (No response.)

04:49:34 19         THE COURT:  All right.  I need to take a break, and I

04:49:34 20 will come back at 5:00 o'clock.  Okay.

04:49:36 21         MR. GURA:  Thank you very much, your Honor.

04:49:37 22         MR. SIGALE:  Thank you, your Honor.

04:49:37 23         MR. WORSECK:  Thank you, your Honor.

04:49:38 24         (Recess taken.)

05:08:10 25         THE COURT:  All right.  Folks, I am not going to rule

05:08:16  1  tonight.  I want to review the cases that you gave me orally

05:08:20  2  and the ones that you presented to me during oral argument,

05:08:23  3  and I will give you a ruling in the morning.

05:08:25  4        And I think I can do that, because I don't think

05:08:27  5  anything is going to change tonight.  No mobile range is

05:08:30  6  coming down Jackson Boulevard tonight.  So I will review all

05:08:34  7  of these cases for you and give you a ruling when I've had

05:08:37  8  time to digest them.

05:08:38  9        It has been a very full day and I really have not had

05:08:42  10  a time to sit fully, especially with the new cases that you

05:08:45  11  just mentioned in your response brief, so tomorrow morning

05:08:48  12  after my morning call at 9:30.  I will see you then.

05:08:51  13        Okay.  Thanks very much.

05:08:51  14        (Adjourned at 5:08 p.m.)

05:08:51  15                      - - -

05:08:51  16

17

18

19

20

21

22

23

24

25