05:01:55

```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION


RHONDA EZELL, et al.,         Case No. 1:10-cv-05135

   Plaintiffs,                Chicago, Illinois
                              September 16, 2010
       v.                     Emergency Motion for TRO

CITY OF CHICAGO,

   Defendant.
-------------------------------


                            VOLUME 2
             TRANSCRIPT OF EMERGENCY MOTION FOR TRO
           BEFORE THE HONORABLE VIRGINIA M. KENDALL
                  UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Plaintiffs:    Law Firm of David G. Sigale, P.C.
                       By:  David G. Sigale
                       4300 Commerce Ct., Ste. 300-3
                       Lisle, IL 60532
                       (630) 452-4547
```

For a copy of this transcript, contact April Metzler, CRR
at (312) 408-5154

```
 1
 2
     APPEARANCES:
 3
 4
     For the Defendant:     Chicago Corporation Counsel
 5                          By:  Andrew W. Worseck, and
                                 Michael A. Forti
 6                          30 N. LaSalle Street
                            Chicago, IL 60602
 7                          (312) 744-2784
 8
 9   COURT REPORTER:        FEDERAL OFFICIAL COURT REPORTER
                            April M. Metzler, RPR, CRR, FCRR
10                          219 South Dearborn St., Rm. 2318-A
                            Chicago, IL 60604
11                          (312) 408-5154
                            April_Metzler@ilnd.uscourts.gov
12
13
14
15
16
17
18
19
20
21
22
23
24
     Proceedings recorded by mechanical stenography; transcript
25   produced by notereading.
```

| | | |
|---|---|---|
| 05:02:11 | 1 | (Resumed at 5:02 p.m.) |
| 05:02:11 | 2 | THE CLERK: This is case 10C5135, Ezell versus City |
| 05:02:18 | 3 | of Chicago. |
| 05:02:18 | 4 | MR. SIGALE: Good afternoon, your Honor. David |
| 05:02:20 | 5 | Sigale, S-i-g-a-l-e, on behalf of the plaintiffs. |
| 05:02:23 | 6 | THE COURT: Good afternoon. |
| 05:02:23 | 7 | MR. WORSECK: Good afternoon, your Honor. Andrew |
| 05:02:25 | 8 | Worseck on behalf of the City. |
| 05:02:26 | 9 | THE COURT: Good afternoon. |
| 05:02:27 | 10 | MR. FORTI: Michael Forti, your Honor, on behalf of |
| 05:02:29 | 11 | the City. |
| 05:02:29 | 12 | THE COURT: Okay. Good afternoon, folks. |
| 05:02:31 | 13 | I had a chance now to go through all of your filings |
| 05:02:34 | 14 | and read all of the submissions, even the ones that were given |
| 05:02:37 | 15 | to me late yesterday and also to digest your very solid oral |
| 05:02:44 | 16 | arguments from yesterday afternoon. |
| 05:02:46 | 17 | And here's my conclusion. First, it's interesting |
| 05:02:49 | 18 | that we have a case, which is essentially a case of first |
| 05:02:54 | 19 | impression, and we are seeking a TRO on it, because the |
| 05:02:58 | 20 | likelihood of success on the merits really focuses on whether |
| 05:03:06 | 21 | or not you will prevail in the end. |
| 05:03:07 | 22 | And on a case of first impression it's a difficult |
| 05:03:10 | 23 | argument to make when no Court has ruled that the firearm |
| 05:03:18 | 24 | training is core to the Second Amendment. So it remains on |
| 05:03:20 | 25 | the likelihood of success on the merits an issue for the |

| | | |
|---|---|---|
| 05:03:23 | 1 | Court, one which I am eager to get to on preliminary |
| 05:03:27 | 2 | injunction, one which I am eager to review the evidence of, |
| 05:03:30 | 3 | and one which I think, based upon the arguments yesterday, |
| 05:03:33 | 4 | remains up in the air as far as whether one side or the other |
| 05:03:37 | 5 | will prevail. |
| 05:03:40 | 6 | And then secondly and most importantly, I don't |
| 05:03:43 | 7 | believe that the evidence that's been presented for this |
| 05:03:45 | 8 | second TRO has changed the irreparable injury analysis that |
| 05:03:50 | 9 | the Court made a week or so ago in the other -- first TRO |
| 05:03:56 | 10 | ruling. |
| 05:03:57 | 11 | Specifically, the Court held then that there was |
| 05:04:02 | 12 | still the ability of a citizen of Chicago to get firearms |
| 05:04:07 | 13 | training by traveling to a suburb or within a 50-mile radius |
| 05:04:12 | 14 | to a place where they could obtain this firearms training, and |
| 05:04:17 | 15 | that they could still possess a weapon in their homes.  They |
| 05:04:21 | 16 | could go purchase a weapon and would not be prohibited from |
| 05:04:25 | 17 | doing so, so their core right of possession of a firearm in |
| 05:04:28 | 18 | their home was not infringed upon. |
| 05:04:31 | 19 | And the issue then solely is those weapons that are |
| 05:04:35 | 20 | within the home already that need to be certified, what would |
| 05:04:38 | 21 | the damages be?  And I think there is a point that monetary |
| 05:04:42 | 22 | damages can be obtained for those few firearms that -- or |
| 05:04:48 | 23 | firearms that have been possessed but or are not certified |
| 05:04:52 | 24 | yet, because they haven't prohibited you from possessing them |
| 05:04:56 | 25 | in your home and in a complete regard. |

| | | |
|---|---|---|
| 05:04:58 | 1 | Though more importantly on the irreparable injury |
| 05:05:01 | 2 | side, however -- excuse me. |
| 05:05:36 | 3 | Excuse me. We have a jury that's begun deliberating, |
| 05:05:39 | 4 | and we are dealing with the instructions. |
| 05:05:43 | 5 | Getting back to my thought on irreparable injury. |
| 05:05:49 | 6 | First, I mentioned that they can still travel outside. |
| 05:05:53 | 7 | Secondly, I think it is a persuasive argument that the remedy |
| 05:05:59 | 8 | of bringing in the mobile firing range is a remedy, but it |
| 05:06:04 | 9 | doesn't change the status of whether or not these individuals |
| 05:06:10 | 10 | have the ability to travel someplace and get certification. |
| 05:06:14 | 11 | So the three pieces of information that were provided |
| 05:06:17 | 12 | to the Court to change the status of my previous ruling were, |
| 05:06:22 | 13 | first, the firearm instructor's statement that he himself was |
| 05:06:27 | 14 | having difficulty training customers because he himself could |
| 05:06:31 | 15 | not train in suburban stores, stores outside of the city, that |
| 05:06:37 | 16 | he was being impacted economically because of that, and that |
| 05:06:41 | 17 | those individual suburban stores were charging more money in |
| 05:06:45 | 18 | order to train individuals. |
| 05:06:47 | 19 | I think that's a different issue and a different |
| 05:06:49 | 20 | plaintiff and not an issue for the Court here. I think that |
| 05:06:54 | 21 | the plaintiffs here are the individuals who are trying to get |
| 05:06:57 | 22 | training. |
| 05:06:57 | 23 | Secondly, the piece of information was provided |
| 05:07:01 | 24 | regarding the number of individuals who this -- who are |
| 05:07:05 | 25 | members of the ISRA. Without more information saying, for |

1 example, We have 10,000 individuals who need to be certified,
2 or a professional's estimate that 10,000 individuals need to
3 be certified and we have X number of days to certify it, and
4 so it is not objectively possible, based upon the number of
5 firing ranges within the area, to get that certification,
6 which is not what the new evidence showed, I don't think that
7 the plaintiffs have met their burden of proving irreparable
8 harm.
9     I would have needed one more step.  I would have
10 needed these are the individuals, our professional estimate
11 even, even a professional expert opinion that this is how
12 many, based on whatever his basis would be, that have not been
13 certified.  But right now it's conjecture as to who hasn't
14 been certified, and it's conjecture as to the number that need
15 to be certified by the deadline.
16     And then the final change in circumstances presented
17 to the Court is the mobile firing range is available sooner.
18 And that goes to the argument that I've already mentioned that
19 I think is strong that just because someone could get firearms
20 training within the city with a mobile training unit doesn't
21 change whether those individuals who are not getting the
22 training are being irreparably harmed.
23     So without irreparable injury today and without a
24 likelihood of success on the merits today, I again deny the
25 motion for temporary restraining order.  And I eagerly would

For a copy of this transcript, contact April Metzler, CRR
at (312) 408-5154

| | | |
|---|---|---|
| 05:08:53 | 1 | like to address it on the merits, because I'm not ruling at |
| 05:08:58 | 2 | all on who's got the likelihood of success on the merits |
| 05:09:03 | 3 | today. I am not. |
| 05:09:04 | 4 | I think under the standard of the TRO, I'm denying |
| 05:09:07 | 5 | that. I think there is a basis for denying that, based upon |
| 05:09:10 | 6 | the failure to prove the -- or to set forth enough evidence to |
| 05:09:15 | 7 | meet their burden. But I am looking forward to the fully |
| 05:09:19 | 8 | briefed motion, and I won't be giving extensions of time, |
| 05:09:22 | 9 | because September 27th I am going to go home with a pack of |
| 05:09:25 | 10 | papers and dig into this. |
| 05:09:27 | 11 | So that is my ruling. Temporary restraining order is |
| 05:09:30 | 12 | denied, and I look forward to your briefs. |
| 05:09:33 | 13 | MR. SIGALE: Thank you, your Honor. |
| 05:09:34 | 14 | MR. WORSECK: Your Honor -- thank you, your Honor. |
| 05:09:36 | 15 | We also have pending the motion that we filed -- |
| 05:09:38 | 16 | THE COURT: Oh, right. |
| 05:09:39 | 17 | MR. WORSECK: -- yesterday -- or actually, I believe, |
| 05:09:41 | 18 | two days ago concerning the preliminary injunction date. And |
| 05:09:47 | 19 | we would submit, in light of the -- what seemed to be the two |
| 05:09:51 | 20 | core observations of your Honor this afternoon, one relating |
| 05:09:54 | 21 | to the likelihood of success issue and the second relating to |
| 05:09:58 | 22 | the irreparable harm issue, that the motion for preliminary |
| 05:10:03 | 23 | injunction should, in fact, be denied, or at the least entered |
| 05:10:07 | 24 | and continued -- |
| 05:10:09 | 25 | THE COURT: Okay. The first is that it's not going |

```
05:10:10   1   to be denied, and I'll give you a reason why.  Primarily
05:10:14   2   because there's a different standard under our TRO and our
05:10:18   3   preliminary injunction.
05:10:20   4          And under the preliminary injunction, I haven't
05:10:25   5   decided yet, because I haven't seen all of what you have
05:10:28   6   provided to me, as to what standard I should be applying to
05:10:31   7   this, whether this is a strict scrutiny core Second Amendment
05:10:36   8   right, or whether it's intermediate scrutiny, or something
05:10:40   9   even lower than that.  I have indicated that it appears to me
05:10:43  10   that it's intermediate scrutiny.
05:10:46  11          But if we're in an intermediate scrutiny analysis, I
05:10:49  12   haven't analyzed the City's reasons for not having these
05:10:56  13   firing ranges within the city.  I haven't analyzed that yet,
05:10:59  14   because I never went to that issue.  I only went to the issue
05:11:02  15   of irreparable injury.
05:11:04  16          And so if I read your papers, apply an intermediate
05:11:09  17   standard, I need to go to the next level, and it's possible
05:11:11  18   they would be victorious under that analysis, based upon what
05:11:16  19   you've presented to me, which I haven't seen yet.
05:11:19  20          MR. WORSECK:  Well, one of the very same factors for
05:11:21  21   the preliminary injunction motion is the lack of irreparable
05:11:25  22   harm, and the plaintiffs have now had two chances to come
05:11:28  23   before your Honor and demonstrate irreparable harm, and they
05:11:31  24   have failed both times --
05:11:32  25          THE COURT:  Yes, but that's because -- but it's hand
```

| | | |
|---|---|---|
| 05:11:35 | 1 | and glove with the issue of how I am interpreting the right. |
| 05:11:39 | 2 | And since the likelihood of success on the merits is going to |
| 05:11:43 | 3 | depend upon how I interpret the right, based upon the law that |
| 05:11:46 | 4 | you provide to me and the facts that you provide to me, if I |
| 05:11:49 | 5 | read that and I find that it's a core value -- excuse me -- a |
| 05:11:54 | 6 | core right and that strict scrutiny applies, you are in the |
| 05:12:01 | 7 | <u>Renton</u> case, potentially, that the plaintiffs want you to be |
| 05:12:04 | 8 | in. |
| 05:12:05 | 9 |      If I find it's intermediate scrutiny, then you have |
| 05:12:09 | 10 | to present to the Court your reasons for getting rid of these |
| 05:12:13 | 11 | firing -- or not allowing these firing ranges in the city. So |
| 05:12:17 | 12 | your motion for preliminary injunction is denied orally, if |
| 05:12:21 | 13 | you think that it is automatic that this the TRO denies a |
| 05:12:26 | 14 | preliminary injunction. Different standards and that's my |
| 05:12:29 | 15 | ruling. |
| 05:12:29 | 16 |      MR. FORTI: Your Honor, may I ask a question? Just |
| 05:12:31 | 17 | we have some guidance, perhaps. If I understand your comment, |
| 05:12:35 | 18 | are you in a -- and I think I know what you're suggesting -- |
| 05:12:37 | 19 | are you suggesting that because of the connection between |
| 05:12:41 | 20 | likelihood of success, even though there isn't irreparable |
| 05:12:45 | 21 | harm today, you might conclude, based on the review of the |
| 05:12:49 | 22 | merits, that irreparable harm could exist? |
| 05:12:52 | 23 |      THE COURT: Take your analysis yesterday -- yes, is |
| 05:12:55 | 24 | the short answer, so I'll go back to my prosecution days. |
| 05:12:58 | 25 | Yes, is the short answer, because if under your analysis -- or |

05:13:01 1 let's take Mr. Gura's analysis.

05:13:03 2 If he were to be correct in saying it is absolutely
05:13:09 3 core to my possession of my firearm within my residence for
05:13:13 4 self protection that I be able to be trained on this firearm,
05:13:18 5 strict scrutiny may apply in the sense that it is core, and
05:13:22 6 then your absolute inability for him to get firearm trained
05:13:27 7 within the area would be a <u>Renton</u> analysis.

05:13:31 8 And then --
05:13:33 9 MR. FORTI: And possibly irreparable harm.
05:13:34 10 THE COURT: And that would equate to irreparable
05:13:37 11 harm --
05:13:37 12 MR. FORTI: Right.
05:13:37 13 THE COURT: -- because you would not be able to
05:13:39 14 remedy that situation. So that's what I am trying to get to
05:13:43 15 on the preliminary injunction. That is correct.
05:13:45 16 MR. FORTI: That's very helpful, your Honor. And,
05:13:49 17 again, if we could then go beyond that just in terms of
05:13:52 18 discussion of the -- either the idea of entering and
05:13:55 19 continuing or our fall-back position, which is just to hope to
05:13:59 20 have -- and maybe this isn't the appropriate time, I know it's
05:14:02 21 late in the day -- but just have a discussion that perhaps the
05:14:05 22 parties should have begun, but it would be very difficult, I
05:14:11 23 believe, to have a productive hearing on October 1, when we
05:14:15 24 think that there is outstanding discovery issues that need to
05:14:19 25 be resolved.

| | |
|---|---|
| 05:14:20 | 1 We probably will need to bring a motion to compel on |
| 05:14:23 | 2 our ability to inspect the range if it, in fact, shows up, and |
| 05:14:29 | 3 some other issues, and the question of perhaps we would |
| 05:14:32 | 4 suggest that there isn't as much an emergency. And so even if |
| 05:14:36 | 5 the Court would consider perhaps just moving this a couple of |
| 05:14:40 | 6 weeks, you would still have the opportunity to rule on the |
| 05:14:43 | 7 preliminary injunction -- |
| 05:14:43 | 8 THE COURT: But then their issue would be void |
| 05:14:46 | 9 because the deadline is October 14th, right? |
| 05:14:50 | 10 MR. SIGALE: 12th. |
| 05:14:51 | 11 THE COURT: 12th. |
| 05:14:52 | 12 MR. FORTI: Well, to the extent that you may have |
| 05:14:54 | 13 been persuaded that the October 12th date doesn't -- isn't |
| 05:14:59 | 14 that critical, because either people, in fact, can get the |
| 05:15:02 | 15 training, so the October 12th date doesn't really matter, or |
| 05:15:06 | 16 because it doesn't go to the core, as I think you've said |
| 05:15:09 | 17 here, and it's only monetary damages -- |
| 05:15:11 | 18 THE COURT: Oh, no, no, no, no, no. Today I don't |
| 05:15:14 | 19 see that. I want to see this preliminary injunction. I want |
| 05:15:18 | 20 to see whether it goes to the core. |
| 05:15:21 | 21 MR. FORTI: So you think it's still critical that the |
| 05:15:23 | 22 Court rules before October 12th? |
| 05:15:25 | 23 THE COURT: I do, I do, and I'm keeping the schedule, |
| 05:15:27 | 24 and you'll have to do the best you can with the schedule that |
| 05:15:30 | 25 you have. |

| | | |
|---|---|---|
| 05:15:31 | 1 | MR. FORTI: At some point then, your Honor, I know |
| 05:15:34 | 2 | you've given us from 1:00 o'clock in the afternoon -- we |
| 05:15:37 | 3 | haven't had a discussion yet with the Court or with opposing |
| 05:15:41 | 4 | counsel as to the number of potential witnesses. Would it be |
| 05:15:44 | 5 | prudent for us to talk, at least for us to have a scheduling |
| 05:15:47 | 6 | meeting, either informally or just among lawyers, so that we |
| 05:15:51 | 7 | can try to figure out how to best proceed? |
| 05:15:53 | 8 | It's quite conceivable based on some very preliminary |
| 05:15:57 | 9 | conversations with Mr. Gura that maybe some stipulations can |
| 05:16:00 | 10 | be entered, so that perhaps this could be done in an |
| 05:16:03 | 11 | afternoon, or perhaps we may need more time, if you anticipate |
| 05:16:07 | 12 | a full evidentiary hearing. |
| 05:16:10 | 13 | THE COURT: I'll set you for a status in my regular |
| 05:16:15 | 14 | motion call on September 23rd, one week from today, where you |
| 05:16:17 | 15 | can report to me upon the scope of the hearing, based upon |
| 05:16:20 | 16 | your discussions and your discovery. Okay. |
| 05:16:23 | 17 | MR. FORTI: That would be helpful. |
| 05:16:30 | 18 | MR. SIGALE: What time is regular status? |
| 05:16:33 | 19 | THE CLERK: 9:00 a.m. |
| 05:16:35 | 20 | MR. SIGALE: Oh, I've got that. Okay. |
| 05:16:36 | 21 | THE COURT: Okay. |
| 05:16:37 | 22 | MR. SIGALE: Yes, your Honor -- |
| 05:16:38 | 23 | MR. FORTI: Thank you. |
| 05:16:38 | 24 | MR. SIGALE: -- I can do September 23rd. |
| 05:16:40 | 25 | THE COURT: Okay. I'll see -- |

| | | |
|---|---|---|
| 05:16:41 | 1 | MR. SIGALE:  I'm sorry. |
| 05:16:41 | 2 | THE COURT:  Just a status so that we can discuss the |
| 05:16:44 | 3 | potential scope of the -- or not the potential -- the scope of |
| 05:16:49 | 4 | the October 1 hearing.  Okay. |
| 05:16:53 | 5 | MR. SIGALE:  Yeah, that's fine.  In fact, your Honor, |
| 05:16:54 | 6 | just for the record, I have the witness disclosures to turn |
| 05:16:58 | 7 | over to counsel right now as soon as we're done here. |
| 05:17:01 | 8 | THE COURT:  Okay. |
| 05:17:01 | 9 | MR. SIGALE:  And obviously we're just eager to put |
| 05:17:05 | 10 | the issues before the Court on October 1st, and we're willing |
| 05:17:08 | 11 | to do what we need to do to make sure that happens. |
| 05:17:10 | 12 | THE COURT:  Okay.  All right.  Thanks, folks. |
| 05:17:11 | 13 | MR. WORSECK:  Thank you, your Honor. |
| 05:17:13 | 14 | MR. FORTI:  Thank you, your Honor. |
| 05:17:13 | 15 | MR. SIGALE:  Thank you. |
| | 16 | (Concluded at 5:17 p.m.) |
| | 17 | - - - |
| | 18 | C E R T I F I C A T E |
| | 19 | |
| | 20 | I certify that the foregoing is a correct transcript from |
| | 21 | the record of proceedings in the above-entitled matter. |
| | 22 | |
| | 23 | /s/April M. Metzler, RPR, CRR, FCRR    September 16, 2010 |
| | 24 | April M. Metzler, RPR, CRR, FCRR         Date |
| | 25 | Official Federal Court Reporter |