**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-CV-5135 |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN OPPOSITION TO |
| v. | ) | DEFENDANT'S SECOND MOTION TO |
| | ) | DISMISS |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S SECOND MOTION TO DISMISS

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Opposition to Defendant's Second Motion to Dismiss.

| | |
|---|---|
| Dated: August 29, 2011 | Respectfully submitted, |
| Alan Gura (admitted pro hac vice) | David G. Sigale (Atty. ID# 6238103) |
| Gura & Possessky, PLLC | Law Firm of David G. Sigale, P.C. |
| 101 N. Columbus Street, Suite 405 | 739 Roosevelt Road, Suite 304 |
| Alexandria, VA 22314 | Glen Ellyn, IL 60137 |
| 703.835.9085/Fax 703.997.7665 | 630.452.4547/Fax 630.596.4445 |
| By: /s/ Alan Gura/ | By: /s/ David G. Sigale/ |
| Alan Gura | David G. Sigale |
| | Attorneys for Plaintiffs |

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S SECOND MOTION TO DISMISS

PRELIMINARY STATEMENT

The only thing that Defendant City has managed to render moot, before it was even filed, is its motion to dismiss the case for mootness. For on July 28, the day before the city filed its motion, the City's Police Department introduced a *third* gun range ordinance, which may or may not be enacted in some form prior to the Court's decision on this motion. See Exh. A.

The introduction of yet another revision to the gun range ban is unsurprising. This new revision, like the previous one, was not proposed out of benevolence. The City plainly lacked the benefit of the Seventh Circuit's opinion in this case when drafting the July 6 ordinance, upon which its motion to dismiss is based. Introduction of the July 28 proposal inherently concedes that the July 6 ordinance—the only one upon which the motion to dismiss must be based—was still constitutionally deficient, and that is reason enough to deny the motion.

Alas, the third time is no charm either. The issue is not whether Chicago can be taken at its word that it will not re-enact the initial, defective ordinance. Plaintiffs agree that the former law is unlikely to return. The issue is whether the city's revised gun range law, which is now something of a moving target, resolves the disputes among the parties. And the answer to that question is plainly "no."

Since the dispute is very much alive—with the City's gun range ordinance not yet finalized, at least as of this writing—the Court must enter a preliminary injunction against the ordinance in its present form, and afford Plaintiffs an opportunity to amend their complaint so that it tracks the final gun range ordinance, once it becomes apparent that the ordinance will not be subject to further revision in the near future. Once the City is done changing its law, the issue

of whether the case would proceed can be revisited by both sides, and by the Court. But this motion is, at best, very premature.

While the gun range law remains in flux, what is absolutely clear is that even in the face of Supreme Court and Seventh Circuit rulings, the City will do everything it can to deprive law-abiding citizens of their fundamental rights to operate and access gun ranges. And if the Defendant can no longer achieve this improper goal through an outright ban, it will make legislation that renders Second Amendment rights so burdensome, expensive and complicated that people will not be able to get past the hurdles and roadblocks. The Defendant essentially says "trust us," ignoring the fact that its legislative fig leaves have not addressed the basic issue in the case. It is perfectly clear the conduct at issue will persist until a Court finally puts a stop to it. Fortunately, the Seventh Circuit's guidance in this case guarantees such an outcome. Defendant's Motion to Dismiss this matter as moot must be denied.

STATEMENT OF FACTS

The underlying facts through July 6 are familiar to the Court and do not require extensive recounting here. On that day, the Seventh Circuit issued its (first) opinion in this case, finding that Plaintiffs were entitled to a preliminary injunction against Chicago's gun range ban. The Seventh Circuit also foresaw, as *both* sides at various times promised or predicted, that the City might invoke its regulatory powers to effectively ban gun ranges in ways less explicit than found in its immediate reaction to *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010). Accordingly, the Seventh Circuit held that "the injunction should prohibit the City from using its zoning code to exclude firing ranges from locating anywhere in the city." *Ezell* v. *City of Chicago*, 2011 U.S. App. LEXIS 14108 at *67 (July 6, 2011).

Having foreseen that their explicit range ban was unlikely to survive, the same day that the Seventh Circuit issued its opinion, Defendants enacted a revised ordinance, effective July 16, 2011, that symbolically lifted the explicit ban but re-enacted it for all intents and purposes, making range operation completely impossible. Then, having considered the Seventh Circuit's opinion, the City returned to the drawing board, proposing what it terms "limited changes" to the gun range laws. Def. Br. 2 n.1.

Regardless of what version of the July 6 Amended Ordinance exists, either as written or as it would be altered by the July 28 proposal, Plaintiffs continue to maintain (1) many provisions of the July 6, 2011 Amended Ordinance are unconstitutional; (2) Plaintiffs seek leave to file an Amended Complaint to address the deficiencies in the July 6, 2011 Amended Ordinance; and (3) the Defendant's behavior will be repeated over and over so long as it thinks it can get away with it, and until a Court stops it. The relief sought by Plaintiffs continues to be quite modest. Plaintiffs only want gun ranges to be able to operate in the City of Chicago in the same manner that they operate throughout the United States, including in other large cities: subject to ordinary regulations, to be sure, but as a form of business that individuals can practically operate and use.

## SUMMARY OF ARGUMENT

Defendant's amendment to the challenged ordinance does not moot the case, because the amendment is unconstitutional, and the complained-of behavior—the practical abolition of gun ranges, including some of the specific problems pointed out by Plaintiffs—continues unabated.

## ARGUMENT

"[W]hen an intervening amendment provides no assurance that the complained-of conduct will cease, the case is not moot. In other words, if the injury of which a plaintiff

complains continues even under the amended statute, then the possible issuance of an injunction promises a measure of relief, and a court may act." *Rembert* v. *Sheahan*, 62 F.3d 937, 941 (7th Cir. 1995). The Seventh Circuit requires that it be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Palmetto Properties, Inc.* v. *County of DuPage*, 375 F.3d 542, 550 (7th Cir. 2004). "If voluntary cessation were treated as mooting a case, any government official being sued could cease a challenged practice to thwart the lawsuit, and then return to his old tricks once the coast is clear." *Id.* (internal citations omitted).

Even repeal of a challenged statute may not be sufficient to render a case moot. *City of Benton* v. *Village of West City*, 2007 U.S. Dist. LEXIS 27252, *5-6 (S.D. Ill. 2007) (citing *Kikimura* v. *Turner*, 28 F.3d 592, 597 (7th Cir. 1994)). "The crucial inquiry is whether there has been *complete discontinuance*, whether effects continue after discontinuance, and whether there is any other reason that justifies decision and relief." *Magnuson* v. *Hickory Hills*, 933 F.2d 562, 565 (7th Cir., 1991) (emphasis added).

Even where there has been "complete discontinuance," *supra*, "[t]he 'heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Given the Defendant's actions and history, there is no way its conduct meets these requirements. The July 6, 2011 Amended Ordinance leaves virtually the same ability for a range to open within City limits as the original Ordinance – none. The July 28, 2011 proposal, should it be enacted, would provide a slight improvement but will not transform the July 6, 2011 Amended Ordinance into meeting constitutional requirements.

Specifically, at this time Plaintiffs intend to challenge, without waiving other potential challenges, the following provisions of the July 6, 2011 Amended Ordinance (some, but not all of which might be addressed by the July 28 proposals):

- 4-5-10 – establishing a $4000.00 license fee for a shooting range, which appears wildly excessive and punitive;

- 4-151-010, 4-151-030 – requiring a federal firearm license, a CFP, and a FOID card for all managers, employees, and "applicants," which according to 4-151-010 includes all persons who are "required to be disclosed pursuant to section 4-151-030(b),"— meaning, individuals, partners of partnerships, LLC managers and/or members, corporate officers and directors, *and* their attorneys, accountants, consultants, expediters, promoters, and lobbyists.[1]

- 4-151-030(e) – requiring a $500.00 application reactivation fee;

- 4-151-030(f) – giving discretion to the commissioner to deny the range license application if the license "would have a deleterious impact on the health, safety and welfare of the community in which the shooting rage facility is or will be located," whatever that means, including the presumption that a "deleterious impact" exists "whenever there have been a substantial number of arrests within 500 feet of the applicant's premises . . . .";

- 4-151-090 – setting limits on operating hours;

- 4-151-100(b) – requiring a minimum of one range master for each three shooting patrons;

- 4-151-100(d) – allowing no one under 18 in a shooting range facility;

- 4-151-120 – restricted areas and distance limitations for locating a shooting range;

---

[1]These provisions are on their face absurd, imposing burdensome requirements (including residence requirements) on anyone who might invest in, work for or assist a gun range, and implicates serious issues well beyond the Second Amendment. "Out-of-state lawyers may—and often do—represent persons who raise unpopular federal claims. In some cases, representation by nonresident counsel may be the only means available for the vindication of federal rights." *Supreme Court of New Hampshire* v. *Piper*, 470 U.S. 274, 281 (1985) (citation omitted). "Lobbyists" and "promoters," who would engage in pure First Amendment speech on behalf of gun ranges, cannot be regulated in this manner, either.

- 4-151-140 – License Revocation; wait for new license;

- 4-151-170 – prohibiting the loaning/renting of firearms and prohibiting the sale of ammunition;[2]

- 4-151-190 – excessive penalties for violations;

- 13-96-1200(b)(2) – requiring a maximum decibel level of 55db, which is lower than many ordinary human conversations, ambient noise from traffic, and numerous commercial uses permitted within the city;

- 13-96-1200(b)(7) – requiring a ¼ inch per foot slope from firing line to backstop, an unusual feature in any gun range that would make it prohibitively expensive to construct a gun range in any existing building;

- 13-96-1210 – excessive ventilation requirements;

- 17-5-0207 – allowing ranges in M1, M2 and M3 zones only, but not in PMD (planned manufacturing districts).

The distance limitations imposed on shooting ranges—one thousand feet from any other gun range, residential district, school, day-care facility, park, place of worship, alcohol retailer, "children's activities facility,"[3] library, museum, or hospital are especially egregious. It is unclear that *any* property in the city exists that could fit within this definition.

But more to the point, the Seventh Circuit clearly instructed that zoning gun ranges for secondary effects must, as in the First Amendment context, be based on *empirical evidence*. *Ezell*, 2011 U.S. App. LEXIS 14108 at *62-*63. Plaintiffs are unaware of *any* empirical evidence

---

[2] Plaintiffs have repeatedly complained about this effect of the former range ban, arguing that in the interest of public safety and informed consumer choice, individuals should be able to try and practice shooting, and to sample various firearms, *before* purchasing those firearms. The City has now codified a ban on exactly one activity that Plaintiffs seek to secure—hardly the definition of mooting a case.

[3] A vast term that includes "any person who provides recreational, cognitive or educational activities to children 17 years or younger." Chi. Mun. Code § 4-76-010.

even purporting to justify these restrictions, and cannot fathom why a simple gun range cannot be located within a thousand feet (or five hundred feet, or five feet) of most any other commercial use. The evidence before the Court already is that gun ranges have long operated in this city, without incident, amongst other normal property uses.

As the Seventh Circuit instructed that "the injunction should prohibit the City from using its zoning code to exclude firing ranges from locating anywhere in the city," *Ezell*, 2011 U.S. App. LEXIS 14108 at *67, this Court should immediately, at a minimum, enjoin the operation of Chi. Mun. Code § 4-151-120. The same mandate for the use of actual empirical evidence in restricting gun ranges also dooms the arbitrary ban of Section 4-151-030(f), which further raises glaringly obvious prior restraint and vagueness issues in its grant of unbridled discretion to bar exercise of constitutional rights.[4] Although the Seventh Circuit observed that the terms of an injunction against the old law may not literally fit the new law (or the one that is now sure to follow), *any* preliminary injunction is merely a form of relief—the controversy in this case is the barring of gun ranges, which continues under a different form.

With respect to alleged mootness, this case is remarkably similar to *Northeastern Florida Chapter of Associated General Contractors of America* v. *City of Jacksonville*, 508 U.S. 656 (1993). In *Northeast Contractors*, the issue was the denial of equal protection by a city law regarding set-asides for minority contractors. The Supreme Court decided the plaintiff had

---

[4]Plaintiffs are not required to test the law in order to challenge it. "The Constitution can hardly be thought to deny to one subjected to the restraints of [a licensing law] the right to attack its constitutionality, because he has not yielded to its demands . . . . As the ordinance [providing for unbridled licensing discretion] is void on its face, it was not necessary for appellant to seek a permit under it." *City of Lakewood* v. *Plain Dealer Publishing Co.*, 486 U.S. 750, 756 (1988) (citations omitted).

standing to assert an equal protection claim even though it had not been denied a contract. *Id.* at 666. More importantly to this case, the Supreme Court held that the case was not moot even though the city repealed the ordinance at issue and enacted another one:

> There is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so. Nor does it matter that the new ordinance differs in certain respects from the old one . . . it is [not] only the possibility that the selfsame statute will be enacted that prevents a case from being moot; if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect. The gravamen of petitioner's complaint is that its members are disadvantaged in their efforts to obtain city contracts. The new ordinance may disadvantage them to a lesser degree than the old one, but . . . it disadvantages them in the same fundamental way.

Id. at 595 (emphasis added).

Likewise, here, Plaintiffs remain disadvantaged in the same fundamental way, even if Defendant could argue they are disadvantaged to some lesser hypothetical degree. Gun ranges can be barred effectively at will by the city, they cannot be located practically anywhere, they are subject to outrageous licensing fees, they cannot locate in any building with a level floor, they cannot even hire a lawyer or advertiser who does not himself or herself have a Chicago Firearms Permit—and they cannot engage in the very same traditional range activities of the kind for which Plaintiffs have already argued in this case. This is hardly a "complete discontinuance" of the challenged activity. *Magnuson*, 933 F.2d at 565. It is more of the same resistance to the judicial power of the United States.

This case also parallels *Community Services, Inc.* v. *Wind Gap Municipal Authority*, 2006 U.S. Dist. LEXIS 23385 (E.D. Pa. 2006). In *Wind Gap*, a community home providing services for three mentally challenged women claimed the municipality discriminated against it by charging extra fees, changing the classification of the property, and failing to provide certain

8

reasonable accommodations in violation of the Fair Housing Act and Fair Housing Amendments Act. The government reclassified the property as residential and moved the Court to dismiss the case as moot. Id. at *2. The Court ruled: "[t]he standard for mootness in cases of voluntary cessation is 'stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Id. at *2-3 (quoting *United States* v. *Gov't of the Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004)). "The rationale behind the "stringent" mootness standard in cases of voluntary cessation is that if voluntary cessation of allegedly illegal conduct mooted a case, "the courts would be compelled to leave [defendants] free to return to [their] old ways. As such, a defendant has a "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Wind Gap*, 2006 U.S. Dist. LEXIS 23385 at *3 (citation omitted).

Of course, in this case, Chicago has never departed from its "old ways," which are merely continued under another revision to its code. As Judge Rovner noted, the City's initial ordinance "was not so much a nod to the importance of live-range training as it was a thumbing of the municipal nose at the Supreme Court. The effect of the ordinance is another complete ban on gun ownership within City limits." *Ezell*, 2011 U.S. App. LEXIS 14108 at *70 (Rovner, J., concurring). And here, the effect of the July 6 gun range ordinance remains a complete ban on gun ranges in the City of Chicago, which the July 28 proposals would not completely undo.

CONCLUSION

Defendant's attitude regarding the Second Amendment has been, and continues to be, not "How can we respect Second Amendment rights while regulating in a constitutional way," but "How much can we get away with?" The City bans first and litigates later, and if it loses on the ban, it will pass whatever effectuates a ban by other methods.

This case is not moot. Defendant's motion to dismiss must be denied.

| | |
|---|---|
| Dated: August 29, 2011 | Respectfully submitted, |
| Alan Gura (admitted pro hac vice)<br>Gura & Possessky, PLLC<br>101 N. Columbus Street, Suite 405<br>Alexandria, VA 22314<br>703.835.9085/Fax 703.997.7665 | David G. Sigale (Atty. ID# 6238103)<br>Law Firm of David G. Sigale, P.C.<br>739 Roosevelt Road, Suite 304<br>Glen Ellyn, IL 60137<br>630.452.4547/Fax 630.596.4445 |
| By: /s/ Alan Gura/<br>     Alan Gura | By: /s/ David G. Sigale/<br>     David G. Sigale |
| | Attorneys for Plaintiffs |

CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on August 29, 2011, he served a copy of the above Memorandum of Points and Authorities, and this certificate of service, on:

>Andrew W. Worseck
>City of Chicago Department of Law
>30 N. LaSalle Street, Suite 900
>Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).

>/s/ Alan Gura
>Alan Gura