IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| RHONDA EZELL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 10 C 5135 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

After the Supreme Court struck down the City of Chicago's de facto ban on handgun possession in *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), holding that an individual's Second Amendment right to possess a handgun in the home for self-defense applied to the states, the City passed a new gun ordinance. Rhonda Ezell and others ("Ezell") sued the City because that new ordinance required gun range training on one hand, but banned publicly-accessible gun ranges on the other. Specifically, Ezell's complaint asked the Court to find unconstitutional the Chicago ordinance sections that banned firing ranges and their operation. The Court denied Ezell's request for a preliminary injunction, and Ezell appealed. On July 5, 2011, after being widely reported in the press, a Chicago City Council committee approved the Mayor of Chicago's proposal to allow gun ranges to operate in Chicago and the ordinance was presented directly to the City Council's Public Safety Committee. On July 6, 2011, the Chicago City Council passed the ordinance deleting the offending section and allowing firing ranges to operate in the City, subject to restrictions. An hour prior to the passage, in typescript form–a practice ordinarily reserved for emergency action--the Seventh Circuit issued an opinion reversing the Court's denial of the preliminary injunction and

instructed the Court to enter an injunction forbidding the City from enforcing the firing range ban, as well as the other ordinance sections that prevented Chicagoans from using ranges. *See Ezell v. City of Chicago*, --- F.3d ---, 2011 WL 2623511, at *19 (7th Cir. Jul. 6, 2011). The City now moves to dismiss this case as moot, asserting that the City Council gave Ezell all the relief she seeks. Ezell opposes the motion, claiming that the case concerns access to firing ranges and City's new web of restrictions on firing ranges operate, in effect, as a new ban on gun ranges. For the below reasons, the City's motion is denied.

I.  **MOOTNESS STANDARD**

The Court "may not give opinions upon moot questions or abstract propositions." *Zessar v. Smith*, 536 F.3d 788, 793 (7th Cir. 2008). Typically, "any dispute over the constitutionality of a statute becomes moot if a new statute is enacted in its place during the pendency of the litigation, and the plaintiff seeks only prospective relief." *Id.* (citing *MacDonald v. City of Chicago*, 243 F.3d 1021, 1025 (7th Cir. 2001)). There is, however, an exception. Amendment or repeal of a challenged statute "'does not deprive a federal court of its power to determine the legality of the practice' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 609 (2001) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). In other words, the "repeal of a challenged law renders a case moot, unless there is evidence creating a reasonable expectation that the City will reenact the ordinance or one substantially similar." *See Fed. of Advertising Ind. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003). Usually, however, legislative action will provide the assurance required by *Buckhannon*, because "when the defendants are public officials . . . we place greater

stock in their acts of self-correction, so long as they appear genuine." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 492 (7th Cir. 2004). In other words, where the defendant is a public official, the Court will not presume bad faith. *Fed. of Advertising Ind. Representatives*, 326 F.3d at 929-30. Mootness is a question of law. *Zessar*, 536 F.3d at 793.

## II.     DISCUSSION

In her complaint, Ezell requested very specific relief: for the Court; namely an injunction forbidding City officials from enforcing Chicago Municipal Code § 8-20-280, as well as §§ 8-20-020, 8-20-030, 8-20-080, 8-20-100, 8-20-110, 8-20-140 and 8-24-010 the extent those sections prevented "operation and use of gun ranges open to the public and the loan or rental of functional firearms within gun ranges open to the public." (Doc. 1, Compl., Prayer for Relief.) The July 6, 2011 amended ordinance repealed § 8-20-280, which prohibited publicly accessible firing ranges, and amended the other offending sections as follows:

| | |
|---|---|
| 8-20-020 | Amended to allow range employees and range patrons to possess handguns. |
| 8-20-080 | Amended to allow range employees and range patrons to possess ammunition. |
| 8-20-100 | Amended to allow range employees to sell ammunition or provide a firearm to a range patron. |
| 8-20-110 | Amended to not require a range patron to have a Chicago Firearm Permit ("CFP") while the range patron is receiving his/her range training. |
| 8-24-010 | Amended to allow range employees and range patrons to discharge firearms in the City. |

There is no dispute Ezell's argument is not that the City will re-enact the challenged law; she agrees "that the former law is unlikely to return." (Doc. 118 at 1.) Rather, she asserts that the City's

new thicket of regulations on gun ranges has the same effect as the old ordinance, that is banning firing ranges. Ezell wants to amend her complaint to challenge those restrictions as unconstitutional. Specifically, Ezell indicates that she would challenge, among other regulations, the various fees to register a range, requiring applicants for shooting range licenses to have federal firearm licenses, CFPs and Firearm Owner Identification cards, limitations on operations, and geographical and zoning restrictions on where the ranges may operate. (Doc. 118 at 5-6.)

The question remains, then, whether the new ordinance is "substantially similar" to the old one. The Seventh Circuit's opinion in this case and the Supreme Court's decision in *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993) are guideposts. In *Northeastern Florida*, a contractors' association challenged a municipal ordinance requiring ten percent of city contracts to be set aside for minority-owned businesses. *Id.* at 659. While the case was pending, the municipality passed a new ordinance, establishing "participation goals," ranging from five to sixteen percent of the city's contracts, for minority-owned businesses. *Id*. at 661. The Supreme Court found that a municipality cannot moot a case by tweaking an ordinance in some insignificant way, and though the new ordinance may have disadvantaged the plaintiff less, "it disadvantage[d] [the plaintiff] in the same fundamental way." *Id.* at 662. The city's new ordinance demonstrated that the city would engage in the same behavior that was struck down. *Id*. In short, the approach in *Northeastern Florida* is a practical one: if the new ordinance has the same effect as the old ordinance, the two ordinances are substantially similar and the case is not moot.

Turning to the Seventh Circuit's opinion, the court found that the right to possess firearms—applied to the states in *McDonald*—"implies a corresponding right to acquire and

maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." *Ezell*, 2011 WL 2623511, at *14, 17 (noting that preventing gun owners from target practice at a firing range "is a serious encroachment on the right to maintain proficiency in firearm use.") The Seventh Circuit instructed the Court to enjoin application of § 8-20-280 as well as the other provisions listed above "[t]o the extent that these provisions prohibit law-abiding, responsible citizens from using a firing range in the city . . . ." *Id.* at *19. The panel also noted that the injunction should prohibit the City "from using its zoning code to exclude firing ranges from locating anywhere in the city." *Id*. Judge Rovner, in her concurrence, found the "effect of the [pre-July 6, 2011] ordinance is another complete ban on gun ownership within City limits." *Id*. at *20.

This is not an instance where the plaintiff challenged an ordinance, and the city simply repealed it. *See e.g.*, *City of Benton v. Village of West City*, No. 06 C 904, 2007 WL 1100766, at *3 (S.D. Ill. Apr. 12, 2007) (mooting a suit challenging an ordinance after the ordinance was repealed in its entirety). The new ordinance undoubtedly burdens anyone trying to open or use a firing range, including with zoning restrictions. In *Ezell*, Seventh Circuit said that citizens have a right to access gun ranges as part of their Second Amendment right to possess handguns for protection and expressed concern with de facto range bans, but did not hold that gun ranges cannot be restricted or regulated at all. Indeed, the Seventh Circuit noted the City's public safety concerns "can be addressed through sensible zoning and other appropriately tailored regulations." *Ezell*, 2011 WL 2623511, at *17. Consequently, whether the new ordinance's restrictions are so burdensome as to effectively ban firing ranges or invade an individual's Second Amendment rights is an issue that must be hashed out in litigation. For example, without further litigation, the Court does not know

5

whether requiring gun ranges to be in certain types of zones and 1,000 feet from residential areas, churches and liquor stores (among other places) leaves any areas for gun ranges.

Though the Court cannot conclude that the new ordinance is the same as the old without further litigation, as the Supreme Court did in *Northeastern Florida*, it is consistent with that case not to dismiss the instant litigation as moot and instead to let the parties litigate the issue of whether the new ordinance is a de facto ban on firing ranges or so burdensome as to infringe on Chicagoan's Second Amendment rights. Moreover, as a practical matter, Ezell is either going to: (1) challenge the constitutionality of these restrictions by filing an amended complaint as part of this case; or (2) file a new case attacking the same restrictions. The Court sees no upside in making the parties start over with another judge who has less familiarity with the issues and facts of the case than this Court.

## III.    CONCLUSION AND ORDER

For the foregoing reasons, the City's motion to dismiss the case as moot is denied. By September 30, 2011, the parties shall file an agreed proposed injunction order, or separate proposed injunction orders if they cannot agree. Ezell must file her amended complaint by October 15, 2011. The parties shall appear for a status on October 26, 2011 at 9:00 a.m. to discuss the schedule going forward.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 28, 2011

Case: 1:10-cv-05135 Document #: 122 Filed: 09/28/11 Page 7 of 7 PageID #:1924