# EXHIBIT A

Case: 1:10-cv-05135 Document #: 143-1 Filed: 04/17/12 Page 2 of 13 PageID #:2106
Case: 1:10-cv-04184 Document #: 108 Filed: 03/18/11 Page 1 of 3 PageID #:1742
Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edmond E. Chang | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 10 C 4184 | DATE | 3/17/2011 |
| CASE TITLE | Benson, et al. Vs. The City of Chicago, et al. | | |

**DOCKET ENTRY TEXT**

With regard to Plaintiffs' motion to compel [ 65] and the mirror-image motion of the City for a protective order [63], the parties have narrowed their disputes to the issues below. For the reasons stated in open court, and summarized here, the Court grants in part and denies in part both motions.

■[ For further details see text below.]                    Notices mailed by Judicial staff.

## STATEMENT

     a. *"Internal" legislative process*: Plaintiffs seek documents in the possession of City Council aldermen and the Mayor, and their respective staff members, that "reflect[ed], referr[ed], or relat[ed]" to the Ordinance. RFP No. 1. Plaintiffs also issued other requests for production and depositions that similarly would encompass, among other things, discovering information "regarding the drafting of the Ordinance, including but not limited to who was involved, what was discussed, whether any other language or alternative regulations were discussed or considered, and the reasons why the text of the Ordinance was selected," even if those discussions occurred outside of the hearings of the Council or its committees. 30(b)(6) Topic No. 1; *see also* 30(b)(6) Topic Nos. 2, 3, 8-9, 12-14, 15; RFP Nos. 2, 4(I).

     Although it is not yet clear what level of constitutional scrutiny will apply to the specific challenges to the Ordinance, the object of the scrutiny will *not* be the subjective purposes or motives of the individual alderman, the Mayor, and their staffs. Rather, the scrutiny will focus on the objective purpose of the legislation, as determined by its text, structure, and legislative history (in the form of Council and committee hearing transcripts and materials). That was the analytical focus in *United States v. Skoien*, 614 F.3d 638, 624-43 (7th Cir. 2010) (*en banc*) (Second Amendment scrutiny of 18 U.S.C. § 922(g)(9)), and the cases cited by *Skoien* as examples of applying a "strong showing" level of scrutiny in other contexts, *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 202-04 (1999) (some First Amendment questions); *Heckler v. Mathews*, 465 U.S. 728, 744-51 (1984) (temporary gender-based distinction for pension benefits to protect reliance interests). The cases cited by

## STATEMENT

Plaintiffs as examples of further exploration of the individual legislators' purposes or individual governmental actors' purposes are distinguishable because those cases are either equal protection cases involving intentional discrimination; First Amendment cases where the court had to sort out impermissible suppression of viewpoint versus permissible regulation of secondary effects; or in the case of *Planned Parenthood v. Casey*, 505 U.S. 833, 877 (1993), the Supreme Court's use of the word "purpose" meant, when read in context, the objective purpose of the legislation.

In other words, the focus on the objective, enacted purpose of the *legislation* rather than on the subjective considerations of individual *legislators* not presented to the Council or committee also arises from the principle that a legislator's subjective "motive" or "animus" against the Second Amendment would not invalidate an otherwise constitutional regulation of firearms. The converse is true: if legislator's had a "benign" view of the right to bear arms and mistakenly believed that a firearms regulation promoted gun ownership (*e.g.*, restricting the number of firearm stores per square mile due to a mistaken belief that the restriction would promote the stores' economic viability), but that regulation otherwise did not survive the appropriate constitutional scrutiny, the "benign" motive would not save the regulation. Moreover, even if the internal legislators' process was somehow relevant, it would be unduly burdensome to root around for the information in the offices of the multi-member Council, the Mayor, and the staff members when the Ordinance itself and the public legislative record already set forth the asserted purposes of the legislation. Accordingly, to the extent that Plaintiffs seek to discover the internal legislative process leading up to the Ordinance's adoption, the motion to compel is denied, and the City's corresponding motion for protective order is granted.

b. *Categorization of Interests.* In requests for production Nos. 28-30, and in part in No. 31, Plaintiffs ask that the City categorize the interests advanced by the Ordinance into "compelling," "substantial," or "rational." Plaintiff's motion to compel that categorization is denied because it seeks legal conclusions rather than factual information (the underlying facts, data, studies, and other materials that the City will rely on in proving the alleged interests are already the subject of other discovery requests).

c. *Summary Judgment / Trial.* Plaintiffs seek production of all documents that the City will use in summary judgment and trial, RFP No. 41, identification of all witnesses at trial, RFP No. 7, and production of all "documents" that the City will use to defend the Ordinance, RFP 33. The first two (RFP Nos. 41 and 7) are premature in that the parties have not yet prepared for summary judgment motions or for trial. The third request, R. 33, is a 'catch-all' that duplicates the Plaintiffs' other (appropriate) specific discovery requests for information concerning the purposes and effects of the regulation (or lack of regulation) and other alternatives. However, the Court will strictly enforce the discovery production so that neither party is surprised during summary judgment briefing and trial.

d. *Ezell Discovery.* The City objects to producing discovery that it has obtained from the plaintiffs in the *Ezell* litigation, RFP No. 13, arguing that such discovery is not traditional discovery because the City's lawyers have obtained them through their efforts. The City's motion for protective order on this discovery is denied. Although the information may

| STATEMENT |
|---|
| be physically housed in the offices of the City's lawyers, the discovery was obtained on behalf of *the City* as a party in the *Ezell* case. That information is now in the possession, custody, and control of the City. There is no applicable privilege; the work-product privilege does not apply because the City served, of course, the discovery requests on the *Ezell* plaintiffs. |

# EXHIBIT    B



City of Chicago
Rahm Emanuel, Mayor

Department of Law

Stephen R. Patton
Corporation Counsel

Constitutional and Commercial
Litigation
30 North LaSalle Street
Suite 1230
Chicago, Illinois 60602-2580

(312) 744-4342
(312) 742-3925 (FAX)

http://www.cityofchicago.org

January 19, 2012

**BY ELECTRONIC AND U.S. MAIL**

David G. Sigale, Esq.
Law Firm of David G. Sigale, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137

Re: *Ezell, et al. v. City of Chicago*,
No. 10 CV 5135

Dear David:

Pursuant to our conversation on Tuesday, January 10, 2012, I write to address the issues you raise in your December 22, 2011 letter regarding the City's responses to Plaintiffs' Requests for Production, Interrogatories, and Requests for Admission.

**Requests for Production ("RFP")**

1. **RFP No. 1.** To the extent Plaintiffs clarify that they seek in RFP No. 1 the legislative history of the Gun Range Ordinance (in the form of City Council transcripts and materials), the City will agree to produce that legislative history to the extent it exists.

With respect to the remainder of Request No. 1, the City stands on its objections. In particular, as discussed by the Seventh Circuit in *United States v. Skoien*, 614 F.3d 638, 624-43 (7th Cir. 2010) and *Ezell v. City of Chicago*, --- F.3d ----, No. 10-3525, 2011 WL 2623511 (7th Cir. July 6, 2011), the constitutionality of the Gun Range Ordinance will not be determined by the type or amount of information presented to or in the possession of the City Council at the time it was enacted. *See* Responses to Plaintiffs' First Set of Requests for Production, Gen. Objection A. Instead, the Court may uphold the Gun Range Ordinance based on facts, studies, or information that the City did not have in its possession at the time it was enacted. Thus, any documents examined or used in formulating the Gun Range Ordinance are irrelevant and not the proper subject of discovery.

Indeed, in *Illinois Association of Firearms Retailers, et al. v. City of Chicago, et al.*, No. 10-C-4184, Judge Edmond Chang denied the plaintiffs' motion to compel the discovery of documents and information "'regarding the drafting of the [Responsible Gun Owners'] Ordinance, including, but not limited to who was involved, what was discussed, whether any other language or alternative regulations were discussed or considered, and the reasons why the text of the Ordinance was selected,' even if those discussions occurred outside of the hearings of the Council

David G. Sigale, Esq.
January 19, 2012
Page 2

or its committees." See Order dated March 17, 2011, a copy of which is enclosed. Judge Chang ruled that under *Skoien*, such information was irrelevant to the question of the constitutionality of the ordinance and denied the plaintiffs' motion to compel discovery related to "the internal legislative process leading up to the Ordinance's adoption." *Id.* That same reasoning bars Plaintiffs' discovery into the information sought in RFP No.1.

    2.    **RFP No. 2.** For the reasons set forth above with respect to RFP No. 1, the City will stand on its objections to Plaintiffs' request for any laws "relied upon" in drafting the Gun Range Ordinance.

    3.    **RFP No. 3.** In RFP No. 3, you seek any documents supporting the City's denial of Request for Admission ("RFA") No. 6, which asks the City to admit or deny that it "lack[s] any scientific studies or empirical evidence demonstrating secondary effects of gun ranges justifying the restrictions set forth in the Gun Range Ordinance that are challenged by the First Amended Complaint."

In responding to RFA No. 6, the City objected to RFA No. 6 because it is unclear what Plaintiffs mean by "scientific" studies or "empirical" evidence or "secondary effects," and you fail to offer any further guidance in your letter. Moreover, as discussed above in response to RFP No.1, such information is irrelevant. RFP No. 3 is also unduly burdensome because would require the City to search the records of all members of the City Council and all City Departments for responsive documents.

The City did deny in response to RFA No. 6 that it lacks any "information" supporting the Gun Range Ordinance, and in response to RFP No.3, stated that it would produce non-privileged documents in the possession of certain City departments. As a result, the City believes that the documents Plaintiffs seek in RFP No. 3 will likely be included in any such production, which will be forthcoming shortly.

    4.    **RFP No. 4.** The City disagrees with your assertion that "actual threats" is not vague because, as you state in your letter, it "refers to threats that go beyond the speculative, hypothetical or imaginary." This does not clarify what is meant by an "actual threat" because your standard is still too subjective for the City to determine what documents would be responsive. Moreover, you do not address in your letter the City's burdensome objection to RFP No. 4 based on Plaintiffs' refusal to provide a time limit and request that the City search all City departments for responsive documents. The City will therefore stand on its objections.

You clarify that the gun ranges for which Plaintiffs request documents are listed in the Declaration of Joseph Brown dated August 12, 2010. Subject to this limitation and the City's objections, the City has stated that it would produce documents that are in the possession of certain

David G. Sigale, Esq.
January 19, 2012
Page 3

City departments. The City believes this is an appropriate scope of discovery.

### Interrogatories

1. **Interrogatory No. 1.** For the reasons set forth in the City's Responses to Plaintiffs' First Set of Interrogatories and above with respect to RFP No. 1, the City will stand on its objections.

2. **Interrogatory No. 2.** For the reasons set forth in the City's Responses to Plaintiffs' First Set of Interrogatories and above with respect to RFP No. 1, the City will stand on its objections.

3. **Interrogatory Nos. 4, 5, 7, 9, 11, and 12** As we discussed in our conference call, the Federal Rules of Civil Procedure require a party to answer an interrogatory based on the knowledge it has within its possession, custody, or control. We are not aware of any provision in the Federal Rules that would require the City to conduct tests or the like in order to answer an interrogatory. Thus, in answering Interrogatory Nos. 4, 5, 7, 9, 11, and 12, the City has provided substantive answers the extent it has any knowledge in its possession, custody, or control and states that it lacks knowledge or information when there is no information in the City's possession that would allow it to answer.

4. **Interrogatory No. 6.** The City will stand on its objections with respect to any range in the City other than those operated by CPD. What the City's "intentions" are with respect to those ranges is simply not a proper interrogatory under Fed. R. Civ. P. 33.

5. **Interrogatory No. 13.** We will attempt to locate and produce to you the map that was used at the July 5, 2011 City Council Committee meeting. However, we do not know whether that map definitively reflects "all land parcels" in the City on which a shooting range facility can be located as of July 5, 2011. Moreover, as you reference in your letter, that map would not show "all land parcels" on which a shooting range facility can be *currently* located because section 4-151-120 was amended to reduce the distance a shooting range facility can be from certain sensitive areas from 1,000 to 500 feet. If a map has been created which shows the land areas currently available in the City for shooting range facilities, we will produce that to you. Otherwise, the City will stand on its objections.

6. **Interrogatory No. 14.** For the reasons set forth in the City's Responses to Plaintiffs' First Set of Interrogatories and above with respect to RFP No. 1, the City will stand by its objections.

7. **Interrogatory No. 15.** The City will amend its response to Interrogatory No. 15 based on the change in your interrogatory from 4-151-010(b) to 4-151-030(b).

David G. Sigale, Esq.
January 19, 2012
Page 4

8. **Interrogatory No. 16.** In answering Interrogatory No. 16, the City identified the Commissioner of the City's Department of Business Affairs and Consumer Protection as the person charged under section 4-151-030(f) with determining whether a shooting range facility will cause a "deleterious impact," which section 4-151-030(f) states is presumed to exist if certain criteria are met. As we state in response to Interrogatory No. 17, the Commissioner determines whether those criteria are met, and except for the plain language of section 4-151-030(f), there are no other statutory criteria for the Commissioner to apply in making that determination.

9. **Interrogatory No. 18.** In response to Interrogatory No. 18, the City stated, subject to its objections, that noise level requirements would be set forth in the Municipal Code of Chicago and referred Plaintiffs to it. The City is not aware of any requirement that the City comb through the Municipal Code and identify for Plaintiffs every noise level requirement contained therein. Moreover, Plaintiffs' attorneys are equally capable of researching the law as the City's attorneys. The City will therefore stand on its objections and prior answer.

10. **Signature.** The City will supply a signature for those answers it provides to Plaintiffs' interrogatories.

## Requests for Admission

1. **RFA No. 1.** As discussed above with respect to Interrogatory No. 13, the City has not studied or evaluated whether the CPD's firing ranges meet the requirements of section 4-151-120 if that provision applied to them (which it does not), and the City is not aware of any requirement that it conduct such a study or evaluation in order to respond to RFA No. 1. The City therefore stands on its objections.

2. **RFA No. 2.** For the reasons set forth above with respect to RFA No.1, the City will stand on its objections to RFA No. 2.

3. **RFA No. 3.** For the reasons set forth above with respect to RFA No.1, the City will stand on its objections to RFA No. 3.

4. **RFA No. 4.** For the reasons set forth above with respect to RFA No.1, the City will stand on its objections to RFA No. 4.

5. **RFA No. 6.** As discussed above with respect to RFP No. 3, the City objects to RFA No. 6 because it is unclear what Plaintiffs mean by "scientific" studies or "empirical" evidence or "secondary effects," and you fail to offer any further guidance in your letter. The City therefore stands on its objections.

David G. Sigale, Esq.
January 19, 2012
Page 5

      6.    **RFA No. 12.** After consideration of the argument in your letter, the City stands by its objections. The words and phrases used in RFA No. 12 are far too vague and amorphous for the City to frame a response. Moreover, RFA No. 12 calls for the City to admit or deny what is essentially an opinion, not a fact.

      7.    **RFA No. 13.** After consideration of the argument in your letter, the City stands by its objections. Contrary to your assertions, "many" and "uses" are far too vague -- even in their context -- to permit the City to admit or deny RFA No. 13. Moreover, RFA No. 13, to the extent it uses "many" to characterize the uses of property, asks the City to admit or deny what is essentially an opinion, not a fact. As a result, RFA No. 13, as worded, does not permit the City to frame a proper response.

      8.    **Signatory.** Pursuant to the plain language of Fed. R. Civ. P. 36(a)(3), either a party or an attorney may sign responses to requests for admission. As a result, it is our position that no signature by the City – other than the attorney's signature already provided – is required.

* * *

If you would like to discuss these issues further, please do not hesitate to contact me.

Sincerely,

*[signature]*

William Macy Aguiar

Enclosure

cc:    Michael A. Forti
        Mardell Nereim
        Andrew W. Worseck
        Rebecca Alfert Hirsch

Case: 1:10-cv-05135 Document #: 143-1 Filed: 04/17/12 Page 11 of 13 PageID #:2115
Case: 1:10-cv-04184 Document #: 108 Filed: 03/18/11 Page 1 of 3 PageID #:1712
Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edmond E. Chang | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 4184 | **DATE** | 3/17/2011 |
| **CASE TITLE** | Benson, et al. Vs. The City of Chicago, et al. | | |

**DOCKET ENTRY TEXT**

With regard to Plaintiffs' motion to compel [65] and the mirror-image motion of the City for a protective order [63], the parties have narrowed their disputes to the issues below. For the reasons stated in open court, and summarized here, the Court grants in part and denies in part both motions.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

a. *"Internal" legislative process*: Plaintiffs seek documents in the possession of City Council aldermen and the Mayor, and their respective staff members, that "reflect[ed], referr[ed], or relat[ed]" to the Ordinance. RFP No. 1. Plaintiffs also issued other requests for production and depositions that similarly would encompass, among other things, discovering information "regarding the drafting of the Ordinance, including but not limited to who was involved, what was discussed, whether any other language or alternative regulations were discussed or considered, and the reasons why the text of the Ordinance was selected," even if those discussions occurred outside of the hearings of the Council or its committees. 30(b)(6) Topic No. 1; *see also* 30(b)(6) Topic Nos. 2, 3, 8-9, 12-14, 15; RFP Nos. 2, 4(I).

Although it is not yet clear what level of constitutional scrutiny will apply to the specific challenges to the Ordinance, the object of the scrutiny will *not* be the subjective purposes or motives of the individual alderman, the Mayor, and their staffs. Rather, the scrutiny will focus on the objective purpose of the legislation, as determined by its text, structure, and legislative history (in the form of Council and committee hearing transcripts and materials). That was the analytical focus in *United States v. Skoien*, 614 F.3d 638, 624-43 (7th Cir. 2010) (*en banc*) (Second Amendment scrutiny of 18 U.S.C. § 922(g)(9)), and the cases cited by *Skoien* as examples of applying a "strong showing" level of scrutiny in other contexts, *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 202-04 (1999) (some First Amendment questions); *Heckler v. Mathews*, 465 U.S. 728, 744-51 (1984) (temporary gender-based distinction for pension benefits to protect reliance interests). The cases cited by

## STATEMENT

Plaintiffs as examples of further exploration of the individual legislators' purposes or individual governmental actors' purposes are distinguishable because those cases are either equal protection cases involving intentional discrimination; First Amendment cases where the court had to sort out impermissible suppression of viewpoint versus permissible regulation of secondary effects; or in the case of *Planned Parenthood v. Casey*, 505 U.S. 833, 877 (1993), the Supreme Court's use of the word "purpose" meant, when read in context, the objective purpose of the legislation.

In other words, the focus on the objective, enacted purpose of the *legislation* rather than on the subjective considerations of individual *legislators* not presented to the Council or committee also arises from the principle that a legislator's subjective "motive" or "animus" against the Second Amendment would not invalidate an otherwise constitutional regulation of firearms. The converse is true: if legislator's had a "benign" view of the right to bear arms and mistakenly believed that a firearms regulation promoted gun ownership (*e.g.*, restricting the number of firearm stores per square mile due to a mistaken belief that the restriction would promote the stores' economic viability), but that regulation otherwise did not survive the appropriate constitutional scrutiny, the "benign" motive would not save the regulation. Moreover, even if the internal legislators' process was somehow relevant, it would be unduly burdensome to root around for the information in the offices of the multi-member Council, the Mayor, and the staff members when the Ordinance itself and the public legislative record already set forth the asserted purposes of the legislation. Accordingly, to the extent that Plaintiffs seek to discover the internal legislative process leading up to the Ordinance's adoption, the motion to compel is denied, and the City's corresponding motion for protective order is granted.

     b. *Categorization of Interests.* In requests for production Nos. 28-30, and in part in No. 31, Plaintiffs ask that the City categorize the interests advanced by the Ordinance into "compelling," "substantial," or "rational." Plaintiff's motion to compel that categorization is denied because it seeks legal conclusions rather than factual information (the underlying facts, data, studies, and other materials that the City will rely on in proving the alleged interests are already the subject of other discovery requests).

     c. *Summary Judgment / Trial.* Plaintiffs seek production of all documents that the City will use in summary judgment and trial, RFP No. 41, identification of all witnesses at trial, RFP No. 7, and production of all "documents" that the City will use to defend the Ordinance, RFP 33. The first two (RFP Nos. 41 and 7) are premature in that the parties have not yet prepared for summary judgment motions or for trial. The third request, R. 33, is a 'catch-all' that duplicates the Plaintiffs' other (appropriate) specific discovery requests for information concerning the purposes and effects of the regulation (or lack of regulation) and other alternatives. However, the Court will strictly enforce the discovery production so that neither party is surprised during summary judgment briefing and trial.

     d. *Ezell Discovery.* The City objects to producing discovery that it has obtained from the plaintiffs in the *Ezell* litigation, RFP No. 13, arguing that such discovery is not traditional discovery because the City's lawyers have obtained them through their efforts. The City's motion for protective order on this discovery is denied. Although the information may

| STATEMENT |
|---|
| be physically housed in the offices of the City's lawyers, the discovery was obtained on behalf of *the City* as a party in the *Ezell* case. That information is now in the possession, custody, and control of the City. There is no applicable privilege; the work-product privilege does not apply because the City served, of course, the discovery requests on the *Ezell* plaintiffs. |