1   <u>TRANSCRIBED FROM DIGITAL RECORDING</u>

2        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF ILLINOIS
3                EASTERN DIVISION

4
RHONDA EZELL, et al.,               )
5                                   )
              Plaintiffs,           )
6                                   )   Case No. 10 C 5135
                                    )
7   -vs-                            )
                                    )   Chicago, Illinois
CITY OF CHICAGO,                    )   July 19, 2012
8                                   )   10:31 a.m.
              Defendant.            )
9

10              TRANSCRIPT OF PROCEEDINGS
      BEFORE THE HONORABLE MORTON DENLOW, MAGISTRATE JUDGE
11
APPEARANCES:
12
For the Plaintiffs:   MR. DAVID G. SIGALE
13                    Law Firm of David G. Sigale, P.C.
                      739 Roosevelt Road
14                    Suite 304
                      Glen Ellyn, IL  60137
15                    (630) 452--4547

16  For the Defendant:   MR. WILLIAM MACY AGUIAR
                      City of Chicago, Department of Law
17                    30 North LaSalle Street
                      Suite 900
18                    Chicago, IL  60602
                      (312) 744-9010
19

20

21  Transcriber:

22          KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                  Official Court Reporter
23              United States District Court
          219 South Dearborn Street, Suite 2144-A
24              Chicago, Illinois  60604
              Telephone:  (312) 435-5569
25          e-mail:  kathyfennell@earthlink.net

1    (Proceedings heard in open court:)

2          THE CLERK:  10 C 5135, Ezell versus City of Chicago.

3          THE COURT:  Good morning.

4          MR. AGUIAR:  Good morning, your Honor.  William

5    Aguiar, A-G-U-I-A-R, for the defendants.

6          MR. SIGALE:  Good morning, your Honor.  David Sigale,

7    S-I-G-A-L-E, on behalf of the plaintiffs.

8          THE COURT:  How are you both today?

9          MR. SIGALE:  Doing fine.

10          Your Honor, I'll preface.  As I've noted in the

11    motion I filed, I do apologize about the 9th.  I could have

12    sworn we were on the 10th.  I walked out of court thinking it

13    was the 10th.  I put it in my calendar.  After that, it was

14    just --

15          THE COURT:  You know, we didn't take any adverse

16    action.  We just said, you know, if you want to renotice it,

17    you can renotice it.

18          MR. SIGALE:  No, I do appreciate that; but,

19    nevertheless, I do apologize for docketing it incorrectly.

20          THE COURT:  I know you're the very first lawyer

21    that's ever made that mistake, so I appreciate the apology,

22    and I accept it.

23          MR. SIGALE:  Thank you.

24          THE COURT:  And we'll just move on.

25          MR. SIGALE:  Sure.

1    THE COURT:  And also just as a matter of practice,
2  you know, if you're set for a status and you notice up a
3  motion, I'm going to put you at the end of the call because it
4  really is not designed for motions, but we'll accommodate you.
5    So you want to deal with this motion right now?
6    MR. AGUIAR:  Yes, your Honor.
7    THE COURT:  Okay.
8    MR. AGUIAR:  I'm prepared to speak to it.
9    MR. SIGALE:  Okay.
10    THE COURT:  So it's -- okay.
11    MR. SIGALE:  Well, your Honor, the first thing I want
12  to address is, and this just kind of taking it in order of the
13  motion.
14    THE COURT:  Sure.
15    MR. SIGALE:  On Page 2 --
16    THE COURT:  Yes.
17    MR. SIGALE:  -- we had previously talked on a
18  previous motion to compel, a little bit of which is kind of
19  still pending, but one of the things the Court did rule on is
20  that on request for admit -- to admit No. 12, we had a
21  discussion about it and the Court had said to me what are you
22  trying to get at with this request.  And when I explained, you
23  said, okay, well, rephrase it that way.
24    So I rewrote the request, and the defendant was to
25  answer it.  The defendant is still saying it's vague and

1  ambiguous and seeking an opinion.  I believe that I took all
2  the -- all the ambiguity out of it and that I don't believe
3  this is an opinion.  I believe that this is going to be a
4  factual finding that the Court's going to have to deal with,
5  especially in light of the Court's -- I'm sorry, in light of
6  the defendants' justifications, let's say, to try and uphold
7  the ordinance.

8        I rewrote it here, so --

9        THE COURT:  Okay.  Let me hear from the City and see
10 what they have to say.

11       MR. SIGALE:  Sure.

12       THE COURT:  Mr. Aguiar?

13       MR. AGUIAR:  Your Honor, as you're aware, Rule 36
14 allows a request for admission on a fact, an application of
15 law to fact, or an opinion about either.

16       What plaintiffs are asking for here is pure opinion.
17 Whether something is in the public interest is a matter of
18 pure opinion.  What I believe is in the public interest is
19 probably different from what the Court believes is in the
20 public interest.

21       So for the plaintiffs to ask us to assert whether
22 this is true or not is simply impossible.  That's the first
23 objection we have, that it's just pure opinion.  In fact, 50
24 different aldermen may agree -- may disagree as to what's in
25 the public interest.

1    Moreover, we find it to be vague and ambiguous.  We

2  don't know what they mean by try a firearm.  What does that

3  mean?  How long does the person handle the firearm for?  Do

4  they handle the firearm?  Do they just look at it?  Do they

5  shoot rounds up?  How many rounds?  We don't know what that

6  exactly means.

7    And, finally, the request for admission actually has

8  a presumption in it, and the presumption is the following:

9  That the person who goes and tries a firearm will actually

10  purchase the firearm that is best suited for him or her.  Now,

11  we know that's not the case.

12    Oftentimes people purchase things for a whole host of

13  reasons.  They may go and purchase a pair of jeans because it

14  looks good, not because it fits well, but because it looks

15  good.  Same thing with a firearm.  They might like the handle.

16  It may be too big for their hand, it may not be right for

17  them, but they'll buy it because the handle's pretty.

18    So there's a presumption in the request for admission

19  which makes it impossible for the City to answer.

20    THE COURT:  Okay.  Mr. Sigale, you may get the last

21  word on that.

22    MR. SIGALE:  Yeah, I think that counsel's statement

23  right there kind of underscores what we're getting at here.

24  You know, the City says, well, you know -- first of all, try a

25  firearm I think has a pretty common meaning.  I don't -- it's

1    obvious that it doesn't mean just pick it up and look at it.

2          But, you know, when they say -- you know, when

3    counsel says, well, you know, people buy things for a variety

4    of reasons and there's no saying that -- well, right now under

5    the ordinance, they have no way to try it out, so when counsel

6    is saying, you know, well, I mean there's no -- people --

7    right now, there's no chance that people --

8          THE COURT:  But there's a difference between what you

9    may want to prove in your case and whether -- right now we're

10   talking about is this appropriate for a request to admit?  I'm

11   not suggesting it's not appropriate to bring in evidence or,

12   you know, do other things in the context of the case to

13   explain why, you know, why you think, you know, this is useful

14   and helpful.  I'm just dealing with the issue of the request

15   to admit portion.

16         MR. SIGALE:  Right, and I think that the defendant

17   could in theory say can't answer it because of these variables

18   and put that in an answer and we go from there --

19         THE COURT:  No, no.

20         MR. SIGALE:  -- but they're saying they can't respond

21   to this at all.

22         THE COURT:  Okay.  The objection will be sustained as

23   it not being appropriate for a request to admit.

24         MR. SIGALE:  Okay.

25         THE COURT:  So the objection is sustained.

1        MR. SIGALE:  Well, your Honor, I guess I have a
2  question with regard to that then because the previous
3  phrasing, this was to try and take the unambiguity out of the
4  previous phrasing.  So do I just take another stab at it then,
5  your Honor --
6        THE COURT:  No, no, no.
7        MR. SIGALE:  -- because --
8        THE COURT:  No, just try to develop it in some other
9  way.
10        MR. SIGALE:  That's fine.  That's what I'm saying.
11  I'll rephrase it again, I guess.
12        THE COURT:  No, no, no, don't -- no.  By some other
13  way, I mean take a deposition, see what people have to say,
14  bring in your own witnesses.  I mean, it's just not a request
15  to admit type -- I mean, really, the purpose of the request to
16  admit is to nail down facts or law to facts, and this is
17  just -- it's -- it's out there.  In other words, this is just
18  too general for anybody to say as a fact yes or no.  I mean
19  it's just not appropriate.
20        Okay.  So now let's move on to the new motion to
21  compel.
22        MR. AGUIAR:  Your Honor, if I may speak before
23  Mr. Sigale on this.  This is a procedural point.
24        We provided our responses to the interrogatories
25  which are mentioned on Page 2 and 3 of the motion on Monday.

1 | They filed their motion on Tuesday.
2 | THE COURT: There's been no --
3 | MR. AGUIAR: There's been no conference, your Honor.
4 | THE COURT: Okay.
5 | MR. AGUIAR: However, the City is not going to stand
6 | firm on that because the issues raised by these
7 | interrogatories are the same that are raised in the
8 | Rule 30(b)(6) notice of dep, which has been properly vetted
9 | between the parties before putting it in the motion.
10 | So we have a technical problem here, but the City's
11 | more than prepared to go forward and address it as a matter of
12 | judicial economy today.
13 | THE COURT: Okay. Well, judicial economy tells me
14 | I've got a settlement conference that's supposed to start at
15 | 10:30, but -- so let's see if we can get through these.
16 | MR. SIGALE: Sure, especially since I think that the
17 | issues, as counsel noted, there's overlap between the
18 | interrogatory issues and the 30(b)(6) issues, some measure of
19 | overlap.
20 | Your Honor, plaintiffs asked the defendant for the
21 | justifications for the various ordinances that they have
22 | passed, the various restrictions, and in try -- in part trying
23 | to gauge and analyze the justifications, plaintiffs ask
24 | defendant to break it down, to say list the justifications at
25 | the time of -- as of the time of passage and to the extent

1  that they're different, list the justifications or additional
2  justifications as of the time of answering the
3  interrogatories.

4          Now, defendant has answered the justifications.
5  They've listed justifications, but they're objecting to
6  putting it in a -- basically in a chronology.

7          The Court had previously said to us, you know, in
8  terms of when we asked in our original motion to compel, our
9  original interrogatories list the people who were involved,
10  what was their involvement.  The ultimate outcome of the
11  hearing on that was, well, go ask them what their reasons are.

12          Now, the City, though, has made it very clear that
13  they're not considering themselves limited by justifications
14  at a point in time.  They might -- they've said they might
15  come up with something later that they want to add in.

16          THE COURT:  Right.

17          MR. SIGALE:  So engaging, perhaps, the for lack of a
18  better word good faith but the sincerity maybe of the
19  justifications, we just want to know if these were
20  justifications that were -- were in mind at the time that this
21  happened, or is this a justification that came up now that
22  we've filed a lawsuit and we're in the midst of discovery.

23          THE COURT:  I mean, legally does it make a difference
24  as to when the justification is tendered if there is a
25  justification?

1     In other words, if they -- if they passed, you know,

2 this ordinance and now they believe -- you know, let's say

3 there was not extensive discussion, but now in thinking about

4 it, they think, you know, we can give you 43 reasons why it

5 was a good ordinance even though we may have only had two at

6 the time, legally does it make a difference is the question I

7 have?

8     MR. SIGALE:  I think that it's a discoverable -- it's

9 a relevant inquiry that the trier of fact -- well, that Judge

10 Kendall can look at in determining, you know, in analyzing the

11 ordinance, and the justification for doing it and whether or

12 not it's a pretext or whether or not --

13     THE COURT:  Okay.  So let me hear the City on that.

14 Legally does it make a difference?

15     MR. AGUIAR:  No, it does not, your Honor.

16     THE COURT:  And what's your authority for that?

17     MR. AGUIAR:  The authority is if you look at the line

18 of cases, look at *Skoien*, *Yancey, Williams*, all the Second

19 Amendment cases and all the other cases in which an ordinance

20 or statute has been challenged on constitutional grounds and

21 the Court has to apply some form of means and scrutiny, in no

22 case, and plaintiffs certainly cite none to this Court, does

23 the court say, well, this was the objective at the time it was

24 enacted, and here it is as of the time the City answers the

25 interrogatory.

1       The distinction is meaningless.  No case has ever
2   looked at the distinction between those two things.  All the
3   case law requires is the City offer its legitimate government
4   interest or its justification --
5       THE COURT:  Okay.  And have you offered those?  Have
6   you stated those?
7       MR. AGUIAR:  Yes, your Honor, we have answered those
8   interrogatories.  We have given them what our justifications
9   are, and there's no distinction.  Here's what we say are the
10  purposes behind these ordinances.
11      Moreover, to do what they're doing would be unduly
12  burdensome.  We would have to go and survey 50 aldermen.
13      THE COURT:  Right, right.
14      Do you have a case that says that timing makes a
15  difference?
16      MR. SIGALE:  The short answer is no.  The longer
17  answer is that this is a unique situation, your Honor.  In the
18  cases where -- that counsel is talking about, to the extent
19  they actually talk about this issue at all, which I don't
20  believe has come up, but the plaintiff in the case or the
21  criminal defendant challenging the ordinance -- or challenging
22  the statute or ordinance, they know exactly why the -- you
23  know, in *Skoien*, a misdemeanor domestic violence, it's obvious
24  why that --
25      THE COURT:  Well, I think I've heard enough because

1   you said you don't have any authority.

2           So the motion to compel further answers to

3   Interrogatories 1 and 2 is denied, okay?

4           MR. SIGALE:  Okay.

5           THE COURT:  Let's go to 3 and 4.

6           MR. SIGALE:  3 and 4, plaintiff is requesting all

7   information regarding -- and this is a quote from the

8   interrogatory -- regarding a link, negative or positive,

9   between the existence of public gun ranges and crime rates in

10  that geographical area whether the information, whatever it

11  is, a study, a government report, whatever it is, defines the

12  geographical area as the same city, neighborhood or other.

13          So we're not -- we're asking for information if

14  there's a link between gun ranges and crime rates but the

15  study happens to say, you know, within a 10-mile radius or

16  within a three-block radius, we're asking for what information

17  they're aware of.  So we're not limiting it in scope, and I'm

18  defining geographical area within the question.

19          Interrogatory 4 asks for any information they have

20  regarding a link between public gun ranges and any

21  justification used to defend the ordinance.  So they've listed

22  some justifications, and we've said, okay, we've asked them,

23  okay, give us the information you have that shows a link,

24  positive or negative, between gun ranges and whatever

25  justification that you're talking about.

1      I believe it certainly is going to go towards whether

2  or not the justification is a real justification --

3      THE COURT:  Well, in giving you the justifications,

4  did they say to you that -- that they, one of the

5  justifications was that public gun ranges leads to more crime

6  in an area?  Was that one of the justifications they gave you?

7      MR. SIGALE:  Um --

8      THE COURT:  I mean, you know, in other words, to the

9  extent that they have given you justifications, then, you

10  know, to the extent they have backup information or whatever

11  they're going to rely on to help substantiate that

12  justification they're going to have to produce to you in the

13  course of discovery.

14      MR. SIGALE:  Right, and that's what I'm asking for

15  here in this interrogatory.

16      THE COURT:  Okay.  But you're asking specifically all

17  information regarding a link, negative or positive, between

18  the existence of public gun ranges and crime rates in a

19  geographical area.

20      Did they give you that as a justification?

21      MR. SIGALE:  Yeah, I believe -- I believe that

22  crime -- whether or not it was within the umbrella of public

23  safety or whether or not -- forgive me, I don't recall their

24  interrogatory answer --

25      THE COURT:  That has to be more in the form of a

1   document request rather than an interrogatory.  In other
2   words, if they have a report or something that deals with
3   it -- okay, let me hear from the City.

4        MR. AGUIAR:  Your Honor, the City, first of all, did
5   not understand what this was actually asking for.  We didn't
6   know what they meant by that geographic area.  We thought it
7   was just a vague and hard-to-decipher interrogatory.

8        If I understand correctly, what they're asking us is
9   do we have any information showing a link between a
10  justification and the ordinance.  That's what they're asking
11  us for at this point.

12       And we have produced the documents which would
13  support that.  We're prepared to produce 30(b)(6) witnesses on
14  those points who will sit down at deposition, explain what our
15  bases is for having these, and whether there is any
16  information linking the two together.

17       If there's anything else, we're certainly happy to
18  produce it to them, but I don't know if these interrogatories
19  are the right mechanism to go about doing it.

20       THE COURT:  I mean, I don't think the interrogatories
21  are right.  In other words, to the extent you're saying, you
22  know, do you have data to show that in cities that have gun
23  ranges, that the crime in the surrounding area goes up or goes
24  down or whatever, right?  Isn't that the kind of thing you're
25  looking for?

1    MR. SIGALE:  Well, if it exists.

2    THE COURT:  Right.

3    MR. SIGALE:  If such data exists and if they're

4  relying --

5    THE COURT:  And if they're relying on it.  If they're

6  relying on it.

7    MR. SIGALE:  Right, absolutely.

8    THE COURT:  Yeah.

9    MR. AGUIAR:  We'll certainly produce that.

10    THE COURT:  Okay.  So I'm going to treat your

11  Interrogatories 3 and 4 as a document request.

12    MR. SIGALE:  That's fine.

13    THE COURT:  Treat them as a document request, and to

14  the extent that the City has documents on these, you know,

15  that would be responsive, that they should produce those.

16    MR. AGUIAR:  Okay.

17    MR. SIGALE:  That's fine, your Honor.

18    MR. AGUIAR:  And we have no objection to that at all,

19  your Honor.

20    MR. SIGALE:  Okay.  Then we move on to the actual

21  document requests.  There was only one.  The -- we had asked

22  in earlier discovery whether or not the City's firing ranges

23  for its police department, it's got six, maybe seven, two at

24  the academy and one at each of the five area police districts,

25  comply with the ordinance.  Do they comply with the

1   environmental and the noise and the safety requirements and
2   the location restrictions and things like that?
3           Now, they answered some of that for the location
4   restrictions for the zoning, but they objected to the rest.
5   They said they don't have that information.  They've never
6   done the tests, and the court said, well, okay, if they don't
7   have the information, they've never done the tests, I'm not
8   going to -- the Court's not going to require them to do the
9   tests, so, you know, issue closed.
10          Well, in this document request pursuant to Rule 34,
11  which it's a Rule 34 request as opposed to a straight document
12  request, we're saying, okay, let us go in.  Let us -- we'll do
13  the inspection.  We'll -- we'll do the -- we'll look at what
14  we can see, and we'll do -- we'll bring in a decibel meter.
15  We'll do the tests and compare.
16          THE COURT:  How does this lead to the discovery of
17  admissible evidence?
18          MR. SIGALE:  Because the City is saying with regards
19  to -- let me back up one step.
20          The City's ranges are within all the areas and all
21  the places that the ordinance restricts a commercial range
22  from.
23          THE COURT:  But they're exempt from the ordinance.
24          MR. SIGALE:  But it's -- it's -- the issue isn't
25  whether they're exempt and we're saying, okay, you've got to

1   go shut down the Chicago Police Department ranges now, but
2   they're making justifications on public safety grounds and
3   whatnot that commercial ranges can't exist in certain places
4   in the City, and they have to meet certain standards because
5   otherwise public safety, public health could be impacted --
6   I'm consolidating the justifications.

7           We're saying okay, but you have all these ranges --
8   and this was pointed out by the -- noted by the district court
9   and the 7th Circuit, the City's ranges are all over the city in
10  all the residential areas and next to schools and parks and
11  all that; and apparently, well, at least according to their
12  zoning commissioner, there's been no complaints of any of
13  them.  They've had no problems.

14          It's not a question of whether they're exempt from
15  the ordinance.  These ranges peacefully co-exist within the
16  communities.

17          THE COURT:  So why do you have to go into the ranges
18  to -- to try to make that point?

19          MR. SIGALE:  Well, we wouldn't have to go into the
20  ranges -- we don't have to go into the ranges to make the
21  point about that they're next -- you know, one's next to a
22  school.

23          THE COURT:  Right, right.

24          MR. SIGALE:  We want to go -- but there's a lot of
25  different restrictions regarding noise and environmental

1    concerns and whatnot, all of which we're alleging and believe

2    the evidence is going to bear it out as effectively, it's put

3    them out of existence.  I mean there's been no applications

4    for ranges --

5              THE COURT:  Okay.  You know, to me, it seems like you

6    can make that argument without going into -- into the ranges

7    and doing it.  I mean --

8              MR. SIGALE:  Well, we'd just like to -- what we'd

9    like to go in for is to check the sound.  We'd like to go in

10   to see about what they do with regards to environmental and

11   disposal of --

12             THE COURT:  Okay.

13             MR. SIGALE:  -- that we can't do from outside.

14             THE COURT:  Okay.  I'm going to have to bring this to

15   a conclusion soon.

16             What's your response?

17             MR. AGUIAR:  You pointed out that the ranges are

18   exempt; therefore, we don't see the relevancy.  Moreover,

19   they're comparing apples and oranges.

20             CPD ranges, as Mr. Sigale pointed out, are located

21   within secure CPD facilities.  Yes, they may be next to

22   something which is residential or something, but they are

23   within a secure CPD facility guarded by CPD people.  The

24   ranges themselves have their own CPD guards.

25             So to say that they're, you know, the same and they

1    can be compared is just not true.  They're very different

2    beasts, a public range versus a CPD range.

3            Moreover, the CPD ranges predate the ordinance.

4    Nothing says the City can't on its own experience say, you

5    know, CPD ranges are done this way.  We think it's better for

6    public safety if they're done a little different now from this

7    point forward.  We can certainly offer that justification.  It

8    doesn't mean you have to actually come in and do an inspection

9    of our ranges.

10           Finally, it is a burdensome problem here, your Honor.

11   As plaintiffs are aware from prior testimony in this case

12   before Judge Kendall on the preliminary injunction, CP ranges

13   are taxed with respect to the number of people who have to use

14   them and the pros at CPD try and make it through using those

15   limited ranges.

16           To have plaintiffs come in to seven different ranges

17   for who knows how long to conduct how many tests with how many

18   people is simply just very burdensome on the City of Chicago

19   and the Chicago Police Department.

20           THE COURT:  What about one range?

21           MR. AGUIAR:  That certainly would reduce the

22   burdensome nature of it, your Honor, but which range do we

23   select?  That becomes the question:  Which range should they

24   come in and look at?

25           THE COURT:  You put seven ranges in a hat and you

1  pick one.  I mean, I don't know why you would need to go
2  through all seven.  How about one range?
3          We can call it the lone range.
4          MR. AGUIAR:  The lone range.  That's funny.
5          MR. SIGALE:  I can -- what I'd like to do with regard
6  to that, your Honor, is I would like to speak with my client,
7  Action Target, who is -- they're in the range manufacturing
8  business.
9          THE COURT:  I would choose one range, let them go in
10 and try to work out something.
11         MR. SIGALE:  Right.  I'll speak to -- but I'll speak
12 to my client and discuss which one would be the best one to
13 look at, and then I'll contact Mr. Aguiar about it.
14         MR. AGUIAR:  We would still object to that.  We don't
15 think it's relevant to this case at all.  I mean, with respect
16 to which range they pick, they may pick a range which is the
17 oldest range that we've got, and --
18         THE COURT:  Well, I mean, but the request for an
19 examination of a range is granted limited to one range and
20 limited to, I mean, you have to work out a protocol so that,
21 you know, that it works for -- so it doesn't interfere with
22 the police activities.
23         MR. SIGALE:  Absolutely.
24         THE COURT:  And that it not be unduly prolonged and
25 whatever.

1       MR. AGUIAR:  And we would also like to have -- to
2    know exactly who's coming --
3          THE COURT:  Right, right.
4          MR. AGUIAR:  -- and what tests they're going to
5    perform --
6          THE COURT:  Right.
7          MR. AGUIAR:  -- that type.
8          THE COURT:  You should work out a protocol so
9    everybody's clear about what's going to happen and when it's
10   going to happen and where it's going to happen.
11         MR. SIGALE:  That's fine.
12         MR. AGUIAR:  Thank you, your Honor.
13         MR. SIGALE:  Okay.
14         THE COURT:  I don't have time to go through the
15   12(b)(6) --
16         MR. SIGALE:  Okay.  Should we --
17         THE COURT:  -- I mean 30(b)(6).  Do you want to come
18   back at 4:00?  I can deal with you at 4:00 today.
19         MR. SIGALE:  Your Honor, I'm afraid I have to ask to
20   do it on a different day.
21         THE COURT:  Okay.  Because I'm not going to be here
22   next week.  I mean is this life-threatening?
23         How about a week from Monday, my 9:15 motion call?
24         MR. SIGALE:  That would be the 30th, your Honor?
25         THE CLERK:  Is that -- I'm sorry, what day are we

1    looking at?

2              THE COURT:   How about next week?

3              THE CLERK:   All right.  I'm looking at August.  I'm

4    sorry.

5              THE COURT:   I mean July 30th at 9:15?

6              MR. AGUIAR:   I'm out of town, your Honor.

7              THE COURT:   August 1st at 9:15?

8              MR. SIGALE:   I'm out of town until the -- through the

9    3rd.  I can --

10             THE COURT:   How about August 6th at 9:15?

11             MR. SIGALE:   Yeah, I could do that, and then I could

12   hang out here and we could do the Zeus and company.

13             THE COURT:   August 6th at 9:15?

14             MR. SIGALE:   August 6th at 9:15.

15             THE COURT:   So we'll continue the remainder of the

16   motion to compel.

17             MR. SIGALE:   Okay.  Thank you, your Honor.

18             I'll bring it up, just kind of as a courtesy.  If

19   we're coming back on August 6th if defendant wanted to put

20   something in writing on it or just put that out there if you

21   wanted to.

22             THE COURT:   No, he's clear on his feet.  He doesn't

23   have to write.

24             MR. AGUIAR:   I'm prepared to speak.

25             THE COURT:   Right.

1          MR. SIGALE:  That's fine.

2          Thank you, your Honor, August 6th, 9:15.  Thank you,

3    your Honor.

4          THE COURT:  Okay.

5       (Which were all the proceedings heard.)

6                         CERTIFICATE

7       I certify that the foregoing is a correct transcript from

8    the digital recording of proceedings in the above-entitled

9    matter to the best of my ability, given the limitations of

10   using a digital-recording system.

11

12   */s/Kathleen M. Fennell*                    *August 22, 2012*

13   _____        _____
     Kathleen M. Fennell                    Date
14   Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25