# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, JOSEPH I. BROWN, WILLIAM HESPEN, ACTION TARGET, INC., SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No.: 10 CV 5135 |
| v. | ) ) | |
| CITY OF CHICAGO, | ) | **AMENDED COMPLAINT** |
| | ) | |
| Defendant. | ) | |

**AMENDED COMPLAINT**

**COME NOW** the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action

Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and

through undersigned counsel, and complain of the Defendant as follows:

**THE PARTIES**

1.      Plaintiff Rhonda Ezell is a natural person and a citizen of the United States

residing in Chicago, Illinois.

2.      Plaintiff Joseph I. Brown is a natural person and a citizen of the United States

residing in Chicago, Illinois.

3.      Plaintiff William Hespen is a natural person and a citizen of the United States

residing in Chicago, Illinois.

4.      Plaintiff Action Target, Inc., is a Delaware corporation having its primary place of

business in Utah. Action Target is a leading designer and builder of gun ranges, and renowned

manufacturer and seller of gun range equipment and supplies. Action Target is engaged in the

gun range business throughout the United States, including in Chicago, where it constructed a gun range on the seventeenth floor of the Federal Reserve Bank of Chicago, located at 230 South LaSalle Street; a gun range for the United States Postal Inspectors at 743 South Canal Street; and a gun range for Brinks, located at 919 South California Avenue. Action Target has bid on the retrofitting of two other gun ranges within Chicago currently being operated by the federal government.

5.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including many in Chicago. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of itself and its members.

6.     Plaintiff Illinois State Rifle Association ("ISRA") is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois, including many in Chicago. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA brings this action on behalf of itself and its members.

7.     Defendant City of Chicago is a municipal entity organized under the Constitution and laws of the State of Illinois.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

9.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

*Gun Ranges' Role in American Tradition and Chicago's Safety Policy*

10.     Familiarity with firearms, and proficiency in their use, promotes public safety. Gun owners trained in and familiar with the operation of their guns are less likely to be involved in accidental shootings, and more likely to successfully use their firearms in self-defense in case of need.

11.     Recreational shooting is a traditional lawful use of firearms in the United States.

12.     The promotion of civilian marksmanship has been a priority of the federal government throughout American history, beginning with the Second Militia Act of 1792 and continuing through today with the modern implementation of the Civilian Marksmanship Program through the federally-chartered Corporation for the Promotion of Rifle Practice and Firearms Safety, 36 U.S.C. §§ 40701, et seq.

13.     Defendant City of Chicago recognizes the value of firearms training and proficiency. The City mandates, as a condition of firearms ownership, that all individuals undergo at least one hour of firearms training on a gun range.

14.     Chicago residents wishing to lawfully possess firearms in the city must first obtain a Chicago Firearms Permit ("CFP"). Chi. Mun. Code § 8-20-110(a).

15.     An application for a CFP "shall include . . . (7) an affidavit signed by a firearm instructor certified by the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training . . ." Chi. Mun. Code § 8-20-120(a).

3

16.     Chicago firearm registrants must obtain a CFP, and the requisite training, in order to renew their firearm registration. Chi. Mun. Code § 8-20-110(d). If a registration is not timely renewed, the subject firearm may become unregisterable to the current owner and must be disposed of. Chi. Mun. Code §§ 8-20-145(c), 8-20-170(c).

17.     Gun ranges open to the public exist in virtually every major American city in a variety of architectural settings.

18.     Properly designed and operated, gun ranges are compatible with many typical commercial uses of property.

19.     At least eleven gun ranges currently operate within the City of Chicago. However, none are open to the public. Six ranges are operated by the Chicago Police Department, including at the Police Academy. The federal government maintains four gun ranges. And each of two private security companies operate gun ranges for their own purposes.

20.     Historically, gun ranges open to the public have operated in Chicago without adverse impact on the community. The gun ranges that operate in Chicago today do not adversely impact the community.

*Chicago's Prohibition of Gun Ranges, Recreational Shooting, and Firearms Training*

21.     Chicago Municipal Code § 8-20-280 previously read: "Prohibition on shooting galleries and target ranges," provides: "Shooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited; provided that this provision shall not apply to any governmental agency. The discharge of a firearm in an area where hunting is permitted shall not be a violation of this section."

22.     On July 6, 2011, Plaintiffs obtained a judicially-ordered change in the relationship among the parties to this litigation, when the Seventh Circuit Court of Appeals ordered that a

preliminary injunction be issued against enforcement of the provisions initially challenged by this litigation. Plaintiffs are therefore, as of July 6, 2011, prevailing parties for purposes of 42 USC §1983.

23.      On July 6, 2011, on the same date the City's prohibition on gun ranges was ruled unconstitutional by the Seventh Circuit Court of Appeals, the City enacted a new range Ordinance, which went into effect on or about July 16, 2011 (hereinafter "the July 2011 Ordinance"). Thereafter, the July 2011 Ordinance was amended by yet another Ordinance, enacted and taking effect on September 8, 2011 (hereinafter "the September 2011 Ordinance").

24.      All matters pled and alleged in the original complaint in this matter are hereby restated as though fully set forth herein, including, specifically, Plaintiffs' objection to former Chi. Mun. Code § 8-20-280 and all other provisions that have been since been modified following the Seventh Circuit Court of Appeals' decision of July 6, 2011 in this case. This amended complaint does not abandon any claim to relief awarded July 6, 2011 by the Court of Appeals, but rather, consistent with the Court's opinion that the controversy is not apparently mooted, seeks to preserve Plaintiffs' rights against the newly manifested forms of Defendant's infringement of Plaintiffs' rights.

25.      The July 2011 Ordinance, as amended by the September 2011 Ordinance, purports to allow gun ranges to open and operate in the City, but a variety of its sections work to effectively prohibit ranges from opening and operating by unjustifiably burdening their construction, operation and use. In the alternative, to the extent range construction, operation and use might be technically feasible under the ordinance, such construction, operation and use is unjustifiably burdened by the challenged provisions. These include:

- Chi. Mun. Code §§ 4-151-010 and 4-151-030, which require all range managers,

5

employees, and "applicants" be fingerprinted and have a Chicago Firearms Permit

("CFP") and an Illinois Firearms Owners Identification Card ("FOID"). "Applicants" are

defined by Section 4-151-010 to include all persons who are "required to be disclosed

pursuant to section 4-151-030(b),"— meaning, individuals, partners of partnerships,

LLC managers and/or members, corporate officers and directors, *and* their attorneys,

accountants, consultants, expediters, promoters, and lobbyists. This is unjustifiably

burdensome and effectively bars out of state ownership or assistance, since only Illinois

residents are eligible to obtain FOID cards.

- Chi. Mun. Code § 4-151-030(f) provides the Commissioner unbridled discretion

  to deny a range license application if the license "would have a deleterious

  impact on the health, safety and welfare of the community in which the shooting

  rage facility is or will be located," and presumes that a "deleterious impact"

  exists "whenever there have been a substantial number of arrests within 500 feet

  of the applicant's premises . . . ."

- Chi. Mun. Code § 4-151-090 restricts ranges to operate only between 8 a.m. and 9

  p.m., every day.

- Chi. Mun. Code § 4-151-100(d) bars range patrons under the age of 18.

- Chi. Mun. Code. § 4-151-100(g)(1) forbids any person who does not have a CFP

  and FOID card from using a range, unless it for the one hour CFP training. This

  effectively bars anyone who does not live in Chicago, be they suburbanites or

  out-of-state visitors, from patronizing a gun range in Chicago, regardless of

  whether they have a FOID card or the equivalent from another State, because the

  burden of obtaining a CFP just to visit a range will be too burdensome for most

6

non-residents. Further, out-of-state residents are ineligible to obtain a FOID card, so the restriction bars them from patronizing a range in the City.

- Chi. Mun. Code § 4-151-120 prohibits gun ranges from locating 500 feet from any other gun range, residential district, school, day-care facility, park, place of worship, alcohol retailer, "children's activities facility," library, museum, or hospital.

- Chi. Mun. Code § 8-20-110 prohibits the possession of a firearm without a CFP, including the possession of firearms by shooting range patrons other than a one-time, one-hour exemption for taking a class. These provisions bar individuals from (1) practicing with or sampling different firearms, (2) practicing the use of firearms without purchasing and registering a firearm, (3) purchasing ammunition for self-defense, and (4) replacing older ammunition, by firing it at the range and then departing with fresh replacements.

- Chi. Mun. Code § 4-151-170 prohibits the loaning or renting of firearms, other than for a one-hour class, and prohibits range patrons from leaving with ammunition sold by the gun range.

- Chi. Mun. Code § 13-96-1200(b)(2) requires a maximum decibel level of 55db emanating from shooting ranges, which is lower than many ordinary human conversations, ambient noise from traffic, and numerous commercial uses permitted within the city.

- Chi. Mun. Code § 13-96-1200(b)(7) requires that the floors of the shooting range be constructed to slope at a minimum of 1/4 inch per foot from the firing line to the backstop/bullet trap.

7

26. Violation of any provisions, rules or regulations of Chapter 4-151 of the Chicago Municipal Code results in a fine of $500.00 to $5000.00 per offense, and/or incarceration up to 180 days. The Code considers each day of a violation to be a separate offense. Chi. Mun. Code § 4-151-190.

27. Every day in which an individual transfers, loans, borrow, gives or rents firearms or ammunition in violation of Chi. Mun. Code § 8-20-100; or possesses an unregistered firearm in violation of Chi. Mun. Code § 8-20-140, is considered a separate and distinct offense. The penalty for a first offense in violation of these provisions is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days. A subsequent offense carries a fine ranging from $5,000 to $10,000 and/or incarceration ranging from thirty days to six months. Chi. Mun. Code § 8-20-300(b).

28. Every day in which an individual possesses a firearm without a CFP in violation of Chi. Mun. Code § 8-20-110 is considered a separate and distinct offense. The penalty for violating this provision is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days.

29. Discharging a firearm other than in self-defense or defense of another person, in violation of Chi. Mun. Code § 8-24-010, carries a penalty ranging from $500 to $1000.

*The Impact of Chicago's Range Prohibition on Plaintiffs and the Public*

30. Plaintiff Rhonda Ezell has been the victim of three attempted burglaries at her Chicago home. She applied for a Chicago Firearms Permit in order to register her handgun, but had to travel to a range in Dundee, Illinois, a significant distance from her home, in order to obtain the training mandated by Chi. Mun. Code § 8-20-120(a),

31. Plaintiff Ezell suffers from interstitial lung disease, lupus, and end stage renal

8

disease, for which she is currently awaiting a kidney transplant. Ezell would like to continue recreational shooting, but given her condition finds it difficult to travel outside the city for that purpose. Ezell would utilize a gun range inside the city of Chicago were one accessible to her.

32. Plaintiff Joseph I. Brown is an honorably-discharged U.S. Army veteran. Plaintiff Brown served in the Pacific and European theaters during the Second World War, and was among the liberators of the infamous Dachau concentration camp. Brown is currently the Chairman of the Marksmanship Committee for the Department of Illinois, American Legion. He is also the Secretary and Treasurer of the Cook County Rifle League, and until recently instructed a winter shooting league for junior shooters (boys and girls ages 12-20) that met at the now-closed six-point indoor gun range located at the Morton Grove, Illinois American Legion Post 134.

33. Plaintiff Brown was forced to leave the City to obtain his mandatory CFP range training. He would engage in recreational shooting within the City of Chicago, and promote and provide instruction in the shooting sports, and marksmanship, to his Chicago neighbors at a local range, if one were made available to him.

34. Plaintiff William Hespen is a retired Chicago Police detective. Plaintiff Hespen was forced to leave the City to obtain his mandatory CFP training. Plaintiff Hespen would also engage in recreational shooting within the City of Chicago, and promote and provide instruction in the shooting sports, and marksmanship, to his Chicago neighbors at a local range, if one were made available to him.

35. Various qualified customers of Plaintiff Action Target have expressed to Action Target their desire to retain the company to construct gun ranges within the city limits of

Chicago. Action Target is unjustifiably inhibited from entering into these contracts, and from supplying range equipment and supplies in Chicago, owing to the ordinances complained of in this action. But for these prohibitions, Action Target would successfully market its services and products in Chicago to non-governmental entities.

36.     Plaintiff ISRA has long operated a gun range approximately sixty miles outside Chicago for the benefit of its members and the public at large. ISRA would operate a range within the City of Chicago, to further its chartered purposes of promoting the shooting sports, educating the public about firearms, training individuals to become better and safer shooters, enabling individuals to comply with training requirements such as that recently enacted by the City of Chicago, and generally serving its members.

37.     Plaintiffs SAF and ISRA have members and supporters within the City of Chicago who require range training in order to obtain CFPs and thus lawfully keep firearms. It is squarely within the educational and public service missions of SAF and ISRA to provide firearms training, especially to the extent such training is required as a condition of gun ownership.

38.     SAF and ISRA expend their resources advising and counseling current and prospective Chicago gun owners with respect to Chicago's gun laws, including the city's range training requirement.

39.     Every day, current firearms registrants, including the members and supporters of Plaintiffs SAF and ISRA, are forced to obtain CFPs to continue exercising their right to keep arms in the City of Chicago, as registration certificates issued under the previous Chicago firearms ordinance expire, and as Chicago residents wish to exercise their rights to possess and train with firearms. It is urgent that such individuals immediately obtain the city-mandated

10

training, lest their firearms become unregisterable to them and they become subject to criminal penalties.

40.     Numerous individuals within Chicago, including the members and supporters of Plaintiffs SAF and ISRA, require the city-mandated training so that they may timely obtain CFPs and gun registrations for possession, self-defense and training.

41.     But for the criminal enactments challenged in this complaint, SAF and ISRA would begin educating individuals in the use of firearms, including by providing the training required by Defendant City of Chicago, operating a gun range within the City of Chicago, but refrain from doing so due to potential criminal penalties and the burdensome Code sections complained of herein.

42.     The criminal enactments and burdensome requirements and restrictions contained in the Ordinances challenged in this complaint unjustifiably inhibit ISRA's efforts to construct and operate gun ranges within the City of Chicago.

43.     But for the criminal enactments and burdensome requirements and restrictions contained in the Ordinances challenged in this complaint, Plaintiffs Ezell, Brown and Hespen would frequent a Chicago gun range for recreational shooting, and to maintain and improve their proficiency with firearms.

## COUNT I
## RIGHT TO KEEP AND BEAR ARMS
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

44.     Paragraphs 1 through 43 are incorporated as though fully stated herein.

45.     The Second Amendment, which applies against defendant City of Chicago by operation of the Fourteenth Amendment, secures the right to operate firearms at a range, for purposes of learning about firearms, gaining proficiency with firearms, obtaining any training

required as a condition of firearms ownership, recreation, and competition; and the right to own and operate a range for these purposes.

46.     Chicago's laws effectively prohibit the operation of gun ranges, thereby prohibiting numerous traditional lawful uses of firearms. The range ban and associated laws also impede gun ownership itself by frustrating compliance with the city's firearm registration program and barring access to useful information and experience inherently necessary to the exercise of Second Amendment rights.  In the alternative, to the extent ranges are allowed, the complained-of provisions unjustifiably inhibit their construction and operation.

47.     By so burdening the owning and operation of a gun range within the City limits, and by effectively banning the loan, rental, and borrowing of functional firearms at ranges open to the public, the City is effectively prohibiting gun ranges from opening to the public.  In the alternative, to the extent ranges are allowed, the complained-of provisions unjustifiably inhibit their construction and operation.  Defendant currently under color of law deprives individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution.  Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices.

## COUNT II
## FREE SPEECH
## U.S. CONST., AMENDS. I AND XIV, 42 U.S.C. § 1983

48.     Paragraphs 1 through 47 are incorporated as though fully stated herein.

49.     The First Amendment, which applies against defendant City of Chicago by operation of the Fourteenth Amendment, secures the right to provide and receive education and

instruction in the use of firearms, including the right to provide and receive the training required by defendant as a prerequisite to owning firearms.

50.     By so burdening the owning and operation of a gun range within the City limits, and by effectively banning the loan, rental, and borrowing of functional firearms at ranges open to the public, the City is effectively prohibiting gun ranges from opening to the public.  In the alternative, to the extent ranges are allowed, the complained-of provisions unjustifiably inhibit their construction and operation.  Defendant currently under color of law deprives individuals, including the Plaintiffs, of their right to free speech, in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices.

## PRAYER FOR RELIEF

Plaintiffs request judgment be entered in their favor and against Defendant as follows:

1.      An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code §§ 4-151-010 and 4-151-030, requiring all range managers, employees, and "applicants" have a Chicago Firearms Permit ("CFP") and an Illinois Firearms Owners Identification Card ("FOID"); 4-151-030(f); 4-151-090; 4-151-100(d); 4-151-120; 4-151-170; 8-20-110 as applied to firearms temporarily borrowed or rented by shooting range patrons, 13-96-1200(b)(2) and 13-96-1200(b)(7), or any other law, as against the ordinary operation and use of gun ranges open to the public and the loan or rental of functional firearms within gun ranges open to the public;

2.      Attorney Fees and Costs, including for all relief already awarded by the Seventh Circuit Court of Appeals since the initiation of this litigation, pursuant to 42 U.S.C. § 1988;

3.      Declaratory relief consistent with the injunction;

4.      Costs of suit; and

5.      Any other further relief as the Court deems just and appropriate.


Dated: October 15, 2011                    Respectfully submitted,

Alan Gura (Admitted *pro hac vice*)        David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                     Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405          739 Roosevelt Road, Suite 304
Alexandria, VA 22314                       Glen Ellyn, IL 60137
703.835.9085/Fax 703.997.7665             630.452.4547/Fax 630.596.4445



                                           By:    /s/David G. Sigale
                                                  David G. Sigale

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EZELL, ET AL.,                          )
                                        )
                Plaintiffs,             )
                                        )
        v.                              )       No. 10-CV-5135
                                        )       Judge Virginia M. Kendall
CITY OF CHICAGO,                        )
                                        )
                Defendants.             )

### DEFENDANT CITY OF CHICAGO'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS AND THIRD SET OF INTERROGATORIES TO PLAINTIFFS

Pursuant to Fed. R. Civ. P. 33 & 34, Defendant City of Chicago ("City"), by its attorney, Stephen R. Patton, Corporation Counsel for the City, hereby requests that Plaintiffs produce for inspection and copying the documents requested below by May 21, 2012 at the offices of the City of Chicago, Department of Law, Constitutional & Commercial Litigation Division, 30 North LaSalle Street, Suite 1230, Chicago, Illinois 60602, and answer the following interrogatories under oath and serve such answers on the City at the aforementioned address by May 21, 2012.

### DEFINITIONS

A.     "City" means the City of Chicago, its departments, officers, employees, representatives, attorneys, agents, and any other person or entity acting on its behalf or at its direction.

B.     "ISRA" means the Illinois State Rifle Association, its departments, officers, employees, members, representatives, attorneys, agents, and any other person or entity acting on its behalf or at its direction.

C.     "SAF" means the Second Amendment Foundation, Inc., its departments, officers,

employees, members, representatives, attorneys, agents, and any other person or entity acting on its behalf or at its direction.

     D.    "Action Target" means Action Target, Inc., its departments, officers, employees, representatives, attorneys, agents, and any other person or entity acting on its behalf or at its direction.

     E.    "Action" means case number 10 C 5135 filed in the Untied States District Court for the Northern District of Illinois and styled *Ezell, et al. v. City of Chicago*.

     F.    "Amended Complaint" means Plaintiffs' Amended Complaint, filed in this Action on October 15, 2011.

     G.    "Document" means every writing or recording of every kind of description, whether handwritten, typed, drawn, sketched, printed, or recorded by any physical, mechanical, electronic, or electrical means whatsoever, including but not limited to investigative reports, books, articles, monographs, curriculum vitae, records, papers, pamphlets, correspondence, emails, text messages, communications, memorandum, notes, notebooks, worksheets, reports, lists, analyses, summaries, written memorials of oral communications, photographs, photographic slides or negatives, films, filmstrips, video tapes, audio tapes, recordings, computer tapes, discs, compact discs (CDs) and any matter stored on any computer system or hard drive. "Document" shall also include any and all nonidentical copies of a document.

     H.    "Identify" when used with reference to a document, means to set forth the date, author or originator, persons to whom the document was addressed or sent, type of document (*e.g.* letter, contract, chart, etc.), subject matter, and the present or last known custodian of the original and any copies.

I.      "Identify" when used with reference to a natural person, means to state his or her present or last-known full name, home address, home telephone number, business affiliation, business address, and business telephone number.

J.      "Identify" when used with reference to a person other than a natural person, means to set forth the full name of the person, the form of the person (*e.g.*, corporation, joint venture, partnership, sole proprietorship, etc.), the partners, officers, directors, or other principals, and the present or last-known place of business.

K.      "Person" means any natural person, corporation, partnership, association, governmental unit, or other entity.

L.      "Relate," "related," and "relating" means directly or indirectly referring, reflecting, containing, constituting, describing, discussing, stating, assessing, recording, or otherwise connected with the matter described.

M.      "Including" means including, but not limited to.

N.      "Plaintiff" means Plaintiff Rhonda Ezell, Plaintiff Joseph Brown, Plaintiff William Hespen, Plaintiff Action Target, Plaintiff SAF, and/or Plaintiff ISRA.

O.      "Individual Plaintiff" means Plaintiff Rhonda Ezell, Plaintiff Joseph Brown, and/or Plaintiff William Hespen.

P.      "Corporate Plaintiff" means Plaintiff Action Target, Plaintiff SAF, and/or Plaintiff ISRA.

Q.      "MCC" means the Municipal Code of Chicago.

## INSTRUCTIONS

A.      Unless otherwise stated, the time frame for each request shall be from August 1, 2005 to the present.

B.      If any document has been destroyed, lost, misplaced, or is otherwise unavailable, identify the document, state whether the document was lost, destroyed or misplaced, and identify the person who last had custody of the document.

C.      If any document is withheld on the basis of privilege, identify the document, describe the subject matter of the document, and state the privilege invoked.

D.      Any ambiguity in these requests or interrogatories shall be resolved so as to construe these requests and interrogatories as broadly as possible.

E.      Any word in the singular shall be understood to refer to the singular and/or plural forms of the word. Any word used in the plural shall be understood to refer to the singular and/or plural forms of the word.

F.      The terms "and" and "or" shall be construed conjunctively or disjunctively so as to give the broadest possible response to any request.

G.      In accordance with Fed. R. Civ. P. 33 and 34, these document requests and interrogatories are to be regarded as continuing and you are to seasonably supplement your responses to the extent you or anyone acting on your behalf obtains additional information.

## INTERROGATORIES

1.      Regarding the allegations in Paragraph 25 of the Amended Complaint that "a variety of [the Gun Range Ordinance's] sections work to effectively prohibit ranges from opening and operating by unjustifiably burdening their construction, operation, and use": (a)

4

identify each provision of the MCC that effectively prohibits ranges from opening and operating; (b) state whether each identified provision does so standing alone or in tandem with other provision(s), and, if the latter, identify the tandem provision(s); (c) describe how the provision(s) operate alone or in tandem to effectively prohibit ranges from opening and operating; (d) describe any burden or impact actually imposed by the provision(s) upon any person, including any Plaintiff or any actual or anticipated customer of any Plaintiff; and (e) describe any attempt to comply, or any inquiry, evaluation, or analysis regarding potential compliance, with the provision(s) by any person, including any Plaintiff or any actual or anticipated customer of any Plaintiff.

2.      Regarding the alternative allegations in Paragraph 25 of the Amended Complaint that range construction, operation and use, while "technically feasible" under the Gun Range Ordinance, is "unjustifiably burdened by the challenged provisions": (a) identify each provision of the MCC that unjustifiably burdens range construction, operation, or use; (b) state whether each identified provision does so standing alone or in tandem with other provision(s), and, if the latter, identify the tandem provision(s); (c) describe how the provision(s) operate alone or in tandem to unjustifiably range construction, operation, or use; (d) describe any burden actually imposed by the provision(s) upon any person, including any Plaintiff or any actual or anticipated customer of any Plaintiff; and (e) describe any attempt to comply, or any inquiry, evaluation, or analysis regarding potential compliance, with the provision(s) by any person, including any Plaintiff or any actual or anticipated customer of any Plaintiff.

## DOCUMENT REQUESTS

1.      As to each provision of the MCC identified in response to Interrogatory No.1 or

No. 2 above, all documents relating to: (a) any effective prohibition or burden imposed by the

provision(s), whether operating alone or in tandem, upon any person, including any Plaintiff or

any actual or anticipated customer of any Plaintiff; and (b) any attempt to comply, or any inquiry,

evaluation, or analysis regarding potential compliance, with the provision(s) by any person,

including any Plaintiff or any actual or anticipated customer of any Plaintiff.

Date: April 20, 2012                    Respectfully submitted,

                                        MARA S. GEORGES,
                                        Corporation Counsel for the City of Chicago

                                        By:    _____
                                               Assistant Corporation Counsel

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-9018 / 6975 / 7129 / 4216

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Andrew Worseck, an attorney, hereby certify that April 20, 2012, I caused a copy of the forgoing **Defendant City of Chicago's Third Request for Production and Third Set of Interrogatories to Plaintiffs** to be served by email and first-class United States mail, postage prepaid, on:

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street
Suite 405
Alexandria, VA 22314
Fax No. 703-997-7665

David G. Sigale
Law Firm of David G. Sigale, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL
Fax No. 630-596-4445

_____
Andrew Worseck

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, JOSEPH I. BROWN, | ) | |
| WILLIAM HESPEN, ACTION TARGET, INC., | ) | |
| SECOND AMENDMENT FOUNDATION, INC., | ) | |
| and ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 10 CV 5135 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' ANSWERS TO DEFENDANT CITY OF CHICAGO'S THIRD SET OF INTERROGATORIES**
**AND RESPONSES TO DEFENDANT CITY OF CHICAGO'S THIRD REQUEST FOR PRODUCTION TO**
**PLAINTIFFS**

TO:     Andrew W. Worseck, Esq.
        William Macy Aguiar, Esq.
        City of Chicago Department of Law
        30 North LaSalle Street, Suite 1230
        Chicago, IL 60602

NOW COME the Plaintiffs, RHONDA EZELL, JOSEPH I. BROWN, WILLIAM HESPEN, ACTION

TARGET, INC., SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS STATE RIFLE

ASSOCIATION, by and through GURA & POSSESSKY, PLLC, and LAW FIRM OF DAVID G. SIGALE,

P.C., their attorneys, and for their Answers to the Third Set of F.R.Civ.P. 33 Interrogatories and

Third F.R.Civ.P. Request for Production propounded by the Defendant, CITY OF CHICAGO, states

as follows:

**GENERAL OBJECTIONS**

A.     Plaintiff objects to all Interrogatories that seek information protected from

disclosure by the attorney-client privilege, attorney work product doctrine, or any other

applicable privilege, law, rule or immunity;

B.     Plaintiff objects to all Interrogatories to the extent the interrogatory they are directed at Plaintiffs' counsel. *See Hickman* v. *Taylor*, 329 U.S. 495, 504 (1947); *See also, e.g., Kustom Signals v. Applied Concepts*, 181 F.R.D. 489, 494 (D. Kan. 1998) ("Interrogatories are to be answered by *parties*, not attorneys. *See also* Fed.R.Civ.P. 33 (titled 'Interrogatories to Parties')").

C.     Plaintiff objects to all Interrogatories that seek confidential, trade secret, proprietary, financial or commercially sensitive information, the disclosure of which could negatively impact Plaintiff's competitive or business position or result in a breach by Plaintiff of an obligation to a third-party to maintain such information confidential;

D.     Plaintiff objects to all Interrogatories that seek information that would be unduly burdensome, time-consuming and/or require unreasonable efforts or expense to produce;

E.     Plaintiff objects to all Interrogatories to the extent they are vague and/or ambiguous;

F.     Plaintiff objects to all Interrogatories to the extent they require Answers greater than, beyond the requirements of, and/or are at variance from the applicable Rules;

G.     Plaintiff objects to all Interrogatories to the extent they seek to impose an obligation on Plaintiff to provide information for or on behalf of any person or entity other than this Plaintiff, and/or seek information that is not in Plaintiff's possession, custody or control;

H.     Plaintiff objects to all Interrogatories where the information sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, less expensive, or is equally available to or more easily obtained

by the Defendant;

I.     Plaintiff objects to all Interrogatories to the extent they do not adequately define terms used in them;

J.     Claw Back Provision - Plaintiff objects to the Defendant's review of any privileged information, in any form, accidentally provided to the Defendant, and demands its immediate unopened return.

The following Answers are based on Plaintiff's current knowledge.  Additional information may be in documents or witness statements or testimony that Plaintiff has not yet reviewed or received.  Plaintiff reserves the right to supplement these Answers up to and through any hearing in this matter.

Subject to, and without waiving these General Objections, or any other objection or claim of privilege, Plaintiff responds and objects to Defendant's second set of Interrogatories as follows:

1.     Regarding the allegations in Paragraph 25 of the Amended Complaint that "a variety of [the Gun Range Ordinance's] sections work to effectively prohibit ranges from opening and operating by unjustifiably burdening their construction, operation, and use": (a) identify each provision of the MCC that effectively prohibits ranges from opening and operating; (b) state whether each identified provision does so standing alone or in tandem with other provision(s), and, if the latter, identify the tandem provision(s); (c) describe how the provision(s) operate alone or in tandem to effectively prohibit ranges from opening and operating; (d) describe any burden or impact actually imposed by the provision(s) upon any person, including any Plaintiff or any actual or anticipated customer of any Plaintiff; and (e)

describe any attempt to comply, or any inquiry, evaluation, or analysis regarding potential

compliance, with the provision(s) by any person, including any Plaintiff or any actual or

anticipated customer of any Plaintiff.

**ANSWER:**    In addition to the objections above, Plaintiffs object that this Interrogatory is

repetitive of previously-answered Interrogatories, is better suited for deposition, and is

harassing to the Plaintiffs by virtue of their repetitive nature.

2.    Regarding the alternative allegations in Paragraph 25 of the Amended Complaint

that range construction, operation and use, while "technically feasible" under the Gun Range

Ordinance, is "unjustifiably burdened by the challenged provisions": (a) identify each provision

of the MCC that unjustifiably burdens range construction, operation, or use; (b) state whether

each identified provision does so standing alone or in tandem with other provision(s), and, if

the latter, identify the tandem provision(s); (c) describe how the provision(s) operate alone or

in tandem to unjustifiably [sic] range construction, operation, or use; (d) describe any burden or

impact actually imposed by the provision(s) upon any person, including any Plaintiff or any

actual or anticipated customer of any Plaintiff; and (e) describe any attempt to comply, or any

inquiry, evaluation, or analysis regarding potential compliance, with the provision(s) by any

person, including any Plaintiff or any actual or anticipated customer of any Plaintiff.

**ANSWER:**    In addition to the objections above, Plaintiffs object that this Interrogatory is

repetitive of previously-answered Interrogatories, is better suited for deposition, and is

harassing to the Plaintiffs by virtue of their repetitive nature.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S THIRD SET OF DOCUMENT REQUESTS**

1. Nothing at this time beyond what has already been produced.

With respect to objections and document production:

_____

David G. Sigale

Alan Gura (admitted *pro hac vice*)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085
alan@gurapossessky.com

David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, JOSEPH I. BROWN, WILLIAM HESPEN, ACTION TARGET, INC., SECOND AMENDMENT FOUNDATION, INC., and ILLINOIS STATE RIFLE ASSOCIATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 10 CV 5135 |
| v. | ) ) | |
| CITY OF CHICAGO, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' FIRST SET OF SUPPLEMENTAL F.R.CIV.P. 33 INTERROGATORIES TO DEFENDANT**

TO:    Andrew W. Worseck, Esq.
       City of Chicago Department of Law
       30 North LaSalle Street, Suite 1230
       Chicago, IL 60602
       Fax No. (312) 742-3925

Pursuant to F.R.Civ.P. 33, Plaintiffs Rhonda Ezell, Joseph Brown, William Hespen,

Action Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by

and through their attorneys, hereby request that Defendant City of Chicago answer fully,

separately, and completely the following interrogatories under oath in accordance with the

rules of this Court and serve such answers upon on Plaintiffs at the Law Firm of David G. Sigale,

739 Roosevelt Road, Suite 304, Glen Ellyn, IL 60137 within 30 days of service of these

interrogatories.

**DEFINITIONS**

"Gun range ordinance" means the ordinance adopted by the City of Chicago in July,

2011, pertaining to shooting ranges, as subsequently amended, including in September 2011 and thereafter.

"Gun range" means an area that contains shooting stations or firing lines, target areas, and other related components for discharging firearms at a target, and the premises on which the area is located and includes all the buildings, structures, parking areas, and other associated improvements located on the premises, including but not limited to all such property that is owned, controlled, and/or operated by any governmental entity, including but not limited to the City of Chicago, the State of Illinois, and the federal government.

"Identify" with reference to a document means to set forth the date, author, or originator, persons to whom the document was addressed or sent, type of document (e.g. letter, contract, chart, etc.), subject matter, and the present or last known custodian of the original and any copies.

"Identify" with reference to a natural person, means to state his or her present or last known full name, home address, home telephone number, business affiliation, business address, and business telephone number.

"Identify" with reference to a person other than a natural person, means to set forth the full name of the person, the form of the person (e.g. corporation, joint venture, partnership, sole proprietorship, etc.), the partners, officers, directors, or other principals, and the present or last known place of business.

"Identify" with reference to the location of an entity or parcel of land means to set forth the full name, and the full street address of the location of the entity or parcel of land.

"Laws" means public enactments, statutes, ordinances, codes, regulations, rules, or

other texts mandating legal requirements adopted by any federal, state, or local governmental entity within the United States.

"Person" means any natural person, corporation, partnership, association, governmental unit, or other entity.

"You" or "your" means the Defendant, City of Chicago, its departments, officers, employees, representatives, agents, attorneys, and any other person or entity acting on its behalf or at its direction, including, but not limited to, the Mayor of Chicago, the Members of the City Council of Chicago, and the Chicago Police Department.

## **INSTRUCTIONS**

a.  These interrogatories are continuing in character so as to require you to file supplemental answers if you obtain further or different information before trial.

b.  Any ambiguity in these interrogatories shall be resolved so as to construe these interrogatories as broadly as possible.

c.  Any word in the singular shall be understood to refer to the singular and/or plural forms of the word. Any word in the plural shall be understood to refer to the singular and/or plural forms of the word.

**INTERROGATORIES**

1.    For each of the following sections of the Gun Range Ordinance, identify (A.) any and all reasons claimed by you at the time of passage as justifications for enacting said section; (B.) to the extent they are different, identify all reasons claimed by you as of the date of answering these Interrogatories as justifications for enacting said section (if a section was amended between July 6, 2011 and the present date, answer (A.) for all versions of the section, and (B.) as to the current version):

- Chicago Municipal Code § 4-151-030(b)(6);
- Chicago Municipal Code § 4-151-030(d);
- Chicago Municipal Code § 4-151-030(f);
- Chicago Municipal Code § 4-151-090;
- Chicago Municipal Code § 4-151-100(d);
- Chicago Municipal Code § 4-151-120;
- Chicago Municipal Code § 4-151-170(a) and (b);
- Chicago Municipal Code § 8-20-110;
- Chicago Municipal Code § 13-96-1200(b)(2);
- Chicago Municipal Code § 13-96-1200(b)(7) (regarding the slope of the floors).

**ANSWER:**

2.    For all justifications provided in your Answer to Interrogatory Number 1, above, identify all bases for said justification, including their source.

**ANSWER:**

3.     Identify all information in your possession regarding a link (negative or positive) between the existence of public gun ranges and crime rates in that geographical area, whether the "information" defines the geographical area as the same city, neighborhood, or other.

**ANSWER:**

4.     Identify all information in your possession regarding a link (negative or positive) between the existence of public gun ranges and any justification listed in your Answer to Interrogatory Number 1, above, in that geographical area, whether the "information" defines the geographical area as the same city, neighborhood, or other.

**ANSWER:**

5.     As of the date of answering these Interrogatories (with a continuing duty to supplement as noted above), identify all persons or entities who have submitted applications to open gun ranges in the City of Chicago. Identify if their application was approved or denied. If denied, state the reason for denial.

**ANSWER:**

6.     As of the date of answering these Interrogatories (with a continuing duty to supplement as noted above), identify all persons or entities who have contacted the Department of Zoning, short of having filed a gun range application, and asked whether a specific location in the City of Chicago would be approved to place a gun range pursuant to CMC 4-151-120 and all other zoning restrictions. For all such persons, identify the date of the request, and the outcome of the request. If the location was not allowed under CMC 4-151-120

or any other zoning restriction, state the specific reason and section cited. If the identity of the person or entity is unknown, list them as John Doe 1, etc....

**ANSWER:**

7.     Identify each person likely to have discoverable information that the disclosing party may use to support its defenses, unless solely for impeachment, identifying the subjects of the information.

**ANSWER:**

8.     Identify all other persons (other than yourself and persons listed in your Answers to the previous Interrogatories, above) who have knowledge of the matters described in the allegations of the Plaintiffs' Amended Complaint.

**ANSWER:**

One of the Attorneys for Plaintiffs

Alan Gura (admitted *pro hac vice*)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085
alan@gurapossessky.com


David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

VERIFIED BY CERTIFICATION under penalties as provided by law pursuant to F.R.Civ.P. 11

that all statements set forth in this instrument are true and correct, except as to matters

therein stated to be on information and belief and as to such matters the undersigned certifies

as aforesaid that he verily believes the same to be true on this _____ day of

_____, 201___.


_____

Alan Gura (admitted *pro hac vice*)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085
alan@gurapossessky.com


David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RHONDA EZELL, JOSEPH I. BROWN,      )
WILLIAM HESPEN, ACTION TARGET, INC.,    )
SECOND AMENDMENT FOUNDATION, INC.,   )
and ILLINOIS STATE RIFLE ASSOCIATION,    )
                                        )
                Plaintiffs,              )
                                        )       Case No.: 10 CV 5135
v.                                       )
                                        )
CITY OF CHICAGO,                         )
                                        )
                Defendant.               )

### PLAINTIFF'S NOTICE OF F.R.CIV.P. 30(b)(6) DEPOSITION TO DEFENDANT

TO:     Andrew W. Worseck, Esq.
        City of Chicago Department of Law
        30 North LaSalle Street, Suite 1230
        Chicago, IL 60602
        Andrew.Worseck@cityofchicago.org

        Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs hereby gives notice that on **June 25, 2012**, at **10:00 A.M.**, they will take the deposition upon oral examination, before a notary public or other person authorized to administer oaths, of the organizational designee of Defendant City of Chicago, on the topics listed in the attached Schedule A. Please inform counsel for the Plaintiffs of the name(s) and title(s) of the designated deponent(s) no later than 5:00 p.m. on June 12, 2012. If you designate more than one deponent, please note in your designation which matters from Schedule A each deponent will be prepared to testify about.

All depositions shall be recorded by stenographic means and shall proceed at the offices of **the City of Chicago, 30 North LaSalle Street, Suite 1230, Chicago, IL 60602**, as if under cross-examination, pursuant to the applicable rules of the Federal Rules of Civil Procedure and Northern District of Illinois, at which time and place you may be present.

_____
**Attorney for Plaintiffs**

The undersigned, being first duly sworn, on oath deposes and states that he/she served a copy of this <u>Plaintiffs' Notice of F.R.CIV.P. 30(b)(6) Deposition to Defendant</u> upon the persons to whom it is directed by e-mail and by U.S. Mail from Glen Ellyn, Illinois, on _____May 25_____, 2012.


_____

LAW FIRM OF DAVID G. SIGALE, P.C.


Verified by certification pursuant to F.R.Civ. P. 11 this __25__ day of _____May_____, 2012.


_____

David G. Sigale


David G. Sigale (Atty. ID# 6238103 (IL)
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547
Atty. ID# 6238103

Alan Gura (admitted pro hac vice)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085
alan@gurapossessky.com

## SCHEDULE A

## DEFINITIONS

For purposes of this Schedule, the terms listed below are defined as follows:

1. "Gun Range Ordinance" means the ordinance adopted by the City of Chicago in July, 2011, pertaining to gun ranges, as subsequently amended, including in September 2011 and thereafter.

2. "Gun range" or "gun range" means an area that contains shooting stations or firing lines, target areas, and other related components for discharging firearms at a target, and the premises on which the area is located and includes all the buildings, structures, parking areas, and other associated improvements located on the premises, including but not limited to all such property that is owned, controlled, and/or operated by any governmental entity, including but not limited to the City of Chicago, the State of Illinois, and the federal government.

3. "Laws" means public enactments, statutes, ordinances, codes, regulations, rules, or other texts mandating legal requirements adopted by any federal, state, or local governmental entity within the United States.

4. "Person" means any natural person, corporation, partnership, association, governmental unit, or other entity.

5. "CMC" refers to the Chicago Municipal Code;

6. "You" or "your" means the Defendant, City of Chicago, its departments, officers, employees, representatives, agents, attorneys, and any other person or entity acting on its behalf or at its direction, including, but not limited to, the Mayor of Chicago, the Members of the City Council of Chicago, and the Chicago Police Department.

7. "Basis" or "Bases" shall be considered synonymous with "justification(s)" and/or "reason(s)."

## MATTERS FOR EXAMINATION

1. The drafting of the Gun Range Ordinance;

2. The bases for enacting CMC § 4-151-030(b)(6);

3. The bases for enacting CMC § 4-151-030(d);

4.    The bases for enacting CMC § 4-151-030(f);

5.    The bases for enacting CMC § 4-151-090;

6.    The bases for enacting CMC § 4-151-100(d);

7.    The bases for enacting CMC § 4-151-120;

8.    The bases for enacting CMC § 4-151-170(a) and (b);

9.    The bases for enacting CMC § 8-20-110;

10.   The bases for enacting CMC § 13-96-1200(b)(2);

11.   The bases for enacting CMC § 13-96-1200(b)(7) (regarding the slope of the floors);

12.   The enforcement of the CMC sections referenced in Numbers 2-11, above;

13.   The empirical evidence relied upon by you as bases for enacting the challenged sections (in Plaintiffs' pending Amended Complaint) of the Gun Range Ordinance;

14.   The empirical evidence relied upon by you in drafting the Gun Range Ordinance;

15.   The occurrence of firearm-related crime in and around the area where private Gun Ranges (including any law enforcement Gun Ranges) are currently located in the City;

16.   The occurrence of firearm-related injuries and/or death in and around the area where private Gun Ranges (including any law enforcement Gun Ranges) are currently located in the City;

17.   The defining of "deleterious impact" and "substantial number of arrests" as those terms are used in CMC 4-151-030(f);

18.   The review and consideration of applications pursuant to CMC 4-151-030;

19.   The available locations in the City to locate a gun range;

20.     Any link (negative or positive) between the existence of public Gun Ranges and crime rates in that geographical area, whether the source of the link defines the geographical area as the same city, neighborhood, or other;

21.     Any link (negative or positive) between the existence of public Gun Ranges and any purported basis for enacting any of the CMC sections listed in Numbers 2-11, above, in that geographical area, whether the source of the link defines the geographical area as the same city, neighborhood, or other;

22.     The number, and disposition of, applications to build and/or open a Gun Range filed with the City;

23.     The number, and disposition of, inquiries and/or requests regarding whether a potential location for a Gun Range complies with the Zoning laws of Chicago;

24.     Defendant's document retention policies;

25.     Defendant's responses to the interrogatories, requests for admission, and requests for production in this case.

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, JOSEPH I. BROWN, | ) | |
| WILLIAM HESPEN, ACTION TARGET, INC., | ) | |
| SECOND AMENDMENT FOUNDATION, INC., | ) | |
| and ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 10 CV 5135 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' ANSWERS TO DEFENDANT CITY OF CHICAGO'S AMENDED THIRD SET OF**
**INTERROGATORIES**

TO:    Andrew W. Worseck, Esq.
       William Macy Aguiar, Esq.
       City of Chicago Department of Law
       30 North LaSalle Street, Suite 1230
       Chicago, IL 60602

NOW COME the Plaintiffs, RHONDA EZELL, JOSEPH I. BROWN, WILLIAM HESPEN, ACTION

TARGET, INC., SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS STATE RIFLE

ASSOCIATION, by and through GURA & POSSESSKY, PLLC, and LAW FIRM OF DAVID G. SIGALE,

P.C., their attorneys, and for their Answers to the Amended Third Set of F.R.Civ.P. 33

Interrogatories propounded by the Defendant, CITY OF CHICAGO, states as follows:

**GENERAL OBJECTIONS**

A.      Plaintiff objects to all Interrogatories that seek information protected from

disclosure by the attorney-client privilege, attorney work product doctrine, or any other

applicable privilege, law, rule or immunity;

B.      Plaintiff objects to all Interrogatories to the extent the interrogatory they are directed at Plaintiffs' counsel. *See Hickman* v. *Taylor*, 329 U.S. 495, 504 (1947); *See also, e.g.,* *Kustom Signals v. Applied Concepts*, 181 F.R.D. 489, 494 (D. Kan. 1998) ("Interrogatories are to be answered by *parties*, not attorneys. *See also* Fed.R.Civ.P. 33 (titled 'Interrogatories to Parties')").

C.      Plaintiff objects to all Interrogatories that seek confidential, trade secret, proprietary, financial or commercially sensitive information, the disclosure of which could negatively impact Plaintiff's competitive or business position or result in a breach by Plaintiff of an obligation to a third-party to maintain such information confidential;

D.      Plaintiff objects to all Interrogatories that seek information that would be unduly burdensome, time-consuming and/or require unreasonable efforts or expense to produce;

E.      Plaintiff objects to all Interrogatories to the extent they are vague and/or ambiguous;

F.      Plaintiff objects to all Interrogatories to the extent they require Answers greater than, beyond the requirements of, and/or are at variance from the applicable Rules;

G.      Plaintiff objects to all Interrogatories to the extent they seek to impose an obligation on Plaintiff to provide information for or on behalf of any person or entity other than this Plaintiff, and/or seek information that is not in Plaintiff's possession, custody or control;

H.      Plaintiff objects to all Interrogatories where the information sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, less expensive, or is equally available to or more easily obtained by the Defendant;

I.      Plaintiff objects to all Interrogatories to the extent they do not adequately define terms used in them;

J.      Claw Back Provision - Plaintiff objects to the Defendant's review of any privileged information, in any form, accidentally provided to the Defendant, and demands its immediate unopened return.

The following Answers are based on Plaintiff's current knowledge.  Additional information may be in documents or witness statements or testimony that Plaintiff has not yet reviewed or received.  Plaintiff reserves the right to supplement these Answers up to and through any hearing in this matter.

Subject to, and without waiving these General Objections, or any other objection or claim of privilege, Plaintiff responds and objects to Defendant's second set of Interrogatories as follows:

1.      Regarding the allegations in Paragraph 25 of the Amended Complaint that "a variety of [the Gun Range Ordinance's] sections work to effectively prohibit ranges from opening and operating by unjustifiably burdening their construction, operation, and use": (a) identify each provision of the MCC that effectively prohibits ranges from opening and operating; (b) state whether each identified provision does so standing alone or in tandem with other provision(s), and, if the latter, identify the tandem provision(s); (c) describe how the provision(s) operate alone or in tandem to effectively prohibit ranges from opening and operating; (d) describe any burden or impact actually imposed by the provision(s) upon any person, including any Plaintiff or any actual or anticipated customer of any Plaintiff; and (e) describe any attempt to comply, or any inquiry, evaluation, or analysis regarding potential

compliance, with the provision(s) by any person, including any Plaintiff or any actual or

anticipated customer of any Plaintiff.

**ANSWER:**    In addition to the objections above, Plaintiffs object that this Interrogatory is

repetitive of previously-disclosed information, and improperly calls for a narrative.

Notwithstanding the above objections, and without waiving same, and interpreting the

above Interrogatory according to conversations between Plaintiffs' and Defendants' counsel,

namely as: what sections of the 'Gun Range Ordinance' are Plaintiffs challenging as

encompassed in the pending Amended Complaint beyond the specifically enumerated

examples contained therein," Plaintiffs state as follows:

- MCC 4-151-10, 4-151-100(n) - Recordkeeping of all "shooting range patrons" is

required; *See* KramerOne report dated March 16, 2012, previously disclosed.

- MCC 4-151-100(b) - Range Master Presence - *See* KramerOne report dated

March 16, 2012, previously disclosed.

- MCC 8-20-100 - Firearms Sales — *See* KramerOne report dated March 16, 2012,

previously disclosed.

- MCC 17-5-0207 - Shooting range facilities are only permitted in a manufacturing

district, with special use approval - *See* KramerOne report dated March 16, 2012, previously

disclosed.

- MCC 11-4-260(b) - Regulatory Conflict - *See* KramerOne report dated March 16,

2012, previously disclosed.

- MCC 13-96-1160(a) - Shooting Range Enclosure Construction - *See* KramerOne

report dated March 16, 2012, previously disclosed.

- MCC 13-96-1190(c)(2)(d) - Ammunition or Firearms Storage - A magazine or hazardous storage may be required for ammunition or firearm storage - *See* KramerOne report dated March 16, 2012, previously disclosed.

- MCC 13-96-1200(b)(7), 13-96-1200(b)(2) - Shooting Range Surface Treatment - Two sections of the Ordinance create a conflict with respect to shooting range surface materials - *See* KramerOne report dated March 16, 2012, previously disclosed.

- MCC 13-96-1210(d) - Shooting Range Ventilation Separation Requirements - *See* KramerOne report dated March 16, 2012, previously disclosed.

- MCC 13-96-1210(e) - Shooting Range Ventilation System Interlocking - *See* KramerOne report dated March 16, 2012, previously disclosed.

- MCC 13-96-1220(b), 13-96-1220(c) - Shooting Range Floor Cleaning Method - *See* KramerOne report dated March 16, 2012, previously disclosed.

2. Regarding the alternative allegations in Paragraph 25 of the Amended Complaint that range construction, operation and use, while "technically feasible" under the Gun Range Ordinance, is "unjustifiably burdened by the challenged provisions": (a) identify each provision of the MCC that unjustifiably burdens range construction, operation, or use; (b) state whether each identified provision does so standing alone or in tandem with other provision(s), and, if the latter, identify the tandem provision(s); (c) describe how the provision(s) operate alone or in tandem to unjustifiably [sic] range construction, operation, or use; (d) describe any burden or impact actually imposed by the provision(s) upon any person, including any Plaintiff or any actual or anticipated customer of any Plaintiff; and (e) describe any attempt to comply, or any

inquiry, evaluation, or analysis regarding potential compliance, with the provision(s) by any person, including any Plaintiff or any actual or anticipated customer of any Plaintiff.

**ANSWER:**     *See* Plaintiffs' Answer to Interrogatory #1.


_____          _____
Rhonda Ezell                                         Joseph I. Brown


_____          _____
William Hespen                                     Authorized Representative of
                                                             Action Target, Inc.


_____          _____
Authorized Representative of             Authorized Representative of
Second Amendment Foundation, Inc.   Illinois State Rifle Association

With respect to objections only:

_____
David G. Sigale

Alan Gura (admitted *pro hac vice*)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085
alan@gurapossessky.com

David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

# EXHIBIT G

1          IN THE UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF ILLINOIS

3             EASTERN DIVISION

4    RHONDA EZELL, JOSEPH I.          )

5    BROWN, WILLIAM HESPEN,           )

6    ACTION TARGET, INC.,             )    No. 10 CV 5135

7    SECOND AMENDMENT                 )    Judge Virginia M.

8    FOUNDATION, INC., and            )    Kendall

9    ILLINOIS STATE RIFLE             )

10   ASSOCIATION,                     )

11                 Plaintiffs,        )

12        -vs-                        )

13   CITY OF CHICAGO,                 )

14                 Defendant.         )

15

16       The continued deposition of CHRISTOPHER HART,

17   called for examination, taken pursuant to the

18   Federal Rules of Civil Procedure of the United

19   States District Courts·pertaining to the taking of

20   depositions, taken before CAROL RAYMOND, CSR No.

21   84-001077, a Notary Public within and for the

22   County of DuPage, State of Illinois, and a

23   Certified Shorthand Reporter of said state, at

24   Suite 1230, 30 North LaSalle Street, Chicago,



1   ordinance, and for purposes of today's deposition I

2   will call it the Gun Ordinance, the two together,

3   unless I make a distinction between the two.

4        A.    Okay.

5        Q.    So we do not have to keep saying -- just

6   distinguishing between the two, unless it is

7   important for a specific question.  It says, the

8   gun range ordinance, that a variety of its sections

9   were to effectively prohibit ranges from opening

10  and operating by unjustifiably burdening their

11  construction, operation and use.  Then it says, In

12  the alternative, to the extent range construction,

13  operation and use might be technically feasible

14  under the ordinance, such construction, operation

15  and use is unjustifiably burdened by the challenged

16  provisions.  These include:  And then there is a

17  list and it goes on for approximately

18  two-and-a-half -- two pages of the gun range

19  ordinance.

20           Are there any other provisions of the

21  ordinance that you believe prohibited ranges from

22  opening and operating because they burden the

23  construction, operation and use of ranges that's

24  not listed in paragraph 25?



CHRISTOPHER HART
RHONDA EZELL -vs- CITY OF CHICAGO

June 14, 2012

1       A.      There are.  One would be the transport

2   of firearms.

3       Q.      And any others?

4       A.      Any that would unduly impact range

5   business.

6       Q.      Do you have any in mind as sit here

7   today?

8       A.      Not off the top of my head.  The biggest

9   one is the transport clause, but there could be

10  other sections of the code that I have not seen

11  that affect ranges as well.

12      Q.      You have read both -- you just testified

13  that you have read both the July 2011 ordinance and

14  the amendment of September; correct?

15      A.      Correct.

16      Q.      And you did that last night?

17      A.      I did it last night and I read it

18  previously as well.

19      Q.      During that review, did any of the

20  provisions in those ordinances strike you as being

21  unduly burdensome on the opening or construction of

22  a range in the City of Chicago?

23      A.      All of the ones that we have listed in

24  here?



CHRISTOPHER HART                                     June 14, 2012
RHONDA EZELL -vs- CITY OF CHICAGO

1        Q.      Anything that is beyond what is listed

2    in here?

3        A.      Beyond what is listed, no.

4        Q.      You would say the transition of

5    firearms you think burdens -- strike that.

6                Is it your position that the

7    transportation of firearms burdens the construction

8    of ranges?

9        A.      Burdens the construction -- more the use

10   of ranges.  No one will build a range if they

11   cannot transport a firearm to use it in the range.

12       Q.      But it does not actually burden the

13   construction itself of the range?

14       A.      No.

15   MR. AGUIAR:  Mark this as Exhibit No. 2.

16                    (WHEREUPON, a certain document was

17                    marked Hart Deposition Exhibit No.

18                    2, for identification, as of

19                    6/14/12.)

20   BY MR. AGUIAR:

21       Q.      Mr. Hart, you have been handed what I

22   have had marked as Deposition Exhibit No. 2.  This

23   is the Plaintiff Action Target Answers to

24   Defendant's Second Set of Interrogatories to

# EXHIBIT H

1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


RHONDA EZELL, JOSEPH I. BROWN,          )
WILLIAM HESPEN, ACTION TARGET, INC., )
SECOND AMENDMENT FOUNDATION, INC.,      )
and ILLINOIS STATE RIFLE ASSOCIATION,)
                    Plaintiffs,         )
vs.                                     ) No. 10 C 5135
CITY OF CHICAGO,                        )
                    Defendant.          )


          The deposition of JULIANNE VERSNEL,
called for examination, taken pursuant to the Federal
Rules of Civil Procedure of the United States District
Courts pertaining to the taking of depositions, taken
before MARILYN T. LaPORTE, a Notary Public within and
for the County of Cook, State of Illinois, and a
Certified Shorthand Reporter of said state, at Suite
1230, Conference Room 1, 30 North LaSalle Street,
Chicago, Illinois, on June 11, 2012, at 9:40 a.m.



Toll Free: 800.211.DEPO
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

91

1    think it was safe to travel to these locations, were

2    there any other reasons that they mentioned as to why

3    it would be a burden to travel to those locations?

4         A.    No.

5         Q.    You said that these were anecdotal

6    indications or conversations.

7               What do you mean by that?

8         A.    People spoke to me about the new CFP

9    requirements and range requirements in a general sense

10   and indicated that they didn't feel that this was

11   going to meet their needs.

12        Q.    When did these conversations occur?

13        A.    Over a period of four or five months.

14        Q.    Taking place when?  What point in time?

15        A.    My estimate is from June or July of 2011

16   through maybe October of 2011.

17        Q.    Did any of these individuals indicate to

18   you their preferred locations?  Where they would like

19   to see ranges open in the city?

20        A.    Not that I recall.

21        Q.    Aside from the provisions in the Chicago

22   Code that are listed at pages -- in the bullet points

23   at Pages 5 to 7 of the Amended Complaint, are there

24   any other provisions in Chicago's range ordinance that



Toll Free: 800.211.DEPO
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

JULIANNE VERSNEL                                    June 11, 2012

92

1   the SAF is challenging?

2          A.     In addition to Count I on Page 11, we are

3   also --

4          MR. SIGALE:  Are you challenging any other

5   specific parts of the ordinance I think is his

6   question.  Am I right?  That's your question?

7   BY MR. WORSECK:

8          Q.     Yeah.  We spent a lot of time talking

9   about the specific provisions cited on Pages 5 through

10  7, and we walked through each one of those

11  individually.

12          And I'm just wondering if there are any

13  other provisions in the Chicago range ordinance that

14  aren't in your complaint that the Plaintiffs

15  nonetheless have a problem with and are challenging in

16  this lawsuit?

17          MR. SIGALE:  I'll just object to the extent that

18  the complaint speaks for itself.

19          But to the extent you can answer, go ahead

20  and answer.

21  BY MR. WORSECK:

22          Q.     I don't want this to be an exam.  I'm just

23  asking to your knowledge.

24          A.     I understand.  There are no specific



Toll Free: 800.211.DEPO
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

ESQUIRE
DEPOSITION SOLUTIONS

JULIANNE VERSNEL                                    June 11, 2012

93

1  points that I can recall at this time that are not

2  covered in the Amended Complaint.

3         MR. WORSECK:  David, I don't have any further

4  questions at this time, but I'm going to leave this

5  open pending the response that we're still waiting for

6  as to the City's most recent set of Interrogatories.

7         MR. SIGALE:  Yeah.  I mean, I'll just put on the

8  record what I told Bill Aguiar and probably told you

9  as well.  As soon as I got a spare minute, or maybe

10  even today if the second deposition doesn't go, I'll

11  get that over to you.

12              But there's two Interrogatories, which

13  we're just going to be okay to and a document response

14  where we're going to say that we have no additional

15  documents.

16              So you're making your record.  I'm just

17  putting that on the record.

18         MR. WORSECK:  The record will be what it is.

19         MR. SIGALE:  Anything else?

20         MR. WORSECK:  No.

21  BY THE WITNESS:

22         A.    I had talked to you about this.

23         MR. SIGALE:  Oh, yeah.  Let's -- we can go on

24  the record.



ESQUIRE
DEPOSITION SOLUTIONS

Toll Free: 800.211.DEPO
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com