March 16, 2012

RE: CHICAGO SHOOTING RANGE ORDINANCE

Mr. David G. Sigale
Law Firm of David Sigale, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, Illinois 60137

Dear Mr. Sigale:

We have reviewed the City of Chicago's regulations for shooting range facilities. The authors of this document have a combined forty-six years of experience evaluating or designing shooting range facilities. That experience has included shooting range facilities in most States in the nation, including Illinois. Prior to reviewing the amended Municipal Code of Chicago, we had never seen regulations pertaining to shooting range facilities that were anywhere near as restrictive as those for the City of Chicago. We doubt it would be a prudent business venture to construct a shooting range facility in the City of Chicago, under the current regulations.

In preparation of this document, we reviewed the following documents:

- Case No.: 10 CV 5135, Amended Complaint, Rhonda Ezell et al v City of Chicago.

- Amended Municipal Code of Chicago Ordinance; passed July 6, 2011.

- Amended Municipal Code of Chicago Ordinance; introduced July 28, 2011; passed September 8, 2011.

- Municipal Code of Chicago; Section 4-60-010, Definitions.

- Municipal Code of Chicago; Section 11-4-2920(h), Manufacturing districts.

We have several specific concerns regarding the amendments to the Municipal Code of Chicago that may effectively preclude the construction and operation of shooting range facilities in the City of Chicago. Those issues are identified in the following paragraphs.



kramer one inc.
ARCHITECTURE & PLANNING
6839 E. Avalon Dr. • Scottsdale, AZ 85251
phone 480.941.9179 • fax 480.970.3830

March 16, 2012

Issue #1 – Applicant Credential Requirement

"Applicant" is defined as, "any person who is required to be disclosed pursuant to section 4-151-30(b)." Section 4-151-30(b)(1) identifies disclosed persons to include, "any person in connection with the preparation and filing of the application, including but not limited to, any attorney, accountant, consultant, expediter, promoter or lobbyist". Applicants are required to provide CFP and FOID card numbers.

Limiting the persons qualified to assist in the preparation of the application to those persons with CFP and FOID cards will greatly limit the number of qualified resources. It may be difficult, or even impossible, to find attorneys, accountants, consultants, expediters, promoters or lobbyists who are knowledgeable about shooting range facilities, and who possess CFP and FOID cards. As the FOID is only available to Illinois residents, Mr. Lorin D. Kramer of this firm, an Illinois licensed architect and specialist in shooting range design, could not assist with the application process.

Ordinance References: 4-151-010, 4-151-030(b)(1), 4-151-030(b)(6)

Issue #2 – License Revocation

The commissioner may deny the issuance or renewal of a license, or revoke the license, if they deem there is a "deleterious impact" to the community. "Deleterious impact" is defined as, "an adverse effect on the value of any property, an increased risk of violations of law, or a risk of a substantial increase in noise, litter, or vehicular congestion."

The operators of the shooting range facility are unlikely to be in complete control of issues that could be deemed deleterious. Yet the shooting range facility operators are fully accountable for assuring nothing deleterious occurs. Failure to prevent deleterious impacts, including those impacts not under the control of the shooting range facility operators, is grounds for license revocation, or denial of issuance or renewal. It would be hard to find a business owner or lending institution that would risk capital on a business venture that could be closed for what is outside the business owners' span of control.

Ordinance References: 4-60-010, 4-151-030(f)

Issue #3 – Outdoor Range Prohibition

Outdoor shooting ranges are prohibited.

Some shooting activities are well suited to indoor shooting ranges. However, some shooting activities are not well suited, or in some cases even excluded, from indoor ranges. These activities are intended or required to be conducted on outdoor shooting ranges. Activities requiring an outdoor shooting range include all forms of International or Olympic competition, except airgun events; and most, but not all, American style rifle and pistol competition; and all American style shotgun competition.

Ordinance References: 4-151-080

March 16, 2012

Issue #4 – Limitation on Hours of Operation

Shooting range facilities are limited to operating between the hours of 9 a.m. and 8 p.m. "Shooting range facility" is defined to include more than just the space where shooting occurs. All buildings, structures, parking areas, and other associated improvements are included.

An ordinance limitation on hours of operation for shooting ranges is typically a result of a desire to control nighttime sound levels. However, this would not be applicable to an indoor shooting range where the sound levels are controlled by the building envelope. The limitation of hours restricts the shooting range facility's potential income.

Ordinance References: 4-151-10, 4-151-090

Issue #5 – Recordkeeping Requirements for Entry to the Facility

Recordkeeping of all "shooting range patrons" is required. "Shooting range patrons" are defined to include any person present in a "shooting range facility", except a licensee, manager, employee, or any independent contractor hired to clean or maintain the shooting range facility. "Shooting range facility" is defined to include more than just the space where shooting occurs. All buildings, structures, parking areas, and other associated improvements are included.

The recordkeeping requirements require most persons who enter the property, including persons not shooting in the shooting range, to log in and log out, and for those records to be kept for one year. As an example, if this firm provided architectural services for a shooting range facility, our personnel would be included in the recordkeeping requirement, just to provide post contract services. This is an extraordinary requirement.

Ordinance References: 4-151-10, 4-151-100(n)

Issue #6 – Range Master Presence

The range master is required to be on duty during all operating hours of the shooting range facility, not just when the shooting range is in use.

As a shooting range facility includes more activities than shooting on the shooting range, it is not uncommon for the operating hours of the shooting range facility to differ somewhat from the operating hours of the shooting range. It seems unreasonable to require a range master to be on duty when there is no shooting occurring.

Ordinance References: 4-151-100(b)

Issue #7 – Age Requirements

Persons less than 18 years of age are prohibited from entering the shooting range facility. This prohibition extends to the entire shooting range facility, not just the shooting range.

The prohibition on persons less than 18 years of age would preclude families with under age children from entering any of the premises, not just the shooting range. The Ordinance even prohibits a parent from driving into the parking lot with their children in their vehicle. It is unclear how one could prevent this from occurring.

Shooting ranges are commonly used by children over the age of six, with a parent or guardian's permission. All youth shooting programs would effectively be prohibited by the age requirement.

The Ordinance would also preclude any services being provided to the shooting range facility by workers under the age of 18. This would include services not related to firearms.

Ordinance References: 4-151-100(d)

Issue #8 – Firearms Sales

No firearms sales are permitted at the shooting range facility.

Firearm sales are an important part of the financial success of shooting range facilities. The general business model that shooting range facilities use is the shooting range hopes to break even on the fees associated with the use of the shooting range. The profit comes from other fees, such as sale of firearms. We don't know of any commercial shooting range facilities that do not have firearms sales.

Ordinance References: 8-20-100

Issue #9 – Restricted Location

Shooting range facilities may not be located within 500 feet of another licensed shooting range facility, residentially zoned properties, schools, day-care facilities, libraries, museums or hospitals. Shooting range facilities are only permitted in a manufacturing district, with special use approval.

Shooting ranges are constructed and operated in such a manner that the shooting activities are fully enclosed and separate from other activities in the community. Prohibiting shooting range facilities to share the same neighborhood with other uses, even though those uses would be unaffected by the shooting range operations, is punitive. Prohibiting multiple shooting range facilities within 500 feet of one another is equally punitive.

Indoor shooting range facilities are a commercial use compatible with other commercial or industrial uses. The locations best suited for indoor shooting ranges facilities are in commercial district with good street access and exposure.

Ordinance References: 4-151-120, 17-5-0207 Use Table and Standards

Issue #10 – Firearms Rental

Firearms rentals are restricted to the one hour of training required to obtain a CFP.

Firearms rentals are an important part of the financial success of shooting range facilities. The general business model that shooting range facilities use is the shooting range hopes to break even on the fees associated with the use of the shooting range. The profit comes from other fees, such as firearms rentals. Most commercial shooting range facilities have firearms rentals. The rental of firearms is a useful tool to ensure that patrons purchase a firearm suited to them. Without the ability to try various firearms prior to purchasing one, a customer may purchase a firearm they have difficulty using. Such a situation would be both a monetary burden to the firearm owner and a safety concern to the community.

Ordinance References: 4-151-170(a)

Issue #11 – Ammunition Sales

Ammunition sales are limited to shooting range patrons. No ammunition sold at the shooting range facility may leave the shooting range facility.

Ammunition sales are an important part of financial success of shooting range facilities. The general business model that shooting range facilities use is the shooting range hopes to break even on the fees associated with the use of the shooting range. The profit comes from other fees, such as sale of ammunition. We don't know of any commercial shooting range facilities that do not have ammunition sales.

Ammunition is sold in prepackaged quantities. It is inadvisable and a safety concern to shoot ammunition that the shooter is unsure of its origin. A shooter should purchase either factory packaged ammunition or ammunition personally reloaded by the shooter. If the shooting range facility is prohibited from allowing its customers to leave with ammunition they've purchased, unfired ammunition either has to be disposed of or repackaged and sold to another customer. Both situations are undesirable. In addition, it is creates a difficult situation for the consumer if they are purchasing a new consumable product that was previously purchased by another consumer, or are forced to return unused consumable product that they would use later, if permitted.

It would be extremely difficult to prevent unused ammunition purchased in a shooting range facility from leaving that facility. How would the shooting range facility operators differentiate between ammunition purchased at that shooting range facility and ammunition purchased elsewhere and brought to the shooting range facility? Ammunition brought to the facility may leave the facility, but not ammunition purchased at the facility.

Ordinance References: 4-151-170(b)

Issue #12 –Regulatory Conflict

The commissioner is authorized to promulgate rules and regulations for the cleaning of, sound and air quality control at, and discharge of particulate matter and waste from shooting range facilities.

Worker safety and health issues, such as cleaning and sound control, is regulated by the Occupational Safety and Health Administration (OSHA). An additional regulatory jurisdiction would be needlessly burdensome. In addition, there is the potential of conflict between OSHA rules and regulations and the commissioner's rules and regulations.

Air quality control and discharge of particulate matter and waste is regulated by the U.S. Environmental Protection Agency (EPA) and their State counterpart, the Illinois Environmental Protection Agency (IEPA). An additional regulatory jurisdiction would be needlessly burdensome. In addition, there is the potential of conflict between EPA/IEPA rules and regulations and the commissioner's rules and regulations.

Ordinance References: 11-4-260(b)

Issue #13 – Shooting Range Enclosure Construction

The rear wall of the shooting range is exempt from a requirement to be penetration-proof. However, the side walls behind the firing line, and all walls behind bullet trap have no similar exemption. Without this exemption, doors into the shooting range behind the firing line would need to be in the rear wall to avoid armor plating the door. Doors behind the bullet trap, required for servicing many types of bullet trap systems, would need to be armor plated, even though they are protected from bullet strike by the bullet trap. The added cost of armor plating doors not subject to direct bullet strike is needlessly burdensome.

Ordinance References: 13-96-1160(a)

Issue #14 – Ammunition or Firearms Storage

A magazine or hazardous storage may be required for ammunition or firearm storage.

Ammunition or firearm storage does not generally require a magazine or hazardous storage. Secure storage for firearms is common, but differs from the requirements for a magazine. Magazines are used for the storage of explosive materials. Small arms ammunition, which is the type of ammunition used at indoor shooting ranges, is not classified as an explosive by the National Fire Protection Association (NFPA), which is the national organization that publishes standards related to fire protection. Firearms contain no explosive or hazardous materials.

Rooms containing small arms ammunition are generally classified as either "storage" or an accessory use to the primary use. A hazardous classification for small arms

ammunition storage would be a far more severe classification and very costly to construct.

Ordinance References:  13-96-1190(c)(2)(d)

Issue #15 – Sound Level Limits

Sound emanating from the shooting range to areas outside the shooting range facility are subject to Chapter 11-4 of the Municipal Code of Chicago, which states, "The limits set forth in this article do not apply to sounds measured within any manufacturing district". Shooting range facilities are restricted to manufacturing districts.  The shooting range is limited to a maximum of 55 dB of sound emanating from the shooting range facility into "contiguous areas".  "Contiguous areas" is not defined.

Manufacturing districts are exempt from sound limits, except for sound measured outside the boundary of the manufacturing district.  Manufacturing districts include activities that generate greater sound level than do shooting ranges.  Restricting sound levels for shooting range facilities in a district that generally does not restrict sound levels is an unreasonable imposition.

Ordinance References:  17-5-0207 Use Table and Standards, 11-4-2920(h), 13-96-1200(b)(2)

Issue #16 – Shooting Range Surface Treatment

Two sections of the Ordinance create a conflict with respect to shooting range surface materials.  The floors, ceilings and walls must be of smooth non-porous materials to comply with 13-96-1200(b)(7).  13-96-1200(b)(2) requires air-borne sound absorbing materials. Air-borne sound absorbing materials are not smooth non-porous materials.

Ordinance References:  13-96-1200(b)(7), 13-96-1200(b)(2)

Issue #17 – Shooting Range Ventilation Separation Requirements

Each individual shooting range is required to have a separate ventilation and exhaust system.

For shooting range facilities with multiple small shooting ranges, separate mechanical systems create a financial burden.  There are economies of scale with shooting range ventilation and exhaust systems. As an example, installing two separate systems for two shooting range rooms of four shooting lanes each would cost approximately $65-70,000 more than installing one system for both rooms.  In some situations, the configurations of an existing building may preclude putting all eight shooting lanes in one room.

Ordinance References:  13-96-1210(d)

Issue #18 – Shooting Range Ventilation System Interlocking

Shooting range supply and exhaust systems are required to be electrically interlocked to turn on each system at the same time.

Interlocking is standard practice in the industry. However, supply air mechanical units and exhaust air mechanical units are generally staged to prevent their both drawing peak power loads simultaneously. The ventilation system for shooting ranges is a very high power user. A power spike from simultaneous loading of all motors would be hard on the power grid, and could even result in a localized power grid failure.

Ordinance References: 13-96-1210(e)

Issue #19 – Shooting Range Floor Cleaning Method

The shooting range is required to have hose bibs, floor drains and a floor sloped toward the floor drains. This is contrary to industry standard practices for shooting range maintenance. The preferred method of cleaning is with a HEPA rated explosion proof vacuum.

Floor drains are a safety problem. Incompletely combusted gunpowder will accumulate on the shooting range floor. If a shooting range floor is washed to a floor drain, unburned gunpowder will accumulate in the floor drain plumbing trap. If the floor drain plumbing trap dries out, the unburned gunpowder will again become a combustible material. With an ignition source, the accumulation of unburned gunpowder in the plumbing trap can explode. This is because smokeless gunpowder will burn slowly when ignited in a unconfined space, such as on the floor, but explodes in a confined space, such as a plumbing trap. This situation has occurred, and is why floor drains in shooting ranges are no longer considered acceptable practice.

Floor drains can also be a bullet deflection problem. A bullet strike on the covering grate of a floor drain in some cases could result in a bullet deflection back toward the shooters.

Sloping a floor surface is beneficial when it is a method of draining the floor to a floor drain. It has no benefit and adds additional construction cost when the floor has no floor drains.

Ordinance References: 13-96-1220(b), 13-96-1220(c)


For all nineteen issues identified in the previous pages of this document, we are unaware of any jurisdiction, other than the City of Chicago, that institutes the requirements set forth, except as follows:

Issue #4, Limitation on Hours of Operation: It is not uncommon for outdoor shooting ranges to have limitations on nighttime operations. Most commonly, this occurs through a condition on a special use permit. We are unaware of any

jurisdictions, other than the City of Chicago, that specifically limit hours of operation for indoor shooting range facilities.

Issue #10, Firearms Rental: We are aware of a few jurisdictions, in addition to the City of Chicago, which prohibit firearms rental.

Issue #15, Sound Level Limits: It is not uncommon for communities to have noise statutes that limit sound levels. Occasionally these noise statutes include specific requirements for shooting range facilities.

This concludes our analysis. Our qualifications follow.

Qualifications – Mr. Lorin D. Kramer

Mr. Lorin D. Kramer is the senior principal of Kramer One, Inc., and a licensed architect. Mr. Kramer is a nationally recognized expert in shooting range design. He has designed shooting range facilities in twenty-eight States. Mr. Kramer master planned and designed the Clark County Shooting Park in North Las Vegas, Nevada, which is the largest public shooting range master planned in the United States.

Mr. Kramer was a guest speaker for the National Rifle Association's Range Development & Operations Conferences from 1993 through 2009; speaking at sixty-three conferences. His topics included shooting range master planning and cost estimating. Mr. Kramer was a Range Technical Team Advisor and the Range Technical Team Advisor Western Region Supervisor for the National Rifle Association from 1991 through 2009.

Mr. Kramer has served on the Board of Directors for the Arizona State Rifle & Pistol Association, and Rio Salado Sportsman's Club. Rio Salado Sportsman's Club operates the Usery Mountain Shooting Range in Mesa, Arizona.

Current Certifications & Appointments

      Architect, Arizona, #25648

      Architect, Colorado, #304857

      Architect, Delaware, #S5-0006342

      Architect, Hawaii, #AR-9517

      Architect, Idaho, #AR2452

      Architect, Illinois, #001-016208

      Architect, Maryland, #10704

      Architect, Missouri, #008096

      Architect, Vermont, #003-0002315

Architect, Virginia, #0401-010371

Architect, Washington, #7408

Past Certifications & Appointments

    National Rifle Association

        Range Technical Team Advisor Western Region Supervisor

        Range Technical Team Advisor

        Training Counselor

        Basic Firearms Instructor

        Class C Rifle Coach

        Field Support Team

        Smallbore Rifle Marksman

        Highpower Rifle Marksman

        Rifle Silhouette Competitor

        Pistol Silhouette Competitor

    Arizona State Rifle & Pistol Association

        Junior Division Executive Officer

    Rio Salado Sportsman's Club

        President

        Vice President

        Secretary

        Chief Instructor

Current Affiliations

    National Rifle Association

    Law Enforcement Alliance of America

    International Shooting Coaches Association

Arizona State Rifle & Pistol Association

Colorado Shooting Sports Association

New Mexico Shooting Sports Association

Past Affiliations

National Fire Protection Association

National Shooting Sports Foundation

International Association of Law Enforcement Firearms Instructors

Rio Salado Sportsman's Club

Publications in Past Ten Years

Qualifications – Mr. Jack J. Giordano

Mr. Jack J. Giordano is a shooting range safety and health specialist for Kramer One, Inc. Mr. Giordano is an EPA Certified Lead Inspector / Lead Risk Assessor. He is a nationally recognized expert in shooting range safety and worker health at shooting ranges.

Previously to working for Kramer One, Inc., Mr. Giordano, was a law enforcement officer for the Port Authority of New York and New Jersey Police. Prior to his retirement from the Port Authority, his assignments included Emergency Services Unit, Special Weapons Team, Special Weapons Maintenance Officer, and Explosive Device Detection Team. Mr. Giordano was an adjunct Firearms Instructor / Police Armorer / Range Safety Officer with the Port Authority for fourteen years.

From 2001 to 2003 Mr. Giordano served as the Director and Principal Firearms Instructor of the Eastern Firearms Academy in Hillsborough, New Jersey. During that time, he and his staff of five firearms instructors were directly involved in planning, developing and conducting basic and advanced civilian, law enforcement, and security officer firearms training programs.

Mr. Giordano is currently the Eastern Region Supervisor of the National Rifle Association's Range Technical Team. He is also a featured instructor at the NRA Range Development and Operations Conferences.

Current Certifications & Appointments

National Rifle Association

Range Technical Team Advisor Eastern Region Supervisor

– 12 –                                                                    March 16, 2012

Range Technical Team Advisor

Senior Training Counselor

Basic Firearms Instructor

Chief Range Safety Officer Trainer

Field Support Team Zone Coordinator

New Jersey Department of Health

Certified Lead Inspector/Lead Risk Assessor

City of New York Department of Investigations

Investigators Training Course

John Jay College of Criminal Justice

Crime Scene Investigations

International Association of Bomb Technicians and Investigators

Advanced Explosives and Terrorist Activities

Past Certifications & Appointments

Police Armorer, Smith & Wesson Revolvers

Police Armorer, Smith & Wesson Semi-Automatic Pistols

Police Armorer, Remington Rifles and Shotguns

Police Armorer, Smith & Wesson Military & Police Pistol

Awards & Recognition

July 1987 - Certificate of Commendation, Port Authority Police Department – for surveillance leading to the arrest of auto crime ring.

December 1993 - Letter of Commendation, Federal Bureau of Investigation – for design of mobile sniper/observer vehicle, currently in use at major international airport.

May 2002 - Tribute of Appreciation – United States Environmental Protection Agency – for assistance in development of Best Lead Management Practices Program.

June 2002 - Distinguished Service Team Award – The Port Authority of New York and New Jersey – for assistance in the aftermath of the September 11th, 2001 terrorist attacks on the World Trade Center.

August 2004 – Recognized by the United States Marshals Service for assistance in presenting a Safety and Health program to approximately 125 Deputy US Marshals in Dallas, Texas.

June 2005 – Invited to lecture at the International Association of Law Enforcement Firearms Instructors (IALEFI) annual conference in Reno, Nevada. Topic, Maintaining Safety & Health During Law Enforcement Firearms Training Activities.

April 2011 – Invited to lecture at the International Law Enforcement Educators and Trainers Association (ILEETA) annual conference in Chicago, IL. Topic, Maintaining Safety & Health During Law Enforcement Firearms Training Activities.

Publications in Past Ten Years

Club Connection, A Publication of the National Rifle Association, September 2003, Vol. 8, No.3. Article, Why Attend a National Range Development and Operations Conference.

Range Technical Team Newsletter, Publication of the NRA Range Department. Several articles.

4th National Shooting Range Symposium, June 3-6, 2000. Published by the International Association of Fish & Wildlife Agencies. Article, 4 E's of Range Development and Safety.

National Rifle Association Law Enforcement Activities Division Newsletter, Summer 2002 Issue, Article, Part I, OSHA Regulations and Exposure to Lead on Indoor Shooting Ranges.

National Rifle Association Law Enforcement Activities Division Newsletter, Spring 2003 Issue, Article, Part II, OSHA Regulations and Exposure to Lead on Indoor Shooting Ranges.

National Rifle Association Law Enforcement Activities Division Newsletter, Summer 2003 Issue, Article, Part III, OSHA Regulations and Exposure to Lead on Indoor Shooting Ranges.

Past Four Years of Expert Testimony or Depositions – Mr. Lorin D. Kramer

March 16, 2012

Past Four Years of Expert Testimony or Depositions – Mr. Jack J. Giordano

Dunn's Discount Guns and Sporting Goods, Inc., San Diego, California – Deposition regarding range suicide.

Statement of Compensation

Document Review:

> Fixed Fee: **$1,110.00**

Report Preparation:

> Fixed Fee: **$1,900.00**

Pre-Trial and Trial Services:

> Services will be invoiced at an hourly rate plus reimbursable expenses.

> Hourly Rates:

>> Mr. Lorin D. Kramer or Mr. Jack J. Giordano's time for expert witness services will be invoiced at a rate of **$250 per hour**. Expert witness services include reviewing, preparation for and giving depositions and testimony.

>> Travel time will be invoiced at a rate of **$125 per hour**.

>> Time will be invoiced in tenth hour increments.

> Reimbursable Expenses:

>> Expenses associated with out-of-town travel and living expenses will be invoiced at ten percent (10%) more than the actual cost incurred by Kramer One, Inc.

Sincerely,

Lorin D. Kramer, R.A.
President

Jack J. Giordano
Shooting Range Safety & Health Specialist