IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RHONDA EZELL, JOSEPH I. BROWN, )
WILLIAM HESPEN, ACTION TARGET, INC., )
SECOND AMENDMENT FOUNDATION, INC., )
and ILLINOIS STATE RIFLE ASSOCIATION, )
                              )     Case No.: 10 CV 5135
                 Plaintiffs, )
      v.                         )
                                 )
CITY OF CHICAGO,            )
                                 )
                 Defendant. )

## DEFENDANT CITY OF CHICAGO'S ANSWER TO
## PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant City of Chicago (the "City" or "Defendant"), by and through its attorney, Stephen

R. Patton, Corporation Counsel for the City of Chicago, hereby files its answer and affirmative

defenses to Plaintiffs' Second Amended Complaint.

### THE PARTIES

1.      Plaintiff Rhonda Ezell is a natural person and a citizen of the United States residing
in Chicago, Illinois.

**Answer:**      Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 1.

2.      Plaintiff Joseph I. Brown is a natural person and a citizen of the United States residing
in Chicago, Illinois.

**Answer:**      Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 2.

3.      Plaintiff William Hespen is a natural person and a citizen of the United States
residing in Chicago, Illinois.

**Answer:**      Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 3.

4.       Plaintiff Action Target, Inc., is a Delaware corporation having its primary place of business in Utah.  Action Target is a leading designer and builder of gun ranges, and renowned manufacturer and seller of gun range equipment and supplies.  Action Target is engaged in the gun range business throughout the United States, including in Chicago, where it constructed a gun range on the seventeenth floor of the Federal Reserve Bank of Chicago, located at 230 South LaSalle Street; a gun range for the United States Postal Inspectors at 743 South Canal Street; and a gun range for Brinks, located at 919 South California Avenue.  Action Target has bid on the retrofitting of two other gun ranges within Chicago currently being operated by the federal government.

**Answer:**       Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 4.

5.       Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including many in Chicago.  The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.  SAF brings this action on behalf of itself and its members.

**Answer:**       Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 5.

6.       Plaintiff Illinois State Rifle Association ("ISRA") is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois.  ISRA has over 17,000 members and supporters in Illinois, including many in Chicago.  The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation.  ISRA brings this action on behalf of itself and its members.

**Answer:**       Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 6.

7.       Defendant City of Chicago is a municipal entity organized under the Constitution and laws of the State of Illinois.

**Answer:**       Defendant admits the allegations contained in Paragraph 7.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U .S.C.§§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

**Answer:**     Defendant admits the allegations contained in Paragraph 8.

9.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**Answer:**     Defendant admits the allegations contained in Paragraph 9.

## STATEMENT OF FACTS

*Gun Ranges' Role in American Tradition and Chicago's Safety Policy*

10.     Familiarity with firearms, and proficiency in their use, promotes public safety.  Gun owners trained in and familiar with the operation of their guns are less likely to be involved in accidental shootings, and more likely to successfully use their firearms in self-defense in case of need.

**Answer:**     Defendant admits that familiarity with firearms, and proficiency in their use, generally promotes public safety.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10.

11.     Recreational shooting is a traditional lawful use of firearms in the United States.

**Answer:**     Defendant admits that recreational shooting has been a lawful use of firearms in the United States at certain times in history, in certain jurisdictions, and under certain circumstances.  Defendant denies the remaining allegations contained in Paragraph 11.

12.     The promotion of civilian marksmanship has been a priority of the federal government throughout American history, beginning with the Second Militia Act of 1792 and continuing through today with the modern implementation of the Civilian Marksmanship Program through the federally-chartered Corporation for the Promotion of Rifle Practice and Firearms Safety, 36 U.S.C. §§ 40701, et seq.

**Answer:**     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12.

13.     Defendant City of Chicago recognizes the value of firearms training and proficiency. The City mandates, as a condition of firearms ownership, that all individuals undergo at least one hour of firearms training on a gun range.

**Answer:**     Defendant admits the allegations contained in the first sentence of Paragraph 13. Defendant further admits that the City requires, as a condition of firearms possession in the City, that individuals undergo at least one hour of firearms training on a gun range, but states that certain categories of individuals are exempted from this requirement. Defendant denies the remaining allegations contained in Paragraph 13.

14.     Chicago residents wishing to lawfully possess firearms in the city must first obtain a Chicago Firearms Permit ("CFP"). Chi. Mun. Code § 8-20-110(a).

**Answer:**     Defendant admits that Chi. Mun. Code § 8-20-110(a) generally requires Chicago residents to obtain a CFP before they may lawfully possess firearms in the City, but states that certain categories of individuals are exempted from this requirement.  Defendant denies the remaining allegations contained in Paragraph 14.

15.     An application for a CFP "shall include ... (7) an affidavit signed by a firearm instructor certified by the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training ..." Chi. Mun. Code § 8-20-120(a).

**Answer:**     Defendant admits that Paragraph 15 quotes a portion of Chi. Mun. Code § 8-20-120(a)(7), but denies that the quotation is a full and complete recitation of that provision.

16.     Chicago firearm registrants must obtain a CFP, and the requisite training, in order to renew their firearm registration. Chi. Mun. Code § 8-20-110(d).  If a registration is not timely renewed, the subject firearm may become unregisterable to the current owner and must be disposed of. Chi. Mun. Code §§ 8-20-l45(c), 8-20-170(c).

**Answer:**     Defendant admits that Chi. Mun. Code § 8-20-110(d) generally requires Chicago firearm registrants to obtain a CFP, and the requisite training, in order to renew their firearm

4

registration, but states that certain categories of individuals are exempted from these requirements. Defendant further admits that, pursuant to Chi. Mun. Code § 8-20-l45(c), if a registration is not timely renewed, the subject firearm may become unregisterable to the current owner. Defendant further admits that, if a firearm becomes unregisterable to a current owner, it cannot be possessed within the City. Defendant denies the remaining allegations contained in Paragraph 16.

17.     Gun ranges open to the public exist in virtually every major American city in a variety of architectural settings.

**Answer:**     Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 17.

18.     Properly designed and operated, gun ranges are compatible with many typical commercial uses of property.

**Answer:**     Defendant lacks knowledge or information sufficient to understand what Plaintiffs mean by "properly designed and operated" or "typical commercial use of property." Defendant admits that gun ranges designed, built, and licensed pursuant to the regulations set forth in Chi. Mun. Code § 4-151- 010 *et seq*. are compatible with the uses of property allowed in the M1, M2, and M3 zoning districts. Defendant denies the remaining allegations in Paragraph 18.

19.     At least eleven gun ranges currently operate within the City of Chicago. However, none are open to the public. Six ranges are operated by the Chicago Police Department, including at the Police Academy. The federal government maintains four gun ranges. And each of two private security companies operate gun ranges for their own purposes.

**Answer:**     Defendant admits that the City of Chicago Department of Police currently operates seven gun ranges at six locations within the City of Chicago that are not open to the public. Defendant further admits that Brinks operates a gun range within the City. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 19.

5

20.    Historically, gun ranges open to the public have operated in Chicago without adverse impact on the community.  The gun ranges that operate in Chicago today do not adversely impact the community.

**Answer:**    Defendant denies that historically, gun ranges open to the public have operated in Chicago without adverse impact on the community.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 20.

*Chicago's Prohibition of Gun Ranges, Recreational Shooting, and Firearms Training*

21.    Chicago Municipal Code § 8-20-280 previously read:  "Prohibition on shooting galleries and target ranges," provides [sic]:  "Shooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited; provided that this provision shall not apply to any governmental agency.  The discharge of a firearm in an area where hunting is permitted shall not be a violation of this section."

**Answer:**    Defendant admits that Plaintiffs accurately quote Chi. Mun. Code § 8-20-280, but denies that this code provision remains in effect.

22.    On July 6, 2011, Plaintiffs obtained a judicially-ordered change in the relationship among the parties to this litigation, when the Seventh Circuit Court of Appeals ordered that a preliminary injunction be issued against enforcement of the provisions initially challenged by this litigation.  Plaintiffs are therefore, as of July 6, 2011, prevailing parties for purposes of 42 USC §1983.

**Answer:**    Defendant admits that, on July 6, 2011, the Seventh Circuit Court of Appeals ordered that a preliminary injunction be issued against the enforcement of certain provisions of the Responsible Gun Owners Ordinance initially challenged by this litigation, but deny that any such relief has been entered or remains appropriate now that the gun range ban has been repealed.  Defendant denies the remaining allegations contained in Paragraph 22.

23.    On July 6, 2011, on the same date the City's prohibition on gun ranges was ruled unconstitutional by the Seventh Circuit Court of Appeals, the City enacted a new range Ordinance, which went into effect on or about July 16, 2011 (hereinafter "the July 2011 Ordinance").  Thereafter, the July 2011 Ordinance was amended by yet another Ordinance, enacted and taking effect on September 8, 2011 (hereinafter "the September 2011 Ordinance").

**Answer:** Defendant admits that on July 6, 2011, it enacted an ordinance allowing for gun ranges to open and operate within the City that went into effect on or about July 16, 2011. Defendant further admits that the gun range ordinance was amended on September 8, 2011. Defendant denies the remaining allegations contained in Paragraph 23.

24. All matters pled and alleged in the original complaint in this matter are hereby restated as though fully set forth herein, including, specifically, Plaintiffs' objection to former Chi. Mun. Code § 8-20-280 and all other provisions that have been since been modified following the Seventh Circuit Court of Appeals' decision of July 6, 2011 in this case. This amended complaint does not abandon any claim to relief awarded July 6, 2011 by the Court of Appeals, but rather, consistent with the Court's opinion that the controversy is not apparently mooted, seeks to preserve Plaintiffs' rights against the newly manifested forms of Defendant's infringement of Plaintiffs' rights.

**Answer:** Defendant admits that Plaintiffs purport to restate and object to former Chi. Mun. Code § 8-20-280 and all other provisions that have since been modified following the Seventh Circuit Court of Appeals' decision of July 6, 2011 in this case, and that Plaintiffs purport not to abandon any claim to relief awarded by the Court of Appeals. Defendant further admits that this Court determined that the controversy between the parties was not moot, but denies that any claims or relief based on Chi. Mun. Code § 8-20-280 remain available. Defendant denies the remaining allegations contained in Paragraph 24.

25. The July 2011 Ordinance, as amended by the September 2011 Ordinance, purports to allow gun ranges to open and operate in the City, but a variety of its sections work to effectively prohibit ranges from opening and operating by unjustifiably burdening their construction, operation and use. In the alternative, to the extent range construction, operation and use might be technically feasible under the ordinance, such construction, operation and use is unjustifiably burdened by the challenged provisions. These include:

- MCC §§ 4-151-010 and 4-151-030, which require all range managers, employees, and "applicants" be fingerprinted and have a Chicago Firearms Permit ("CFP") and an Illinois Firearms Owners Identification Card ("FOID"). "Applicants" are defined by Section 4-151-010 to include all persons who are "required to be disclosed pursuant to section 4-151-030(b),"-- meaning, individuals, partners of partnerships,

7

LLC managers and/or members, corporate officers and directors, and their attorneys, accountants, consultants, expediters, promoters, and lobbyists. This is unjustifiably burdensome and effectively bars out of state ownership or assistance, since only Illinois residents are eligible to obtain FOID cards.

- MCC §§§ 4-151-010 and 4-151-100(n) - Recordkeeping of all "shooting range patrons" is required. "Shooting range patrons" are defined to include any person present in a "shooting range facility", except a licensee, manager, employee, or any independent contractor hired to clean or maintain the shooting range facility. "Shooting range facility" is defined to include more than just the space where shooting occurs. All buildings, structures, parking areas, and other associated improvements are included. The recordkeeping requirements require most persons who enter the property, including persons not shooting in the shooting range, to log in and log out, and for those records to be kept for one year. This is an extraordinary requirements and unjustifiably burdensome.

- MCC § 4-151-030(f) provides the Commissioner unbridled discretion to deny a range license application if the license "would have a deleterious impact on the health, safety and welfare of the community in which the shooting rage facility is or will be located," and presumes that a "deleterious impact" exists "whenever there have been a substantial number of arrests within 500 feet of the applicant's premises .... "

- MCC § 4-151-090 restricts ranges to operate only between 8 a.m. and 9 p.m., every day.

- MCC § 4-151-100(b) - Range Master Presence - The range master is required to be on duty during all operating hours of the shooting range facility, not just when the shooting range is in use. It is unduly burdensome and serves no governmental purpose to require a range master to be on duty when there is no shooting occurring.

- MCC § 4-151 -100(d) bars range patrons under the age of 18.

- MCC § 4-151-100(g)(1) forbids any person who does not have a CFP and FOID card from using a range, unless it for the one hour CFP training. This effectively bars anyone who does not live in Chicago, be they suburbanites or out-of-state visitors, from patronizing a gun range in Chicago, regardless of whether they have a FOID card or the equivalent from another State, because the burden of obtaining a CFP just to visit a range will be too burdensome for most non-residents. Further, out-of-state residents are ineligible to obtain a FOID card, so the restriction bars them from patronizing a range in the City.

- MCC § 4-151-120 prohibits gun ranges from locating 500 feet from any other gun range, residential district, school, day-care facility, park, place of worship, alcohol

8

retailer, "children's activities facility," library, museum, or hospital.

- MCC § 8-20-100– prohibits the sale of firearms by a gun range. This restriction unconstitutionally burdens the rights of firearm possession and training, as well as the ability for self-defense.

- MCC § 8-20-110 prohibits the possession of a firearm without a CFP, including the possession of firearms by shooting range patrons other than a onetime, one-hour exemption for taking a class. These provisions bar individuals from (1) practicing with or sampling different firearms, (2) practicing the use of firearms without purchasing and registering a firearm, (3) purchasing ammunition for self-defense, and (4) replacing older ammunition, by firing it at the range and then departing with fresh replacements.

- MCC § 4-151-170 prohibits the loaning or renting of firearms, other than for a one-hour class, and prohibits range patrons from leaving with ammunition sold by the gun range.

- MCC § 11-4-260(b) – Regulatory Conflict – Sets an unconstitutionally vague regulatory scheme that is unduly burdensome while conflicting with federal law.

- MCC § 13-96-1160(a) – Shooting Range Enclosure Construction– Requires that doors into the shooting range behind the firing line be in the rear wall to avoid armor plating the door, and that doors behind the bullet trap, required for servicing many types of bullet trap systems, would need to be armor plated, even though they are protected from bullet strike by the bullet trap. The added cost of armor plating doors not subject to direct bullet strike is unduly burdensome with no governmental purpose.

- MCC § 13-96-1190(c)(2)(d) - Ammunition or Firearms Storage –Needlessly requires firearms and ammunition to be stored in the same manner as explosive or hazardous materials, which is unduly burdensome with no governmental purpose.

- MCC § 13-96-1200(b)(2) requires a maximum decibel level of 55 db emanating from shooting ranges, which is lower than many ordinary human conversations, ambient noise from traffic, and numerous commercial uses permitted within the city.

- MCC §§ 13-96-1200(b)(7), 13-96-1200(b)(2) – Shooting range Surface Treatment–Two sections of the Ordinance create a conflict with respect to shooting range surface materials. The floors, ceilings, and walls must be of smooth, non-porous materials to comply with 13-96-1200(b)(7). 13-96-1200(b)(2) requires air-borne sound absorbing materials. Air-borne sound absorbing materials are not smooth non-porous materials. This creates a situation where it will be impossible for

a would-be range owner to comply with the construction requirements.

- MCC § 13-96-1200(b)(7) requires that the floors of the shooting range be constructed to slope at a minimum of 1/4 inch per foot from the firing line to the backstop/bullet trap.

- MCC § 13-96-1210(d) – Shooting Range Ventilation Separation requirements – Each individual shooting range is required to have a separate ventilation and exhaust system, which serves no government purpose and which is unduly burdensome and expensive.

- MCC § 13-96-1210(e) – Shooting Range Ventilation System Interlocking Shooting range supply and exhaust systems are required to be electrically interlocked to turn on each system at the same time, which serves no government purpose and which is unduly burdensome and expensive.

- MCC § 13-96-1220(b), 13-96-1220(c) – Shooting Range Floor Cleaning Method – the shooting range is required to have hose bibs, floor drains, and the aforementioned floor sloped toward the floor drains (per 13-96-1200(b)(7)), which is unsafe, unduly burdensome and which serves no governmental purpose.

- MCC § 17-5-0207– Shooting range facilities are only permitted in a manufacturing district, with special use approval. This restriction is unduly burdensome with no governmental purpose.

**Answer:**    Defendant admits that Chi. Mun. Code § 4-151-010 *et. seq,* allows gun ranges to open and operate in the City, subject to certain regulations. Defendant further admits that:

- Chicago Mun. Code §§ 4-151-010 and 4-141-030 require that, subject to certain exceptions, all range masters, employees, and applicants who are natural persons be fingerprinted and have a CFP and Illinois Firearms Identification Card.

- Chicago Mun. Code § 4-151-100(n) requires that the range manager shall keep a record of all "shooting range patrons." Chicago Mun. Code § 4-151-010 defines "shooting range patrons" to include any person present in a shooting range facility, except a licensee, manager, employee, or any independent contractor hired to clean

10

or maintain the shooting range facility. "Shooting range facility" is defined to include all buildings, structures, parking areas, and other associated improvements.

- Chicago Mun. Code § 4-151-030(f) allows the commissioner to deny a range license application if the license "would have a deleterious impact on the health, safety, and welfare of the community in which the shooting range facility is or will be located," and that a deleterious impact is presumed whenever "there have been a substantial number of arrests within 500 feet of the applicant's premises . . . within the previous two years, unless the applicant has adopted a plan of operation that will provide reasonable assurance that the issuance of the license will not have a deleterious impact."

- Chicago Mun. Code § 4-151-090 restricts shooting range facilities to operate only between the hours of 9:00 a.m. and 8:00 p.m., everyday.

- Chicago Mun. Code § 4-151-100(b) requires the range master to be on duty during all operating hours of the shooting range facility.

- Chicago Mun. Code § 4-151-100(d) bars range patrons under the age of 18.

- Chicago Mun. Code § 4-151-100(g)(1) requires all persons possessing a firearm at a shooting range facility to have a CFP and FOID card, unless it is for the one hour CFP training, except that certain categories of individuals are exempted from the CFP and FOID requirements.

- Chicago Mun. Code § 17-9-0120 prohibits gun ranges from locating 500 feet from a residential district, school, day-care facility, place of worship, alcohol retailer, "children's activities facility," library, museum, or hospital, and from locating 100

11

feet from another shooting range.

- Chicago Mun. Code § 8-20-100 prohibits the sale of firearms by a gun range.

- Chicago Mun. Code § 8-20-110 prohibits the possession of a firearm without a CFP, including the possession of firearms by shooting range patrons other than the one-time, one-hour period while the patron is receiving the required range training, except that certain categories of individuals are exempted from the CFP requirement.

- Chicago Mun. Code § 4-151-170(b) prohibits range patrons from leaving with ammunition sold by the gun range.

- Chicago Mun. Code § 13-96-1160(a) requires that "[e]nclosure walls, floors, ceiling assemblies, doors and opening protective assemblies for the shooting range shall be designed and constructed with materials and assemblies sufficient to stop all bullets fired or projectiles from penetrating beyond the shooting range enclosure", and that the rear wall "shall be designed and constructed of materials, assemblies, and opening protectives strong enough to be capable of stopping a ricochet of a bullet, fragment or back splatter, from penetrating beyond the wall."

- Chicago Mun. Code § 13-96-1200(b)(2) provides that the maximum level of noise emanting from a shooting range facility shall not be more than 55dB when measured from a distance of 100 feet or more from the source, or 70 dB when measured from a distance of 10 feet or more from the source.

- Chicago Mun. Code § 13-96-1200(b)(7) requires that the floors, ceilings, and walls must be of smooth, non-porous materials to facilitate effective maintenance and cleaning and removal of lead particulate.

- Chicago Mun. Code § 13-96-1200(b)(2) requires that the shooting range be provided with air-borne and structure-borne sound absorbing materials.

- Chi. Mun. Code § 13-96-1200(b)(7) requires that the floors of the shooting range be constructed to slope at a minimum of 1/4 inch per foot from the firing line to the bullet trap/ backstop.

- Chicago Mun. Code § 13-96-1210(d) requires that, where a shooting range facility contains multiple shooting ranges, each one shall have a separate ventilation and exhaust system.

- Chicago Mun. Code § 13-96-1210(e) requires that shooting range supply and exhaust systems must be electrically interlocked to turn on each system at the same time.

- Chicago Mun. Code §§ 13-96-1220(b) and (c) require that the shooting range have a hose bib installed with backflow protection and floor drains installed at the backstop/bullet trap to collect lead and other hazardous waste materials.

- Under Chicago Mun. Code § 17-5-0207, shooting range facilities are only permitted in manufacturing districts, with special use approval.

Defendant lacks knowledge or information sufficient to form a belief as to whether a decibel level of 55db is lower than many ordinary human conversations, ambient noise from traffic, or other numerous commercial uses permitted within the City. Defendant denies the remaining allegations contained in Paragraph 25.

26. Violation of any provisions, rules or regulations of Chapter 4-151 of the Chicago Municipal Code results in a fine of $500.00 to $5000.00 per offense, and/or incarceration up to 180 days. The Code considers each day of a violation to be a separate offense. Chi. Mun. Code § 4-151-190.

13

**Answer:** Defendant admits the allegations contained in Paragraph 26.

27.     Every day in which an individual transfers, loans, borrow, gives or rents firearms or ammunition in violation of Chi. Mun. Code § 8-20-100; or possesses an unregistered firearm in violation of Chi. Mun. Code § 8-20-140, is considered a separate and distinct offense. The penalty for a first offense in violation of these provisions is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days. A subsequent offense carries a fine ranging from $5,000 to $10,000 and/or incarceration ranging from thirty days to six months. Chi. Mun. Code § 8-20-300(b).

**Answer:** Defendant admits the allegations contained in Paragraph 27.

28.     Every day in which an individual possesses a firearm without a CFP in violation of Chi. Mun. Code § 8-20-110 is considered a separate and distinct offense. The penalty for violating this provision is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days.

**Answer:** Defendant admits the allegations contained in Paragraph 28.

29.     Discharging a firearm other than in self-defense or defense of another person, in violation of Chi. Mun. Code § 8-24-010, carries a penalty ranging from $500 to $1000.

**Answer:** Defendant admits that discharging a firearm other than in self-defense or defense of another person can carry a penalty ranging from $500 to $1000, but further states that Chi. Mun. Code § 8-24-010 exempts certain categories of individuals from this prohibition, including range masters, managers, employees, certified firearms instructors, and shooting range patrons discharging firearms at a licensed shooting range facility.

*The Impact of Chicago's Range Prohibition on Plaintiffs and the Public*

30.     Plaintiff Rhonda Ezell has been the victim of three attempted burglaries at her Chicago home. She applied for a Chicago Firearms Permit in order to register her handgun, but had to travel to a range in Dundee, Illinois, a significant distance from her home, in order to obtain the training mandated by Chi. Mun. Code § 8-20-120(a).

**Answer:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30.

14

31.     Plaintiff Ezell suffers from interstitial lung disease, lupus, and end stage renal disease, for which she is currently awaiting a kidney transplant. Ezell would like to continue recreational shooting, but given her condition finds it difficult to travel outside the city for that purpose. Ezell would utilize a gun range inside the city of Chicago were one accessible to her.

**Answer:**     Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 31.

32.     Plaintiff Joseph I. Brown is an honorably-discharged U.S. Army veteran. Plaintiff Brown served in the Pacific and European theaters during the Second World War, and was among the liberators of the infamous Dachau concentration camp. Brown is currently the Chairman of the Marksmanship Committee for the Department of Illinois, American Legion. He is also the Secretary and Treasurer of the Cook County Rifle League, and until recently instructed a winter shooting league for junior shooters (boys and girls ages 12-20) that met at the now-closed six-point indoor gun range located at the Morton Grove, Illinois American Legion Post 134.

**Answer:**     Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 32.

33.     Plaintiff Brown was forced to leave the City to obtain his mandatory CFP range training. He would engage in recreational shooting within the City of Chicago, and promote and provide instruction in the shooting sports, and marksmanship, to his Chicago neighbors at a local range, if one were made available to him.

**Answer:**     Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 33.

34.     Plaintiff William Hespen is a retired Chicago Police detective. Plaintiff Hespen was forced to leave the City to obtain his mandatory CFP training. Plaintiff Hespen would also engage in recreational shooting within the City of Chicago, and promote and provide instruction in the shooting sports, and marksmanship, to his Chicago neighbors at a local range, if one were made available to him.

**Answer:**     Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 34.

35.     Various qualified customers of Plaintiff Action Target have expressed to Action Target their desire to retain the company to construct gun ranges within the city limits of Chicago. Action Target is unjustifiably inhibited from entering into these contracts, and from supplying range

15

equipment and supplies in Chicago, owing to the ordinances complained of in this action. But for these prohibitions, Action Target would successfully market its services and products in Chicago to non-governmental entities.

**Answer:** Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 35.

36. Plaintiff ISRA has long operated a gun range approximately sixty miles outside Chicago for the benefit of its members and the public at large. ISRA would operate a range within the City of Chicago, to further its chartered purposes of promoting the shooting sports, educating the public about firearms, training individuals to become better and safer shooters, enabling individuals to comply with training requirements such as that recently enacted by the City of Chicago, and generally serving its members.

**Answer:** Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 36.

37. Plaintiffs SAF and ISRA have members and supporters within the City of Chicago who require range training in order to obtain CFPs and thus lawfully keep firearms. It is squarely within the educational and public service missions of SAF and ISRA to provide firearms training, especially to the extent such training is required as a condition of gun ownership.

**Answer:** Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 37.

38. SAF and ISRA expend their resources advising and counseling current and prospective Chicago gun owners with respect to Chicago's gun laws, including the city's range training requirement.

**Answer:** Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 38.

39. Every day, current firearms registrants, including the members and supporters of Plaintiffs SAF and ISRA, are forced to obtain CFPs to continue exercising their right to keep arms in the City of Chicago, as registration certificates issued under the previous Chicago firearms ordinance expire, and as Chicago residents wish to exercise their rights to possess and train with firearms. It is urgent that such individuals immediately obtain the city-mandated training, lest their firearms become unregisterable to them and they become subject to criminal penalties.

**Answer:** Defendant admits that, generally, individuals who wish to obtain or renew CFPs and gun registrations must complete the City-mandated training, but states that certain categories of individuals are exempted from this requirement. Defendant lacks knowledge or information sufficient to form a belief as to whether members and supporters of Plaintiffs SAF and ISRA must obtain CFPs. Defendant further admits that, should a firearm become unregisterable to an individual and such individual retains possession of such firearm, he may be subject to criminal penalties. Defendant denies the remaining allegations contained in Paragraph 39.

40. Numerous individuals within Chicago, including the members and supporters of Plaintiffs SAF and ISRA, require the city-mandated training so that they may timely obtain CFPs and gun registrations for possession, self-defense and training.

**Answer:** Defendant admits that, generally, individuals who wish to obtain CFPs and gun registrations must complete the City-mandated training, but states that certain categories of individuals are exempted from this requirement. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 40.

41. But for the criminal enactments challenged in this complaint, SAF and ISRA would begin educating individuals in the use of firearms, including by providing the training required by Defendant City of Chicago, operating a gun range within the City of Chicago, but refrain from doing so due to potential criminal penalties and the burdensome Code sections complained of herein.

**Answer:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41.

42. The criminal enactments and burdensome requirements and restrictions contained in the Ordinances challenged in this complaint unjustifiably inhibit ISRA's efforts to construct and operate gun ranges within the City of Chicago.

**Answer:** Defendant denies the allegations contained in Paragraph 42.

43. But for the criminal enactments and burdensome requirements and restrictions contained in the Ordinances challenged in this complaint, Plaintiffs Ezell, Brown and Hespen would

17

frequent a Chicago gun range for recreational shooting, and to maintain and improve their proficiency with firearms.

**Answer:** Defendant lacks knowledge or information sufficient to form belief about whether Plaintiffs Ezell, Brown, and Hespen would frequent a Chicago gun range for recreational shooting and to maintain and improve their proficiency with firearms. Defendant denies the remaining allegations contained in Paragraph 43.

## COUNT I

## RIGHT TO KEEP AND BEAR ARMS
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

44. Paragraphs 1 through 43 are incorporated as though fully stated herein.

**Answer:** Defendant incorporates by reference its answers to Paragraphs 1-43 as if set forth fully herein.

45. The Second Amendment, which applies against defendant City of Chicago by operation of the Fourteenth Amendment, secures the right to operate firearms at a range, for purposes of learning about firearms, gaining proficiency with firearms, obtaining any training required as a condition of firearms ownership, recreation, and competition; and the right to own and operate a range for these purposes.

**Answer:** Defendant admits that, pursuant to *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), the Second Amendment applies to the City of Chicago by operation of the Fourteenth Amendment. Defendant further admits that the Seventh Circuit Court of Appeals opined in the context of reviewing the liklihood of success on the merits on a motion for preliminary injunction in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), that the Second Amendment secures the right to operate firearms at a gun range for both training and recreational purposes. Defendant denies the remaining allegations of Paragraph 45.

46. Chicago's laws effectively prohibit the operation of gun ranges, thereby prohibiting

numerous traditional lawful uses of firearms. The range ban and associated laws also impede gun ownership itself by frustrating compliance with the city's firearm registration program and barring access to useful information and experience inherently necessary to the exercise of Second Amendment rights. In the alternative, to the extent ranges are allowed, the complained-of provisions unjustifiably inhibit their construction and operation.

**Answer:** Defendant denies the allegations contained in Paragraph 46.

47. By so burdening the owning and operation of a gun range within the City limits, and by effectively banning the loan, rental, and borrowing of functional firearms at ranges open to the public, the City is effectively prohibiting gun ranges from opening to the public. In the alternative, to the extent ranges are allowed, the complained-of provisions unjustifiably inhibit their construction and operation. Defendant currently under color of law deprives individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U .S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices.

**Answer:** Defendant denies the allegations contained in Paragraph 47.

## COUNT II

## FREE SPEECH
## U.S. CONST., AMENDS. I AND XIV, 42 U.S.C. § 1983

48. Paragraphs 1 through 47 are incorporated as though fully stated herein.

**Answer:** Defendant incorporates by reference its answers to Paragraphs 1-47 as if set

forth fully herein

49. The First Amendment, which applies against defendant City of Chicago by operation of the Fourteenth Amendment, secures the right to provide and receive education and instruction in the use of firearms, including the right to provide and receive the training required by defendant as a prerequisite to owning firearms.

**Answer:** Defendant admits that the First Amendment applies to it by operation of the

Fourteenth Amendment, and that education and instruction in the use of firearms can constitute

speech such that it may enjoy certain protections under the First Amendment. Defendant denies the

remaining allegations contained in Paragraph 49.

50.     By so burdening the owning and operation of a gun range within the City limits, and by effectively banning the loan, rental, and borrowing of functional firearms at ranges open to the public, the City is effectively prohibiting gun ranges from opening to the public. In the alternative, to the extent ranges are allowed, the complained-of provisions unjustifiably inhibit their construction and operation. Defendant currently under color of law deprives individuals, including the Plaintiffs, of their right to free speech, in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices.

**Answer:**     Defendant denies the allegations contained in Paragraph 50.

## PRAYER FOR RELIEF

Plaintiffs request judgment be entered in their favor and against Defendant as follows:

1.     An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all sections of the Municipal Code of Chicago listed in Paragraph 25, above, or any other law, as against the ordinary operation and use of gun ranges open to the public and the loan or rental of functional firearms within gun ranges open to the public;

2.     Attorney Fees and Costs, including for all relief already awarded by the Seventh Circuit Court of Appeals since the initiation of this litigation, pursuant to 42 U.S.C. § 1988;

3.     Declaratory relief consistent with the injunction;

4.     Costs of suit; and

5.     Any other further relief as the Court deems just and appropriate.

**Answer:**     Defendant denies that Plaintiffs are entitled to any relief requested in this lawsuit or their Prayer for Relief, including any attorneys' fees and costs.

**WHEREFORE**, Defendant respectfully requests that the Court enter judgment in its favor and against Plaintiffs on their Second Amended Complaint and grant Defendant such further relief

as the Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

Defendant hereby asserts the following affirmative defenses to Plaintiffs' Amended Complaint:

### First Affirmative Defense: Justiciability/Ripeness

Plaintiffs' claims are not justiciable under the case-or-controversy requirement of Article III of the U.S. Constitution because none of the claims asserted in this case are ripe for adjudication.

### Second Affirmative Defense: Justiciability/Standing

Plaintiffs lack standing under the case-or-controversy requirement of Article III of the U.S. Constitution because none of the Plaintiffs suffered an injury-in-fact and, in the alternative, the injuries alleged were not caused by the actions or conduct of Defendant.


Date:  March 1, 2013

Respectfully submitted,

STEPHEN R. PATTON
Corporation Counsel for the City of Chicago

By:      /s/ Rebecca Alfert Hirsch
Assistant Corporation Counsel

Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 742-0260

Attorneys for Defendant

21

## CERTIFICATE OF SERVICE

I, Rebecca Alfert Hirsch, an attorney, hereby certify that on this, the 1st day of March, 2013,

I caused a copy of **Defendant's Answer to Plaintiffs' Second Amended Complaint** to be served

by ECF, on:

Alan Gura                                David G. Sigale
Gura & Possessky, PLLC                   Law Firm of David G. Sigale, P.C.
101 N. Columbus Street                   739 Roosevelt Road, Suite 304
Suite 405                                Glen Ellyn, IL 60137
Alexandria, VA 22314


/s/ Rebecca Alfert Hirsch