# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RHONDA EZELL, et al., ) | |
| ) | Case No. 10 CV 5135 |
| Plaintiffs, ) | |
| v. ) | Hon. Virginia M. Kendall |
| ) | |
| CITY OF CHICAGO, ) | |
| Defendant. ) | |

## DEFENDANT'S REPLY
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant City of Chicago (the "City"), by its attorney Stephen R. Patton, Corporation Counsel for the City of Chicago, hereby files this reply brief in support of Defendant's Motion For Summary Judgment ("City's Motion") as follows.

Save for the two discrete points addressed below, Plaintiffs' Response to the City's Motion ("Plaintiffs' Response" or "Pls.' Resp."), Dkt. # 250, lacks any responsive arguments – either in fact or law– to the issues raised in the City's motion for summary judgment. In fact, other than placing a new heading on the document and adding approximately five additional sentences, Plaintiffs' Response is a word-for-word copy of their Memorandum In Support of Their Motion For Summary Judgment, Dkt. # 232, including the utter failure to support their legal argument with even one single citation to the record. Thus, the City has – in its Response in Opposition To Plaintiffs' Motion For Summary Judgment ("City Resp.") – already responded to 99% of the arguments Plaintiffs make in their response. The City will not devote any additional time to repeating arguments it has already made, and therefore incorporates those previous arguments as part of its reply. *See* City Resp., Dkt. # 247, at 2-38; *see also* Defendant's Memorandum of Law in Support of Its Motion for Summary

1

Judgment ("City Mem."), Dkt. # 233, at 9-38. Instead, the City briefly replies to the only two new points in Plaintiffs' Response, as well as addressing several of the frivolous objections Plaintiffs lodge in Plaintiffs' Response to Defendant's Local Rule 56.1 Statement of Facts ("Pls.' Resp. SOF").

### A. MCC §§ 13-96-1200(b)(7) and 13-96-1220(b): Sloped-Floor/Floor Drain

As explained by the City in its previous briefing, there are two different cleaning methods recognized and accepted by the firing range industry: the wet-cleaning method, which involves constructing the range floor at a slope so that lead particulates and other potentially toxic waste can be washed with a hose down a protected drain (the City's prescribed method); or the dry-cleaning method, which involves using a HEPA vacuum. *See* Dkt. # 223, City Mem. at 19-21; Dkt. # 247, City Resp. at 27-29. Because it chose one of these industry-recognized methods, the City explained that it would be improper to weigh which method might be better, as the Court should not substitute its own judgment for that of the legislature. Dkt. # 223, City Mem. at 20, and cases cited therein.

Plaintiffs attempt to discount the cases cited by the City on this issue by claiming that the City's chosen method for cleaning is dangerous and "has not been used since the 1970s," and thus cannot be given deference. Dkt. # 250, Pls.' Resp. at 21. Plaintiffs mislead the Court, however. As the City demonstrated, the wet-cleaning method was recommended by the NRA up to at least 2004 (City SOF, Ex. 23); by NIOSH as late as 2010 (City SOF, Ex. 28); by the National Institute of Building Sciences Whole Building Design Guide, updated in 2009 (City SOF, Ex. 36); and by the U.S. Dept of Energy Range Design Criteria, published in 2008 (City SOF, Ex. 29). Plaintiffs do not challenge the content or regard of these materials, nor do they offer support for their contention that wet-cleaning has not been recommended since the 1970s. Accordingly, Plaintiffs cannot dispute that the wet-cleaning method is a valid, reasonable cleaning alternative, and their suggestion that the

cases cited by the City are inapplicable fails. *See, e.g.,Turner Broadcasting Sys., Inc. v. FCC*, 520 U.S. 180, 211 (1997) (government satisfied standard even when one can "draw[] two inconsistent conclusions from the evidence"); *Woollard v. Gallagher,* 712 F.3d 865, 881 (4th Cir. 2013) (plaintiffs' evidence that other measures would be more effective for public safety was not relevant; court declined to substitute this evidence for legislature's judgment in upholding state handgun permitting scheme); *Kachalsky v. County of Westchester*, 701 F.3d 81, 99 (2d Cir. 2012) ("It is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments.").

### B. MCC § 4-151-100(d):  Age Restriction

In addition to the arguments they already made regarding its affect on the profitability of a range, Plaintiffs now argue that § 4-151-100(d), which prohibits anyone under the age of 18 from entering the shooting range facility, unconstitutionally interferes with "family traditions" and the ability to teach minors "safety and respect" for firearms. Dkt. # 250, Pls.' Resp. at 25. As support for this argument, Plaintiffs cite to the Illinois Department of Natural Resources's regulations, which allow minors to obtain hunting licenses with parental permission, or hunt as "apprentices" with parental or guardian supervision. *Id*. This apples-to-oranges comparison, however, ignores crucial differences between hunting in wide open spaces, and target practice in the confined space of an indoor range. First and foremost, hunting outdoors does not raise the same health risks associated with exposure to toxic lead particulates that occur at indoor ranges. These risks are more heightened in children, who are more likely to ingest lead particles and are more susceptible to permanent brain damage. *See* Dkt. # 223, City Mem. at 26; Dkt. # 224, City SOF ¶ 23. Because the risks to children are so high in enclosed spaces, the City has legitimately chosen to add this extra layer of protection and shield minors from the potential dangers at indoor firing ranges.

Second, many of the logistical problems with properly supervising minors at indoor ranges are not present for minors who go hunting with parents, adults, or other guardians. Indoor ranges store a large quantity of firearms and ammunition, and have many different, unrelated people coming in and out and shooting at targets at the same time in an enclosed space. Thus, hunting in a large, outdoor space does not involve the same risks of accidents, ricocheting bullets, or firearms being left unattended that are present at ranges. Finally, Plaintiffs cannot legitimately claim that prohibiting minors from indoor ranges is tantamount to preventing family traditions or teaching children about firearm safety and respect. Parents are free to talk about, demonstrate, teach, and instruct their children as much as they want about firearm safety, and can take them hunting and train them to use live fire if they so choose. In fact, Chicago has designated hunting areas within the City limits that allows for minors to hunt consistent with state laws and regulations. *See* MCC § 8-24-050 (prescribing areas around Wolf Lake, Lake Calumet, and the Calumet River as approved hunting areas). Plaintiffs' reliance on state hunting regulations to bolster their argument is misplaced, and comes nowhere near to showing that § 4-151-100(d) is an unconstitutional infringement on Second Amendment rights.

C. **Plaintiffs' Objections to the City's Statement of Undisputed Facts**

Plaintiffs assert several objections in their response to the City's Local Rule 56.1 Statement of Facts that warrant a brief response. First, Plaintiffs respond that the document or ordinance "speaks for itself" in many instances, without admitting or denying the facts alleged by the City. *See, e.g.*, Dkt. # 251, Pls.' Resp. SOF ¶¶ 23, 28, 35, 38, 59, 72. Saying that a document "speaks for itself" is not a proper response under Local Rule 56.1(b)(3)(B), however, and the facts alleged should be deemed admitted. *See, e.g., Henderson v. Bovis Lend Lease, Inc.*, 848 F. Supp. 2d 847, 849 (N.D.

4

Ill. 2012) (citing *Ill. Bell Tel. Co. v. Global NAPS Ill., Inc.,* 749 F. Supp. 2d 819, 822 n.6 (N.D. Ill. 2010); *Laborers' Pension Fund v. Eagle Am. Corp.,* No. 07 C 6576, 2009 WL 4545202, at *3 (N.D. Ill. Dec. 1, 2009). Second, Plaintiffs object to the use of "self-serving interrogatory responses as supposed evidence." *See, e.g.*, Dkt. # 251, Pls.' Resp. SOF ¶¶ 65, 69, 90. But Rule 56(c)(1)(A) quite clearly provides that a party asserting an undisputed fact must support that assertion by: "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, *interrogatory answers*, or other materials . . ." Plaintiffs must cite to actual, concrete facts disputing the interrogatory answers if they seek to deny them; otherwise, Plaintiffs cannot discount the answers as evidence simply because Plaintiffs do not like what the interrogatory answers said.

Finally, Plaintiffs object to the declaration provided by Robert Fahlstrom in support of several of the Ordinance's provisions, because he was not "disclosed to testify" on those matters. Specifically, Plaintiffs object to Mr. Fahlstrom's testimony regarding: (1) § 13-96-1210(d) (separate ventilation systems); (2) § 13-96-1210(e) (interlocking ventilation systems); (3) § 13-96-1160(a) (ballistic proof walls and doors); and (4) § 13-96-1190(c)(2)(d) (promulgation of rules for storage of firearms and ammunition). *See* Dkt. # 251, Pls.' Resp. SOF ¶¶ 26, 33, 34, 56.

In lodging this baseless objection, however, Plaintiffs have conveniently forgotten the procedural history of the case. On May 25, 2012, Plaintiffs served a Rule 30(b)(6) Notice of Deposition on the City, asking the City to designate and produce witnesses for the specifically enumerated provisions Plaintiffs were challenging. None of the four provisions listed above were included and, at the time, Plaintiffs had not challenged these provisions in their amended complaint.

5

The City designated Mr. Fahlstrom as its witness on MCC § 13-96-1200(b)(2) and (b)(7) (sound proofing materials and floor slope/cleaning), and he was deposed on these topics on September 27, 2012. Later, when it became clear that Plaintiffs intended to pursue challenges to additional provisions of the Ordinance, the City objected based on Plaintiffs' delay in seeking to amend their complaint. *See* Dkt. # 188, Defendant City of Chicago's Motion to Strike Plaintiffs' Interrogatory Responses and Bar Plaintiffs from Introducing New Claims. On February 4, 2013, the Court allowed Plaintiffs to file a second amended complaint to add these new claims, although it recognized that Plaintiffs knew about these other claims well before they deposed the City's witnesses and should have sought to amend their complaint much earlier. *See* Dkt. # 204, February 22, 2013 Memorandum Opinion and Order, at 8-9. The Court then allowed the City leave to take whatever additional discovery it needed to defend against the new claims, and prohibited Plaintiffs from seeking any new discovery or re-deposing any City witness on these claims *Id*. at 10-11.

Accordingly, the City had no reason, nor was it under any obligation, to disclose Mr. Fahlstrom as a witness on these additional topics. Pursuant to the Court's order, the City was within its rights to obtain necessary facts to defend against the additional claims, whether this involved seeking new documents from Plaintiffs, deposing Plaintiffs or third parties with relevant information, or relying on its own witnesses to provide testimony to support the provisions. Because Plaintiffs were barred from re-deposing Mr. Fahlstrom, or seeking any type of additional discovery, for that matter, "disclosing" him as a witness on these claims was not required. Indeed, the Court specifically stated that only if the City were to rely on a *new* witness would the Plaintiffs have the ability to depose the witness; otherwise, Plaintiffs' own unexcused delay in pressing the new claims prevented Plaintiffs from obtaining information from the City about the new claims. Dkt. # 204 at

8-9. Furthermore, Plaintiffs do not contend that they are prejudiced in any way by Fahlstrom's declaration, nor could they. His testimony provides support for the City's purposes in enacting these provisions, and Plaintiffs had already corralled their own (insufficient) evidence and attacks on the reasonableness of these provisions in their expert reports. Therefore, the testimony included in Mr. Fahlstrom's declaration is entirely appropriate and may properly be considered by the Court in determining summary judgment.

## CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court grant it summary judgment on Plaintiff's Second Amended Complaint and grant it all other relief the Court deems just and appropriate.

                                          Stephen R. Patton
                                          Corporation Counsel City of Chicago

                                        By:   /s/ Rebecca Hirsch
                                                One of Its Attorneys

Mardell Nereim
William M. Aguiar
Andrew W. Worseck
Rebecca Alfert Hirsch
Mary Eileen Cunniff Wells
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 742-0260
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I, Rebecca Hirsch, an attorney, hereby certify that on this, the 4th day of April, 2014, I caused a copy of the forgoing **Defendant's Reply in Support of Motion For Summary Judgment** to be served via electronic notification on:

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street
Suite 405
Alexandria, VA 22314
Fax No. 703-997-7665

David G. Sigale
Law Firm of David G. Sigale, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL
Fax No. 630-596-4445

/s/ Rebecca Alfert Hirsch