**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, JOSEPH I. BROWN, | ) | |
| WILLIAM HESPEN, ACTION TARGET, INC., | ) | |
| SECOND AMENDMENT FOUNDATION, INC., | ) | |
| and ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 10 CV 5135 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

NOW COME the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action

Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and

through undersigned counsel, and in response to Defendant's F.R.Civ.P. 56(a) Motion for

Summary Judgment, state as follows:

Dated: April 4, 2014                    Respectfully submitted,


                                    By:        /s/David G. Sigale
                                            David G. Sigale


Alan Gura (Admitted pro hac vice)        David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                   Law Firm of David G. Sigale, P.C.
105 Oronoco Street, Suite 305            739 Roosevelt Road, Suite 304
Alexandria, VA 22314                     Glen Ellyn, IL 60137
703.835.9085/Fax 703.997.7665           630.452.4547/Fax 630.596.4445
alan@gurapossessky.com                   dsigale@sigalelaw.com

## INTRODUCTION

Only in Defendant's world can it lose a civil rights lawsuit because of its ban on the exercise of a constitutional right (*i.e.*, this case in 2011), enact laws that have the same effect, and then, after no one is willing to invest millions of dollars into a business that cannot be placed anywhere, is subject to arbitrary and discriminatory regulations, and can be shut down with the blowing of the political winds, say that no one is burdened because of the laws. Of course, it is this type of chutzpah that has guided the City ever since losing *McDonald v. City of Chicago*.

Contrary to Defendant's assertion, Plaintiffs have not dodged anything in this case, nor do they have to. For example, one look at the City's map shows the flaws in its argument. Due to the City's restrictions, there is virtually nowhere north of the Loop to open a shooting range in Chicago, except for a few random intersections and near O'Hare. The City instead would like to Court to bless its attempt to limit ranges to a small portion of the South and West sides. Not that the residents of those areas do not need or deserve a place to train, but the City has yet to articulate why ranges must still be banned in virtually the entire north half of the City, especially when the City cannot point to any secondary effects of ranges that would require such a ban, and all the City has offered to justify restricting ranges at all are imagined horror stories about robberies and gang crime. The City Council may have to explain its baseless paternalism to the voters in the north half of the City at some point, but for now it cannot even explain its basis to this Court.

Plaintiffs have proven that the current range Ordinances (even after the latest round of repeals in September, 2013) unfairly burden firing ranges' very existence. One need look no further than the fact that no public ranges exist in Chicago, and no one has applied to open one,

despite the common assertion that they can make money, the increased need for training as a result of the State's Firearms Concealed Carry Act, and the general increase in purchased firearms (*See, e.g., Gun Sales In 2012 Set Record, FBI Data Indicates,* http://www.huffingtonpost.com/2012/12/14/gun-sales-2012_n_2303513.html (Dec. 14, 2012) ; *See also FBI data shows spike in U.S. firearm purchases in 2011,* http://www.reuters.com/article/2012/01/05/us-usa-firearms-backgroundchecks-idUSTRE80407P20120105 (James Kelleher, Jan. 5, 2012)).  The City's Zoning Administrator even admitted that everyone who came into her office asking about a proposed location for a range was told the location was not allowed.

Defendant also continues to take the incorrect position that its actions do not merit heightened scrutiny, as if the Seventh Circuit had not ruled in this case.  It is clear the regulations and restrictions burden Second Amendment rights.  Therefore, heightened scrutiny, and indeed the near-strict scrutiny required in *Ezell*, apply.  Defendant's arguments regarding a minimal burden may hold some water if (1.) a number of public commercial ranges already existed in the City; (2.) there were just one or two unconstitutional regulations instead of fifteen; and (3.) there were many secondary effects necessitating the regulations instead of only imagined consequences.  However, none of these hypotheticals are true.

Therefore, Plaintiffs' Motion for Summary Judgment must be granted because the facts and law in this case support the conclusions that the arbitrary and irrational requirements and restrictions have completely burdened Plaintiffs' core right to train with a firearm at a firing range, by ensuring that ranges still do not exist in the City.  The only way anything on this topic has changed is when a Court forces the City to change.  With the training requirements of the

State's Firearms Concealed Carry Act, that forced change is all the more necessary.

Plaintiffs recognize that most of the issues to be addressed in this Reply are the same issues Plaintiffs addressed in responding to the City's cross-Motion for Summary Judgment, which is also pending. Plaintiffs will attempt not to repeat themselves, though for purposes of a proper record some repetition may be unavoidable. Plaintiffs also incorporate, and do not waive, the arguments in their Memorandum in Support of their Motion for Summary Judgment.

## ARGUMENT

### I. Plaintiffs' Brief Is Replete with Particularized, Record-Specific Citation.

Because the City's Response lacks substance, it seeks to elevate form, conjuring a nonsense rule, supported neither by logic nor by the cases it cites, that a brief's argument section must contain record citations. *See* p.1 of Defendant's Response. This is bizarre. The cited cases stand for nothing more than the proposition that relevant facts are supposed to be discussed, with record citations, in the Statement of Facts. *See* F.R.App.P. 28(a)(7) ("a statement of facts relevant to the issues submitted for review with appropriate references to the record"); Seventh Cir. R. 28(c) ("No fact shall be stated in this part of the brief unless it is supported by a reference to the page or pages of the record or the appendix where that fact appears"). On summary judgment, the relevant rule requires the specific evidentiary citations to be presented in a separate statement of facts, L.R. 56.1(a) & (a)(3), which obviously Plaintiffs have supplied, in addition to citing very specifically some of the relevant facts, and supporting evidence, in the body of the brief. This is compared to the red herrings offered by Defendant, for example *Corley v. Rosewood Care Center*, 388 F.3d 990 (7th Cir. 2004), where the plaintiff mainly cited to his complaint and the district court's opinion, rather than to anything in the factual record. *Id.* at

3

1001.  It cannot be seriously argued that Plaintiffs have done anything remotely resembling the *Corley* plaintiff, and the Defendant's attempt to do so are completely belied by the Plaintiffs' factual offerings in this case.

The City may be uninterested in the relevant facts, but neither this Court nor the Seventh Circuit will have to hunt and peck through the record to see sniff out the numerous constitutional violations committed by Defendant.

## II.     The Second Amendment Does Not Tolerate All Infringements Short of Prohibition.

The City's claim that Plaintiffs "have no evidence that it is simply impossible for all would-be ranges to open . . ." (*See* p.3 of Defendant's Response).  Not so. The evidence firmly establishes that the City prohibits traditional range activities necessary to the healthy operation of a range business, imposes unsafe construction standards that no architect would approve, subjects ranges to wholly subjective and irrational prior restraints, and zones ranges out of practical existence.  The City continually argues about a lack of empirical evidence regarding its range ordinances and restrictions, but all witnesses testified either (1.) there are no comparable firing range laws anywhere in the Country, or (.2) they are not aware of any comparable firing range laws elsewhere in the Country.  To the detriment of millions of Chicago residents, the City has chosen to be the guinea pig, then argued that what it is doing must be ok, since no one has cited any similar problems anywhere else.  Because there are no similar laws, there is no "anywhere else" for comparison.

Yet the case does not turn on the impossibility of opening a range business. Just because a total range prohibition would be unconstitutional does not mean that anything and everything short of that would be acceptable. Banning newspapers, for example, would clearly be

4

unconstitutional; but so would taxing them. *Grosjean v. American Press*, 297 U.S. 233 (1936). And in the unconstitutional zoning context, it may be true that a zoning law acting as a complete prohibition of constitutionally-protected activity would fail. But so would any zoning law not based on actual secondary effects, meeting the relevant standard of review for the right at issue. "[T]the standard of review is determined by the nature of the right assertedly threatened or violated rather than by the power being exercised or the specific limitation imposed." *Schad v. Mt. Ephraim*, 452 U.S. 61, 68 (1981) (quotation and citation omitted). "[A]s is true of other ordinances, when a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." *Id*. (footnote omitted).

In the Second Amendment, as with the First, the standard of review changes with the severity of the burden, and the burdens here are plainly quire severe. But even were the burdens light, that would only shift the standard of review, not give the City a complete pass.

Incredibly, the City asks this Court to reject the level of scrutiny the Seventh Circuit has already applied in this case, and instead, apparently apply some version of the "undue burden"/rational basis test that it advanced during the previous appeal—unsuccessfully. *Ezell v. City of Chicago*, 651 F.3d 684, 706 (7th Cir. 2011). This Court cannot do that. The Seventh Circuit's instructions, not just for the previous version of Chicago's range ban, but for all Second Amendment cases, is clear: "[T]he [Supreme] Court did make it clear that the deferential rational-basis standard is out, and with it the presumption of constitutionality. This necessarily means that the City bears the burden of justifying its action under some heightened standard of judicial review." *Id*. "[S]ome sort of heightened scrutiny must apply." *United States v. Chovan*, 735 F.3d 1127, 1137 (9th Cir. 2013).

Because the City, not the Plaintiffs, bears the burden here, Plaintiffs are not required to disprove the negative proposition that "someone" "might" have opened a gun range under the City's byzantine ordinance—a cynical suggestion considering that not a single gun range open to the public operates in the Nation's third largest city, and the Midwest's most populous.

The supposed environmental concerns about lead contamination and spontaneous explosions at gun ranges are astounding. There is no proof that modern gun ranges pollute the environment or spontaneously explode, nor have these concerns stopped the City from operating gun ranges for its police officers in virtually every kind of neighborhood. The City discusses about the "known dangers of firing ranges" (*See* p.2 of Defendant's Response), but other than the imaginings of Defendant's witnesses, those dangers do not exist with the implementation of firearms safety measures and compliance with the multitude of regulations in the range ordinance **not** challenged by Plaintiffs.

III.    **The Fact That a Challenged Law MIGHT Be Repealed Does Not Moot the Challenge.**

The City currently bans gun sales at gun ranges. However, it vows to consider new legislation, and again insists that "it is uncertain what the regulations will be and whether they will, in fact, allow gun sales at gun ranges." *See* p.7 of Defendant's Response.

On this basis, it claims that Plaintiffs will have to amend their complaint and challenge the law at a future date, but that the City's current range sales prohibition is somehow moot and hypothetical.

The argument is absurd. Nothing has changed—the City, today, bars gun sales at ranges, Plaintiffs retain their standing to challenge this practice, and their challenge remains ripe. Nor is

any amendment required simply because the City takes an existing practice, that has been before this Court for years, and renumbers or reformulates the same essential practice.

Indeed, if anything, the decision in *Illinois Association of Retailers* means that this Court's job, at least with respect to the gun range sales prohibition, is much easier because the City has made it crystal clear that it had no reason to prohibit the sale of guns at gun ranges as opposed to at any other retail location. As stated in Plaintiffs' summary judgment motion, Defendant's alleged expert admitted that his entire theory that gun stores are harmful is indistinguishable from the general objection to guns. Cook Deposition, p. 157-60, 203. Likewise, Professor Cook admitted that he could not distinguish the harms from gun sales at gun ranges from gun sales at any other location. Id. at 209, l. 3-9; see also p. 59, l. 5-17; p. 159, l. 16 - 160, l. 2. "[I]f you have a dealer, whether they're located in a shooting range or anywhere else, you have the possibility of those guns going directly into crime in a variety of ways, including the fact that a dealer may be corrupt rather than law-abiding and there may be the possibility of a burglary of that stash of guns." *Id.* at 161, l. 1-7.

In fact, Professor Cook had no data at all regarding gun sales from, specifically, gun ranges. Cook Dep., p.71, ln. 9-14. And indeed, the very theory that gun stores, at ranges or otherwise, would lead to increased crime, or that such crime on balance would outweigh the benefits of gun ownership, was merely a matter of pure speculation. *Id.* at p.84, ln.22 – p.85, ln. 7; Id. at p.211, ln.23 – p.212, ln.12. Cook did not even purport to conduct any cost-benefit analysis. Id. at p.92, ln.2-9.

There is no point of allowing the City more time to possibly reconfirm the gun range sales ban, which has already been litigated here for quite some time, and for which, in the end,

7

the City could locate no support beyond that which would support the total sales ban that has been struck down, and which the City did not defend on appeal. Waiting for the City to pass a similarly-infringing ordinance with a different code section number, so that Plaintiffs could start the litigation again, would be a fantastic waste of time for all concerned.

The bottom line is that the City had absolutely no justification for this prohibition. To persist in arguing—after a federal Judge has already struck down the sales prohibition, and the City has refused to appeal—that sales may still be prohibited arbitrarily at gun ranges, and that the case should start over because the prohibition will likely be reiterated in a differently-numbered code provision, serves only to increase the City's already staggering Section 1988 liability in this case. What it does *not* do is moot the issue, and Plaintiffs request a ruling on this unconstitutional ordinance as applied to firing ranges, so that the shenanigans the City suggests may occur do not occur.

Notwithstanding the above, Plaintiffs incorporate their argument as to this issue as contained in their Response to Defendant's Motion for Summary Judgment, to the extent the validity of a ban on gun sales at a range is still a disputed issue.

**IV.    Targeting Gun Ranges as the Only Land Uses Subject to Noise Limits Prior to 8:00PM, and the Only Businesses in Manufacturing Zones Subject to Noise Limits At All, Plainly Violates the Constitution.**

For the first time, Defendant argues that, notwithstanding the clear noise restrictions of the range ordinance, that a *different* ordinance actually nullifies said noise restrictions. Until then, Defendant had to concede this based on the testimony of Kevin Schnoes, an Assistant Commissioner at the Department of Public Health (Plaintiffs' Exh. 17 at pp.23-25).

Now, the Defendant claims that MCC § 8-32-150 says the same thing. That Ordinance

8

does implement noise restrictions from 8:00PM to 8:00AM that are in fact more restrictive that the amended range noise ordinance, but more to the point do not cancel out the noise restrictions of MCC § 13-96-1200(b)(2). Nor does it change the fact that no other uses in manufacturing zones are subject to noise restrictions unless the noise bleeds into a different zone. MCC § 8-32-170(h). Had Defendant truly believed this before now, Defendant could have contacted Plaintiffs at any time to discuss the issue, rather that prolong the litigation over said noise issue.

However, in any event, and despite the language of the ordinances, Defendant seems to acknowledge that firing ranges are not subject to noise restrictions prior to 8:00PM, or while they are located in manufacturing zones and a violating level of noise does not bleed into a neighboring zone. Since this gives Plaintiffs what they are asking for on this issue, Plaintiffs seek summary judgment from this Court confirming these conclusions.

**V.     Restricting Firing Ranges to Manufacturing Zones Only By Special Use Permit, By Itself and Coupled With the Other Location Restrictions, Effectively Eliminates Any Location Where a Firing Range Could Be Feasibly Operated.**

The City has revamped its math to make it appear that there is more space available for ranges than there is, but the map provided by the City tells the real story. In *North Avenue Novelties v. City of Chicago*, 88 F.3d 441 (7th Cir. 1996), the Seventh Circuit said: "[T]he amount of acreage, standing alone, is largely irrelevant. The constitution does not mandate that any minimum percentage of land be made available for certain types of speech. What it does require is that zoning schemes that regulate the location of speech provide a 'reasonable opportunity' to disseminate the speech at issue." *Id* at 445 (citing *Renton*, 475 U.S. at 52; *Young v. American Movie Theatres*, 427 U.S. 50, 71 (1976)). The evidence in this case shows there is not a reasonable opportunity for the exercise of this important Second Amendment right.

9

This is especially true since the City claims its Zoning Ordinance is to "promot[e] the public, health, safety and general welfare," "protect[] the character of established residential neighborhoods," and "maintain[] orderly and compatible land use and development patterns." While these general platitudes are uncontroversial, Defendant assumes without proving that firing ranges will undermine these goals. In fact, it is the opposite, especially since Chicago residents may now possess handguns in their homes and properly-licensed residents will be allowed to carry concealed weapons in public. There is nothing incompatible about a range being within a commercial zone, and the fact that ranges are also compatible with other zones does not change this. This point may matter if there was ample manufacturing zone space, but there is not.

Likewise, there is still no "defensible conclusion that unusual problems are presented by" firing ranges, as the Seventh Circuit concluded in this case, when it noted: "[t]he City maintains that firing ranges create the risk of accidental death or injury and attract thieves wanting to steal firearms. But it produced no evidence to establish that these are realistic concerns. . ." *Ezell*, 651 F.3d at 709. With the burden to justify its restriction, the City fails this test.

The zoning restrictions are not constitutional, and Plaintiffs' Motion for summary judgment must be granted.

## VI. The Restrictions on Ammunition Sales Create an Unconstitutional Burden on Range Owners and Individuals.

Defendant's Response to this claim weakens its position even more than before the summary judgment briefing. Defendant's alleged justification for banning ammunition sales at a range (except for use at a range) is that people may leave with ammunition, presumably to

commit crimes or be robbed by those who will then use the ammunition to commit crime (as least according to the speculations of Lieutenant Johnson),

However, then Defendant states that people can purchase ammunition from licensed retail vendors, which completely destroys any possible motive for forbidding purchases from ranges. There is no possible reason from singling out firing ranges as the only places in the City where one can purchase ammunition but cannot take it home. It is a completely irrational restriction, that is made all the more so by the recent *Illinois Association of Retailers* decision, holding that individuals have the right to acquire firearms as an inherent corollary of the right to keep and bear functional arms. It would be likewise irrational if individuals did not also enjoy the right to acquire ammunition for self-defense purposes.

Defendant makes light of the burden placed on a range owner to count ammunition leaving the range, and the heavy penalties should a purchased bullet make its way out. Defendant also glosses over the stupidity of this requirement, both the reason noted above and that people can enter a range with more ammunition than that with which they would leave it, and it would make no difference for purposes of this ordinance. Does the City plan to make range owners search customers' pockets, purses and gun cases so they can count bullets? This ordinance mandates that, and it is ridiculous.

Finally, it is obvious this restriction will negative impact a range financially. Who in their right mind would purchase ammunition they have to leave at a range versus going to Wal-Mart and buying it there so they could take it home? The evidence is that ammunition sales are a large piece of a range's profitability. For no good reason, that piece is forbidden. When the City wants to blame the economy for a lack of firing ranges within its borders, it should more closely

11

examine its own part; namely, how the ban on ammunition sales, as well as firearms sales, have helped smothered the hopes of anyone who would think of getting into the range business in Chicago.  It is all the worse that this is done for fear and spite.

That the City Council passed this ordinance is not an endorsement that it is constitutional, workable or logical.  It is well-documented why the City Council passed the range ordinance in an extremely expedited fashion.

**VII.  The Commissioner of Business Affairs's Unbridled Discretion to Deny or Revoke a Firing Range's Business License Unconstitutionally Chills Anyone Who May Think of Trying to Open a Firing Range in the City.**

Defendant cites a number of concealed carry permit cases to try and convince the Court that prior restraint doctrine does not apply to this situation.  But the factual scenario is distinguishable, and one of the cited cases was just reversed by the Ninth Circuit.  *Richards v. Prieto*, 2014 U.S.App. LEXIS 4146 (9th Cir., March 5, 2014).  Also, as Defendant notes, the Seventh Circuit has not ruled on this issue.

Further, Defendant disputes the worth of *People v. Zerillo*, 189 N.W. 927, 928 (Mich. 1922), where the Court held: "The [provision] making it a crime for an unnaturalized, foreign-born resident to possess a revolver, unless so permitted by the sheriff, contravenes the guaranty of such right in the Constitution of the State and is void." *Id*. at 929.  While *Zerillo* may not have been a prior restraint *per se*, it clearly stands for the proposition that placing firearms rights in the discretion of a public official is not allowed.

While the cases Defendant cites dealt with some version of a "justifiable need" standard for obtaining a concealed carry permit (which those cases denied even was a right), a standard which in practice resulted in virtually no one obtaining a permit, here the standard is even more

12

amorphous, and can too easily result in the denial or revocation of a license, especially when the decision is, as Defendant admits, based on the Commissioner's "knowledge and experience." *See* p.19 of Defendant' Response.

There is no evidence regarding other cities' "deleterious impact" standard, and the fact that a denied applicant has the administrative or judicial review option is of no comfort, given the burdens that exercising those options will entail. Maybe the City can get away with it as to liquor licenses, as Defendant argues, but there is no constitutional right to alcohol consumption. The entire ordinance, as written, is unconstitutionally vague.

**VIII. The City's Requirement that Patrons Have a FOID Card Unjustifiably Bans All Qualified Possible Patrons from Out of State.**

Since the City agrees that out-of-state residents may discharge firearms, and rent them from the range facility, even without a FOID card since state law allows such persons to patronize a firing range (*See* 430 ILCS 65/2), this issue can be considered mooted as of the latest September 11, 2013, amendments.

As to owners, MCC §4-151-040(c) states that no firing range license shall be issued if the "applicant," manager, range master or any employee "[d]oes not possess a valid FOID card. The "applicant" is defined in MCC §4-151-010 as "any person applying for a license issued under this chapter and any person who: (1) is an officer, director, manager, managing member, partner, general partner or limited partner of an entity seeking a license issued under this chapter; or (2) owns directly, or indirectly through one or more independent ownership entities, 5% or more of the interest or voting shares in an entity seeking a license issued under this chapter; or (3) is among the top three persons holding the highest percentage of ownership in an entity seeking a

13

license issued under this chapter."

There is no purpose to requiring anyone who falls within the above-listed ordinance to obtain a FOID card. As noted, the City's justification, that people who own ranges (even 5% of them) should have knowledge of firearms, simply does not meet constitutional scrutiny. It is a needless and useless requirement because firearms proficiency is not a factor in obtaining a FOID card.

Of course, Defendant is not arguing for the provision; in fact, Defendant apparently believes the requirement has already been repealed. However, since the unconstitutional restriction still exists, the Court should grant Plaintiffs summary judgment as to this issue.

IX.     **The City's Requirement that Owners and Employees Have a FOID card Unjustifiably Bans All Qualified Possible Employees from Out of State.**

Likewise, MCC § 4-151-030(b)(6) currently requires that employees possess a FOID card, which means no one from out of State can work at a Chicago firing range, whether they are handling firearms or not, whether they have demonstrated firearms proficiency.

This is unconstitutionally overbroad. While Plaintiffs do not object to making sure one has no disqualifying criminal record or history of mental illness, that "governmental purpose" has only manifested itself in Defendant's Response brief. Commissioner Krimbel testified clearly the purpose was to make sure the employee had firearms proficiency (Krimbel Dep. pp.67-68), but firearms proficiency is not a requirement to obtain a FOID card, as it will be with the new concealed carry license.

Defendant asserts there is no such would-be employee, but thanks to all the other restrictions there are no ranges to employ yet anyone, either. The Court, rather than saying there

14

is no controversy as Defendant suggests, which will only generate the next lawsuit, should address this discriminatory and misplaced restriction with the rest of Plaintiffs' claims.

**X.    Barring Patrons Under the Age of 18, Even with Adult Supervision, Serves No Governmental Purpose.**

The City claims it is barring minors from ranges to shield this "vulnerable segment" of the population from lead and accidents. The City all but states that minors will eat lead particles and will be running around unsupervised. That is nonsense, and one need only look to the youth shooting programs taught by Plaintiff Brown and many organizations to know that. That is not "governmental purpose," that is the City's invention to fill up space in a response brief.

According to the Illinois Department of Natural Resources, minors, including those under 16, may obtain a hunting license, though all hunters born after 1980 must present a safety certification. *See* http://www.dnr.illinois.gov/hunting/Documents/HuntTrapDigest.pdf at p.8. Minors (17 and under) may also hunt as an "apprentice" with a parent, grandparent or guardian with a hunting license (*Id.*). Minors (20 and under) do not need a FOID card to hunt as long as they are with a parent, guardian or responsible adult who has a FOID card. *Id.* at p.10. Whatever the City's concerns about gangbanging youths with illegal firearms committing crimes, or unsupervised minors eating lead, there is a completely different side to the story in the form of family traditions, and the responsible teaching of safety and respect for firearms. To the City, apparently, they are all the same.

"A child, merely on account of his minority, is not beyond the protection of the Constitution. As the Court said in *In re Gault*, 387 U.S. 1, 13 (1967), 'whatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone.'"

15

*Bellotti v. Baird*, 443 U.S. 622, 633 (1979) (striking down parental-notification for abortion statute). Though those rights are not unlimited, it is, in short, impossible for the City to defend an ordinance where its defending witness (Commissioner Krimbel) is not sure why it exists, admits it is not well written, and has personal experience of the actual usefulness of Plaintiffs' position.

The Defendant cites to *NRA v. McGraw*, 719 F.3d 338 (5th Cir. 2013) and *NRA v. BATF*, 700 F.3d 185 (5th Cir. 2012), but those cases dealt with the conduct of 18-20 year old minors purchasing firearms from a federal firearms dealer for public carry. *McGraw*, 719 F.3d at 347. Notably, the law at issue in *McGraw* did not otherwise prevent minors from possessing and using guns for self-defense. *Id.* at 348.

Here, the conduct at issue is range training under the supervision of an adult, which teaches proper use and safety. It is the exact opposite of the governmental concern in *McGraw* and *BATF*; namely, minors with firearms in public. Given the conduct affected in this case, and the public benefits of proper use and safety training, the ordinance does not serve a close fit to any governmental purpose.

Whether from the perspective of the range owners who will lose business if parents are not allowed to come to the range to teach their children about self-defense, or the organizations who would run youth classes, or the parents or minors themselves, there is no point to barring youths who are properly supervised by licensed persons from participating in firearms training at a range. Under any level of scrutiny, this ordinance fails.

## XI. The Hour Restrictions Are Unconstitutional.

Restricting hours of operation serves no purpose and prohibits people without regular

schedules from exercising Second Amendment rights. Multiple witnesses testified that they would like to be able to go to a range whenever they like, and pointed out that there are people such as graveyard shift workers and off-duty policemen who would be unable to patronize a range between the restricted hours of 9:00AM and 8:00PM. Krimbel testified that only a handful of businesses have hours restrictions, and that is due to an impact on health and safety. Krimbel also testified that any opinion about shooting ranges on this topic would be a guess, because she knows of no studies, and assumes that because more crime happens at night that means the range will be a public hazard after 8:00PM.

This is pure speculation, and Krimbel admits as much. It plainly fails the standards required to justify hours-of-operation restrictions on businesses that enable the exercise of fundamental rights. *See Annex Books, Inc. v. City of Indianapolis*, 624 F.3d 328 (7th Cir. 2010). The Defendant cites to *DiMa Corp. v. Town of Hallie*, 185 F.3d 823 (7th Cir. 1999), but that decision allowed restrictions on adult bookstores to counter secondary effects. As shown in this case, however, there are no secondary effects with gun ranges. To obstruct the exercise of a constitutional right, the City must have more than guesswork and speculation. It may be the market dictates certain hours of operation, but the City is not allowed to force it on the range for no actual reason. This restriction cannot meet constitutional scrutiny.

**XII. Requiring a Range Master at the "Shooting Range Facility" When There is No Live Fire is a Burdensome and Needless Mandate.**

Defendant glosses over the absurd MCC § 4-151-100(b), and says forcing a rangemaster to be the first one on, and last one off the premises will not cost so much, so it is not a big deal. But "[i]mposing fees on the exercise of constitutional rights is permissible when the fees are

17

designed to defray (and do not exceed) the administrative costs of regulating the protected

activity." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013). Forcing a range to pay an

employee for extra time, every day the range is open, because of the completely speculative and

baseless idea that "[i]f people are otherwise gathered at the facility, they may choose not to

follow the rules and use the range anyway." *See* p.27 of Defendant's Response. Bill Hespen and

Chris Hart may encourage a range master while the range is in use, but to extrapolate that to any

scenario the Defendant can invent, like the hypothetical accident during clean-up, is absurd.

This regulation as written is overbroad and goes beyond the logical measures necessary for

safety.

As noted, the City has had ample opportunity to fix this, and has not. It is a unnecessary

burden that cannot withstand near-strict scrutiny and must be enjoined.

## XIII.    The Sloped Floor and Floor Drain Requirements are Unsafe and Unnecessary, and Make it Near Impossible to Open and Operate a Firing Range in Chicago.

In MCC § 13-96-1220(b) and (c), the City's conclusions that wet cleaning is acceptable

are based on old information which is now considered an unsafe practice. The NRA changed its

range sourcebook for a reason. Instead, the City in defending this suit is stubbornly insisting on

requiring this unsafe practice, even though safety had nothing to do with why this rushed

ordinance was enacted following the Seventh Circuit's decision. That is not the "some

evidence" on which Defendant can hang its hat.

## XIV.    The Commissioner of Business Affairs's Ability to Promulgate Rules, Including Those that Conflict with Laws from Other Regulatory Bodies, Unconstitutionally Chills Anyone Who May Think of Trying to Open a Firing Range in the City.

Defendant's Response ignores that a range owner obviously must already comply with

federal regulations regarding the cleaning, sound, air quality, discharge of particulate matter and waste from a shooting range, as testified to by Jack Giordano. It is not just the potential regulations enacted by the Commissioner that puts the burden on range owners, it is the fact that the contradictory regulations *can* be enacted that also creates that burden. There is no doubt a governmental interest in safety as to the above issues; but despite Defendant's assertions here is not a governmental interest in overkill legislation that burdens businesses without adding anything to safety.

**XV.    Plaintiffs stand on their argument regarding the remaining construction requirements.**

Between Plaintiff's Memorandum in Support of its Motion for Summary Judgment, and their Response to Defendant's Motion for Summary Judgment, Plaintiffs stand on their arguments regarding the following issues:

MCC § 13-96-1200(b)(2), (7), which requires the tiling for the range;

MCC § 13-96-1160(a), which requires armor plating unexposed doors, and making all walls penetration-proof;

MCC § 13-96-11 90(c)(2)(d), which mandates a hazardous storage facility or a magazine for firearms and ammunition storage;

MCC § 13-96-1210(d), which  mandates separate ventilation and exhaust systems for each range;

 MCC § 13-96-1210(e), which mandates electrically interlocking supply and exhaust systems.

**XVI.    The Challenged Range Ordinance Provisions Violate Plaintiffs' First Amendment Right to Offer and Receive Training.**

Defendant claims the First Amendment is not implicated in this case, but the Defendant is wrong.  Plaintiffs otherwise stand on their arguments on this issue as articulated in the various Summary Judgment briefs.  On this basis also, summary judgment for the Plaintiffs must be granted.

WHEREFORE, the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, request this Honorable Court grant their F.R.Civ.P. 56(a) Motion for Summary Judgment, and to grant Plaintiffs any and all further relief as this Court deems just and proper.

Dated: April 4, 2014                                      Respectfully submitted,

By:  _____/s/David G. Sigale_____
David G. Sigale

Alan Gura (Admitted pro hac vice)          David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                         Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405          739 Roosevelt Road, Suite 304
Alexandria, VA 22314                             Glen Ellyn, IL 60137
703.835.9085/Fax 703.997.7665             630.452.4547/Fax 630.596.4445
alan@gurapossessky.com                         dsigale@sigalelaw.com

20

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

     1.      On March 7, 2014, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

     2.      Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


                                /s/ David G. Sigale
                                Attorney for Plaintiffs

Alan Gura (Admitted pro hac vice)     David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC           Law Firm of David G. Sigale, P.C.
105 Oronoco Street, Suite 305       739 Roosevelt Road, Suite 304
Alexandria, VA 22314               Glen Ellyn, IL 60137
703.835.9085/Fax 703.997.7665     630.452.4547/Fax 630.596.4445
alan@gurapossessky.com          dsigale@sigalelaw.com