IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EZELL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 10-CV-5135 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SUBMISSION REGARDING RECENT LEGISLATIVE
ACTION AND MOTION FOR LEAVE TO CITE ADDITIONAL AUTHORITY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant the City of Chicago (the "City"), by and through its counsel, Stephen R. Patton, Corporation Counsel of the City of Chicago, hereby files this Submission Regarding Recent Legislative Action and Motion For Leave to Cite Additional Authority in Support of Its Motion For Summary Judgment.

**I.  Legislation Recently Introduced to City Council Will Moot
Several of Plaintiffs' Claims.**

On January 6, 2014, the district court in *Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill 2014), declared the City's ban on the sale and transfer of firearms (Chicago Mun. Code § 8-20-100(a)) unconstitutional under the Second Amendment. The court issued an order permanently enjoining the City from enforcing the provision, but stayed the effect of the injunction until July 14, 2014, in order to provide the City sufficient time to adequately consider, draft, and enact appropriately-tailored regulations allowing for sales and transfers of firearms within the City. On May 28, 2014, the City's Department of Law introduced an ordinance to the Chicago City Council, replacing § 8-20-100(a) with such regulations. *See* May 28, 2014 Ordinance, attached as Exhibit A. The proposed legislation has

1

been referred to the City Council's Committee on Public Safety, with a full vote from City Council expected before the July 14, 2014 deadline.

Important to this case, the proposed ordinance specifically allows for firearm and ammunition sales at shooting range facilities, as well as amends several other provisions of the City's regulatory scheme for shooting ranges (collectively referred to as the "Shooting Range Ordinance") that Plaintiffs challenge here. The affected provisions are as follows:

### A. Firearm Sales

Plaintiffs challenge § 8-20-100(a) to the extent that it prohibits firearm sales at shooting ranges. The proposed legislation, however, specifically allows for firing ranges to sell firearms as part of their operations. The proposed ordinance permits shooting range facilities to engage in the accessory sale of firearms so long as the combined sales of such firearms and ammunition does not exceed 20% of the total floor area of the facility. *See* Ex. A at 26-27 (§ 17-5-0207).

### B. Ammunition Sales

Plaintiffs challenge Chicago Mun. Code § 4-151-170(b), which provides that, while ammunition may be purchased at a shooting range, the licensee "shall ensure that no shooting range patron leaves the shooting range facility with any ammunition purchased from the licensee." The restriction on purchasing ammunition only for use at the range has been lifted: The proposed ordinance now provides that a "licensee may engage in the retail sale of ammunition or firearms when the licensee obtains a firearms dealer license pursuant to Chapter 4-144; provided that no more than 20% of the total floor area shall be used for the retail sale of firearm and ammunition." *See* Ex. A at 20 (§ 4-151-170(b)(1)).

### C. Cleaning Methods

The Shooting Range Ordinance currently requires the "wet cleaning" method for the

cleaning and removal of lead particulate from the floor and range surfaces, and provides for certain building requirements to ensure effective compliance with this method. In particular, the Shooting Range Ordinance requires that: (a) the range floors slope at a minimum of ¼ inch per foot (§13-96-1200(b)(7)); and (b) the firing range have a hose with back flow protection and floor drains installed at the bullet traps to collect lead and other hazardous materials in a separate drainage system (§13-96-1220(b) and (c)). Plaintiffs challenge these requirements as unconstitutional because they argue that the "dry cleaning" method that utilizes a HEPA vacuum is the safer, and industry-preferred, cleaning method.

The proposed legislation amends these provisions to no longer mandate "wet cleaning." Instead, it allows for a choice between wet and dry cleaning methods. Specifically, it provides that "the shooting range facility shall be equipped with a lead particulate removal system, such as HEPA vacuum or other such system approved by the commissioner of public health, or a lead particulate removal system that removes the lead particulate using water…" Ex. A at 23 (§ 13-96-1200(b)(10)). It further provides that, if a shooting range uses a water-based removal system, it must include "a floor drain at the backstop/bullet trap that collects lead and other hazardous waste material in a separate drainage system to an approved collection device or treatment system that complies with applicable local, state or federal laws and standards." Ex. A at 23-24 (§ 13-96-1200(b)(11)).

The proposed ordinance eliminates the sloped floor requirement in §13-96-1200(b)(7) in its entirety. Ex. A at 23 (§13-96-1200(b)(7)).

### D. Deleterious Impact Standard

Plaintiffs challenge Chicago Mun. Code § 4-151-030(f), which provides that the commissioner may deny an application for a shooting range facility license "if the issuance or

3

renewal of such license would have a deleterious impact on the health, safety or welfare of the community in which the shooting range facility is located." The proposed legislation eliminates this provision in its entirety. *See* Ex. A at 17.

### E. Storage Requirements

Plaintiffs challenge §13-96-1190(c)(2)(d), which states that a "shooting range facility shall include . . . if ammunition or firearms or stored, a magazine or hazardous storage facility appropriate for the type and amount of ammunition or firearms, as provided in the rules and regulations promulgated by the police or fire department." The proposed legislation has eliminated the requirement that ammunition or firearms must be stored in a magazine or other hazardous storage facility. *See* Ex. A at 22. Instead, it has been amended to provide that the fire commissioner shall promulgate rules and regulations that "shall require that the storage of ammunition at the licensed premises of firearms dealer or shooting range facility shall be stored in a separate enclosed area that is secure and equipped with an automatic sprinkler system." Ex. A at 25 (§15-4-985(b)(3)).

### F. Sound Absorbing Materials

Plaintiffs challenge §13-96-1200(b)(2), which requires the shooting range facility to be equipped with "air borne and structure borne sound absorbing materials," as inconsistent with the Shooting Range Ordinance's other requirement that the floors, ceilings and walls of the shooting range "be constructed of smooth, non-porous materials to facilitate effective maintenance and cleaning and removal of lead particulate." §13-96-1200(b)(7). The proposed ordinance eliminates the sound-absorbing material requirement from §13-96-1200(b)(2) in its entirety. *See* Ex. A at 23.

\* \* \*

Presuming the adoption of the proposed legislation on or before July 14, 2014, Plaintiffs' challenges to the above provisions of the Shooting Range Ordinance that are currently before the Court on summary judgment will become moot. *See, e.g., Federation of Advertising Ind. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) (a "repeal, expiration, or significant amendment to challenged legislation ends the ongoing controversy and renders moot a plaintiff's request for injunctive relief"); *Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir. 1995) ("The complete repeal of a challenged statute naturally renders a request for an injunction against application of that statute moot."). The City intends to file a motion to dismiss these claims as moot promptly after passage of the ordinance and, therefore, there is no reason for the Court to unnecessarily wade into the constitutional merits of these claims now.

## II. Motion for Leave To Cite Additional Authority in Support of Summary Judgment

On May 15, 2014, the United States District Court for the District of Columbia issued a summary judgment order rejecting the plaintiff's challenge to numerous provisions of the regulatory scheme for firearm possession and registration that the District passed in response to the Supreme Court's ruling in *District of Columbia v. Heller*, 554 U.S. 570 (2008). *See Heller v. District of Columbia*, -- F. Supp. 2d --, 2014 WL 1978073 (D.D.C. May 15, 2014) (attached as Exhibit B). Summary judgment had been previously granted to the District, but on appeal, the U.S. Court of Appeals for the D.C. Circuit remanded the case for further development of the factual record regarding the challenged regulations. The D.C. Circuit court also held that because "registration requirements do not severely limit the possession of firearms" and "none of the District's registration requirements prevent[ ] an individual from possessing a firearm in his home or elsewhere," the more deferential, intermediate level of scrutiny was the appropriate

5

standard of review. *Heller v. District of Columbia,* 670 F.3d 1244, 1264 (D.C. Cir. 2011).

The district court's decision further supports the City's motion for summary judgment in two important respects. First, the Court rejected the plaintiff's contention that, in order for the District to show that the regulations bore a substantial relationship to the governmental objective, the District must prove that the regulations will "actually achieve" the governmental interest to a significant degree." Ex. B at *7. The court reiterated that the District "need not establish with certitude that the law will actually achieve its desired end," but that it may make predictive judgments based on reasonable inferences entitled to legislative deference. *Id.* at *8.

Second, the court rejected the plaintiff's insistence that empirical data was required to support the legislature's findings. *Id.* at *9. Rather, the government may rely on "'whatever evidence ... is reasonably believed to be relevant to the problem that [the government is] address[ing],'" and this includes "anecdotes ... history, consensus, and simple common sense.'" *Id.* at *10 (internal citations omitted).

Both of these points further support the City's arguments presented in its summary judgment briefing (*see* Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, Dkt # 223, at 10-11) and, therefore, the City respectfully requests leave to cite *Heller v. District of Columbia,* -- F. Supp. 2d --, 2014 WL 1978073 (D.D.C. May 15, 2014) as additional authority supporting the granting of summary judgment in the City's favor.

                                                            Respectfully Submitted,

                                                            Stephen R. Patton
                                                            Corporation Counsel City of Chicago

                                          By:   <u>/s/ Rebecca Hirsch</u>
                                                           One of Its Attorneys

Mardell Nereim
William M. Aguiar
Andrew W. Worseck
Rebecca Alfert Hirsch
Mary Eileen Cunniff Wells
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 742-0260
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I, Rebecca Hirsch, an attorney, hereby certify that on this, the 2nd day of June, 2014, I caused a copy of the forgoing **Defendant's Submission Regarding Recent Legislative Action and Motion for Leave to Cite Additional Authority in Support of Its Motion for Summary Judgment** to be served via electronic notification on:

| | |
|---|---|
| Alan Gura | David G. Sigale |
| Gura & Possessky, PLLC | Law Firm of David G. Sigale, P.C. |
| 101 N. Columbus Street | 739 Roosevelt Road, Suite 304 |
| Suite 405 | Glen Ellyn, IL 60137 |
| Alexandria, VA 22314 | Fax No. 630-596-4445 |
| Fax No. 703-997-7665 | |

/s/ Rebecca Hirsch